IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

```
------------------------------------------------------ )
        Anne Smithers, James Mims,           )
        Ross Wiley, Thomas Wiley,            )      Civil Action No.:
        Henry Wiley by his Mother and        )
        next friend Anne Smithers, Hanna     )
        Del Signore,                         )
                                             )
                PLAINTIFFS,                  )      COMPLAINT FOR NEGLIGENCE,
VS.                                          )      DEFAMATION, ASSAULT AND
                                             )      BATTERY, INTENTIONAL
        Frontier Air Lines, Inc.,  and       )      INFLICTION OF EMOTIONAL
        Aircraft Service International, Inc.,)      DISTRESS, AND BREACH OF
                                             )       CONTRACT
                DEFENDANTS.                  )
------------------------------------------------------ )
```

## INTRODUCTION

This is an action against Frontier Air Lines (hereinafter "Frontier"), Aircraft Service International, Inc., doing business under the fictitious name "Menzies Aviation" (hereinafter "Menzies") for negligence, defamation, assault and battery, intentional infliction of emotional distress, and breach of contract, resulting from an incident that occurred on December 25, 2017 when Plaintiff Smithers was forcibly ejected from Defendant Frontier's flight due to a tweet that she sent while waiting to board, causing emotional trauma to herself and to her traveling family as further set forth below.

## JURISDICTION & VENUE

1. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.A. 1332 (a) (1) as to all causes of action herein.

2. Venue in this district has been selected by Plaintiffs pursuant to 28 U.S.C. § 1391 (b) (1) because it is a District in the United States where Plaintiffs reside and where Defendants conduct business.

3. The amount in controversy in this action exceeds $75,000.

## PARTIES

4. Plaintiffs Anne Smithers, James Mims, Ross Wiley, Thomas Wiley, and Henry Wiley are domiciled in Virginia at 1918 Barribee Lane, Richmond, Virginia 23229

5. Plaintiff Hanna Del Signore is domiciled in Virginia at 8134 Poplar Grove Drive, Warrenton, Virginia 20187

6. Frontier Air Lines is a Nevada corporation with its principal place of business in Colorado. Frontier has a place of business in the Eastern District of Virginia. Frontier regularly operates commercial air service into Dulles Airport multiple times a week, and sells in this District tickets for carriage. By registering to do business in VA with the VA Secretary of State, by availing itself of the benefits and privileges thereof and by regularly flying passengers and cargo to and from and selling tickets for carriage within the District, Frontier has purposefully availed itself of the jurisdictional means located in this District and otherwise has substantial revenues and expenses in this District.

7. Menzies is a Delaware corporation with its principal place of business in Texas. Menzies has a place of business in the Eastern District of Virginia providing ground services at Dulles Airport. By registering to do business in VA with the VA Secretary of State, by availing itself of the benefits and privileges thereof and by providing ground support services within the District, Menzies has purposefully availed itself of the jurisdictional means located in this District and otherwise has substantial revenues and expenses in this District.

## GENERAL ALLEGATION OF AGENCY

8. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, Defendant Menzies and each of its respective agents, contractors and employees were the agent, servant and employees of Defendant Frontier, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment.

## GENERAL ALLEGATION OF COMPLIANCE

9. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, in the course of their dealings with the Defendants, the Plaintiffs complied in all respects, whether or not material, with all conditions, requirements, ordinances, and legal and contractual undertakings incumbent upon them in connection with their Contracts with Defendant Frontier, and with the rules and ordinances of the authorities at the airport of departure and proposed arrival, all aircraft placards and all crew member instructions.

## FACTUAL ALLEGATIONS

10. Plaintiffs booked travel with Frontier Airlines to fly from Denver International to Washington Reagan Airport on the morning of December 25, 2017.

11. Plaintiffs arrived at the gate for their flight at 5:15AM.

12. The flight was scheduled to leave at 7:00 AM local time in Denver.

13. At approximately 6:00 AM, Plaintiffs Ross and Hanna first observed the co-pilot slumped in his seat with shirt untucked and sunglasses on, though it was still dark outside.

14. At approximately 6:15 AM, the co-pilot and his companion approached the boarding counter and interacted briefly with the gate agent, whereupon the copilot returned to his seat where he sprawled out with his sunglasses askew on his face.

15. At approximately 6:30 AM an announcement was made that there was a delay due to a need for life preservers.

16. Over the course of the next two hours, the copilot and his companion slept on the floor behind the ticketing counter and then the copilot sprawled in a wheelchair for a while.

17. At roughly 9:15 the copilot and his companion went out to the tarmac, where he proceeded to take pictures of his companion leaning out the cockpit window and elsewhere.

18. At this point a family seated next to the Plaintiffs turned and incredulously asked Plaintiffs "is this our pilot?"

19. Plaintiff Smithers messaged Frontier at this time to complain about the delay and also tweeted "@FlyFrontier really absurd that we have a two hour delay and for the copilot to sober up!! WTH thanks for ruining Christmas!"

20. It was also the opinion of multiple passengers who conversed with the Plaintiffs that the copilot was recovering from a "big night."

