**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

_____

ANNE SMITHERS, *et al.*

    Plaintiffs,

        v.

FRONTIER AIRLINES, INC., *et al.*

    Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 1:18cv676 (TSE/IDD)

**DEFENDANTS FRONTIER AIRLINES, INC.'S AND
AIRCRAFT SERVICES INTERNATIONAL, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

Defendants Frontier Airlines, Inc. ("Frontier") and Aircraft Services International, Inc.

("ASI") hereby move this Court for an Order dismissing the Complaint filed in this action by

Plaintiffs Anne Smithers, James Mims, Ross Wiley, Thomas Wiley, Henry Wiley by His Mother

and Next Friend Anne Smithers, and Hanna Del Signore.

## INTRODUCTION

Plaintiffs' Complaint admits that, while waiting for a flight in Denver, Colorado, based

on pure speculation, Plaintiff Anne Smithers tweeted that the co-pilot of her scheduled flight

needed to "sober up." [Dkt. 1 ¶ 19.]  Based on that public tweet, which disparaged the co-pilot,

Smithers was removed from the plane before the flight left Denver.  [*Id.* ¶ 30.]  Smithers now

brings this Complaint against Frontier and ASI, in Federal Court in Virginia, along with her

boyfriend, three sons, and one of the son's girlfriends, for Smithers being removed from the

flight.  This Complaint should be dismissed for the following reasons.

_**First,** this Court does not have personal jurisdiction over either of the Defendants._
The Complaint admits that neither Defendant is incorporated nor has its principle place in Virginia. [_See_ Dkt. 1 ¶¶ 6-7.] Further, all of the alleged acts occurred in Colorado. Based on recent Supreme Court precedent in _Daimler AG v. Bauman_, 571 U.S. 117 (2014), and on the facts alleged, this Court does not have personal jurisdiction over the Defendants.

_**Second,** all of the Causes of Action brought by Plaintiffs James Mims, Ross Wiley, Thomas Wiley, Henry Wiley, and Hanna Del Signore should be dismissed._ The Complaint is devoid of any allegations relating to Plaintiffs other than Smithers. In fact, Mims voluntarily left the aircraft, while the other Plaintiffs stayed on the plane and flew without incident. Accordingly, all of the Counts that relate to Plaintiffs other than Smithers should be dismissed.

_**Third,** Counts I through IV should be dismissed because they do not allege how Defendants should be responsible._ Plaintiffs' entire Complaint is based on the alleged actions of two unnamed women. Other than alleging the color of their shirts, Plaintiffs offer no support that these women have any relationship to either Defendant. A company is only liable for the wrongful acts of its employee if the employee was given express authority to act or the conduct in some way served the employer's interest. _Grease Monkey International, Inc. v. Montoya_, 904 P.2d 468, 473 (Colo. 1995). Without pleading for whom these women worked, there is no way that either Frontier or ASI could be liable for their actions.

_**Fourth,** all of Smithers' Causes of Action should be dismissed._
Smithers' negligence claim should be dismissed because she did not identify any duty that ASI owed to her, and any duty that Frontier owed to her is covered by the Contract of Carriage, which thus eliminates any negligence claim.

Smithers' defamation claim should be dismissed because she has not pled any relationship between the Defendants and the woman who made the alleged defamatory statement.

Smithers' assault and battery claim is really two causes of action. Again, Smithers has not pled any relationship between the Defendants and the woman who allegedly struck her. Moreover, she has not alleged that she was apprehensive that she would be struck, a fatal flaw to her assault claim.

Smithers' claim for intentional infliction of emotional distress should be dismissed because Smithers has not pled truly outrageous conduct, which is necessary to make such a claim under Colorado law, or that she suffered extreme emotional distress, also a critical element of the tort.

Finally, Smithers' claim for breach of contract should be dismissed because under the Contract of Carriage, Frontier had the right to not transport Smithers. Moreover, the contract specifically precludes Smithers from receiving any damages other than the cost of her ticket, so she is limited to that relief.

## STATEMENT OF FACTS

Plaintiffs Anne Smithers, her boyfriend James Mims, Smithers' three sons (Ross Wiley, Thomas Wiley, and Henry Wiley), and Hanna Del Signore (a girlfriend of one of the sons), were scheduled to fly on Frontier Airlines from Denver International Airport to Washington Reagan Airport on December 25, 2017. [Dkt. 1 ¶ 10.] Boarding for the flight was delayed for 3.5 hours due to a need for sufficient life preservers on the plane. [*Id*. ¶¶ 15, 23.]

During the delay, while "[p]assengers were becoming increasingly angry at the delay, voices were escalating and some began shouting at the ticket counter," [*id.* ¶ 21], Smithers "messaged Frontier … to complain about the delay and also tweeted, '@FlyFrontier really

absurd that we have a two hour delay and for the copilot to sober up!!  WTH thanks for ruining Christmas."  [*Id.* ¶ 19.]

