IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ANNE SMITHERS, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 1:18cv676 (TSE/IDD) |
| ) | |
| FRONTIER AIRLINES, INC., *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS FRONTIER AIRLINES, INC.'S AND
AIRCRAFT SERVICES INTERNATIONAL, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendants Frontier Airlines, Inc. ("Frontier") and Aircraft Services International, Inc. ("ASI") (collectively, "Defendants") have moved this Court, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), for an Order dismissing the First Amended Complaint [Dkt. 26] filed in this action by Plaintiffs Anne Smithers, James Mims, Ross Wiley, Thomas Wiley, Henry Wiley (by His Mother and Next Friend Anne Smithers), and Hanna Del Signore, for the reasons set forth below.

**INTRODUCTION**

In the face of a Motion to Dismiss challenging this Court's personal jurisdiction over Defendants, Plaintiffs filed an Amended Complaint. [Dkt. 26]. However, the Amended Complaint simply confirms that Plaintiffs are alleging that they were injured by an act of "each of the Defendants *outside the Commonwealth.*" [Dkt. 26, ¶ 16 (emphasis added)]. The Amended Complaint also admits that that neither Defendant is incorporated, nor has its principal place of business, in Virginia. *Id.* at ¶¶ 6-7. As such, based on recent Supreme Court precedent in *Daimler AG v. Bauman*, on the face of Plaintiffs' Amended Complaint, this Court does not have personal jurisdiction over Defendants. 571 U.S. 117 (2014).

In addition to lack of personal jurisdiction (which should remove this case from this Court entirely), Plaintiffs fail to allege a negligence claim. The Amended Complaint is devoid of any allegations relating to Plaintiffs other than Smithers. In fact, one Plaintiff voluntarily left the aircraft, while the other Plaintiffs stayed on the plane and flew without incident. Accordingly, there can be no negligence that relate to Plaintiffs other than Smithers. Moreover, Smithers' negligence claim should be dismissed because any duty that Defendants owed to her is covered by the Contract of Carriage, which thus eliminates any negligence claim.

Plaintiffs' intentional infliction of emotional distress claim should also be dismissed. Like the negligence claim, there are no allegations that anything was intentionally inflicted on Plaintiffs other than Smithers. As to Smithers, she has not pled truly outrageous conduct, which is necessary to make such a claim under Colorado law, or that she suffered extreme emotional distress, also a critical element of the tort.

Finally, Smithers' claim for breach of contract should be dismissed because under the Contract of Carriage, Frontier had the right to not transport Smithers, which means that there was no breach.

## STATEMENT OF FACTS

Plaintiffs Anne Smithers, her boyfriend James Mims, Smithers' three sons (Ross Wiley, Thomas Wiley, and Henry Wiley), and Hanna Del Signore (a girlfriend of one of the sons), were scheduled to fly on Frontier Airlines from Denver International Airport to Washington Reagan Airport on December 25, 2017. [Dkt.26 at ¶ 10]. Boarding for the flight was delayed for 3.5 hours due to a need for sufficient life preservers on the plane. *Id.* at ¶¶ 17, 20, 27, 28.

During the delay, while "[p]assengers were becoming increasingly angry at the delay, voices were escalating and some began shouting at the ticket counter," [*Id.* at ¶ 26], Smithers "messaged Frontier … to complain about the delay and also tweeted, '@FlyFrontier really

absurd that we have a two hour delay and for the copilot to sober up!! WTH thanks for ruining Christmas." *Id.* at ¶ 24.

Despite claiming that the copilot was not sober, all of the Plaintiffs boarded the plane. *Id.* at ¶ 28. After boarding the plane, while still in Colorado, "the pilot announced that they needed to refuel," the ramp returned to the gate, the airplane door was opened and two unnamed female employees of ASI boarded the plane, "one in a red shirt and the other in green." *Id.* at ¶¶ 29-30. These women were looking solely for Smithers. *Id.* at ¶ 31. They first mistakenly identified another woman as Smithers, said "Anne Smithers you need to come with us," and then removed her from the plane. *Id.* at ¶¶ 31, 33. After recognizing their mistake, however, they found Smithers. *Id.* at ¶ 32. Allegedly, the woman in the red shirt "struck Plaintiff Smithers on the shoulder and told her to shut up." *Id.* at ¶ 32. Smithers was removed from the plane, and told it was because the copilot was offended by her tweet. *Id.* at ¶ 36. The other Plaintiffs were not removed from the plane.

