# EXHIBIT 1

# FRONTIER AIRLINES  Contract of Carriage

**Effective Date:**     08/04/17

For a summary of changes, <u>click here.</u>

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                                Rev36 04/13/11

# RECORD OF REVISIONS

Keep this manual posted in the following order:
- Record of Revisions
- List of Effective Pages
- The remainder of the manual

  As revisions are received, post them as directed and sign off the boxes corresponding to the revision number.

| REVISION NUMBER | REVISION DATE | DATE POSTED | POSTED BY | | REVISION NUMBER | REVISION DATE | DATE POSTED | POSTED BY |
|---|---|---|---|---|---|---|---|---|
| ORIGINAL | 07/01/02 | 07/09/02 | Tech Pubs | | 30 | 03/01/10 | 03/01/10 | Tech Pubs |
| 1 | 08/14/02 | 08/16/02 | Tech Pubs | | 31 | 05/12/10 | 05/12/10 | Tech Pubs |
| 2 | 08/30/02 | 08/30/02 | Tech Pubs | | 32 | 07/21/10 | 07/21/10 | Tech Pubs |
| 3 | 09/19/02 | 11/12/02 | Tech Pubs | | 33 | 10/01/10 | 10/01/10 | Tech Pubs |
| 4 | 12/16/02 | 12/23/02 | Tech Pubs | | 34 | 12/01/10 | 12/01/10 | Tech Pubs |
| 5 | 03/10/03 | 03/10/03 | Tech Pubs | | 35 | 12/15/10 | 12/15/10 | Tech Pubs |
| 6 | 06/01/04 | 09/05/03 | Tech Pubs | | 36 | 04/13/11 | 04/13/11 | Tech Pubs |
| 7 | 05/05/04 | 05/05/04 | Tech Pubs | | 37 | 08/24/11 | 08/24/11 | Tech Pubs |
| 8 | 06/01/04 | 06/01/04 | Tech Pubs | | 38 | 11/09/11 | 11/09/11 | Tech Pubs |
| 9 | 10/20/04 | 10/20/04 | Tech Pubs | | 39 | 05/14/12 | 05/14/12 | Tech Pubs |
| 10 | 02/11/05 | 02/11/05 | Tech Pubs | | 40 | 06/11/12 | 06/11/12 | Tech Pubs |
| 11 | 07/05/05 | 07/05/05 | Tech Pubs | | 41 | 09/12/12 | 09/12/12 | Tech Pubs |
| 12 | 07/25/05 | 07/25/05 | Tech Pubs | | 42 | 10/31/12 | 10/31/12 | Tech Pubs |
| 13 | 04/01/06 | 04/01/06 | Tech Pubs | | 43 | 02/15/13 | 02/15/13 | Tech Pubs |
| 14 | 05/29/07 | 05/29/07 | Tech Pubs | | 44 | 05/01/13 | 05/01/13 | Tech Pubs |
| 15 | 10/26/07 | 10/26/07 | Tech Pubs | | 45 | 05/21/13 | 05/21/13 | Tech Pubs |
| 16 | 12/06/07 | 12/06/07 | Tech Pubs | | 46 | 07/21/13 | 07/21/13 | Tech Pubs |
| 17 | 05/15/08 | 05/15/08 | Tech Pubs | | 47 | 08/06/13 | 08/06/13 | Tech Pubs |
| 18 | 06/05/08 | 06/05/08 | Tech Pubs | | 48 | 10/01/13 | 10/01/13 | Tech Pubs |
| 19 | 06/05/08 | 06/05/08 | Tech Pubs | | 49 | 10/28/13 | 10/28/13 | Tech Pubs |
| 20 | 09/12/08 | 09/12/08 | Tech Pubs | | 50 | 12/15/13 | 12/15/13 | Tech Pubs |
| 21 | 09/11/08 | 09/11/08 | Tech Pubs | | 51 | 07/25/14 | 07/25/14 | Tech Pubs |
| 22 | 09/30/08 | 09/30/08 | Tech Pubs | | 52 | 10/13/14 | 10/13/14 | Tech Pubs |
| 23 | 12/18/08 | 12/18/08 | Tech Pubs | | 53 | 12/01/14 | 12/01/14 | Tech Pubs |
| 24 | 12/18/08 | 12/18/08 | Tech Pubs | | 54 | 02/16/15 | 02/16/15 | Tech Pubs |
| 25 | 09/01/09 | 09/01/09 | Tech Pubs | | 55 | 03/06/15 | 03/06/15 | Tech Pubs |
| 26 | 09/08/09 | 09/08/09 | Tech Pubs | | 56 | 04/15/15 | 04/15/15 | Tech Pubs |
| 27 | 11/02/09 | 11/02/09 | Tech Pubs | | 57 | 05/20/15 | 05/20/15 | Tech Pubs |
| 28 | 11/19/09 | 11/19/09 | Tech Pubs | | 58 | 06/26/15 | 06/26/15 | Tech Pubs |
| 29 | 12/22/09 | 12/22/09 | Tech Pubs | | 59 | 08/01/15 | 08/01/15 | Tech Pubs |

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.

**FRONTIER**

CONTRACT OF CARRIAGE                                          Rev36 04/13/11

| REVISION NUMBER | REVISION DATE | DATE POSTED | POSTED BY |
|---|---|---|---|
| 60 | 11/06/15 | 11/06/15 | Tech Pubs |
| 61 | 11/10/15 | 11/10/15 | Tech Pubs |
| 62 | 01/08/16 | 01/08/16 | Tech Pubs |
| 63 | 05/06/16 | 05/06/16 | Tech Pubs |
| 64 | 09/07/16 | 09/07/16 | Tech Pubs |
| 65 | 08/04/17 | 08/04/17 | Tech Pubs |
| 66 | | | |
| 67 | | | |
| 68 | | | |
| 69 | | | |
| 70 | | | |
| 71 | | | |
| 72 | | | |
| 73 | | | |
| 74 | | | |
| 75 | | | |
| 76 | | | |
| 77 | | | |
| 78 | | | |
| 79 | | | |
| 80 | | | |
| 81 | | | |
| 82 | | | |
| 83 | | | |
| 84 | | | |
| 85 | | | |
| 86 | | | |
| 87 | | | |
| 88 | | | |
| 89 | | | |
| 90 | | | |
| 91 | | | |
| 92 | | | |
| 93 | | | |
| 94 | | | |
| 95 | | | |
| 96 | | | |
| 97 | | | |

| REVISION NUMBER | REVISION DATE | DATE POSTED | POSTED BY |
|---|---|---|---|
| 98 | | | |
| 99 | | | |
| 100 | | | |
| 101 | | | |
| 102 | | | |
| 103 | | | |
| 104 | | | |
| 105 | | | |
| 106 | | | |
| 107 | | | |
| 108 | | | |
| 109 | | | |
| 110 | | | |
| 111 | | | |
| 112 | | | |
| 113 | | | |
| 114 | | | |
| 115 | | | |
| 116 | | | |
| 117 | | | |
| 118 | | | |
| 119 | | | |
| 120 | | | |
| 121 | | | |
| 122 | | | |
| 123 | | | |
| 124 | | | |
| 125 | | | |
| 126 | | | |
| 127 | | | |
| 128 | | | |
| 129 | | | |
| 130 | | | |
| 131 | | | |
| 132 | | | |
| 133 | | | |

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                          Rev65 08/04/17

## LIST OF EFFECTIVE PAGES

| REVISION NUMBER | 65 | REVISION DATE | 08/04/17 |
|---|---|---|---|

| Chapter/Page | Revision/Date |
|---|---|
| 00.00 Pg. 1 | Rev36 04/13/11 |
| 00.00 Pg. 2 | Rev36 04/13/11 |
| 00.00 Pg. 3 | Rev65 08/04/17 |
| Pg. 1 | Rev64 09/07/16 |
| Pg. 2 | Rev65 08/04/17 |
| Pg. 3 | Rev60 11/06/15 |
| Pg. 4 | Rev60 11/06/15 |
| Pg. 5 | Rev65 08/04/17 |
| Pg. 6 | Rev65 08/04/17 |
| Pg. 7 | Rev65 08/04/17 |
| Pg. 8 | Rev65 08/04/17 |
| Pg. 9 | Rev65 08/04/17 |
| Pg. 10 | Rev65 08/04/17 |
| Pg. 11 | Rev65 08/04/17 |
| Pg. 12 | Rev65 08/04/17 |
| Pg. 13 | Rev65 08/04/17 |
| Pg. 14 | Rev65 08/04/17 |
| Pg. 15 | Rev65 08/04/17 |
| Pg. 16 | Rev65 08/04/17 |
| Pg. 17 | Rev65 08/04/17 |
| Pg. 18 | Rev65 08/04/17 |
| Pg. 19 | Rev65 08/04/17 |
| Pg. 20 | Rev65 08/04/17 |
| Pg. 21 | Rev65 08/04/17 |
| Pg. 22 | Rev65 08/04/17 |
| Pg. 23 | Rev62 01/08/16 |
| Pg. 24 | Rev62 01/08/16 |

