IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ------------------------------------------------------- ) | |
|     Anne Smithers, James Mims, ) | |
|     Ross Wiley, Thomas Wiley, ) | Civil Action No.: 1:18cv676 (TSE/IDD) |
|     Henry Wiley by his Mother and ) | |
|     next friend Anne Smithers, Hanna ) | |
|     Del Signore, ) | |
|     ) | PLAINTIFFS' RESPONSE IN |
|                 PLAINTIFFS, ) | OPPOSITION TO DEFENDANTS' |
| VS.                                        ) | MOTION TO DISMISS |
|     Frontier Air Lines, Inc., and ) | PLAINTIFFS' FIRST AMENDED |
|     Aircraft Service International, Inc., ) | COMPLAINT (ECF # 28) |
|     ) | |
|                 DEFENDANTS. ) | |
| ------------------------------------------------------- ) | |

## INTRODUCTION

Herewith Plaintiffs' Response in Opposition to Defendants Motion to Dismiss. For the reasons stated below, Defendants motion should be denied in its entirety, except that Plaintiffs do not oppose the dismissal of the intentional infliction of emotional distress claims from every Plaintiff other than Plaintiff Smithers.

**Personal Jurisdiction**

Defendants lean heavily on *Daimler AG v. Bauman*, 571 U.S. 117 (2014) to attack a strawman of general personal jurisdiction but *Daimler* is inapposite because Plaintiffs do not claim general jurisdiction. Rather, Plaintiffs rely on Defendants' extensive contacts with the forum to support a claim for specific personal jurisdiction, relying on *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (U.S. 2011) ("Flow of a manufacturer's products into the forum, we have explained, may bolster an affiliation germane to specific jurisdiction."). Plaintiffs recognize that there must also be "an 'affiliation between the forum and the underlying

1

controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,* 137 S. Ct. 1773, 1781(2017) (citing *Goodyear*, 564 U.S., at 919). Plaintiffs' injuries flow directly from activities that both Defendants have directed at the Commonwealth, and Fourth Circuit precedent confirms this.

Courts in the Eastern District of Virginia and elsewhere in the 4th Circuit have addressed the question of air travelers and jurisdiction to permit claims against negligent non-resident carriers and have found specific personal jurisdiction. See *Selke v. Germanwings GMBH* , 261 F. Supp.3d 645 (2017); *Broadus v. Delta Air Lines, Inc*, 101 F.Supp.3d 554 (2015).[1]

Additionally, public policy supports allowing Plaintiff air travelers to bring litigation in their home forums. Congress and The U.S. Department of Transportation's Office of Aviation Enforcement and Proceedings have expressed the intent that Plaintiffs be able to bring actions against airlines in their home forums. See, Declaration of Thatcher A. Stone dated September 28, 2018 ("Stone Dec."), ¶4 (Letter to airlines prohibiting the use of "forum selection clauses" in contracts of carriage as unfair and misleading practices under 49 U.S.C. 41712).

**This Court Has Specific Personal Jurisdiction to hear Plaintiffs' Claims**

The determination of specific personal jurisdiction over a non-resident defendant begins with the state's relevant long-arm statute and then moves to the requirements of the Due Process Clause of the Constitution. The Virginia long-arm statute, §8.01-328.1(A)(1-10), has been considered by the 4th Circuit to sweep as broadly as the bounds of due process allow, so the question hinges entirely upon an analysis of due process. See *Peanut Corp. of Am. v.*

---

[1] Defendants' failure to cite these relevant cases is a glaring omission.

*Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982) ("The Virginia long-arm statute... has been construed to extend in personam jurisdiction to the outmost perimeters of due process.").

In the Fourth Circuit, courts consider 3 factors when determining whether the requirements of the Due Process Clause are satisfied with respect to personal jurisdiction over a non-resident defendant: "[1] the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; [2] whether the plaintiffs' claims arise out of those activities; and [3] whether the assertion of personal jurisdiction is constitutionally reasonable." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301–02 (4th Cir. 2012).