21. Passengers were becoming increasingly angry at the delay, voices were escalating and some began shouting at the ticket counter.

22. At no point did any Plaintiff observe life jackets being loaded on the plane. Prior to the commencement of this action, Defendant Frontier provided Plaintiffs' counsel with documents evidencing the life preservers required for the aircraft were removed from inventory in Denver at about 9 PM local time in Denver the prior evening. The indications on those documents suggest the aircraft was not legal to fly until those preservers were installed.

23. At 10:30 AM, the plane finally boarded and the doors were shut.

24. At 10:35 AM, the pilot announced that they needed to refuel, the ramp came back to the door, the door was opened and two women boarded the plane, one in a red shirt and the other in green.

25. The two women approached Plaintiff Smithers' row and said loudly to the woman sitting in the same row across the aisle: "Anne Smithers you need to come with us!"

26. Plaintiff Smithers immediately said: "I am Anne Smithers." Whereupon the woman in the red shirt turned around, struck Plaintiff Smithers on the shoulder and told her to shut up.

27. After erroneously removing the wrong passenger, the two women came back and removed Plaintiff Smithers.

28. When Plaintiff Smithers asked what was going on, she was told: "you are not allowed to tweet."

29. Plaintiff Smithers was fearful of protesting as the demeanor of these two women was extremely hostile and she had already been struck once.

30. As she was being removed from the plane, Plaintiff Smithers asked again why they were doing this and the woman replied that the copilot had requested her removal because he was offended by her tweet.

31. Plaintiff Smithers replied that she was not leaving her children, whereupon the woman replied that, "you should have thought about that before you tweeted."

32. At this point the red-shirted woman was still aboard the plane blocking the Plaintiff children and Plaintiff Mims from following Plaintiff Smithers off the plane.

33. The red-shirted woman told them: "If you get off the plane, you will be stranded in Denver. You will not fly, you will not get your luggage back. Your mother has committed a felony and will be going to jail or will have to pay a very large fine."

34. This caused acute distress to the children and to Plaintiff Mims.

35. Plaintiff Smithers' son, Plaintiff Henry Wiley, is extremely asthmatic and Plaintiff Smithers carried his medication in her purse, including a small nebulizer.

36. Plaintiff Henry Wiley has been to the hospital over a dozen times in asthma-related emergencies.

37. Plaintiff Henry Wiley had no other form of asthma medication available to him on this flight other than the portable nebulizer carried by his mother.

38. After being taken back to the counter, Plaintiff Smithers informed the green shirted woman that she had her son's medication, that he was extremely asthmatic and he needed his nebulizer.

39. The green-shirted woman ignored Plaintiff Smithers and continued to type.

40. At this point Plaintiff Mims exited the plane with the red-shirted woman and informed Plaintiff Smithers that he had instructed the children to remain on the plane, that they all were visibly shaking and that Plaintiff Del Signore was in tears. He had decided to exit to find out where they were taking Plaintiff Smithers.

41. Another passenger, possibly an air marshal, exited the plane at this point and approached the counter and told the green shirted woman that "this was ridiculous." She ignored him.

42. This passenger then informed Plaintiffs Smithers and Mims that it was ok to film what was occurring. This, coupled with the fact that he had exited the flight with them and did not return, reinforced the Plaintiffs' belief that the mystery passenger was an air marshal.

43. The green shirted woman came back around the counter at this point and Plaintiff Smithers protested again that she had her son's nebulizer and he was a bad asthmatic.

44. The woman responded: "you should have thought about that before you tweeted."

45. The woman then said: "you will need to leave the airport. You will not be flying today and maybe never again."

46. At this point police arrived and escorted Plaintiff Smithers away from the gate.

47. Plaintiff Smithers asked the policeman what law she had broken and he informed her: "you did nothing wrong. No laws were broken. This is a Frontier problem."

48. On the return flight, Plaintiff Henry Wiley felt extreme stress and began wheezing. For the entire flight, he was in fear of having a dangerous attack and being without medication. He fought panic.

49. Plaintiff Henry Wiley considered informing the flight crew that he might have a medical emergency but was afraid to do so after what had happened to his mother.

50. The other Plaintiffs aboard the flight were also afraid for Plaintiff Henry Wiley's safety for the entire duration of the flight.

51. Upon landing, Plaintiff Henry Wiley went immediately to his brother's house nearby, where there was a nebulizer, and gave himself a treatment before returning to Richmond.

## AS AND FOR A CAUSE OF ACTION FOR NEGLIGENCE

52. Paragraphs 1-51 of this Complaint, inclusive, are hereby incorporated by reference as if set forth in full herein.

53. Defendant Frontier had a duty as a common carrier to exercise a reasonable duty of care for the well-being and treatment of its passengers.

54. Defendants had a duty to exercise ordinary care commensurate with the existing circumstances.

55. It was reasonably foreseeable that Defendants' improper treatment of the Plaintiffs could result in aggravation, inconvenience, monetary damage and extreme distress.

56. Defendants breached their duty to Plaintiffs by baselessly ejecting Plaintiff Smithers from the aircraft and forcibly separating her from her children.