Despite claiming that the copilot was not sober, all of the Plaintiffs boarded the plane. [*Id.* ¶ 23.]  After boarding the plane, while still in Colorado, "the pilot announced that they needed to refuel," the ramp came back to the door, the door was opened and two unnamed women boarded the plane, "one in a red shirt and the other in green."  [*Id.* ¶ 24.]  Plaintiffs do not allege for what company these unnamed women work or that they were acting as agents of either defendant.  These women were looking solely for Smithers.  They first mistakenly identified another woman as Smithers, said "Anne Smithers you need to come with us," and then removed her from the plane.  [*Id.* ¶ 25.]  After recognizing their mistake, however, they came back and found Smithers.  [*Id.* ¶ 27.]  Allegedly, the woman in the red shirt "struck Plaintiff Smithers on the shoulder and told her to shut up."  [*Id.* ¶ 26.]  Smithers was removed from the plane, and told it was because the copilot was offended by her tweet.  [*Id.* ¶ 30.]  The other Plaintiffs were not removed from the plane.

After removing Smithers from the plane, it is alleged that the woman in the red shirt did not allow the other Plaintiffs to leave the plane.  [*Id.* ¶ 32.]  It is alleged that she said to the other Plaintiffs, "'[y]our mother has committed a felony and will be going to jail or will have to pay a very large fine.'"  [*Id.* ¶ 33.]  Despite supposedly not allowing the other Plaintiffs to leave, Mims (Smithers' boyfriend), exited the plane voluntarily.  [*Id.* ¶ 40.]  Mims had instructed the others to stay on the plane, including Henry Wiley, who had asthma and did not have his inhaler.  [*Id.* ¶¶ 40, 43.]

The police then arrived and "escorted Plaintiff Smithers away from the gate" along with Mims.  [*Id.* ¶ 46.]  Smithers and Mims let the children remain on the flight, who landed safely at Reagan National Airport, without incident, including Henry Wiley  [*Id.* ¶ 51.]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard "demands more than an unadorned, defendant-unlawfully-harmed-me accusation."  *Id*. at 678.  The importance of "evaluat[ing] complaints early in the process" in response to Rule 12(b)(6) motions has been emphasized by the Supreme Court and the Fourth Circuit as a way to deal with "the recognized problems created by 'strike suits' and the high costs of frivolous litigation." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (*citing Iqbal*, 556 U.S. at 678-79).

Accordingly, the Federal Rules do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 679.  Facts that suggest a "mere possibility" or those that are "merely consistent" with misconduct are not enough to survive a motion to dismiss.  *Id*. at 678.  In evaluating such motions, courts do not credit a plaintiff's "legal conclusions, [recitations of] elements of a cause of action, and bare assertions devoid of further factual enhancement," and must "decline to consider 'unwarranted inferences, unreasonable conclusions, or arguments'" contained in the complaint.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

## ARGUMENT

**I.     THIS COURT LACKS PERSONAL
        JURISDICTION OVER BOTH DEFENDANTS**

Jurisdiction is a threshold issue that the court must first consider before other grounds for dismissal under Rule 12(b).  *KMLLC Media, LLC v. Telemetry, Inc.*, 2015 U.S. Dist. LEXIS 145764, at *1 (E.D. Va. Oct. 27, 2015) (Cacheris, J.).  On a defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the burden is on the plaintiff to prove the grounds of jurisdiction by a preponderance of the evidence.  *Noble Sec., Inc. v. MIZ Engineering, Ltd.*, 611 F. Supp. 2d 513, 523 (E.D. Va. 2009) (Davis, J.).  When a district court considers a Rule 12(b)(2) motion on the basis of papers alone, however, the plaintiff must only prove a *prima facie* case of personal jurisdiction. *Id.; see also Zaletel v. Prisma Labs, Inc.,* 226 F. Supp. 3d 599, 612 (E.D. Va. 2016) (Ellis, III, J.) ("plaintiff has not made a *prima facie* showing that defendant purposefully availed itself of the privilege of conducting business in Virginia, and thus there is no personal jurisdiction over defendant in this forum.").

When evaluating whether personal jurisdiction is proper over a non-resident defendant, courts undertake a two-part analysis to determine: first, whether jurisdiction exists under Virginia law, and second, whether the exercise of jurisdiction would comport with federal due process. *See New Wellington Fin. Corp. v. Flagship Resort Dev. Co*., 416 F.3d 290, 294 (4th Cir. 2005).  The exercise of jurisdiction in Virginia is governed by the Commonwealth's long-arm statute (Va. Code §8.01-328.1), which extends personal jurisdiction to the fullest extent permitted by due process.  *Id*. The requirements of due process can be met by establishing either general or specific jurisdiction.