After removing Smithers from the plane, it is alleged that the woman in the red shirt did not allow the other Plaintiffs to leave the plane. Id. at ¶ 38. It is alleged that she said to the other Plaintiffs, "'[y]our mother has committed a felony and will be going to jail or will have to pay a very large fine.'" Id. at ¶ 39. Despite supposedly not allowing the other Plaintiffs to leave, Mims (Smithers' boyfriend), exited the plane voluntarily. Id. at ¶ 46. Mims had instructed the others to stay on the plane, including Henry Wiley, who had asthma and did not have his inhaler. Id. at ¶¶ 43, 46.

The police then arrived and "escorted Plaintiff Smithers away from the gate." *Id.* at ¶ 53. Smithers let her children remain on the flight, who landed safely at Reagan National Airport, without incident, including Henry Wiley. *Id.* at ¶ 58.

3

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, defendant-unlawfully-harmed-me accusation." *Id*. at 678. The importance of "evaluat[ing] complaints early in the process" in response to Rule 12(b)(6) motions has been emphasized by the Supreme Court and the Fourth Circuit as a way to deal with "the recognized problems created by 'strike suits' and the high costs of frivolous litigation." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (*citing Iqbal*, 556 U.S. at 678-79).

Accordingly, the Federal Rules do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679. Facts that suggest a "mere possibility" or those that are "merely consistent" with misconduct are not enough to survive a motion to dismiss. *Id*. at 678. In evaluating such motions, courts do not credit a plaintiff's "legal conclusions, [recitations of] elements of a cause of action, and bare assertions devoid of further factual enhancement," and must "decline to consider 'unwarranted inferences, unreasonable conclusions, or arguments'" contained in the complaint. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

**ARGUMENT**

**I.    THIS COURT LACKS PERSONAL JURISDICTION OVER BOTH DEFENDANTS**

Jurisdiction is a threshold issue that the court must first consider before other grounds for dismissal under Rule 12(b). *KMLLC Media, LLC v. Telemetry, Inc.*, 2015 U.S. Dist. LEXIS 145764, at *1 (E.D. Va. Oct. 27, 2015) (Cacheris, J.). On a defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the burden is on the plaintiff to prove the grounds of jurisdiction by a preponderance of the evidence. *Noble Sec., Inc. v. MIZ Engineering, Ltd.*, 611 F. Supp. 2d 513, 523 (E.D. Va. 2009) (Davis, J.). When a district court considers a Rule 12(b)(2) motion on the basis of papers alone, however, the plaintiff must only prove a *prima facie* case of personal jurisdiction. *Id.; see also Zaletel v. Prisma Labs, Inc.,* 226 F. Supp. 3d 599, 612 (E.D. Va. 2016) (Ellis, III, J.) ("plaintiff has not made a *prima facie* showing that defendant purposefully availed itself of the privilege of conducting business in Virginia, and thus there is no personal jurisdiction over defendant in this forum.").

When evaluating whether personal jurisdiction is proper over a non-resident defendant, courts undertake a two-part analysis to determine: first, whether jurisdiction exists under Virginia law, and second, whether the exercise of jurisdiction would comport with federal due process. *See New Wellington Fin. Corp. v. Flagship Resort Dev. Co.*, 416 F.3d 290, 294 (4th Cir. 2005).