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                                    Rev64 09/07/16

## Table Of Contents

| Section | Subject | Page |
|---------|---------|------|
| 1. | Introduction | 2 |
| 2. | Definitions | 2 |
| 3. | Refusal to Transport and Special Conditions | 2 |
| 4. | International Transportation | 6 |
| 5. | Child Passengers | 6 |
| 6. | Service Animals | 9 |
| 7. | Smoking | 9 |
| 8. | Tickets | 10 |
| 9. | Ticket Validity and Itinerary Changes | 10 |
| 10. | Check-in Times | 11 |
| 11. | Fares | 11 |
| 12. | Checked Baggage | 12 |
| 13. | Carry-On Baggage | 13 |
| 14. | Cabin-Seat Baggage | 14 |
| 15. | Conditions and Charges for Special Items | 15 |
| 16. | Limitations of Liability | 17 |
| 17. | Claim Limits and Procedures | 18 |
| 18. | Failure to Operate on Schedule or Failure to Carry | 20 |
| 19. | Denied Boarding Compensation | 21 |
| 20. | Refunds | 22 |
| 21. | Currency and Mode of Payment and Fees | 23 |
| 22. | Miscellaneous | 23 |

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                                Rev65 08/04/17

## 1.  Introduction

The following terms and conditions as well as such additional terms and conditions presented on Frontier Airlines' website, fare rules, published schedules or printed on or in any ticket or ticket-less travel authorization apply to all tickets issued for travel on flights operated by or for Frontier Airlines, Inc. ("Frontier") as well as that transportation regardless of whether such ticket was sold by Frontier or its authorized agents or whether such ticket is used ("Contract of Carriage").

This document is available for public inspection at all Frontier locations. Copies may be obtained by visiting the Frontier's web site at www.FlyFrontier.com or by writing to: Frontier Airlines, Inc., Customer Relations, 7001 Tower Road, Denver, CO 80249.

## 2.  Definitions

A.  **DOT** – U.S. Department of Transportation.

B.  **FAA** – U.S. Federal Aviation Administration.

C.  **Fare Rules** – The rules and requirements associated with a ticket.

D.  **IATA** – International Air Transport Association.

E.  **Qualified Individual with a Disability** – An individual with a disability who: **(i)** has a physical or mental impairment that, on a permanent or temporary basis, substantially limits one or more major life activities; (ii) has a record of such an impairment; or, (iii) is regarded as having such an impairment, as further defined in 14 CFR 382.5.

F.  **Standby Passenger** – A passenger boarded subject to availability of seat space at departure time and only after all passengers having confirmed reservations for the flight have been boarded.

G.  **Stopover** – An intentional interruption in a passenger's trip in excess of 4 hours at a point between the place of departure and the final destination.

H.  **STRETCH Seat** - A seat located in the front rows and exit rows of certain Frontier aircraft that have additional legroom. These seats are made available to passengers for a fee.

I.  **Ticket** -The record of agreement, including electronic tickets, for passenger air transportation provided by the airline under certain terms and conditions to the passenger as described on the ticket, in the fare rules, and in this Contract of Carriage.

J.  **TSA** – U.S. Transportation Security Administration.

## 3.  Refusal to Transport and Special Conditions

A.  Frontier may refuse to provide transportation to any person and may require that a passenger leave an aircraft or be removed from an aircraft for the following reasons, in which case Frontier will provide a refund of the amount paid for their ticket, which will be the limit of Frontier's liability.

  1)  Government Request – To comply with a government requisition of space or request for emergency transportation, e.g., in connection with national defense or natural disaster (actual, threatened or reported).

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.

# FRONTIER

**CONTRACT OF CARRIAGE**                                                      Rev60 11/06/15

2) No Seat for Safety Assistant - If a passenger requires a safety assistant (see Section 3.B.6) and there is not a seat available on the applicable flight and, thus, both the passenger and the safety assistant are denied transportation. For purposes of determining whether a seat is available for a safety assistant, the safety assistant is deemed to have checked in at the same time as the individual with the disability.

B. Frontier may refuse to provide transportation to any person and may require that a passenger leave an aircraft or be removed from an aircraft for the following reasons, in which case no refund will be due and Frontier will have no further liability.

1) Government Direction - To comply with a direction of a government official acting in their official capacity to remove or not provide transportation to a specific individual.

2) Identification – The passenger refuses to produce a government-issued identification as required by Frontier's representatives or as required by law.

3) Passports/Visas – The passenger intending to travel across any international border fails to possess and present all valid documents (passports, visas, certificates, etc.) required by the laws of the countries from, over or into which the passenger will fly, which will in all cases be the passenger's exclusive responsibility.

4) Failure to Appear - The passenger fails to check-in for their flight within the required times or appear for boarding of that flight within the required times.

5) Special Medical Requirements – The passenger will be refused transport if he or she requires medical equipment be used in flight or services (i) not provided by Frontier, (ii) that may not be used in flight, or (iii) does not have sufficient supplies therefor. The foregoing includes any medical equipment that would require use of power from the aircraft, medical equipment for which the passenger does not have sufficient batteries for the duration of the flight plus unexpected delays. Passengers must be able to sit in a single seat with the seat in the full and upright position, which precludes passengers that must lie flat or that must be transported on a stretcher. Frontier does not provide medical oxygen.

   EXCEPTION:   A respiratory device (e.g., ventilator, respirator, CPAP machine or Portable Oxygen Concentrator) is considered an assistive device and is permitted as carry-on or checked baggage at no charge provided that all batteries must be transported in carry-on baggage and must be packaged in a manner that protects them from physical damage and short circuits, and provided that if the device is to be used in flight: (i) the passenger must carry enough fully-charged batteries to power the device throughout the entire journey including all ground time (between connections), the duration of the flight and for unexpected delays, (ii) the device must be approved by the FAA with stickers indicating such, and (iii) prior to traveling, the passenger must complete the Portable Oxygen Concentrator Medical Authorization form (30881) available on Frontier's website or obtain a medical statement from his/her physician addressing the points on the POC Medical Authorization form.

   *NOTE:*        *Passengers are referred to 14 CFR Part 121, SFAR No. 106 for regulations regarding and a list of Portable Oxygen Concentrators that are approved for use on aircraft.*

---

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.

**FRONTIER**

CONTRACT OF CARRIAGE                                             Rev60 11/06/15

6) Qualified Individual with a Disability – If transportation is refused because the passenger fails to comply with the following: Qualified individuals with a disability will be transported in accordance with the conditions and requirements of 14 C.F.R. § 382 unless the carriage of such individuals may impair the safety of the flight or violate Federal Aviation Regulations. Pursuant to 14 C.F.R. § 382.113, Frontier does not provide certain extensive in flight special services such as assistance in actual eating, assistance within the lavatory or at the individual's seat with elimination functions, or provision of medical services. Moreover, pursuant to 14 C.F.R. § 382.29, a qualified individual with a disability may be required to be accompanied by a safety assistant as a condition of being provided air transportation in any of the following circumstances: (i) when the individual, because of a mental disability, is unable to comprehend or respond appropriately to safety instructions from employees, including the required safety briefing, (ii) when the individual has a mobility impairment so severe that the individual is unable to assist in his/her own evacuation of the aircraft, (iii) when the individual has both severe hearing and severe vision impairments, if the individual cannot establish some means of communication with employees adequate to permit transmission of the required safety briefing, (iv) on the day of departure, if it is determined that an individual meeting the criteria of (i), (ii) or (iii) must travel with a safety assistant, contrary to the individual's self-assessment that he/she is capable of traveling independently, the safety assistant will not be charged to accompany the individual with a disability.

7) Prisoners - If transportation is refused because of a failure to comply with the following: Frontier accepts up to two "low risk" prisoners with hand restraints per flight. If the flight is 4 hours or less, at least one armed or unarmed law enforcement officer must accompany the prisoner(s). If the flight is more than 4 hours, at least two armed or unarmed law enforcement officers must accompany the prisoner(s). At no time may any prisoner be left unattended.

8) Resistant Prisoners - Any prisoner who has resisted or is reasonably believed to be capable of resisting his/her escort.

9) Proper Attire - Any passenger who is barefoot and over 5 years of age, unless required to be barefoot for medical reasons, or who is not otherwise fully clothed.

10) Intoxication - Any passenger who appears to be intoxicated or under the influence of drugs.