The factors constituting "Personal availment" have been defined by the Fourth Circuit to include:

> (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

*Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)

Whether claims "arise from" a Defendant's forum activities depends upon whether there is a causal connection such that Defendant's activities form the "genesis of the dispute." *Selke*, 261 F. Supp.3d at 659. Selling airline tickets and providing air travel services in a forum state meets this criteria with respect to events that occur during the subsequent travel. *Id.* ("Lufthansa purposely availed itself of the privilege of transacting business in Virginia when it expressly

authorized United to sell its tickets to Virginia citizens, resulting in its involvement in a ticket transaction that gave rise to Plaintiffs' cause of action.")

When determining whether the assertion of personal jurisdiction is constitutionally reasonable, courts consider factors such as: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Broadus*, 101 F. Supp. 3d at 561.

### 1. *Defendant Frontier Air Lines*

Defendant Frontier registered with the Virginia Secretary of State to conduct air travel business in the Commonwealth. Defendant Frontier maintains permanent bases of operation in the Commonwealth, and regularly flies in and out. But most relevant to specific jurisdiction in this case, Defendant Frontier purposefully availed itself of the Commonwealth by reaching in and soliciting and initiating business, ultimately selling tickets for carriage to the Plaintiffs.

The Plaintiffs' claims arise from the purchase of these tickets because the sale of the tickets was a causal link in the injuries that occurred. *Broadus*, 101 F. Supp. 3d at 561("It is plain that this case arises out of and is related to Delta's contacts with North Carolina. The round-trip agreement and the departure from Greensboro were the 'genesis of this dispute.'")

Defendants have made no argument that litigating in Virginia would be an undue burden. In fact, both Defendants maintain a permanent presence in Virginia. Additionally, Virginia has a strong interest in the welfare of its citizens, and Virginia certainly is a convenient forum for the Plaintiffs. Therefore, it is not Constitutionally unreasonable to assert personal jurisdiction over Defendant Frontier in this case.

## 2. *Defendant Aircraft Service International ("ASI")*

ASI registered with the Virginia Secretary of State to conduct ground handling business in the Commonwealth. Defendant ASI maintains permanent bases of operation in the Commonwealth. But most relevant to specific jurisdiction in this case, ASI purposefully availed itself of the Commonwealth by conducting business with Frontier Airlines in the Commonwealth in providing a portion of essential air travel services that Frontier does not supply. ASI's permanent operations in the Commonwealth include providing ground services for Frontier Airlines at Washington Reagan Airport. The services provided by ASI to Frontier within the Commonwealth are identical to the services provided by ASI to Frontier in Denver, and the provision of round-trip, comprehensive service is logically integral to ASI's competitive advantage and business model. ASI purposely avails itself of the Commonwealth to maintain the ability to provide support throughout the entire flight orbit. When a passenger buys a ticket from Frontier for round-trip travel, a portion of that price pays the ground-handling company, ASI, for round-trip service – service that in this case commenced in the Commonwealth.

Plaintiffs' injuries are directly related to the primary activities that ASI avails itself of the Commonwealth to conduct. These are not Argentinian Plaintiffs suing a car company for war crimes: these are Virginians suing a ground handling company for unacceptable ground handling service. ASI's services and engagement with the Plaintiffs constituted a loop, that began in Virginia, stretched to Colorado, and returned back to Virginia. It was along the orbit of this loop, a loop which purposefully avails itself of the Commonwealth in order to complete its circuit and without which such availment it would be unable to exist, that the Plaintiffs received their injuries at the hands of ASI. This is why ASI's availment of the Commonwealth had a causal impact on Plaintiffs' injuries.