57. Defendants breached their duty to the Plaintiffs by the cruel and callous treatment by which they ejected Plaintiff Smithers from the plane, including striking Plaintiff Smithers, falsely accusing her of a crime, informing the family that she had committed a felony and would likely be incarcerated within earshot of other passengers, and then refusing to allow Plaintiff Smithers to return needed medical equipment to her dangerously asthmatic son.

58. As a result, Plaintiffs suffered great inconvenience, embarrassment, loss of reputation, monetary damages, and severe emotional distress.

## AND AS FOR A SECOND CAUSE OF ACTION FOR DEFAMATION

59. Paragraphs 1-58 of this Complaint, inclusive, are hereby incorporated by reference as if set forth in full herein.

60. Defendants made a defamatory statement when they informed Plaintiff Smithers' traveling family and all passengers within earshot that Plaintiff Smithers had committed a felony and was likely going to jail.

61. This statement was published to the family and to dozens of surrounding seated passengers.

62. Defendants knew or had reason to know that this statement was false.

63. By accusing Plaintiff Smithers of committing a serious crime, Defendants are liable for per se damages and special damages need not be pled.

64. Plaintiff Smithers suffered both economic and non-economic damages as a result of Defendants' defamation.

## AND AS FOR A THIRD CAUSE OF ACTION FOR ASSAULT AND BATTERY

65. Paragraphs 1-64 of this Complaint, inclusive, are hereby incorporated by reference as if set forth in full herein.

66. Defendants struck Plaintiff Smithers on the shoulder and told her to "shut up."

67. By striking Plaintiff Smithers on the shoulder, Defendants intended to cause and did cause an offensive physical contact.

68. It offended Plaintiff Smither's sense of dignity to have her shoulder struck.

69. Defendants' demeanor throughout the interaction with Plaintiff Smithers was intense and hostile. It appeared offensive.

70. Having already been struck once, Plaintiff Smithers had apprehension that she would be offensively touched again.

71. Plaintiff Smithers suffered damages as a result that included fear, embarrassment, anxiety, indignity, loss of sleep, stress and emotional trauma that has resulted in ongoing medical treatment and expense.

72. Additionally, Defendant's behavior was willful and wanton and done with malice and Defendant is liable for punitive damages.

## AND AS FOR A FOURTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Paragraphs 1-72 of this Complaint, inclusive, are hereby incorporated by reference as if set forth in full herein.

74. Defendants engaged in extreme and outrageous conduct towards the Plaintiffs by ejecting Plaintiff Smithers from the flight with no cause.

75. Defendants engaged in extreme and outrageous conduct towards the Plaintiffs by striking Plaintiff Smithers, ejecting her forcibly from the aircraft, attempting to have police remove her from the airport and by their extremely hostile and threatening demeanor.

76. Defendants engaged in extreme and outrageous conduct towards the Plaintiffs by terrifying them by falsely alleging that Plaintiff Smithers had committed a felony and would likely be jailed.

77. Defendants engaged in extreme and outrageous conduct towards the Plaintiffs by refusing to allow Plaintiff Smithers to send her son's needed nebulizer back aboard, even though they had been informed that he was an extreme asthmatic and could reasonably understand the increased danger that he would suffer an asthmatic attack due to the stress and anxiety that Defendants had created.

78. Defendants' behavior intentionally or recklessly caused severe emotional distress to all Plaintiffs and shocks the conscience.

## AND AS FOR A FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT

79. Paragraphs 1-78 of this Complaint, inclusive, are hereby incorporated by reference as if set forth in full herein.

80. Plaintiff Smithers and Defendant Frontier entered into a contract of carriage to transport Plaintiff Smithers from Denver, Colorado to Washington, DC.

81. As consideration for this contract, Plaintiff Smithers paid $188.40.

82. Plaintiff Smithers complied in every way with the conditions of the contract.

83. By refusing to carry Plaintiff Smithers, Defendant Frontier breached the contract.

84. As a result, Plaintiff Smithers suffered damages including ongoing therapy for PTSD, $500 spent so far, additional future appointments costing $100/session.

## PRAYER FOR RELIEF

85. Wherefore, Plaintiff prays for relief from this Honorable Court as follows:

86. On the first cause of action for negligence, an amount to be determined at trial, but not less than $125,000.

87. On the second cause of action for defamation, an amount to be determined at trial, but not less than $125,000.

88. On the third cause of action for assault and battery, an amount to be determined at trial, but not less than $125,000.

89. On the fourth cause of action for intentional infliction of emotional distress, an amount to be determined at trial, but not less than $125,000.

90. On the fifth cause of action for breach of contract, $188.40 plus current and future medical expenses.

## JURY TRIAL

91. Pursuant to the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ Thatcher A. Stone
Thatcher A. Stone  (PHV application pending)
/s/ William T. Woodrow III
William T. Woodrow III (VSB 88122)
Stone & Woodrow LLP
250 West Main Street, Suite 201
Lewis & Clark Plaza
Charlottesville, VA 22902
Email: thatcher@stoneandwoodrowlaw.com
       will@stoneandwoodrowlaw.com
Phone: (855) 275-7378
*Attorneys for Plaintiffs*