## A.  This Court Lacks General Jurisdiction Over the Defendants

"General jurisdiction over a company exists where that company (1) is incorporated, (2) has its principal place of business, or (3) has contacts 'so continuous and systematic' so as to render them 'essentially at home.'"  *Handy v. Johnson & Johnson*, 2017 U.S. Dist. LEXIS 204533, at *5 (E.D.Va. Dec. 12, 2017) (Gibney Jr., J.) (*citing Daimler AG v. Bauman*, 571 U.S. 117, 133,  n.11 (2014)).

In this case, Plaintiffs do not allege (nor can they) that either Frontier or ASI (otherwise known as Menzies) are incorporated or have their principal places of business in Virginia.  [*See* Dkt. 1 ¶¶ 6, 7 (alleging that Frontier "is a Nevada corporation with its principal place of business in Colorado," and that "Menzies is a Delaware corporation with its principal place of business in Texas.").]

Thus, in order to comport with federal due process requirements, Plaintiffs must allege contacts "so constant and pervasive as to render it essentially at home in the forum state." *Daimler*, 571 U.S. at 122.  The Supreme Court has held that it is only in the "exceptional case" where general jurisdiction lies over a corporation "in a forum other than its formal place of incorporation or principal place of business" and the corporation's contacts with that forum must "be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19.  In *Daimler*, the Supreme Court found that California lacked general jurisdiction over the defendant despite the fact that it operated "multiple California-based facilities" and was "the largest supplier of luxury vehicles to the California market." *Id.* at 753.

Here, Plaintiffs allege that Defendants regularly operate flights and ground service out of Virginia.  [*See* Dkt. 1 ¶¶ 6, 7.]  However, Courts in this District have held that such allegations are not considered contacts "so continuous and systematic" so as to render them "essentially at home."  *See e.g., Handy*, 2017 U.S. Dist. LEXIS 204533, at *6 (holding that Toyota did not have

7

sufficient contacts to be at "home" in Virginia:  "Handy does not allege facts sufficient to show that Toyota has contacts with Virginia continuous and systematic enough to render Toyota essentially at home.").

For these reasons, Plaintiffs have failed to allege that this Court has general jurisdiction over Defendants.

### B.  This Court Lacks Specific Jurisdiction Over the Defendants

Specific jurisdiction exists in a forum when the suit arises out of a defendant's specific contacts with that forum as it relates to the matter at issue.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1780 (2017).  Under Va. Code § 8.01-328.1(A)(1)-(3), this Court may "exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's transacting any business in the Commonwealth," "contracting to supply services or things in the Commonwealth," or "causing tortious injury by an act or omission in this Commonwealth."

For tort claims (Counts I through IV of Plaintiffs' Complaint), the statutory language makes clear it is the defendants' action and not the impact upon the plaintiff, that must have occurred within Virginia in order to qualify for jurisdiction.  Thus, this Court has previously held, that "[t]his provision requires that an out-of-state defendant be physically present in Virginia when committing the act or omission giving rise to the tort at issue."  *DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 425-426 (E.D. Va. 1996) (Ellis, III, J.).  As to claims in contract (Count V of Plaintiffs' Complaint), courts in this Circuit have held that entering into and performing a contract outside of Virginia does not amount to transacting business or contracting to supply services in Virginia, even if the Plaintiff is a Virginia resident.  *See e.g.*, *Viers v. Mounts*, 466 F. Supp. 187, 190-91 (W.D. Va. 1979) (noting that mere contract negotiations carried out in Virginia between a state citizen and a nonresident with execution and

performance of the contract in a foreign forum is not sufficient transaction of business to assert

personal jurisdiction over the defendant); *Superfos Invest., Ltd. v. Firstmiss Fertilizer, Inc.*, 774

F. Supp. 393, 398 (E.D. Va. 1991) (Clarke, J.) (finding no personal jurisdiction where a contract

was prepared in Virginia and returned to Virginia once signed.  "A contract which is accepted

and becomes effective in another forum generally will not satisfy minimum contacts.")

Here, all of alleged acts occurred in the Denver International Airport, in Denver,

Colorado.  There is not a single allegation in the Complaint that occurred in Virginia.

Accordingly, since none of Defendants' actions occurred in Virginia there is no personal

jurisdiction over Defendants.

## II.    ALL OF THE CLAIMS BY PLAINTIFFS OTHER THAN SMITHERS SHOULD BE DISMISSED BECAUSE THERE ARE NO ALLEGATIONS OF ANY ACTIONS TAKEN AGAINST THEM

The entirety of Plaintiffs' Complaint makes allegations as they relate to Smithers.