Here, Plaintiffs allege that this Court has personal jurisdiction based on § 8.01-328.1(A)(4) of the Code of Virginia, which provides that:

> A court may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's: Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

5

Va. Code §8.01-328.1(A)(4).  *See* [Dkt. 26, at ¶ 9].  Plaintiffs allege that they meet this section of the Code, because "[e]ach of the Plaintiffs has suffered tortious injury in the Commonwealth by an act of each of the Defendants outside the Commonwealth and each of the Defendants has purposely availed themselves of the privilege of doing business in the Commonwealth, and has directed their conduct into the Commonwealth."  *Id.* at ¶ 10.

But the personal jurisdiction inquiry does not end with Virginia's long-arm statute, because Plaintiffs "must not only meet the requirements of the long-arm statute, [they] must also prove that this Court's exercise of jurisdiction would not violate the due process requirements of the United States Constitution."  *Bay Tobacco, LLC v. Bell Quality Tobacco Prods.*, LLC, 261 F. Supp. 2d 483, 495 (E.D. Va. 2003) (Hudson, J.)  In the case of out-of-state defendants, like those here, the Court may exercise personal jurisdiction "either by a proper 'finding of specific jurisdiction based on conduct connected to the suit or by a proper finding of general jurisdiction.'"  *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2012) (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc*., 293 F.3d 707, 711 (4th Cir. 2002)).  As discussed below, this Court lacks both specific and general personal jurisdiction over the Defendants.

### A.  This Court Lacks Specific Jurisdiction Over the Defendants

Specific jurisdiction exists in a forum when the suit arises out of a defendant's specific contacts with that forum as it relates to the matter at issue.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1780 (2017).  Here, Plaintiffs rely on § 8.01-328.1(A)(4) of the Virginia Code, and "therefore by definition allege that [Defendants'] tortious conduct occurred outside of the Commonwealth."  *PBM Capital Invs., LLC v. Gen. Elec. Co.*, 2016 U.S. Dist. LEXIS 96055, at *7 (W.D. Va. July 22, 2016) (holding that there was no specific jurisdiction, where all alleged acts occurred outside Virginia).  In fact, Defendants specifically allege that the improper acts occurred "outside the Commonwealth."  *Id.* at ¶ 10.  Indeed, all of alleged acts occurred in the

Denver International Airport, in Denver, Colorado. There is not a single allegation in the Amended Complaint that occurred in Virginia.

Knowing that none of the alleged acts occurred in Virginia, Plaintiffs allege that "their injuries continued in the Commonwealth." *Id.* at ¶ 6. But injury to Virginia Plaintiffs is not enough to rise to specific jurisdiction. "Although the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). Here, it was merely incidental that the Plaintiffs happened to reside in Virginia. Plaintiffs have failed to allege that Defendants "expressly aimed [their] tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009).

Where, as here, "Plaintiff's tort claims arise only out of the defendants' alleged activities outside of Virginia, specific jurisdiction cannot exist." *PBM*, 2016 U.S. Dist. LEXIS 96055, at *8; *see also Bay Tobacco*, 261 F. Supp. 2d at 497 (same).

### B. This Court Lacks General Jurisdiction Over the Defendants

"When, as in the case at bar, a suit does not arise out of the defendant's activities in the forum state, the court must [rely on general jurisdiction]." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) "General jurisdiction over a company exists where that company (1) is incorporated, (2) has its principal place of business, or (3) has contacts 'so continuous and systematic' so as to render them 'essentially at home.'" *Handy v. Johnson & Johnson*, 2017 U.S. Dist. LEXIS 204533, at *5 (E.D.Va. Dec. 12, 2017) (Gibney Jr., J.) (*citing Daimler AG v. Bauman*, 571 U.S. 117, 133, n.11 (2014)).

7

In this case, Plaintiffs do not allege (nor can they) that either Frontier or ASI (otherwise known as Menzies) are incorporated or have their principal places of business in Virginia. *See* [Dkt. 26, at ¶¶ 6, 7 (alleging that Frontier "is a Nevada corporation with its principal place of business in Colorado," and that "Menzies is a Delaware corporation with its principal place of business in Texas.")].