11) Communicable Disease or Infection - A passenger who has a communicable disease or infection that is known or reasonably believed to pose a direct threat to the health or safety of others in the course of flight. If such a passenger presents a medical certificate dated within 10 days of the date of the flight for which it is being presented with specific conditions under which the individual can travel and not pose a direct threat to the health and safety of other persons, transportation will be provided to such individual unless it is not reasonable or feasible to implement the conditions set forth in the medical certificate as necessary to prevent the transmission of the disease or infection to other persons in the normal course of flight. Unacceptable measures will include, but not be limited to, a required separation between the passenger and others persons, use of medical equipment not permitted to be used on the aircraft, a requirement that any person wear protective gear including gloves.

12) Refusal or Inability to Sit - Any passenger who is unwilling or unable to sit in an upright position during takeoff and landing with the seat belt fastened.

13) Failure to Follow Instructions - Any passenger who refuses to obey instructions from an employee or crewmember.

14) Use of Ticket Issued to Other Person - Any passenger who attempts to use a ticket not issued to that person.

---

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                               Rev65 08/04/17

15) Interference - Any passenger who interferes with any member of the flight crew in pursuit of their duties or attempts to do so.

16) Smoking - Any passenger who smokes or attempts to smoke on an aircraft.

17) Weapon - Any passenger who, except as permitted by law (see 49 C.F.R. § 1544.219), wears or has on or about their persons concealed or unconcealed, deadly or dangerous weapons.

18) Purchase in Violation of Contract of Carriage - Any passenger that purchases a ticket in violation of this Contract of Carriage or any fare rule. In addition, Frontier may (i) invalidate the tickets or any other that may have been purchased in the same manner, (ii) cancel any remaining portion of the passenger's itinerary, or (iii) confiscate any unused portions of the ticket.

19) General Refusal - Any person whom Frontier has informed is not permitted to purchase transportation from Frontier.

C. Refusal to Sell Transportation - Frontier may refuse to sell transportation to any person, including the following, and may inform such persons that they are not permitted to purchase transportation from Frontier:

1) Refusal to Comply - A person who refuses to comply with instruction given by employees or representatives prohibiting the solicitation of items for sale or purchase, including airline tickets, passes, or travel award certificates.

2) Prior Conduct - A person who has disrupted airline operations, mistreated employees, or has not complied with Frontier's policies or otherwise violates this Contract of Carriage.

3) Misconduct - A person who has committed a fraudulent act against Frontier.

D. Customer of Size - If, in Frontier's sole judgment, a passenger is unable to sit in an aircraft seat without lifting either or both armrests and occupying all or a portion of the adjacent seat(s), or encroaching into the aisle or adjacent seat(s), the passenger will be required to purchase a ticket for an additional seat (or more, if required to accommodate the passenger) at the price then applicable. If sufficient, contiguous seats are not available, the passenger will be given the option to switch to flights on which such seats are available (for which applicable fees will apply) or be given a refund.

E. Allergies (Peanut, Pet, or Chemical) - Items are not removed from the aircraft to accommodate a passenger's allergy to a particular food, substance, or chemical. A variety of snacks are served on board many flights, including products that may contain peanuts or other nuts. A "peanut-free" or "chemical-free" environment cannot be provided to passengers onboard the aircraft. Passengers are advised to consult a healthcare professional regarding the risks of onboard exposure to any allergen.

F. Pregnancy - Passengers who are pregnant are urged to consult with their doctor on whether it is safe to travel by air, including with due consideration to the possibility of turbulence, cabin pressurization, significantly increased risk of deep vein thrombosis associated with pregnancy, and lack of ready access to medical care. This is particularly important for women in their ninth month of pregnancy, who are urged to obtain an examination from their physician shortly before flying to confirm air travel will be safe. Women with a history of complications or premature delivery should not fly if pregnant. By traveling with Frontier, pregnant women acknowledge and accept these risks.

G. Electronic Surveillance of Passengers and Baggage - Passengers and their baggage are subject to inspection, including via electronic means, with or without the passenger's consent or knowledge.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                        Rev65 08/04/17

H. Diversion - In the event that Frontier is required to divert an aircraft because a passenger requires medical attention or due to the passenger's conduct, the passenger may be required to reimburse Frontier for the costs that Frontier incurs, including the cost to accommodate other passengers. The amount due will be as determined by Frontier.

## 4.   International Transportation

A. Compliance with Regulations - Passengers shall comply with all laws, regulations, orders, demands, or travel requirements of countries to be flown from, into, or over. Frontier is not liable for any aid or information given by any agent or employee to any passenger in connection with obtaining necessary documents or complying therewith (including as may be provided in this Contract of Carriage) or the consequences to any passenger resulting from his/her failure to obtain such documents or to comply with such laws, regulations, orders, demands, requirements, or instructions.

B. Compliance with Foreign Country Regulations regarding Importation of Goods - Passengers shall comply with all laws, regulations, orders, demands, or travel requirements of countries to be flown from, into, or over. Frontier is not liable for the consequences to any passenger resulting from his/her failure to comply with such laws, regulations, orders, demands, requirements, or instructions.

C. Customs Inspection - If required, a passenger must attend the inspection of his/her baggage, checked or unchecked, by customs or other government officials. Frontier accepts no responsibility to the passenger if they fail to observe this condition.

D. Government Regulation - No liability shall attach to Frontier if, based on what it understands to be applicable law, government regulation, demand, order or requirement, it refuses to carry passenger. If, however, it is ultimately determined that Frontier was incorrect, the limit of its liability will be to refund the amount paid for the ticket on which transportation was refused.

E. International Operations - Frontier is required to make an attempt to obtain emergency contact information from a passenger traveling into or out of a foreign country. If a passenger refuses to provide emergency contact information, Frontier will document the attempt and may require the passenger to sign the document.

F. Indemnification - A passenger shall indemnify Frontier for any loss, damage, or expense suffered or incurred by Frontier by reason of the passenger's failure to possess any required travel documents or other failure to comply with the provisions of this section, including the applicable fare if Frontier is required to transport the passenger home from a country. Frontier is not liable to the passenger for loss or expense due to the passenger's failure to comply with this provision.

## 5.   Child Passengers

A. Accompanied Children – Children, from 7 days through 14 years of age, may travel with another passenger who is at least 15 years old.

B. Unaccompanied Children

   1)  Children under 5 years old may not travel unaccompanied.

   2)  Unaccompanied children ages 5 - 14 will be accepted for travel subject to the following:

      a)  Travel will only be permitted on non-stop flights operated by Frontier (unaccompanied children will not be accepted on connecting flights).

---

**International Transportation**                                              Pg. 6 of 24

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**C O N T R A C T   O F   C A R R I A G E**                                                    Rev65 08/04/17

> NOTE:   The child will not be accepted for travel if a flight is expected to terminate short of, or bypass, the child's destination, or if there are anticipated lengthy delays at the origin or destination city due to air traffic control, weather or other factors that may impact Frontier's ability to operate its scheduled service.

b)  Escort service must be purchased for the child and applicable fees paid.

c)  The child must be capable of communicating with the flight crew, following instructions, and be able to use the lavatory without supervision.

d)  Frontier will not administer medication to a child.

e)  The child must hold confirmed reservations from the originating airport to the destination airport. Travel as a standby passenger is not allowed.

f)  The child must be brought to the originating airport by a parent or responsible adult who remains: (i) with the child until the child is aboard the aircraft and (ii) at the gate until the aircraft departs the airfield.

g)  The adult listed on the Unaccompanied Minor Travel (form 30440) must arrive at the gate 30 minutes prior to the flight arrival. If the child/children are not met, Frontier will take appropriate action to ensure the safety of the child. This includes returning the child/children to the airport of departure, if appropriate, and all costs associated will be reimbursed to Frontier by the authorized guardian.

h)  Children must be in possession of all required travel documents required by law (passport, visa, etc.).

i)  If necessary, emergency medical assistance will be provided. Authorizing guardian will be responsible for all costs related to the treatment.

j)  All forms required by Frontier must be completed.

k)  A snack may be provided to the unaccompanied child if available. These snacks may contain nuts, soy, wheat, dairy, or eggs and may be packaged in a facility that processes the same.

C.  Escort service may be purchased for passengers aged 15 to 17 years subject to the same terms and conditions.

> NOTE:     Passengers under age 18 traveling without both parents may need additional documentation to travel across international borders, depending on the country's requirements.

D.  Fee for Escort Service for Unaccompanied Children - A separate service charge will apply per direction for each unaccompanied child, whether or not traveling together. No fee applies to unaccompanied children who are *EarlyReturns®* Elite members.

E.  Infant and Child Fares (except as otherwise provided in a specific fare rule) are as follows:

1)  Infants under 2 years of age are accepted, without charge, when the infant does not occupy a separate seat and is accompanied by a full fare-paying passenger over the age of 15.