The analysis of whether it is constitutionally reasonable to hale ASI into a Virginia court is similar to that of Frontier.  ASI did not argue it is burdensome to defend. ASI maintains a permanent presence in Virginia and so cannot be surprised or unduly burdened by subjection to litigation in Virginia courts.  The Commonwealth has a great interest in the welfare of its citizens and it is a convenient forum for the Plaintiffs.

### 3. *The Interests of the States in Furthering Substantive Social Policies*

Public policy interests favor allowing plaintiffs to litigate claims against air carriers in their home forums.  This conclusion is supported by international treaty and both the actions of Congress and the Executive Branch.

The U.S. Department of Transportation's Office of Aviation Enforcement and Proceedings ("DOT") sent a letter on July 15, 1996 to U.S. carriers, including Defendant Frontier, in which the department threatened enforcement action against any airline that tried to include forum selection clauses in its contract of carriage pursuant to DOT's interpretation of 49 U.S.C. 41712.  Stone Dec., ¶4, Ex. A.  DOT was worried that forum selection clauses would essentially deny legal recourse to passengers, most of whom would have relatively small claims, if they were forced to travel out of state to bring an action.

The Warsaw and Montreal treaties governing international travel also recognized that passengers needed convenient recourse to bring claims against malfeasant or negligent airline carriers and thus clearly provide for venue in multiple convenient settings:  the place where the tickets were purchased, the place where the flight terminates, or the place where the passenger resides.  Convention for Int'l Carriage by Air, S. Treaty Doc. No. 106-45, Art. 33(1-2) (May 28, 1999).  While some courts have held that Article 33 only provides subject matter jurisdiction, very few courts have addressed the question subsequent to *Daimler's* recent constraint upon the

availability of general personal jurisdiction. This is important because previously, in many instances, jurisdiction would not have been challenged if an airline maintained a significant presence in a passenger's home forum. This jurisprudence is still under development, but clearly if Plaintiffs are effectively thwarted in bringing actions in the venues provided by the Treaties, the policy intent will be undermined.

The Fourth Circuit remains undecided on the question of whether Article 33 confers personal jurisdiction:

> Finally, Plaintiffs urge that the Montreal Convention itself confers personal jurisdiction pursuant to specific parameters of Article 33 of the treaty. Both Plaintiffs and Defendants argue at length over whether Article 33 speaks to personal jurisdiction, but the Court need not reach a decision on the matter because the provision in question does not apply to Eurowings.

*Selke*, 261 F. Supp.3d at 664.

If, however, it does develop that every international passenger is now required to show specific personal jurisdiction to choose one of the five locations granted by the treaty, then he will be able to fall back upon the one recourse that is now being given to domestic travelers: the forum where the tickets were purchased.

**Plaintiffs' Negligence Claim is Sound**

### 1. *Defendants Owed a Duty of Care*

Society is built upon bonds of mutual duty to one another that have nothing to do with contract. "To determine whether a defendant owes a plaintiff a duty to act to avoid injury, [courts] assess: (1) the risk involved in the defendant's conduct; (2) the foreseeability and likelihood of injury weighed against the social utility of the defendant's conduct; (3) the

magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Westin Operator, LLC v. Groh*, 347 P.3d 606, 613–14 (2015).

The injuries that Plaintiffs suffered due to the Defendants' negligence are not merely that Ms. Smithers was denied carriage under her contract. The injuries came about as a result of HOW that carriage was denied.

Defendants' actions against Ms. Smithers, and by proxy her family, carried the risk of harm and did cause harm. Defendants struck Ms. Smithers. Defendants damaged Ms. Smithers reputation and damaged the reputation of her accompanying family by association when defendants defamed Ms. Smithers by telling the occupants of the plane that she had committed a felony and would be going to jail. Defamation per se. Defendants intentionally caused trauma to the entire family by refusing to allow Thomas Wiley's needed medical device back on board. Thomas Wiley thereby was placed in danger and feared for his safety throughout the duration of the flight and in his onward travel thereafter. The entire family was placed in fear for the wellbeing of both Thomas Wiley and Ms. Smithers.