Indeed, the Introduction to Plaintiffs' Complaint says it all.  It contains nothing about the other

Plaintiffs, but only about actions taken against Smithers.  [Dkt. 1, Introduction].  The remainder

of the Complaint is the same, focusing entirely on actions taken against Plaintiff Smithers.  *See*

*e.g., id.* ¶ 56 ("Defendants breached their duty to Plaintiffs by baselessly ejecting Plaintiff

Smithers from the aircraft"); *id.* ¶ 57 ("Defendants breached their duty to the Plaintiffs by the

cruel and callous treatment by which they ejected Plaintiff Smithers from the plane, including

striking Plaintiff Smithers, falsely accusing her of a crime…"); *id.* ¶ 64 ("Plaintiff Smithers

suffered both economic and non-economic damages as a result of Defendants' defamation"); *id.*

¶ 66 ("Defendants struck Plaintiff Smithers on the shoulder"); *id.* ¶ 74 ("Defendants engaged in

extreme and outrageous conduct towards the Plaintiffs by ejecting Plaintiff Smithers from the

flight with no cause.").

There are no allegations about the other Plaintiffs.  This is because Plaintiff Mims exited the plane voluntarily, [*Id.* ¶ 40], and the other Plaintiffs stayed on the plane and landed safely at Reagan National Airport, without incident.  [*Id.* ¶ 51.]  "Without any factual matter or substance, the claim[s] [are] not plausible," and thus all of the causes of action brought by Plaintiffs James Mims, Ross Wiley, Thomas Wiley, Henry Wiley, and Hanna Del Signore should be dismissed. *Jesse v. Wells Fargo Home Mortg*., 882 F. Supp. 2d 877, 880 (E.D. Va. 2012) (Gibney, Jr., J.).[1]

## III. COUNTS I - IV SHOULD BE DISMISSED AGAINST BOTH DEFENDANTS BECAUSE THERE ARE NO ALLEGATIONS THAT THE INDIVUDALS WHO ALLEGEDLY CAUSED THE HARMS WERE EMPLOYEES OR AGENTS OF DEFENDANTS

Counts I through IV of Plaintiffs' Complaint are tort claims, all premised on the alleged actions of two individuals: a woman in a red shirt and a woman in a green shirt.  [*See* Dkt. 1 ¶¶ 24-45.]  One woman allegedly struck Smithers on the shoulder (*id.* ¶ 26), removed Smithers from the plane (*id.* ¶¶ 27-30), told  Smithers' family that Smithers had committed a felony (*id.* ¶ 33), and refused to allow Smithers to re-enter the plane (*id.* ¶¶ 38-39, 43-45).  Plaintiffs have brought causes of actions against Frontier and ASI based on the actions of these women.

Under Colorado law,[2] a company is only liable for the wrongful acts of its employee if the employee was given express authority to act or the conduct in some way served the

---

[1] While not entirely clear from the Complaint, it appears that Plaintiffs James Mims, Ross Wiley, Thomas Wiley, Henry Wiley, and Hanna Del Signore are included on Counts I, II, III, and IV. In Count V for Breach of Contract it appears that only Smithers is included.  Nonetheless, no matter how the Complaint is read, Plaintiffs James Mims, Ross Wiley, Thomas Wiley, Henry Wiley, and Hanna Del Signore have no causes of action.

[2] Because all of the alleged actions occurred in Colorado, Colorado law should apply.  *See Jones v. R. S. Jones & Assoc*. 246 Va. 3 (1993) (holding that the settled choice of law rule for tort claims is *lex loci delicti* - the law of the place of the wrong.)  The place of the wrong for purposes of the *lex loci delicti* rule is defined as the place where the last event necessary to make an actor liable for an alleged tort takes place, even if the actor has no control over the location of that last event. *See Quillen v. International Playtex, Inc*., 789 F.2d 1041, 1044 (4th Cir. 1986)

employer's interest.  *Grease Monkey International, Inc. v. Montoya*, 904 P.2d 468, 473 (Colo. 1995); *see also Podboy v. Fraternal Order of Police, Denver Sheriff Lodg*e 27, 94 P.3d 1226, 1230 (Colo. Ct. App. 2004) ("An act of an employee is within the scope of his employment if the work done is assigned to him by his employer, is necessarily incidental to that work, or is customary in the employer's business.").  A necessary condition of that rule is that a plaintiff must allege that the individual doing the wrong is an employee of the company.  *See Kazazian v. Vail Resorts, Inc.*, 2018 U.S. Dist. LEXIS 92687, at *20 (D. Colo. May 31, 2018) (dismissing case where "Ms. Kazazian fails to plead facts supporting an employment relationship between her and VRI").