Thus, in order to comport with federal due process requirements, Plaintiffs must allege contacts "so constant and pervasive as to render it essentially at home in the forum state." *Daimler*, 571 U.S. at 122. "That a corporation regularly does business in the forum state is not necessarily sufficient to establish general jurisdiction." *PBM*, 2016 U.S. Dist. LEXIS 96055, at *9. Indeed, general jurisdiction does not exist simply because of "the magnitude of the defendant's in-state contacts." *Damiler*, 571 U.S. at 139 n.20. Instead, the court must consider the defendants' activities "in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* In fact, it is only in the "exceptional case" where general jurisdiction lies over a corporation "in a forum other than its formal place of incorporation or principal place of business." *Id.*. at 139 n.19.

Here, Plaintiffs allege that Defendants regularly operate flights and ground service out of Virginia. *Id.* at ¶¶ 6, 7. But such allegations cannot form the basis for the "exceptional case." For instance, in *Daimler*, the Supreme Court found that California lacked general jurisdiction over the defendant despite the fact that it operated "multiple California-based facilities" and was "the largest supplier of luxury vehicles to the California market." *Damiler*, 571 U.S. at 753. And in *Handy*, Judge Gibney held that Toyota did not have sufficient contacts to be at "home" in Virginia: "Handy does not allege facts sufficient to show that Toyota has contacts with Virginia continuous and systematic enough to render Toyota essentially at home." *Handy*, 2017 U.S. Dist. LEXIS 204533, at *6; *see also PBM* (holding that Virginia did not have personal

8

jurisdiction over GE. "Although GE does maintain a physical presence in Virginia, this is not, alone, sufficient…. PBM has made no showing that GE's contacts with Virginia present an 'exceptional case.'"). 2016 U.S. Dist. LEXIS 96055, at *11.[1]

For these reasons, Plaintiffs have failed to allege that this Court has general jurisdiction over Defendants.[2] Because Virginia does not have specific or general personal jurisdiction over Defendants, this Court does not possess personal jurisdiction over Defendants, and this case should be dismissed.

## II. PLAINTIFFS' NEGLENCE CLAIM SHOULD BE DISMISSED

### A. There are No Allegations of Negligence Against Plaintiffs Other than Smithers

The entirety of Plaintiffs' Amended Complaint makes allegations as they relate to Smithers – but not to any of the other Plaintiffs. Indeed, a review of the Negligence Count makes it clear that the Amended Complaint focuses on actions allegedly taken against Smithers – and Smithers alone. *See e.g.,* [Dkt. 26, at ¶ 65 ("Defendants breached their duty to Plaintiffs by baselessly ejecting Plaintiff Smithers from the aircraft, defaming her in front of all the

---

[1] Plaintiffs also allege that by "trying the case in this District, all of the Plaintiffs' claims can be heard before one tribunal, resulting in an efficient resolution of the multiple controversies." [Dkt. 26, at ¶ 11]. "A desire for efficiency, however, cannot supersede the basic requirement in any lawsuit, personal jurisdiction." *Intercarrier Communs., LLC v. Kik Interactive, Inc.*, 2013 U.S. Dist. LEXIS 112715, at *18 (E.D. Va. Aug. 9, 2013) (Gibney, Jr., J.) Moreover, all of Plaintiffs' claims can be heard in the District of Colorado, where the alleged acts occurred.

[2] Plaintiffs allege that "[i]n the context of international travel, the Warsaw and Montreal Conventions allow the commencement of litigation in the Plaintiffs' District of domicile, whether there is general or specific or long arm jurisdiction over the air carrier, or not." *Id.* at ¶ 12. But "courts have consistently concluded that the Montreal Convention affords subject matter jurisdiction, not personal jurisdiction." *Royal & Sun Alliance Ins. PLC v. Ups Supply Chain Solutions, Inc.*, 2018 U.S. Dist. LEXIS 68189, at *8 (S.D.N.Y. Apr. 5, 2018); *see also e.g.*, *Tucker v. British Airways PLC*, 2017 U.S. Dist. LEXIS 206283, at *8 (W.D. Wash. Dec. 14, 2017) ("[T]he Montreal Convention establishes subject matter jurisdiction; it does not confer personal jurisdiction."); *Weinberg v. Grand Circle Travel, LCC*, 891 F. Supp. 2d 228, 237-38 (D. Mass. 2012) ("Even if plaintiffs establish subject matter jurisdiction under the Montreal Convention, the court still has to address the issue of personal jurisdiction.")