> NOTE:     Due to supplemental equipment considerations, the number of infants accepted per flight may be limited based on aircraft type.

2)  One adult may accompany up to two infants under the age of 2.

a)  When an adult passenger is traveling with two infants under 2 years of age, a seat must be purchased for at least one infant. The fare is the same as an adult fare.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                             Rev65 08/04/17

3) Children 7 days - 14 years of age occupying a seat, accompanied or unaccompanied, are charged the same fare as an adult passenger.

> NOTE:   *Passengers under age 2 traveling as lap children (not purchasing a seat) are subject to international taxes. These taxes must be paid prior to boarding the originating departure flight.*

F. Child Restraint Systems - Frontier accepts infant and child restraint systems (car seat or harness) approved for air travel that fit in the applicable aircraft seat with the arm rest down that meet the following requirements:

1) Approved seats manufactured to U.S. standards between January 1, 1981, and February 25, 1985, must bear the label: "This child restraint system conforms to all applicable Federal motor vehicle safety standards."

2) Seats manufactured to U.S. standards on or after February 26, 1985, must bear two labels: (i) "This child restraint system conforms to all applicable Federal motor vehicle safety standards" and (ii) "THIS RESTRAINT IS CERTIFIED FOR USE IN MOTOR VEHICLES AND AIRCRAFT" in red lettering.

3) Seats not meeting the above criteria must bear a label or markings showing: (i) the seat was approved by a foreign government, (ii) the seat was manufactured under the standards of the United Nations, (iii) the seat or child restraint device furnished by the certificate holder was approved by the FAA through Type Certificate or Supplemental Type Certificate, or (iv) the seat or child restraint device was approved by the FAA in accordance with 14 C.F.R § 21.8(d), or FAA Technical Standard Order C-100b, or a later version.

> NOTE 1:   *A child under the age of 2 must be held in the passenger's lap or be seated in an approved car seat for taxi, takeoff, and landing.*

> NOTE 2:   *Frontier encourages all adults traveling with infants under 2 years of age to secure the infant in an approved car seat or harness in the infant's own purchased seat.*

4) Child Harness - The FAA-approved AMSafe Aviation C.A.R.E.S. child harness device may be used on-board the aircraft. It is designed for children weighing between 22 and 44 pounds (between 10 and 20 kilograms) and must bear the label "FAA Approved in accordance with 14 CFR 21.305(d) approved for aircraft use only."

5) Car Seats - A car seat may be used by a child between the ages of 7 days and 2 years if seat space is available after boarding, even if a seat has not been purchased for the child. A car seat may be used by any child when a separate seat has been purchased. To use a car seat onboard the aircraft:

   a) It must bear manufacturer labels identifying approval for aircraft use, as described in subsection (1) and (2) above.

   b) It must have a solid seat and solid back.

   c) It must have restraint straps installed to hold the child in the car seat.

   d) The child may not exceed the weight limitation of the car seat.

   e) It may not be placed in the emergency exit rows, in the seats immediately in front of or behind the exit rows, or in any seat that has an airbag seatbelt installed.

   f) Window seats are the preferred location for a car seat so it does not impede a passenger's movement or egress into the aisle. Other seat assignments are permitted provided the car seat is not obstructing the egress of any passenger.

   g) It must be secured by a seat belt at all times.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                        Rev65 08/04/17

6) Booster Seats - Booster seats may be carried on-board aircraft but must be stowed in an overhead compartment or underneath the seat for take-off and landing. Once the aircraft has reached cruising altitude, the passenger may use the seat during the flight. The booster seat must be stowed when the aircraft begins its descent.

## 6.  Service Animals

A. General - The following categories of service animals are allowed in the cabin without charge.

   1) Service animals trained to assist passengers with disabilities. As evidence that an animal is a service animal, the passenger must present an identification card, other written documentation, the animal must have a harness, tag, or the passenger must give credible verbal assurances that he/she is a qualified individual with a disability using the animal. Service animals in training must be accompanied by certified trainer.

   2) Service animals used for emotional support or psychiatric service. As evidence that the animal is required for that purpose, the passenger must present a hard copy of a written statement, one per animal, current within one year, on letterhead from a mental health professional (e.g., psychiatrist, psychologist, licensed clinical social worker, including a medical doctor specifically treating the passenger's mental or emotional disability) stating the following: (i) the passenger has a mental or emotional disability recognized in the Diagnostic and Statistical Manual of Mental Disorders — Fourth Edition (DSM IV), (ii) the passenger needs the emotional support or psychiatric service animal as an accommodation for air travel or for activity at the passenger's destination, (iii) the individual providing the assessment is a licensed mental health professional, and the passenger is under his or her professional care, and (iv) The date and type of the mental health professional's license and the state or other jurisdiction in which it was issued.

   3) Service animals trained in explosive detection, contraband search, or search and rescue on active duty and traveling for that purpose. The passenger must present credible documentation thereof.

B. Exclusions - Notwithstanding anything to the contrary above, the following types of animals are not accepted as service animals: unusual or exotic animals including but not limited to rodents, reptiles, insects, hedgehogs, rabbits, sugar gliders, non-household birds or animals that have been improperly cleaned and/or have a foul odor.

C. Seating - The passenger may sit anywhere, except in an emergency exit row, provided the animal does not obstruct an aisle or egress of passengers in an emergency evacuation. The animal must fit under the seat or on the passenger's lap, one animal per lap. The animal may not occupy a seat. An animal that cannot or does not comply with the foregoing will not be accepted.

D. International - Restrictions for travel with an animal to international destinations vary by country. Frontier recommends contacting the appropriate embassy or consulate before purchasing a ticket for travel.

E. Oxygen - No oxygen will be administered to a service animal in the event of an emergency.

## 7.  Smoking

A. Smoking is prohibited on all flights.

B. Federal law prohibits tampering with, disabling, or destroying any smoke detector installed in an aircraft lavatory.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                                      Rev65 08/04/17

C. The use of electronic smoking devices is prohibited at all times on all aircraft.

## 8.   Tickets

A. A passenger is entitled transportation only upon presentation of a valid ticket or electronic ticket (e-ticket). The ticket entitles the passenger to transportation between the point of origin and the destination.

NOTE:   *Paper tickets are not issued on Frontier ticket stock. Only electronic tickets are issued for travel on Frontier. However, paper tickets from other airlines may be accepted for travel at Frontier's discretion.*

B. Tickets are honored only in the order in which they are issued.

C. The following practices are prohibited:

1) Back to Back Ticketing – The purchase or use of portions of tickets from two or more tickets issued as round-trip fares or other scheme for circumventing minimum stay requirements.

2) Throwaway Ticketing – The purchase or use of round-trip tickets for one way travel.

3) Hidden City/Point Beyond Ticketing – The purchase or use of a ticket from a point before the passenger's actual origin or to a point beyond the passenger's actual destination.

D. A ticket which has not been properly issued or paid for, or which has been altered, mutilated, or improperly issued by an unauthorized party is not valid for travel or refund.

E. The purchaser of a ticket and the passenger intending to use it are responsible for ensuring that the ticket accurately states the name of the passenger.

F. A ticket may only be used by the person named on the ticket. Frontier is not liable to the purchaser of a ticket if the ticket is used by someone other than the person named on the ticket.

G. Presentation of a ticket by someone other than the named passenger renders the ticket void. The ticket is subject to confiscation and is ineligible for refund.

H. An additional processing fee will apply to each ticket purchased or changed via Frontier's reservation center or at its airport counters, except (i) tickets purchased by an Elite member for themselves (a fee does apply to purchases by such members for others), and (ii) issuing an international ticket for infant taxes for an infant not occupying a seat.

## 9.   Ticket Validity and Itinerary Changes

A. Period of Validity

1) Tickets issued by Frontier are valid for transportation only on the flights and dates shown on the ticket and have no value and are not valid for transportation thereafter, provided, however, if a passenger cancels a ticket before the scheduled flight departure time, the value of the ticket less a service fee will be retained for 90 days from the date of cancellation of the ticket in the form of an electronic credit. The credit has no cash or refund value and may only be applied to a single subsequent ticket on a Frontier flight for the same passenger as the original ticket.

2) Except as required by law or as provided in this Contract of Carriage, Frontier shall have no obligation of any kind to reschedule such passengers or to provide them with any refund or other credit for unused tickets.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                            Rev65 08/04/17

---

B. Except for tickets purchased for travel within 7 days (168 hours) of purchase, all tickets may be cancelled within twenty-four (24) hours of the purchase and a full refund will be given.

## 10. Check-in Times

A. Airport Check-In - It is the passenger's responsibility to arrive at the airport, taking into consideration travel time both to and within the applicable airport, including processing through the security check point with enough time to complete check-in and security screening processes.