Furthermore, this was Christmas morning, for many the most significant and cherished day of the year to spend together with family. The risk of Defendants' over reaction in this instance was that an entire family would have this day ruined. And it was. The day was spent in turmoil, aggravation, and fear, rather than in a celebration of life and family.

Every injury that the Plaintiffs experienced and complained of was obviously foreseeable and there was no social utility in the defendants' conduct. It would not have taken much effort at all for the defendants to have acted like civil, decent human beings and the consequence of placing that burden on every individual is always beneficial to a healthy society. Defendants satisfy the *Groh* negligence test.

### *2. Frontier is a Common Carrier and Owed Plaintiffs a Heightened Duty of Care*

Additionally, Frontier owed an even greater duty to the Plaintiffs. Frontier Airlines is a common carrier. Colo. Rev. Stat. Ann. § 40-1-102(3)(a)(I) (West). Common carriers are held to the highest degree of care. *Vassos v. Dolce Int'l/Aspen, Inc*. 2006 WL 893601, at *6 (D. Colo. Mar. 31, 2006), citing *De Lue v. Public Utilities Com.*, 169 Colo. 159, 166–67, 454 P.2d 939 (Colo.1969). "[A] defendant's status as a common carrier creates a duty to exercise the highest degree of care to its passengers." *Bedee v. Am. Med. Response of Colorado*, 2015 COA 128, ¶ 19, 361 P.3d 1083, 1088. Clearly, Frontier's behavior was not in keeping with the highest standard of care. It was, in fact, abysmal. The Court should not dismiss Plaintiffs negligence claims.

### *3. Thomas Wiley's Negligence Claim is also a Claim for Negligent Infliction of Emotional Distress.*

Defendants spend time in their memorandum exploring the tort of negligent infliction of emotional distress and have convinced the Plaintiffs that this is what Thomas Wiley did indeed suffer. (Dkt 28, Pg. 11) "Thus, a direct effect on the Plaintiff – *being placed in danger and in fear for one's own safety – is necessary* to a claim of negligent infliction of emotional distress.' *Id.*

By refusing to allow a dangerously asthmatic boy to be returned his critical medicine, Defendants Placed Thomas Wiley in danger, and he did, in fact, fear for his own safety so intensely that he considered declaring an emergency to the crew. [Dkt. 26, ¶¶s 55-56]

Plaintiffs will, if necessary, move this court for leave to amend the pleading to include a claim by Plaintiff Thomas Wiley for negligent infliction of emotional distress.

### 4. *Plaintiffs Mims, Ross, Thomas and Henry Wiley, and Del Signore Have Valid Negligence Claims*

It is true that these Plaintiffs were not denied carriage and have no contract claim against the defendants. A lack of recourse to contract is often precisely where a claim of negligence comes in. Defendants' actions caused turmoil, disruption, and unnecessary inconvenience to all Plaintiffs. The Plaintiffs remaining on board suffered embarrassment, humiliation and discomfort for the remainder of the flight, as the entire plane had witnessed the incident with the Plaintiff mother. Defendants' actions unnecessarily deprived all Plaintiffs of the opportunity to enjoy Christmas day together. Rather, the day was consumed in aggravation, logistics, and the effort to reunite. These things are all something more than mere emotional distress. And the loss of the holiday together was a taking, plain and simple. It is for a jury to decide what that taking is worth, because it resulted from a clear violation of Defendants' duty of care to all the Plaintiffs.