Here, Plaintiffs provide no identification for these women, other than the color of their shirts.  They do not plead their names, or for whom they worked.  Because Plaintiffs do not identify who these women worked for, they also certainly did not plead that these women were given express authority to act for either Defendant, or that their conduct in some way served either of the Defendants' interests.  Because of this pleading deficiency, Counts I through IV should be dismissed against both Defendants.

## IV.    THE COUNTS BROUGHT BY SMITHERS SHOULD BE DISMISSED

While all of the Counts as they relate to Plaintiffs other than Smithers should be dismissed for the reasons set forth above, Counts I through IV with respect to Smithers should also be dismissed against both of the Defendants in full because the Complaint does not plead that the individuals who allegedly committed the actions at issue were employees of Frontier or ASI.  As discussed below, there are further reasons that the Complaint has deficiencies as it relates to Smithers.

---

(finding that the law applicable to a cause of action for strict products liability comes from the jurisdiction where liability arose, which was where the plaintiff first became ill).

### A.  Count I - Negligence Should be Dismissed for Lack of Duty

Under Colorado law, a claim for negligence consists of four elements: (1) the existence of a legal duty; (2) breach of that legal duty; (3) causation; and (4) damages.  *Westin Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015).  To properly plead negligence, "depends upon an identified duty of care."  *Phillips v. Lucky Gunner, LLC* 84 F. Supp. 3d 1216, 1227 (D. Colo. 2015).   "Absent a duty of care, Plaintiff does not have a viable claim for negligence under Colorado law."  *Fine v. Tumpkin*, 2018 U.S. Dist. LEXIS 119904, at *10 (D. Colo. July 18, 2018) (dismissing negligence claim).

Here, Smithers' Negligence claim is all based on "ejecting Plaintiff Smithers from the aircraft" and refusing to transport her.  [Dkt. 1, ¶ 56; *see also* ¶ 57.]  Smithers' Negligence claim fails as to both Defendants - for ASI she has failed to identify that ASI owes this duty, and for Frontier, that duty arises out of the Contract of Carriage.

#### 1.  ASI has No Legal Duty to Smithers

"The Court must determine as a matter of law whether a defendant in a particular action owes the plaintiff a legal duty."  *Schmidt v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 51133, at *16 (D. Colo. Mar. 28, 2018).  Here, Smithers has offered no allegations about what ASI does at Denver International Airport, or what ASI did on the day in question, which would lead to ASI owing a duty to Smithers.  In fact, the Factual Allegations section of the Complaint contains no mention of ASI at all.  Therefore, there is no way for the Court to determine whether ASI owed Plaintiff a duty.   "[P]laintiff's failure to establish as a matter of law that [ASI] owed h[er] a duty is fatal to h[er] claim[] of negligence."  *Id*.

#### 2.  Any Duty of Frontier to Smithers was Part of the Contact of Carriage

Colorado's Economic Loss Rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach

absent an independent duty of care under tort law." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004). The rule attempts to maintain a boundary between contract and tort law. As the Colorado Supreme Court has explained, "[t[he essential difference between a tort obligation and a contract obligation is the source of the parties' duties. Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property." *BRW, Inc.*, 99 P.3d at 72 (internal citation omitted); s*ee also Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000) ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.").

Here, Smithers alleges in Count V (Breach of Contract) that she entered into a contract with Frontier, which obligated Frontier to "transport Plaintiff Smithers from Denver Colorado to Washington, D.C. [Dkt. 1 ¶80.] This is the same duty that Plaintiff alleges was breached in her negligence claim. *See id.* ¶ 56 ("Defendants breached their duty to Plaintiffs by baselessly ejecting Plaintiff Smithers from the aircraft"); *id.* ¶ 57 ("Defendants breached their duty to the Plaintiffs by the cruel and callous treatment by which they ejected Plaintiff Smithers from the plane."). Since the duty alleged to be breached by Frontier arose from the contract, Smithers' negligence claim cannot stand.

### B.  Count II - Defamation Should be Dismissed Because there is no Allegation As to Which Defendant Should be Responsible for the Statement at Issue

Smithers' sole basis for a defamation claim is her allegation that the "red-shirted woman" told her family "Your mother has committed a felony and will go to jail or will have to pay a very large fine." [Dkt. 1 ¶ 33.] As discussed above, neither Defendant can be held liable for this statement because it is not alleged for whom the "red-shirted woman" worked. *See Williams v.*

*Continental Airlines, Inc.,* 943 P.2d 10, 16 (Colo. Ct. App. 1996) ("there was insufficient evidence adduced to hold Continental liable for the various defamatory statements, either under respondeat superior or under a claim of inadequate supervision.").