passengers heading to Virginia, forcibly separating her from her children, and abusing process by calling the police who confirmed Plaintiff Smithers had done nothing wrong."); *id.* ¶ 66 ("Defendants breached their duty of a common carrier to the Plaintiffs by the cruel and callous treatment to which they subjected Plaintiff Smithers and her traveling family, including striking Plaintiff Smithers, falsely accusing her of a crime, informing the family that she had committed a felony and would likely be incarcerated within earshot of other Virginia bound passengers, and then refusing to allow Plaintiff Smithers to return needed medical equipment to her dangerously asthmatic son.").

There are no allegations about the other Plaintiffs. This is because Plaintiff Mims exited the plane voluntarily, (*Id.* at ¶ 46), and the other Plaintiffs stayed on the plane and landed safely at Reagan National Airport, without incident. *Id.* at ¶¶ 43, 46. "Without any factual matter or substance, the claim[s] [are] not plausible," and thus all of the causes of action brought by Plaintiffs James Mims, Ross Wiley, Thomas Wiley, Henry Wiley, and Hanna Del Signore should be dismissed. *Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 880 (E.D. Va. 2012) (Gibney, Jr., J.).

At most, the Plaintiffs other than Smithers are pleading a claim for negligent infliction of emotional distress. To establish the claim under Colorado law,[3] a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in

---

[3] Because all of the alleged actions occurred in Colorado, Colorado law should apply. *See Jones v. R. S. Jones & Assoc.* 246 Va. 3 (1993) (holding that the settled choice of law rule for tort claims is *lex loci delicti* - the law of the place of the wrong.) The place of the wrong for purposes of the *lex loci delicti* rule is defined as the place where the last event necessary to make an actor liable for an alleged tort takes place, even if the actor has no control over the location of that last event. *See Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (finding that the law applicable to a cause of action for strict products liability comes from the jurisdiction where liability arose, which was where the plaintiff first became ill).

long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought. *Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631, 638 (Colo. App. 1998). The plaintiff must also show that she either suffered physical injury or was in the "zone of danger." *Culpepper v. Pearl Street Building, Inc*., 877 P.2d 877, 880 n.3 (Colo. 1994); *Towns v. Anderson*, 195 Colo. 517, 520, 579 P.2d 1163, 1165 (1978). "If the plaintiff has observed injury to a family member but was in no danger herself, there can be no recovery." *Colwell*, 973 P.2d at 638. "Thus, a direct effect on the plaintiff — **being placed in danger and in fear for one's own safety — is necessary** to a claim of negligent infliction of emotional distress." *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 497 (Colo. App. 2011) (emphasis added). In fact, Colorado courts have refused to allow claims for negligent infliction of emotional distress, even where a mother saw her son physically harmed by a dentist (*see Hale v. Morris*, 725 P.2d 26, 28-29 (Colo. App. 1986)), and when a mother witnessed her child run over by a car and killed. *James v. Harris*, 729 P.2d 986, 987-988 (Colo. App. 1986); *see also Kimelman v. Colorado Springs*, 775 P.2d 51, 52 (Colo. App. 1988) (finding no negligent infliction of emotional distress to parents where a child's deceased upper body was exposed when his casket slid into his open grave during funeral services). These limitations are in place, because without them, "there appears to be no rational way to limit the scope of liability." *James*, 729 P.2d at 988.

Here, none of the Plaintiffs other than Smithers allege that they were physically harmed or that they were in fear of their own safety. The allegations are that these Plaintiffs were concerned about Smithers' well-being. *See Id.* at ¶¶ 66-67. Such concerns do not arise to a claim for negligent infliction of emotional distress under Colorado law.