B. Passengers can check in beginning 2 hours before departure at Frontier's airport check-in counters or 24 hours before departure at FlyFrontier.com or on the Frontier mobile app, if the reservation is eligible for online or mobile app check-in.

C. Check-In Times

   1) For domestic flights (originating and to a destination within the United States), the passenger must be checked in with a printed boarding pass or a Frontier mobile app boarding pass in-hand at least 45 minutes prior to scheduled departure whether or not checking bags.

   2) For international flights, the passenger must be checked in with a printed boarding pass or a Frontier mobile app boarding pass in-hand at least 60 minutes prior to scheduled departure.

D. Time Limit for Checking Bags - Baggage to be checked must be presented at the airport within the minimum check-in time. Passengers who present baggage after the minimum check-in time may be refused transport. At some airports, the counter may close at the check-in cut-off time, in such cases, passenger and baggage check-in are not permitted after the check-in deadline. In the event that baggage is accepted after the minimum check-in time, the passenger will be liable for any costs and fees for the bag to be delivered in the event that it is not carried on the same flight.

E. Availability for Boarding - Tickets and seat assignments are subject to cancellation for passengers who fail to make themselves available for boarding at the departure gate at least 15 minutes prior to scheduled departure.

F. Failure to Appear - If a passenger fails to travel on a flight on their itinerary without the reservation for that flight having been cancelled, all subsequent flights, including return flights, on the itinerary will be cancelled.

G. Misconnected Passengers - The ticket of any passenger who does not meet the minimum check-in time due to the late arrival of an inbound connecting flight operating by Frontier will be accommodated on the next available flight operated by Frontier to the same destination. Frontier will not provide transportation on another airline or reimburse the cost of transportation purchased from another airline. The ticket of any passenger who does not meet the minimum check-in time due to the late arrival of an inbound connecting flight operating by any other airline will be cancelled and no refund or accommodation on another flight will be due unless available and purchased at the applicable price by the passenger.

## 11. Fares

A. Fares apply for transportation only between the airports for which they are published.

B. When a passenger requires connecting service with arrival at one airport and departure from another airport, transportation between those airports must be arranged by and at the expense of the passenger.

C. Fares are subject to change without notice until a ticket is issued.

---

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                          Rev65 08/04/17

## 12. Checked Baggage

A. Fees applicable to checked baggage:

  1) Baggage fees apply to each checked bag.

  2) Active duty military personnel, reservists traveling with orders, and military personnel traveling in uniform may check bags at no charge for all types of tickets. This policy is for active duty military personnel only and does not extend to family members or traveling companions.

B. Baggage Allowance Exceptions - The following may be checked or carried on at no charge and do not count toward the passenger's baggage allowance.

  1) Medical Assistive Devices - Canes, crutches, braces, wheelchairs, etc. for the use of the passenger. There is no limit to the number of mobility aids a passenger may check. Medical assistive devices must be packed separately, in protective packaging, for baggage fees to be waived.

  2) Wheelchairs - In compliance with federal law, wheelchairs or other types of mobility devices for the passenger are accepted as checked baggage in addition to the passenger's baggage allowance at no additional charge. Certain Frontier aircraft can accommodate up to two wheelchairs up to 40 inches (101 cm) high, 50 inches (127 cm) long, 13 inches (33 cm) wide and weighing no more than 70 pounds (31 kilograms) in the cabin of the aircraft on a first-come, first-served basis. Wheelchairs carried in the cabin of the aircraft will be brought to the front of the aircraft after all other passengers have deplaned.

  3) Essential Infant or Child Items - Child restraint devices, car seats, strollers, diaper bags, and other essential baby items when the infant is traveling. These items must be packed separately, in protective packaging, for baggage fees to be waived.

C. Acceptable Baggage - Frontier will accept for transportation as baggage such personal property necessary or appropriate for the wear, use, comfort, or convenience of the passenger for the purpose of the trip, subject to the following:

  1) Checked baggage may not exceed 62 inches (157 cm) in linear dimension (height plus length plus width), nor more than 180 inches (457 cm) in any of those dimensions or weigh more than 50 pounds (22.6 kilograms). Additional fees apply to items that exceed those size and weight limitations. No baggage weighing more than 100 pounds (45 kilograms) will be accepted.

  2) The TSA website maintains a list of items that passengers are not permitted to check in baggage. See www.tsa.gov for a complete list. Baggage containing any items on that list will not be accepted.

  3) An item for transportation not suitably packaged to withstand ordinary handling and turbulence, or of a size, weight or character that renders it unsuitable for transportation will not be accepted.

  4) The passenger is responsible for ensuring that all items packed in checked baggage are properly packaged and padded to resist handling and turbulence. (Refer to Section 17)

  5) All baggage is subject to inspection by Frontier. Frontier is not, however, obligated to perform an inspection. Frontier will refuse to transport or will remove baggage if the passenger refuses to submit the baggage for inspection.

  6) Frontier will not accept baggage or other personal property for storage.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                          Rev65 08/04/17

7) Frontier will check baggage only when the passenger presents a valid ticket for transportation on the applicable flight.

8) The passenger's name, address and telephone number must appear on the baggage.

9) Frontier has the right to refuse to transport baggage on any flight other than the one carrying the passenger.

10) Baggage will not be checked:

   a) To a point that is not reflected on the passenger's ticket.

   b) Other than the passenger's destination on the applicable flight, but if the flight is a connecting flight, to the final destination, but if that connecting flight is scheduled to depart from an airport different from the one at which the passenger is scheduled to arrive then only to the destination of the first leg.

11) Live animals are not accepted as checked baggage.

12) Agricultural items, perishable items, or products that do not conform with customs or agricultural government law at the flight's destination will not be accepted.

13) Frontier will not accept for carriage any restricted/hazardous materials as defined in the DOT Hazardous Materials Regulations (49 C.F.R. §§ 171-177) and IATA Dangerous Goods Regulations are not accepted. Examples of such goods are (i) liquor products over 140 proof, (ii) gasoline-powered tools, (iii) compressed gases, (iv) corrosives (such as acids and wet batteries), (v) explosives (such as dynamite and fireworks), (vi) flammables (such as matches and lighter fuels), (vii) poisons, and (viii) magnetic and radioactive materials.

14) Perishable items must be packaged properly such that they cannot leak through their packaging. (Refer to Section 17)

## 13. Carry-On Baggage

A. Passengers are permitted up to two carry-on items:

   1) One free personal item not larger than 8" x 14" x 18" (20 cm x 35 cm x 45 cm) that must fit under the seat.

   2) One carry-on item not larger than 10"H x 16"W x 24"L (25 cm x 40 cm x 114 cm) and weighing not more than 35 pounds (15 kilograms) that may be placed in the overhead compartment or under the seat. A fee for the carry-on item may apply based on the ticket type purchased.

   3) Items that exceed these dimensions or are in excess of the allowance will be gate checked to which a fee will apply.

B. The TSA website maintains a list of items that passengers are not permitted to carry onboard an aircraft. See www.tsa.gov for a complete list. Carry-on items containing any items on that list will not be accepted.

C. The passenger is responsible for all items brought on board the aircraft. Items must be stored under a seat or in the overhead compartment.

D. Use of Portable Electronic Devices (PEDs)

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



1) Small authorized PEDs are devices under 2 pounds and are of a size that can easily be placed in a seat pocket along with the other materials that are normally found in the seat pocket (Passenger Safety Information Card, Menu or airsickness bag). They include devices like tablets, readers and mobile phones and may be used during all phases of flight when in airplane mode including taxi, take-off and landing. However, if using them during taxi, take-off and landing, you must secure these devices by holding them, putting them in your pocket or holster, or placing them in a seatback pocket.

2) Large authorized PEDs are devices 2 pounds or more such as full-size laptops. They must be turned off and stowed during taxi, takeoff and landing. You may stow them under the seat in front of you or in an overhead compartment. These devices may be used above 10,000 feet when authorized by a Flight Attendant announcement.

3) On all flights operating outside U.S. airspace, PEDs cannot be used during taxi, take-off and landing, but may be used in airplane mode above 10,000 feet when authorized by a Flight Attendant announcement.

E. Sound Emitting Devices - Portable electronic devices that emit sound, e.g., music or video players or games, may be used only with headphones and provided the sound, even via the headphones, cannot be heard by others.

## 14. Cabin-Seat Baggage

A. Cargo stowed inside the main cabin of the aircraft and occupying a passenger seat is referred to as "Cabin-Seat Baggage." Cabin-Seat Baggage may be transported on flights operated by Frontier subject to the following conditions:

1) The full fare for the ticket for the applicable seat is paid. There is no carry-on baggage allowance or baggage allowance for that ticket. If the Cabin-Seat Baggage must be accommodated into a STRETCH seat due to its size or at the passenger's request, the STRETCH seat fee applies.