## Plaintiff Smithers' Intentional Infliction of Emotional Distress (IIED) Claim is Sound[2]

### 1. *Defendants' Conduct was sufficiently outrageous and intolerable*

To decide whether Defendants' conduct was sufficiently outrageous and intolerable to support a claim for IIED it is essential to consider each of Defendants' outrageous actions separately in order to then weigh them together. *Murphy v. Lowes Companies, Inc*., 2018 WL 2563408, at *3 (D. Colo. June 4, 2018) ("To determine whether a plaintiff has alleged behavior that is outrageous as a matter of law, the trial court must analyze the totality of the defendant's conduct."); *Luna v. City & Cty. of Denver*, 537 F. Supp. 798, 799 (D. Colo. 1982)(" it is the

---

[2] Upon further reflection, Plaintiffs now concede that the IIED claims of the Plaintiffs other than Plaintiff Smithers are likely insufficient to survive and will not oppose their dismissal.

10

totality of conduct that must be evaluated to determine whether outrageous conduct has occurred.")

Was it outrageous and intolerable that Ms. Smithers was kicked off the flight for exercising her Constitutional right of free speech to send out a tweet? It was outrageous, but probably not rising, alone, to the threshold of a viable claim of IIED. Was it outrageous and intolerable that an unhinged Defendant employee *struck* Ms. Smithers when she attempted to identify herself? Ridiculous and unacceptable behavior, but not alone an IIED claim. Was it outrageous and intolerable that defendants falsely informed the juvenile Plaintiffs – and all the other passengers - that their mother had committed a felony and was going to jail? That fact, standing alone, is enough to make a reasonable bystander pretty outraged, but courts could go either way on whether the outrage would be reasonably sufficient to meet the high threshold for an IIED action. But when one hears of the arbitrary and malicious refusal to allow a minor child his critically important medication, the outrage boils up and over with ease. If this act of inhumanity and callous indifference is not "intolerable," then what is? Assuredly, if Thomas had suffered an asthma attack on that flight and died, the gate agent who had refused him his medication would have been rightly branded a monster in every major news outlet.

It would be hard to find a reasonable person who would NOT think it outrageous to prevent a mother returning critical medical equipment to her son. As a matter of law it should not be difficult for a court to conclude that *at least some* reasonable persons could find this conduct sufficiently outrageous. *Donaldson v. American Banco Corp. Inc*., 945 F. Supp. 1456, 1465-66 (D. Colo. 1996).

When all four outrageous actions are viewed in totality, it is readily apparent that reasonable people could conclude that the sum of Defendants' behavior towards Ms. Smithers is

11

utterly, sufficiently, and intolerably outrageous and supports a finding of intentional infliction of emotional distress.

### 2. *Plaintiff Smithers suffered Sufficiently Severe Mental Distress*

"'The intensity and the duration of the distress are factors to be considered in determining its severity.' Moreover, although severe distress must be proved, 'in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed.'" *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 856 (10th Cir. 2005)(quoting *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1378 (1978).

"It is for the court to determine, in the first instance, whether based upon the evidence presented, severe emotional distress can be found. It is for the jury to determine whether, on the evidence, severe emotional distress in fact existed." *Breeden*, 575 P.2.d at 1377-78.

Emotional distress is by its very nature *what happens on the inside.* There is no bleeding wound to assess. Ms. Smithers has alleged that the severity of her distress was terrible and still is terrible. Defendants can offer no evidence to the contrary at this stage to strip her of the presumption to which she is entitled. Ms. Smithers is being treated for PTSD. Defendants have no insight into the severity of her condition. That is for her doctor to explain and the jury to decide.

Furthermore, the Defendants seek to focus the Court's attention solely upon the long-term severity and duration of Ms. Smithers' distress, but Defendants support this singular approach with no facts and the case law does not agree. (See, *Aguilar,* supra.) One could imagine a scenario where a person falsely tells a mother that her child has just been run over and killed and then lets her believe it for a full 10 minutes. The intense trauma of those 10 minutes could easily be determined by a jury to be sufficient to support a claim of IIED.