### C. Count III - Assault and Battery Should be Dismissed Because It is Not Pled Which Defendant Should be Responsible for the Alleged Battery and There are No Allegations of an Assault

Smithers' third Count for assault and battery, is really two independent torts. To plead a battery claim, a plaintiff must allege that "(1) The defendant's act resulted in physical contact with the plaintiff; and (2) The defendant intended to make physical contact with the plaintiff or knew that he would probably make physical contact; and (3) The contact was harmful or offensive." *O'Hayre v. Board of Educ.*, 109 F. Supp. 2d 1284, 1296 (D. Colo. 2000). The elements for assault are different. To plead an assault claim, a plaintiff must plead "(i) that the defendant intended to make physical contact with the defendant or place the defendant in apprehension of immediate physical contact, (ii) the plaintiff was placed in such apprehension, and (iii) the contact was offensive." *Cuevas v. United States*, 2018 U.S. Dist. LEXIS 44915, at *26-27 (D. Colo. Mar. 19, 2018). The critical difference in the two torts is whether the plaintiff was in "apprehension" of being placed in physical contact. As the Supreme Court of Virginia held – which has the same assault and battery torts as Colorado – "[a]lthough these two torts 'go together like ham and eggs,' the difference between them is 'that between physical contact and the mere apprehension of it. One may exist without the other.'" *Koffman v. Garnett*, 265 Va. 12, 16 (2003).

The allegations of assault and battery are related to the actions of the woman in the red shirt. [*See* Dkt. 1 ¶¶ 26-27.] However, since the relationship between the woman in the red shirt and the Defendants has not been pled, this Count should be dismissed against the Defendants. *See Weeks v. Churchill,* 44 Colo. App. 520, 522 (Colo. App. 1980) (holding that an

employer could only be liable for assault and battery if it "arose by virtue of employee's

negligence, and could not arise independently.").

Furthermore, there can be no claim of assault, because Smithers had no apprehension

that she would be struck.  In *Cuevas*, the District of Colorado dismissed a claim of assault

because Plaintiff failed to allege apprehension of imminent contact.  Moreover, "the

apprehension created must be one of imminent contact, as distinguished from any contact in the

future."  *Cuevas*, 2018 U.S. Dist. LEXIS 44915, at *26-27; *see also Koffman*, 265 Va. at 16

(holding that there can be no assault once the battery "was in progress.")

Here, Smithers alleges that without warning, "the woman in the red shirt turned around,

[and] struck Plaintiff Smithers on the shoulder."  [Dkt. 1  ¶ 26.]  There are no allegations that any

threats were made before or after the contact on Smithers' shoulder.  Any fear that Smithers

might be physically contacted in the future based on the prior physical contact does not make out

a claim for assault.  Therefore, just like in *Cuevas*, Smithers' assault claim should be dismissed.

### D.  Count IV - Intentional Infliction of Emotional Distress Should be Dismissed Because the Alleged Conduct was Not Sufficiently "Outrageous and Intolerable" and Smithers' Claimed Mental Distress Fails in Severity as a Matter of Law

Under Colorado law, in order to properly allege an intentional infliction of emotional

distress claim, a plaintiff must alleges that "(1) the defendant engaged in extreme and outrageous

conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3)

causing the plaintiff to suffer severe emotional distress."  *McCarty v. Kaiser-Hill Co., L.L.C.*, 15

P.3d 1122, 1126 (Colo. App. 2000).  Whether conduct is "outrageous and intolerable" or whether

emotional distress is "severe" are issues of law for the court to decide.  *Donaldson v. American

Banco Corp. Inc.*, 945 F. Supp. 1456, 1465-66 (D. Colo. 1996) ("the court must decide in the

first instance whether reasonable persons could differ on the conduct being outrageous.");

*Martensen v. Koch,* 14 U.S. Dist. LEXIS 91817, at *29 (D. Colo. June 12, 2014) (dismissing a

complaint because "Plaintiff has not articulated a manifestation of severe mental suffering."). Ultimately, "[t]he tort of intentional infliction of emotional distress is extremely limited." *Katz v. City of Aurora*, 85 F. Supp. 2d 1012, 1021 (D. Colo. 2000).

As discussed above, all of the allegations relating to intentional infliction of emotional distress are from the alleged actions of the women in the red and green shirts. Since the relationship between these women and the Defendants is unknown (and not pled), Count IV should be dismissed against the Defendants. However, even if this cause of action could be pursued against the Defendants, Smithers fails to properly allege that the purported conduct at issue against Smithers was sufficiently "outrageous and intolerable" or that her emotional distress was adequately "severe," and therefore, dismissal with prejudice of the Fourth Cause of Action is proper.

### 1.   Smithers Fails to Allege "Outrageous and Intolerable" Conduct

The tort of intentional infliction of emotional distress "was designed to create liability for a very narrow type of conduct." *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006). Consequently,

> the level of outrageousness required to [satisfy the first element of the cause of action] is extremely high. . . . Only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice.

*Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003); *see also Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir. 1988) (same); *McCarty v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126 (Colo. App. 2000) (same). As such, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Rawson v. Sears Roebuck & Co.*, 530 F. Supp. 776, 780 (D. Colo. 1982). Further, the mere accusation of a crime or allegations of defamation fail to demonstrate

16

outrageous conduct.  *See e.g., Katz*, 85 F. Supp. 2d at 1021 ("Discharge and alleged defamatory remarks do not support a claim of intentional infliction of emotional distress."); *Maiteki v. Marten Transp. Ltd*., 4 F. Supp. 3d 1249, 1256 (D. Colo. 2013) (repeated reporting of false information to a credit agency does not satisfy the IIED standard); *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 666 (Colo. 1999) (claim that employer coerced employee into conducting an illegal undercover narcotics investigation and laundering money to fund such investigation, and then firing employee for such investigation was not outrageous conduct).  For instance, in *Fischer v. Klescewski*, 2017 U.S. Dist. LEXIS 41346, at *52-53 (D. Colo. Mar. 22, 2017), the District Court dismissed a claim of intentional infliction of emotional distress for failure to meet the "outrageous" standard where it was alleged that the defendant told police that the plaintiff called him a slur multiple times to his face, in a physically threatening manner; and the defendant falsely told the 911 operator that the disturbance was ongoing multiple times.  The Court held that it "cannot condone such conduct, but the Court finds that these allegations do not meet 'the exacting standard required to state a claim for intentional infliction of emotional distress.'"  *Id*.

The same rationale should apply here.  Even if the Court does not condone the actions of the women in the red and green shirts, it does not rise to the level of outrageous.  The actions took only a few minutes, only a few words were said, and Smithers ultimately left the plane on her own accord.  [Dkt. 1, ¶¶ 26-33.]   Nothing in Smithers' Complaint satisfies the "very narrow type of conduct" that is found to be outrageous for a claim of intentional infliction of emotional distress to survive.  *Green*., 155 P.3d at 385.

### 2.   Smithers Fails to Allege Sufficiently Severe Mental Distress

In order to make out a claim for the mental distress necessary for an intentional infliction of emotional distress, a plaintiff must plead "manifestation of severe mental suffering." *Martensen,* 14 U.S. Dist. LEXIS 91817, at *29.  Such claims cannot be general and conclusory.

*Id.*  Moreover, Colorado courts have held that that complaints of anxiety and depression impacting sleep, as well as allegations that a plaintiff "broke down mentally," or that she endured emotional pain and suffering, mental anguish, inconvenience and loss of enjoyment of life, are not enough to make out a claim of severe mental stress.  *See e.g., Martensen,* 14 U.S. Dist. LEXIS 91817, at *29-30; *Murphy v. Lowes Cos*., 2018 U.S. Dist. LEXIS 94494, at *12 (D. Colo. June 4, 2018).  "It is fair to say that headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like would probably not suffice anywhere."  *Martensen,* 14 U.S. Dist. LEXIS 91817, at *30.

Here, Smithers alleges no symptoms, but rather just conclusory "severe emotional distress" and "emotional trauma." [Dkt. 1, Introduction and ¶78.]  Thus, the emotional distress Smithers claims to have experienced fails the "severity" element of an intentional infliction of emotional distress claim as a matter of law, and therefore, Count IV should be dismissed on this basis as well.

### E.  Count V - Breach of Contract Should be Dismissed Because There was No Breach of the Contract and Smithers' Damages are Limited

To state a claim for breach of contract under Colorado law, a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  Smithers' breach of contract cause of action should be dismissed because there is no breach, and because she cannot recover the damages she seeks.

### 1.  Frontier Did Not Breach the Contract

Smithers' breach of contract claim is based on the Contract of Carriage.  [Dkt. 1, ¶ 80.] She claims that Frontier breached the contract by "refusing to carry Plaintiff Smithers." [*Id.* ¶ 83.][3]  Despite this, based on the Contract of Carriage, there is no breach.

Airlines are permitted to "incorporate by reference in any ticket or other written instrument any of the terms of the contract of carriage." *American Airlines v. Wolens*, 513 U.S. 219, 232 (1995).  Such incorporation is governed by federal regulation, 14 C.F.R. § 253.5.  Here, the Contract of Carriage states explicitly that "[t]he purchase of a ticket does not guarantee transportation."  [Ex. 1 at Section 16. A., Limitations of Liability].[4]  The Contract of Carriage further states that "Frontier may refuse to provide transportation to any person and may require that a passenger leave an aircraft or be removed from an aircraft…, in which case no refund will be due" for 19 different reasons.  [*Id*. at Section 3.B.]  These reasons include

- "Interference - Any passenger who interferes with any member of the flight crew in pursuit of their duties."

- "General Refusal - Any person whom Frontier has informed is not permitted to purchase transportation from Frontier."