### B. Any Duty of Defendants to Smithers was Part of the Contact of Carriage

Under Colorado law, a claim for negligence consists of four elements: (1) the existence of a legal duty; (2) breach of that legal duty; (3) causation; and (4) damages. *Westin Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015). To properly plead negligence "depends upon an identified duty of care." *Phillips v. Lucky Gunner, LLC* 84 F. Supp. 3d 1216, 1227 (D. Colo. 2015). "Absent a duty of care, Plaintiff does not have a viable claim for negligence under Colorado law." *Fine v. Tumpkin*, 2018 U.S. Dist. LEXIS 119904, at *10 (D. Colo. July 18, 2018) (dismissing negligence claim).

Colorado's Economic Loss Rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004). The rule attempts to maintain a boundary between contract and tort law. As the Colorado Supreme Court has explained, "[t[he essential difference between a tort obligation and a contract obligation is the source of the parties' duties. Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property." *BRW, Inc.*, 99 P.3d at 72 (internal citation omitted); s*ee also Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000) ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.").

Here, Smithers alleges in Count V (Breach of Contract) that she entered into a contract with Frontier, which obligated Frontier to "transport Plaintiff Smithers from Denver Colorado to Washington, D.C. [Dkt. 26, at ¶ 80]. This is the same duty that Plaintiff alleged was breached in her negligence claim. *See id.* at ¶ 65 ("Defendants breached their duty to Plaintiffs by baselessly

12

ejecting Plaintiff Smithers from the aircraft"). Since the duty alleged to be breached by Defendants arose from the contract, Smithers' negligence claim cannot stand.

### III.     PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED

Under Colorado law, in order to properly allege an intentional infliction of emotional distress claim, a plaintiff must alleges that "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000). Whether conduct is "outrageous and intolerable" or whether emotional distress is "severe" are issues of law for the court to decide. *Donaldson v. American Banco Corp. Inc.*, 945 F. Supp. 1456, 1465-66 (D. Colo. 1996) ("the court must decide in the first instance whether reasonable persons could differ on the conduct being outrageous."); *Martensen v. Koch,* 14 U.S. Dist. LEXIS 91817, at *29 (D. Colo. June 12, 2014) (dismissing a complaint because "Plaintiff has not articulated a manifestation of severe mental suffering."). Ultimately, "[t]he tort of intentional infliction of emotional distress is extremely limited." *Katz v. City of Aurora*, 85 F. Supp. 2d 1012, 1021 (D. Colo. 2000).

As discussed above, all of the allegations of misconduct are against Smithers. Therefore, at most, the other Plaintiffs are alleging negligent infliction of emotional distress, which they cannot adequately plead. As to Smithers, she fails to properly allege that the purported conduct at issue against her was sufficiently "outrageous and intolerable" or that her emotional distress was adequately "severe," and therefore, dismissal with prejudice of Count Four is proper.

### 1. Smithers Fails to Allege "Outrageous and Intolerable" Conduct

The tort of intentional infliction of emotional distress "was designed to create liability for a very narrow type of conduct." *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006). Consequently,

> the level of outrageousness required to [satisfy the first element of the cause of action] is extremely high. . . . Only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice.

*Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003); *see also Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir. 1988) (same); *McCarty v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126 (Colo. App. 2000) (same). As such, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Rawson v. Sears Roebuck & Co.*, 530 F. Supp. 776, 780 (D. Colo. 1982). Further, the mere accusation of a crime or allegations of defamation fail to demonstrate outrageous conduct. *See e.g., Katz*, 85 F. Supp. 2d at 1021 ("Discharge and alleged defamatory remarks do not support a claim of intentional infliction of emotional distress."); *Maiteki v. Marten Transp. Ltd.*, 4 F. Supp. 3d 1249, 1256 (D. Colo. 2013) (repeated reporting of false information to a credit agency does not satisfy the IIED standard); *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 666 (Colo. 1999) (claim that employer coerced employee into conducting an illegal undercover narcotics investigation and laundering money to fund such investigation, and then firing employee for such investigation was not outrageous conduct). For instance, in *Fischer v. Klescewski*, 2017 U.S. Dist. LEXIS 41346, at *52-53 (D. Colo. Mar. 22, 2017), the District Court dismissed a claim of intentional infliction of emotional distress for failure to meet the "outrageous" standard where it was alleged that the defendant reported to police that the plaintiff called him a slur multiple times to his face, in a physically threatening manner; and the