2) The Cabin-Seat Baggage must be packaged or covered in a manner to avoid possible injury to passengers and crew.

3) The Cabin-Seat Baggage must be carried aboard the aircraft by the passenger.

4) The Cabin-Seat Baggage may not weigh more than 100 pounds (45 kilograms).

5) The Cabin-Seat Baggage cannot exceed size dimensions of 57" height x 17.84" width x 9.3" depth (144.78 cm x 45.31 cm x 23.62 cm).

6) The Cabin-Seat Baggage must fit in the seat without blocking aircraft signage or extending into the aisle and be secured with a seatbelt or other approved method.

7) Certain seats may not accommodate Cabin-Seat Baggage. Frontier will assign seats as appropriate.

8) Except as provided herein, Frontier is not responsible for damage to Cabin-Seat Baggage.

9) Cabin-Seat Baggage does not count toward the passenger's baggage allowance.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                    Rev65 08/04/17

## 15. Conditions and Charges for Special Items

The following items are accepted as checked or carry-on baggage, subject to the conditions specified and payment of applicable fees.

> NOTE:   Refer to the Sports Equipment and Special/Fragile Items chart hosted at www.FlyFrontier.com for other items which have specific packaging or other requirements which need to be met in order to be transported by air. All items listed on the Sports Equipment and Special/Fragile Items chart are subject to baggage fees. Baggage fees for excess, oversize, and overweight are cumulative and all may be assessed on one item.

A. Firearms – Firearms are accepted as checked baggage on flights within the United States, but not international flights. Carriage of any firearm is subject to the following conditions:

1) In accordance with federal law, a passenger who presents baggage that contains a firearm must (i) ensure the firearm is unloaded, (ii) pack the firearm in a lockable, hard-sided container, (iii) declare the firearm unloaded at the time of check-in, and (iv) sign a "Firearms Unloaded" declaration.

2) If the firearm is in a locked, hard-sided container INSIDE a piece of checked baggage, the declaration must be placed inside the checked baggage and proximate to, but not inside of, that container.

3) If the firearm is in a locked, hard-sided container, but NOT INSIDE a piece of checked baggage, the declaration must be placed inside the container.

4) After screening, the passenger must lock the firearm container and retain the key or combination.

5) The passenger must make arrangements for and assume full responsibility for complying with any applicable laws, customs and government regulations, or restrictions of the state or territory to which the firearm is being transported.

B. Ammunition - Ammunition for firearms (whether or not the firearm is also being carried) is accepted as checked baggage on flights within the United States, but not international flights, subject to the following conditions:

1) The ammunition must be securely packed in the original manufacturer's packaging, fiber (such as cardboard), wood or metal boxes or other sturdy and durable packaging providing sufficient cartridge separation.

2) Each passenger is allowed up to 11 pounds (4.9 kilograms) of ammunition.

3) Loaded ammunition clips and magazines must also be securely boxed.

4) Ammunition may be packed with the firearm.

C. Live Animals – Frontier accepts live animals only in the cabin of the aircraft, not as checked baggage. The transportation of live animals is subject to fees for carriage and the terms and conditions below.

   EXCEPTION:  See separate rules with respect to service animals referred to in *6. Service Animals*.

1) Only the following animals are permitted:

   a) Domestic Flights – Domesticated dogs, cats, rabbits, guinea pigs, hamsters, or small household birds.

   b) International Flights – Domesticated dogs and cats.

2) The passengers carrying the animal are responsible for making arrangements and assuming full responsibility for complying with any applicable laws, customs and other governmental regulations, requirements or restrictions of the country, state or territory to which the animal is being transported.

---

**Pg. 15 of 24**                                    **Conditions and Charges for Special Items**

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                                           Rev65 08/04/17

3) The passengers carrying the animal are responsible for paying any import/export fees, duties or taxes that may apply as well as any fines for failing to comply with applicable law.

4) International - Restrictions for travel with an animal to international destinations vary by country. Frontier recommends contacting the appropriate embassy or consulate before purchasing a ticket for travel.

5) The passengers carrying the animal are responsible for making advance reservations because no more than ten pet containers will be accepted per flight.

6) No passenger may carry more than one pet container.

7) The animal must remain in a pet container at all times and may not be fed while onboard the aircraft.

8) The pet container must be large enough for the pet to stand, turn around, and lie down in a natural position and fit underneath the seat in front of the passenger.

9) The animal may not disrupt other passengers and the passenger must be able to quiet the animal without removing it from the container.

10) The container counts toward the carry-on baggage allowance.

11) No oxygen will be administered to an animal in the event of an emergency.

D. Human Remains:

1) Crematory remains (human or animal) may be transported as carry-on or checked baggage subject to the following conditions:

   a) The container must be made of a material such as wood or plastic that can be successfully screened by the TSA. If the container cannot be screened, it will not be allowed.

   b) If the container is checked, it must be sufficiently packaged in a well-insulated and sturdy container.

   c) If the container is carried onboard the flight, it counts toward the passenger's carry-on allowance and it must meet carry-on baggage dimensions.

2) Human remains in caskets are not accepted.

E. Dry Ice (frozen carbon dioxide) – Dry ice may be carried under the following conditions:

1) A maximum of 5.5 pounds (2.5 kilograms) of dry ice per passenger is accepted in checked or carry-on baggage.

2) The cooler or package must permit the release of carbon dioxide gas. Styrofoam containers are not accepted.

F. Bicycle - Bicycles may be carried under the following conditions:

1) The handlebars must be fixed sideways and the pedals removed or wrapped in plastic foam or similar material and the entire bicycle is encased in a hard-sided case.

2) Bicycles may only be carried as checked baggage.

3) A fee applies for each bicycle checked as baggage.

4) Bicycles are excluded from baggage liability unless packaged in a hard-sided case.

G. Special Items - The following items may exceed carry-on baggage dimensions, but may be taken as a carry-on item (and count toward the carry-on bag allowance) as long as they fit in the overhead bin: fishing rods, tennis rackets, wedding attire, poster tubes and musical instruments. If any such items are comprised of more than one piece, they must be packaged together to be considered one item. The carry-on bag fee applies.

*Conditions and Charges for Special Items*                                          **Pg. 16 of 24**

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                        Rev65 08/04/17

---

## 16. Limitations of Liability

---

A. Consequential Damages – The purchase of a ticket does not guarantee transportation. Frontier is not liable for any indirect, special or consequential damages resulting from the performance of transportation, delay in performance or failure to provide transportation of passengers and other incidental services whether or not there was prior knowledge that such damages might be incurred. The absolute limit of Frontier's liability for failing to provide transportation will be a refund of the amount paid for the corresponding ticket.

B. International Transportation – With respect to international transportation, as defined in the following referenced conventions, as applicable, Frontier's liability will be limited as specified in, as and if applicable, (i) the Convention for the Unification of Certain Rules Relating to International Carriage by Air signed at Warsaw, October 12, 1929, as amended ("Warsaw Convention"), but subject to the Agreement entered into by Frontier pursuant to 14 C.F.R. Part 203 or (ii) the Convention for the Unification of Certain Rules for International Carriage by Air, signed at Montreal, May 28, 1999 ("Montreal Convention").

---

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.

# FRONTIER

**CONTRACT OF CARRIAGE**                                                          Rev65 08/04/17

## 17. Claim Limits and Procedures

A. Limitations of Liability

1) Domestic Flights – With respect to domestic flights, i.e., those flights originating and ending within the United States without any scheduled stops outside of the United States, or international flights to which neither the Warsaw Convention or the Montreal Convention apply, Frontier's limit of liability, if any, for the loss, damage or delay in the carriage of checked baggage shall be limited to $3,500 for all bags checked under a single ticketed passenger's name. Frontier will not be liable for:

   i) the following items included in checked baggage, with or without the knowledge of Frontier:

   - alcohol
   - antiques
   - art, paintings
   - art supplies
   - artifacts
   - bags made from lightweight material not designed for shipping
   - blueprints
   - books
   - business documents
   - CDs
   - cell phones
   - Cigars, cigarettes, electronic cigarettes, vape pens
   - collectibles
   - computer equipment (including hardware, software and all accessories)

   - dentures
   - drugs prohibited by federal or state law
   - DVDs
   - eyeglasses
   - files
   - food/perishables
   - fragile articles or other similar valuable items and commercial effects
   - hand and power tools
   - heirlooms
   - irreplaceable items
   - jewelry
   - keys
   - machinery and its parts
   - manuscripts
   - medication
   - money

   - natural fur products
   - negotiable papers/ instruments
   - optics
   - orthodontics
   - orthotics
   - photographic/video/ electronic equipment and accessories
   - precious metals or stones
   - publications
   - samples
   - securities
   - silverware
   - sound reproduction equipment
   - sunglasses
   - surgical supports
   - toys

   ii) articles strapped, taped, or tied to other pieces of baggage, which may become separated as a result of normal handling during transportation

   iii) damage to the following items when not packed in a hard-sided case or other packing that is suitable for the item.