Defendants caused Ms. Smithers to believe that she was going to be thrown in jail – for a felony, no less. One can imagine the depth of this law-abiding woman's horror. Then she is given the additional agony of wondering if her youngest son might have a terrible attack, might even die – already blaming herself, even though it wasn't her fault. This was a terrifying and traumatic experience for everyone, and asthmatics *don't do well with stress*. "Stress and Asthma," https://www.webmd.com/asthma/guide/stress-asthma#1, accessed Sept. 27, 2018, ("Asthma, stress, and anxiety make for a vicious circle, and one that can spiral downward quickly.") Of course, Ms. Smithers knew the things that would trigger and intensify her son's attacks. If the after-tremors of such an ordeal are enough to leave a woman meeting with a therapist for PTSD then *how severe must the distress have been at the time?* This is a question for the jury – not the Defendants – to answer.

**Plaintiff Smither's Breach of Contract Claim is Sound**

Defendant Frontier admits in its memorandum that Frontier may not unilaterally refuse carriage to a ticket-holding contractee. [Dkt. 28, Pg. 17] Rather, there are only 19 specific instances in which Frontier may refuse transport without breaching the contract of carriage. *Id.* Frontier offers two of these specific delineations as attempted justifications for its breach:

1. "Interference - Any passenger who interferes with any member of the flight crew in pursuit of their duties."

2. "General Refusal - Any person whom Frontier has informed is not permitted to purchase transportation from Frontier."

*Id.*

On the face of it, neither of these conditions apply.

In ¶14 of the First Amended Complaint (Dkt. 26) Plaintiffs claim that they "complied in all respects with all placards, rules and crewmember instructions." This assertion must be taken as true for purposes of a 12(b) motion if no material facts are pled that contradict it.

Ms. Smithers silently sent a tweet into the outside universe. Defendants claim this constitutes interference with a member of the flight crew in pursuit of his duties. Plaintiffs contend that this characterization is far from self-evident. Plaintiffs contend that being offended is not equivalent to being "interfered with," and it is not sufficient to trigger the contractual exception. A jury may decide differently, but it is unquestionable that a jury may also agree. The question of "interference" is appropriately left for Defendants to prove at trial.

"General Refusal" clearly refers to individuals who purchase tickets despite being aware that they have been banned from flying Frontier. Had Ms. Smithers been informed at some prior point that she was not allowed to purchase her tickets? No, when she purchased her tickets she had not been banned from flying Frontier. To her knowledge, she is still not banned from flying Frontier. Not applicable.

**Conclusion**

All of Defendants' motions fail for the reasons set forth above, excepting Plaintiffs do not oppose dismissal of the intentional infliction of emotional distress claims brought by all Plaintiffs other than Ms. Smithers.

Respectfully Submitted,

    /s/ Thatcher A. Stone
Thatcher A. Stone (admitted PHV)
    /s/ William T. Woodrow III
William T. Woodrow III (VSB 88122)
Stone & Woodrow LLP
250 West Main Street, Suite 201
Charlottesville, VA 22902
Email: thatcher@stoneandwoodrowlaw.com
    will@stoneandwoodrowlaw.com
Phone: (855) 275-7378
*Attorneys for Plaintiffs*

## Certificate of Service

I hereby certify that on September 28, 2018 I electronically filed a true and correct copy of the foregoing document with the CM/ECF system, which will send a notification of such filing to the following:

Elaine Charlson Bredehoft, VSB No. 23766
Charlson Bredehoft Cohen & Brown, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
ebredehoft@cbcblaw.com
Counsel for Defendants
Frontier Airlines, Inc. and
Aircraft Services International, Inc.


Charlottesville, VA    September 28, 2018

By:__/s/ William T. Woodrow_____

William T. Woodrow III, Esq.
Stone & Woodrow LLP
Suite 201, Lewis & Clark Plaza
250 West Main Street
Charlottesville, VA 22902
will@stoneandwoodrowlaw.com
Telephone +1 855 275 7378/Fax +1 646 873 7529
Stone & Woodrow LLP is a Virginia Registered Limited Liability Partnership
*Counsel for Plaintiffs*