[*Id*. at Sections 3.B.15 and 3.B.19.]  Based on these terms, Frontier did not breach the contract. Smithers' purchase of a ticket did not guarantee her transportation, and once she interfered with the flight crew by making public accusations that the co-pilot was intoxicated [*see* Dkt. 1 ¶ 19], Frontier had a right under the Contract of Carriage to remove her from the aircraft.  Other Courts

---

[3] Defendant ASI is not a party to Count V.

[4] Because Smithers referenced the Contract in her Complaint, attaching the Contract to this motion does not convert this motion into a Rule 56 motion.  *See Zaklit v. Global Linguist Solutions, LLC,* 2014 U.S. Dist. LEXIS 92623, at *3 n. 2 (E.D. Va. July 8, 2014) (Cacheris, J.) ("While a district court typically cannot consider matters outside the pleadings on a motion to dismiss, the Court may consider the Engility contract because it is referenced and quoted in the Amended Complaint.").

have similarly found no breach when an airline has refused to transport a passenger. *See e.g.,*

*Levy v. Delta Airlines*, 2004 U.S. Dist. LEXIS 19894, at *11 (S.D.N.Y. Set. 30, 2004) (holding

that "Delta committed no breach of contract by refusing to allow Jacques on the flight" when he

did not have paperwork that was required under the Contract of Carriage); *Chendrimada v. Air-*

*India*, 802 F. Supp. 1089, 1092 (S.D.N.Y. 1992) ("Air India is not in breach of contract for the

cancellation.")

### 2.    Smithers is Not Entitled to Damages Other Than the Price of Her Ticket

As to damages, Smithers alleges that in addition to the cost of her ticket, she is entitled to

"current and future medical expenses." [Dkt. 1, ¶ 90; *see also id.* at ¶ 84.]  However, any

damages for breach of contract are explicitly limited in the Contract of Carriage.  Specifically,

the Limitation of Liability section states that "[t]he absolute limit of Frontier's liability for failing

to provide transportation will be a refund of the amount paid for the corresponding ticket."  [**Ex.**

**1** at Section 16. A., Limitations of Liability.]  The contract could not be clearer – Smithers is

entitled only to the cost of her ticket and nothing more.[5]

### CONCLUSION

For the foregoing reasons, Defendants Frontier Airlines, Inc. and Aircraft Services

International, Inc. respectfully request this Court dismiss the Complaint.

---

[5] Courts throughout the country have held that "provisions limiting an airlines' potential
liability… 'are valid and binding on passengers as part of the contract of carriage.'" *Shipwash v.*
*United Airlines, Inc.*, 28 F. Supp. 3d 740, 756 (E.D. Tenn. 2014); *see also  Wells v. Am. Airlines,*
*Inc.,* 991 U.S. Dist. LEXIS 6246,  at *10-11 (S.D.N.Y. May 9, 1991) (same); *Sam L. Majors*
*Jewelers v. ABX, Inc.,* 117 F.3d 922, 930 (5th Cir. 1997) ("Carriers are allowed to limit their
liability in the contract of carriage.").

August 20, 2018

Respectfully submitted,

_/S/ ELAINE CHARLSON BREDEHOFT_
Elaine Charlson Bredehoft, VSB No. 23766
Adam S. Nadelhaft, VSB 91717
David E. Murphy, VSB 90938
Charlson Bredehoft Cohen & Brown, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
ebredehoft@cbcblaw.com
anadelhaft@cbcblaw.com
dmurphy@cbcblaw.com

Stephen J. Fearon (Admitted *Pro Hac Vice*)
Condon & Forsyth LLP
7 Times Square
New York, NY 10036
(212) 490-9100  Telephone
(212) 370-4453  Facsimile
SFearon@condonlaw.com

*Counsel for Defendants*
 *Frontier Airlines, Inc. and*
 *Aircraft Services International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of August, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

William T. Woodrow, III, Esq.
Thatcher A. Stone, Esq.
Stone & Woodrow LLP
250 West Main Street, Suite 201
Lewis & Clark Plaza
Charlottesville, VA 22902
(855) 275-7378 Telephone
(646) 873-7521 Facsimile
will@stoneandwoodrowlaw.com
thatcher@stoneandwoodrowlaw.com
*Counsel for Plaintiffs*

*/S/ ELAINE CHARLSON BREDEHOFT*
Elaine Charlson Bredehoft, VSB No. 23766
Adam S. Nadelhaft, VSB 91717
David E. Murphy, VSB 90938
Charlson Bredehoft Cohen & Brown, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
ebredehoft@cbcblaw.com
anadelhaft@cbcblaw.com
dmurphy@cbcblaw.com
*Counsel for Defendants*
 *Frontier Airlines, Inc. and*
 *Aircraft Services International, Inc.*

22