defendant falsely told the 911 operator that the disturbance was ongoing multiple times. The Court held that it "cannot condone such conduct, but the Court finds that these allegations do not meet 'the exacting standard required to state a claim for intentional infliction of emotional distress.'" *Id.*

The same rationale should apply here. Even if the Court does not condone the actions of the women in the red and green shirts, it does not rise to the level of outrageous. The actions took only a few minutes, only a few words were said, and Smithers ultimately left the plane on her own accord. *Id.* at ¶¶ 31-54. Nothing in the Amended Complaint satisfies the "very narrow type of conduct" that is found to be outrageous for a claim of intentional infliction of emotional distress to survive. *Green*, 155 P.3d at 385.

### 2. Smithers Fails to Allege Sufficiently Severe Mental Distress

In order to make out a claim for the mental distress necessary for an intentional infliction of emotional distress, a plaintiff must plead "manifestation of severe mental suffering." *Martensen,* 14 U.S. Dist. LEXIS 91817, at *29. Such claims cannot be general and conclusory. *Id.* Colorado courts have held that that complaints of anxiety and depression impacting sleep, as well as allegations that a plaintiff "broke down mentally," or that she endured emotional pain and suffering, mental anguish, inconvenience and loss of enjoyment of life, are not enough to make out a claim of severe mental stress. *See e.g., Martensen,* 14 U.S. Dist. LEXIS 91817, at *29-30; *Murphy v. Lowes Cos.*, 2018 U.S. Dist. LEXIS 94494, at *12 (D. Colo. June 4, 2018) (holding that a plaintiff did not allege the necessary mental distress where she claimed that she "broke down mentally"). "It is fair to say that headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like would probably not suffice anywhere." *Martensen,* 14 U.S. Dist. LEXIS 91817, at *30.

Here, Smithers alleges that she has been "diagnosed with PTSD." *Id.* at ¶ 100. But she does not allege any symptoms, severity of symptoms, or anything other than the purported diagnosis. This would be no different than allegations of depression and anxiety, which the Colorado courts have held are insufficient. Without more, the emotional distress Smithers claims to have experienced fails the "severity" element of an intentional infliction of emotional distress claim as a matter of law, and therefore, Count Four should be dismissed on this basis as well.

## IV. SMITHERS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

To state a claim for breach of contract under Colorado law, a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).[4] Smithers' breach of contract cause of action should be dismissed because there is no breach.[5]

Smithers' breach of contract claim is based on the Contract of Carriage. *Id.* at ¶ 102. She claims that Frontier breached the contract by "refusing to carry Plaintiff Smithers." *Id.* at ¶ 107. But based on the Contract of Carriage, there is no breach.

Airlines are permitted to "incorporate by reference in any ticket or other written instrument any of the terms of the contract of carriage." *American Airlines v. Wolens*, 513 U.S. 219, 232 (1995). Such incorporation is governed by federal regulation, 14 C.F.R. § 253.5. Here,

---

[4] The Contract of Carriage is "governed by and construed in accordance with the laws of the United States of America and the State of Colorado without regard to conflict of law principles or law." Ex. 1 at Section 22. J., Choice of Law.

[5] The other Plaintiffs are not alleging breach of contract claims.

16

the Contract of Carriage states explicitly that "[t]he purchase of a ticket does not guarantee transportation." Ex. 1 at Section 16. A., Limitations of Liability.[6] The Contract of Carriage further states that "Frontier may refuse to provide transportation to any person and may require that a passenger leave an aircraft or be removed from an aircraft…, in which case no refund will be due" for 19 different reasons. [*Id*. at Section 3.B.] These reasons include

- "Interference - Any passenger who interferes with any member of the flight crew in pursuit of their duties."