   - Prosthetic devices
   - Medical equipment
   - Musical instruments
   - Recreational or sporting equipment
   - Baby items including car seats and strollers

   iv) damage to handles, straps, wheels and zippers arising from normal wear and tear caused by ordinary handling of baggage.

   v) damage arising from ordinary wear and tear, such as cuts, scratches, scuffs, stains, dents, punctures, marks, and dirt

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                                                 Rev65 08/04/17

vi)  damage resulting from over- packing or misuse

vii)  damage arising from liquids on or in baggage; including weather (e.g. rain, snow)

2)  International Flights/Montreal Convention – With respect to international flights to which the Montreal Convention applies, Frontier's limit of liability, if any, for the loss, damage or delay in the carriage of baggage (whether checked or carry-on) shall be limited to 1,131 Special Drawing Rights per ticketed passenger. The conversion rate, available at www.imf.org, in effect on the date of loss will be used for determining maximum liability amount.

3)  International Flights/Warsaw Convention – With respect to international flights to which the Warsaw Convention applies, Frontier's limit of liability, if any, for the loss, damage or delay of (i) checked baggage shall be limited to 17 Special Drawing Rights per pound, or actual value, whichever is less, (ii) carry-on baggage shall be limited to 332 Special Drawing Rights or actual value, whichever is less. The conversion rate, available at www.imf.org, in effect on the date of loss will be used for determining maximum liability amount. Absent evidence to the contrary, bags will be presumed to weigh 20 pounds.

4)  Frontier does not accept declarations of higher value or accept fees based on such declarations.

5)  Subject to the above specified limits of liability, Frontier will compensate a passenger whose baggage has been lost, damaged or delayed for reasonable, documented direct damages up to the specified limit of liability, provided the passenger has made reasonable effort to minimize the amount of damage and provided documentation of the loss. The compensation due for lost or damaged property will be determined by the lesser of the documented original purchase price less applicable depreciation or the cost to make repairs.

6)  Frontier's liability for wheelchairs, mobility aids, and assistive devices used by a passenger with a disability if lost or damaged by Frontier shall be up to the original purchase price of the device without regard to the above limitations of liability.

7)  Passengers who incur incidental expenses as a result of delayed baggage delivery will be reimbursed per established DOT guidelines, subject to the above limitations of liability (as applicable). Any amounts paid to the passenger for incidental expenses will be deducted from the total loss amount prior to check issuance.

8)  Frontier will not be liable for loss or damage to carry-on baggage unless such damage is caused by Frontier's or its agent's negligence, which does not include damage resulting from turbulence, shifting of items during flight, or ordinary handling, including placing the baggage in overhead compartments or under seats.

9)  Frontier's employees and agents are not liable to passengers.

B.  Time Limit to Make Claims and Procedures

1)  With respect to domestic flights and those international flights to which the Montreal Convention does not apply, any claim based on damage, delay or loss of baggage must be reported to Frontier within 12 hours of the arrival of the flight on which the loss or damage is claimed to have occurred. Claims for pilferage may be made up to 24 hours after flight arrival. Any documentation required to support the claim must be submitted within 30 days from the date the requesting passenger receives the claim form packet from Frontier; Frontier will not be liable if the completed claims are not submitted, with documentation, within that time period.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                            Rev65 08/04/17

2) With respect to international flights to which the Montreal Convention applies, in the case of baggage damage, the person entitled to delivery must submit in writing to Frontier as soon as possible after discovery of the damage, and at the latest in writing 7 days from receipt of checked baggage and in the case of delay or loss, complaints must be made at the latest within 21 days from the date on which the baggage has been placed at the passenger's disposal or should have been placed at his/her disposal in the case of loss. All claims must be made in writing and must be accompanied by supporting documentation. Any subsequent request for documentation from Frontier must be provided to Frontier within 21 days of the request.

## 18. Failure to Operate on Schedule or Failure to Carry

A. Liability Limited - Except to the extent provided in this rule, Frontier is not liable for failure to operate any flight, failure to operate a flight according to its schedule, or for changing the schedule or type of equipment used on any flight, with or without notice to the passenger.

B. Force Majeure - In the occurrence of a force majeure event, Frontier may cancel, divert, or delay any flight without liability except to provide a refund for the unused portion of the ticket.

C. Delay, Misconnection, or Cancellation - In the event (i) a passenger's flight is cancelled, (ii) a passenger is denied boarding because an aircraft with lesser capacity is substituted, (iii) a passenger misses a connecting Frontier flight due to a delay or cancellation of a Frontier flight (but not flights of other carriers), (iv) a passenger is delivered to a different destination because of the omission of a scheduled stop to which the passenger held a ticket, to the extent possible, Frontier will provide transportation on its own flights at no additional charge to the passenger's original destination or equivalent destination as provided herein. Frontier will have no obligation to provide transportation on another carrier. If Frontier cannot provide the foregoing transportation, Frontier shall, if requested, provide a refund for the unused portion of the passenger's ticket in lieu of the transportation under the foregoing. The foregoing shall be the limit of Frontier's liability for the matters covered by this provision.

D. For purposes of involuntary reroute, the following groups of cities are considered to be the same point. If Frontier is able to provide transportation to one of the specified alternative cities, Frontier has met its obligation for transport to the final destination.
- Chicago-O'Hare (ORD) /Milwaukee (MKE)
- Ft. Lauderdale (FLL) /West Palm Beach (PBI) / Miami (MIA)
- Los Angeles (LAX) /Orange County (SNA)
- Madison (MSN)/Milwaukee (MKE)
- New York La Guardia (LGA) /Trenton (TTN) /Philadelphia (PHL)
- Orange County (SNA) /San Diego (SAN)
- Orlando (MCO) /St. Augustine (UST)
- Orlando (MCO) /Tampa (TPA)
- Washington Dulles (IAD) /Washington National (DCA)

E. Schedule Change Prior to Day of Travel – When a passenger's itinerary is changed because of a modification in Frontier's schedule, arrangements will be made to:

1) Transport the passenger over its own route system to the destination; or

2) In the event the schedule modification is significant, at Frontier's discretion, it may refund the cost of the unused portion of the ticket.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                                      Rev65 08/04/17

F. Extended Onboard Ground Delays – In accordance with FAA regulations, Frontier maintains and complies with a separate Contingency Plan for Lengthy Tarmac Delays. Frontier's Contingency Plan for Lengthy Tarmac Delays may be found on Frontier's website at https://az832049.vo.msecnd.net/media/1567/f9-contingency-plan-for-extended-tarmac-delays-2015.pdf. Frontier's Contingency Plan for Lengthy Tarmac Delays is subject to change without notice and is not part of this Contract of Carriage.

## 19. Denied Boarding Compensation

When a seat cannot be provided due to an inadequate number of seats for the number of passengers holding confirmed reservations (overbooking), the actions described in this section will be taken.

A. Voluntary – Passengers on a flight with an overbooking will be encouraged to voluntarily relinquish their seats in exchange for alternate travel and for compensation in the form of an Electronic Travel Certificate for future transportation within 90 days on Frontier. The request and selection of volunteers will be in a manner determined solely by Frontier.

B. Involuntary – If insufficient passengers volunteer, passengers who check in after all seats have been assigned will be denied boarding and Frontier will provide transportation on Frontier's flights to the same destination.

C. Amount of Compensation – Frontier will compensate a passenger for involuntary-denied boarding based on the new arrival time after the originally scheduled arrival time as follows:

| Domestic | International | Compensation |
|---|---|---|
| New arrival time within :59 | New arrival time within :59 | No Compensation |
| New arrival time within 1 - 1:59 | New arrival time within 1 - 3:59 | 200% (2x) of the one-way fare, not to exceed $675 |
| New arrival time 2 hours or more | New arrival time 4 hours or more | 400% (4x) of the one-way fare, not to exceed $1350 |

NOTE 1:   Frontier will not provide compensation for denied boarding when an aircraft of lesser capacity is substituted due to operational or safety reasons.

NOTE 2:   No compensation will be due if boarding is denied for reasons other than overbooking, e.g., pursuant to applicable law or other provisions of this Contract of Carriage.

D. Onward Transportation for Passengers Denied Boarding

1) A passenger denied boarding, voluntarily or involuntarily, pursuant to this section, will be transported on Frontier's next available flight on which space is available and at no additional charge.

2) If a passenger who has been denied boarding, voluntarily or involuntarily, pursuant to this section, wishes to modify the travel date, if space is available, a ticket will be provided for travel within 72 hours at no additional charge.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.