- "General Refusal - Any person whom Frontier has informed is not permitted to purchase transportation from Frontier."

Ex. 1 at Sections 3.B.15 and 3.B.19.] Based on these terms, Frontier did not breach the contract. Smithers' purchase of a ticket did not guarantee her transportation, and once she interfered with the flight crew by making public accusations that the co-pilot was intoxicated (*see id.* at ¶ 24), Frontier had a right under the Contract of Carriage to remove her from the aircraft. Other Courts have similarly found no breach when an airline has refused to transport a passenger. *See e.g., Levy v. Delta Airlines*, 2004 U.S. Dist. LEXIS 19894, at *11 (S.D.N.Y. Set. 30, 2004) (holding that "Delta committed no breach of contract by refusing to allow Jacques on the flight" when he did not have paperwork that was required under the Contract of Carriage); *Chendrimada v. Air-India*, 802 F. Supp. 1089, 1092 (S.D.N.Y. 1992) ("Air India is not in breach of contract for the cancellation.").

Therefore, the breach of contract claim should be dismissed.

---

[6] Because Smithers referenced the Contract in her Complaint, attaching the Contract to this motion does not convert this motion into a Rule 56 motion. *See Zaklit v. Global Linguist Solutions, LLC,* 2014 U.S. Dist. LEXIS 92623, at *3 n. 2 (E.D. Va. July 8, 2014) (Cacheris, J.) ("While a district court typically cannot consider matters outside the pleadings on a motion to dismiss, the Court may consider the Engility contract because it is referenced and quoted in the Amended Complaint.").

17

## **CONCLUSION**

For the foregoing reasons, Defendants Frontier Airlines, Inc. and Aircraft Services International, Inc. respectfully request this Court dismiss the Amended Complaint with prejudice.

September 14, 2018            Respectfully submitted,

*/S/ ELAINE CHARLSON BREDEHOFT*
Elaine Charlson Bredehoft, VSB No. 23766
Adam S. Nadelhaft, VSB 91717
David E. Murphy, VSB 90938
Charlson Bredehoft Cohen & Brown, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
ebredehoft@cbcblaw.com
anadelhaft@cbcblaw.com
dmurphy@cbcblaw.com

Stephen J. Fearon (Admitted *Pro Hac Vice*)
Bartholomew J. Banino (Admitted *Pro Hac Vice*)
Allison M. Surcouf (Admitted *Pro Hac Vice*)
Condon & Forsyth LLP
7 Times Square
New York, NY 10036
(212) 490-9100  Telephone
(212) 370-4453  Facsimile
SFearon@condonlaw.com
bbanino@condonlaw.com
asurcouf@condonlaw.com

*Counsel for Defendants Frontier Airlines, Inc.*
 *and Aircraft Services International, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 14th day of September, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> William T. Woodrow, III, Esq.
> Thatcher A. Stone, Esq.
> Stone & Woodrow LLP
> 250 West Main Street, Suite 201
> Lewis & Clark Plaza
> Charlottesville, VA 22902
> (855) 275-7378 Telephone
> (646) 873-7521 Facsimile
> will@stoneandwoodrowlaw.com
> thatcher@stoneandwoodrowlaw.com
> *Counsel for Plaintiffs*

> */S/ ELAINE CHARLSON BREDEHOFT*
> Elaine Charlson Bredehoft, VSB No. 23766
> Charlson Bredehoft Cohen & Brown, P.C.
> 11260 Roger Bacon Drive, Suite 201
> Reston, VA 20190
> (703) 318-6800  Telephone
> (703) 318-6808  Facsimile
> ebredehoft@cbcblaw.com
> *Counsel for Defendants*
>   *Frontier Airlines, Inc. and*
>   *Aircraft Services International, Inc.*