# FRONTIER

**CONTRACT OF CARRIAGE**                                    Rev65 08/04/17

E. Electronic Travel Certificates - Frontier may offer passengers denied boarding involuntarily an Electronic Travel Voucher good for transportation on Frontier in lieu of cash compensation otherwise due under this section. Passengers may decline such offer in favor of the applicable cash compensation. The Electronic Travel Certificate has no refund value, will expire 90 days from date of issuance, is not transferable and may only be used to purchase tickets for the passenger to whom it is issued. Only one Electronic Travel Certificate may be used per ticket at the time of purchase. Electronic Travel Certificates may not be applied to ancillary fees and charges, e.g., seat fees, baggage fees, etc., applied to group travel, or combined with other offers. If a ticket purchased with an Electronic Travel Certificate costs less than the amount of the certificate, no residual value remains. Changes to a ticket purchased with an Electronic Travel Certificate may result in a change fee and any additional fare difference based on the rules of the issued ticket.

F. Time of Offer and Payment of Compensation

   1) The offer of compensation for overbooking will be made by Frontier on the day and at the place where the failure to provide confirmed space occurred. If accepted, compensation will be given to the passenger. If the alternative transportation arranged for the passenger's convenience departs before the payment can be made, payment will be made by mail or other means within 24 hours after the denied boarding occurs.

   2) Acceptance of any Denied Boarding Compensation constitutes full compensation for damages incurred by the passenger as a result of Frontier's failure to provide the passenger with a confirmed seat.

## 20. Refunds

A. The following applies with respect to refunds for tickets under this Contract of Carriage:

   1) If no portion of the ticket has been used, the refund amount will be equal to the fare and charges paid for the ticket issued to the passenger.

   2) If a portion of the ticket has been used:

      a) One-way ticket:

         i. If travel was terminated at origination, the refund will be equal to the fare paid.

         ii. If travel was terminated at an intermediate or stopover point, the refund will be equal to the fare paid from the point of termination to the destination or to the point at which transportation is to resume and will be the lowest one-way fare for the class of service paid for minus any discount.

      b) Round-trip or excursion ticket purchased: the refund will be equal to the unused portion of the ticket.

B. All refunds will be subject to government laws, rules, regulations, or orders of the country in which the ticket was originally purchased and of the country in which the refund is being made.

C. As applicable, processing fees may be assessed and deducted from the refund.

D. To obtain a refund, the passenger must submit all required documentation and information including:

   1) Brief written explanation

   2) Name, address, and at least one telephone number

   3) Form of payment used to purchase the ticket

E. Payment - A refund will be provided only to the original purchaser's form of payment. However, if, at the time of the application for refund, evidence is submitted that a company purchased the ticket on behalf of its employee or a travel agency has made a refund to its client, the refund will be made directly to the employee's company or the travel agency.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.



**CONTRACT OF CARRIAGE**                                                    Rev62 01/08/16

F. Where To File - Requests for refunds may be mailed to: Frontier Airlines, Inc., Attn: Refunds, P.O. Box 492085, Denver, CO 80249. The application may also be submitted at a Frontier ticket counter or an IATA Travel Agency. Processing ordinarily takes at least 60 days.

G. Refunds will be paid as follows:

| Payment Type | Refunded To |
| --- | --- |
| Universal Air Travel Plan | The subscriber against whose account the ticket was charged |
| Transportation Request issued by a government agency other than a U.S. government agency | The government agency that issued the transportation request |
| U.S. Government Transportation Request | The U.S. government agency that issued the U.S. Government Transportation Request with a check payable to the "Treasurer of the United States" |
| Credit Card | The account of the person to whom the credit card was issued |
| Electronic Travel Certificate | Refunded to a new electronic certificate |

H. Identity - Frontier does not assume responsibility to confirm that the person using or presenting a ticket for refund is the true owner of the ticket.

## 21. Currency and Mode of Payment and Fees

A. All fares, fees, charges and taxes charged or collected by Frontier are due in United States dollars. Those due in other currencies will be converted to United States dollars as determined by Frontier.

B. All amounts due to Frontier must be paid with a credit card. Frontier does not accept cash for any transactions, including those on Frontier's aircraft.

C. Frontier does not accept personal checks, traveler's checks, certified (cashier's) checks or money orders.

D. A service charge will apply to any improper chargeback on a credit card and may be charged to the same credit card via which the chargeback is made.

## 22. Miscellaneous

A. Subordination to Law - In all cases, this Contract of Carriage will be subordinate to any applicable law.

B. Metric References - Conversion of British units to metric units are approximate and for reference only. The British unit will apply.

C. Change Without Notice - Except as may be required by applicable laws, government regulations, orders and requirements, Frontier reserves the right to amend this Contract of Carriage without notice, provided that no such change shall apply to carriage that has commenced.

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.

# FRONTIER

**CONTRACT OF CARRIAGE**                                                              Rev62 01/08/16

D. No Waiver/Modification of Terms - No employee or agent of Frontier has the authority to waive, modify, or alter any provisions of the Contract of Carriage unless authorized by a corporate officer of Frontier. Accommodations provided beyond what is required by the Contract of Carriage do not alter the Contract of Carriage. Frontier's employees and agents, including third party travel agents and online travel sites, are only authorized to sell tickets for air transportation on Frontier subject to the Contract of Carriage.

E. Changes in Rules, Fares, and Charges - Unless otherwise provided within specific fare rules, transportation is subject to the rules, fares and charges in effect on the date a ticket is issued, determined by the validation stamped or imprinted on the ticket, or valid electronic ticket.

F. Taxes and Charges - When the ticket is issued for the effective date, all government, airport, vendor, or other charges that apply to passenger travel into foreign countries are the responsibility of the passenger to whom the ticket was originally issued and are in addition to the published fare and charges.

G. Fares/Charges - Specific fares and charges information is available through Frontier reservations offices and at www.FlyFrontier.com.

H. No Class Action - Any case brought pursuant to this Contract of Carriage, Frontier's Tarmac Delay Plan, or Frontier's Customer Service Plan may be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.

I. Time Limit for Action - No legal action may be brought by a passenger against Frontier unless commenced within 6 months from the date of the alleged incident.

J. Choice of Law - This Contract of Carriage will be governed by and construed in accordance with the laws of the United States of America and the State of Colorado without regard to conflict of law principles or law. All right to trial by jury in any action, proceeding or counterclaim arising out of or in connection with this Contract of Carriage is irrevocably waived.

---

**Miscellaneous**                                                                      **Pg. 24 of 24**

**FRONTIER**

**REVISION FILING
INSTRUCTIONS / HIGHLIGHTS**

## Contract of Carriage

REVISION NUMBER: ___ 65 ___

REVISION DATE: ___ 08/04/17 ___

«FirstName» «LastName»
«Dist_Loc»

Instructions for paper manuals:

**For an online version of Contract of Carriage, click here.**

1. Insert the attached revision as instructed below.
   - o   Pages to be removed are listed in the left-hand column. A horizontal line in this column means no pages are to be removed.
   - o   Pages to be inserted are listed in the middle column. A horizontal line in this column means no pages are to be inserted.
   - o   A description of the revision is found in the right-hand column.
2. Fill in the Revision Date, Date Posted, and Posted By fields on the **Record of Revisions** page.
3. Direct questions regarding this revision to: **Tech Pubs at 720-374-4341.**

| REMOVE PAGES | INSERT PAGES | REVISION HIGHLIGHTS                               Page 1 of 1 |
|---|---|---|
| 00.00 Pg. 3<br><br>Pgs. 2 – 22 | 00.00 Pg. 3<br><br>Pgs. 2 – 22 | **List of Effective Pages** – Updated<br><br>**Updated:**<br>**Introduction** –  Changed address<br>**Definitions** — Revised STRETCH SEAT<br>**Refusal to Transport and Special Conditions** – Revised bullet F<br>**International Transportation** – Deleted bullet G<br>**Child Passengers** –Deleted old bullet B1, revised bullets B2b, B2g, B2h, & B2i, old bullets B2h & B2i become B2j & B2k, revised bullet C, changed bullet 3 to 2a, bullet 4 becomes bullet 3, revised bullet 5a<br>**Service Animals** – Revised bullets 1, 2, 3B, and 3C<br>**Tickets** – Revised bullet C1<br>**Check-in Times** – Revised bullet B<br>**Checked Baggage** – Revised bullets B3, C4, & C14, deleted bullet C15<br>**Conditions and Charges for Special Items** – Deleted EXCEPTION under C1b<br>**Claim Limits and Procedures** – Revised list under A1i, revised bullet B1 & B2<br>**Failure to Operate on Schedule or Failure to Carry** – Revised bullet C<br>**Denied Boarding Compensation** – Revised bullets A, E and D1 |

Uncontrolled copy when downloaded or printed.
Refer to the Controlled Document Library for the most current version of this document.