IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ANNE SMITHERS, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 1:18cv676 (TSE/IDD) |
| | ) |
| FRONTIER AIRLINES, INC., *et al.* | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS FRONTIER AIRLINES, INC. AND
AIRCRAFT SERVICES INTERNATIONAL, INC.'S REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendants Frontier Airlines, Inc. ("Frontier") and Aircraft Services International, Inc. ("ASI") (collectively, "Defendants"), respectfully submit this Reply Brief in Support of their Motion to Dismiss the First Amended Complaint [Dkt. 26] filed in this action by Plaintiffs Anne Smithers, James Mims, Ross Wiley, Thomas Wiley, Henry Wiley (by His Mother and Next Friend Anne Smithers), and Hanna Del Signore, and state as follows:

**INTRODUCTION**

Plaintiffs' Opposition to the Motion to Dismiss claims that this Court has specific personal jurisdiction over Defendants, even though all of the alleged acts occurred outside of Virginia. Based on such allegations, and the Virginia long-arm statute upon which Plaintiffs rely, a U.S. District Court in Virginia court has dismissed claims for lack of specific personal jurisdiction. *PBM Capital Invs., LLC v. Gen. Elec. Co.*, 2016 U.S. Dist. LEXIS 96055, at *7 (W.D. Va. July 22, 2016) (holding that there was no specific jurisdiction, where all alleged acts occurred outside Virginia). Defendants cited *PBM Capital Invs.* in their Motion to Dismiss, yet Plaintiffs ignore it entirely. Instead, Plaintiffs rely upon inapposite cases, which held that courts

possessed personal jurisdiction only when the plaintiffs purchased airline tickets in the forum state. But tellingly, after filing two Complaints, Plaintiffs have not alleged that they bought their tickets in Virginia. Instead, the Amended Complaint confirms that Plaintiffs are alleging that they were injured by an act of "each of the Defendants *outside the Commonwealth.*" [Dkt. 26, ¶ 16 (emphasis added)]. As such, this Court cannot hold personal jurisdiction over the Defendants, neither of which is a Virginia company.

In addition to lack of personal jurisdiction (which should remove this case from this Court entirely), Plaintiffs fail to allege a negligence claim. The Plaintiffs, other than Smithers, allege that they were merely witnesses to the alleged actions taken against Smithers. Accordingly, they hold no negligence claims. Moreover, Plaintiffs admit that there is not a tort duty separate from the duties described in the Contract of Carriage. [*See* Dkt. 31 at 8.] Thus, the Economic Loss Rule prevents any negligence claims.

Plaintiffs now admit that only Smithers can possibly have a claim for intentional infliction of emotional distress. [Dkt. 31 at 10, n.2]. As to Smithers, Plaintiffs admit that each separate act alleged fails to rise to the level of truly outrageous conduct, and occurred over only a few minutes time. Further, Plaintiffs admit that they pleaded only conclusory allegations that Smithers suffered extreme emotional distress, arguing that it "is for her doctor to explain." [Dkt. 31 at 12.] That is not the law; Smithers is required to plead more than general and conclusory allegations. Because she has not met the pleading requirements, Ms. Smithers' claim for intentional infliction of emotional distress should be dismissed.

Finally, there is no dispute that Frontier had the right to not transport Smithers under certain conditions of the Contract of Carriage. Plaintiffs simply argue that the conditions do not apply to Smithers. This is an issue the Court can decide as a matter of law.

**ARGUMENT**

**I. THIS COURT LACKS PERSONAL JURISDICTION OVER BOTH DEFENDANTS**

Plaintiffs' Opposition confirms that this Court does not possess general personal jurisdiction over Defendants. Instead, "Plaintiffs rely on Defendants' extensive contacts with the forum to support a claim for specific personal jurisdiction." [Dkt. 31, at 1.] But contacts with the forum are not sufficient, by themselves, to establish specific personal jurisdiction. "The second prong of the test for specific jurisdiction – that the plaintiff's claims arise out of the activities directed at the forum – requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278-79 (4th Cir. 2009. "If the plaintiff satisfies prongs one and two, prong three comes into play" – the assertion that personal jurisdiction is constitutionally reasonable. *Id.* Here, Plaintiffs cannot establish prong two or prong three. Thus, this Court does not possess specific personal jurisdiction over the Defendants.

**A. This Action Does Not Arise Out of Contacts With Virginia**

Plaintiffs' own Amended Complaint confirms that their claims do not arise out of contacts with Virginia. Plaintiffs specifically allege that the relevant portion of Virginia's long-arm statute in this case is Va. Code §8.01-328.1(A)(4), which states that a "court may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's [c]ausing tortious injury in this Commonwealth ***by an act or omission outside this Commonwealth***." Va. Code §8.01-328.1(A)(4) (emphasis added); *see also* Dkt. 26, at ¶ 9 (*citing* Va. Code §8.01-328.1(A)(4) as the basis for personal jurisdiction.) Moreover, Plaintiffs allege that they meet this section of the Code, because "[e]ach of the Plaintiffs has suffered tortious injury in the Commonwealth ***by an act of each of the Defendants outside the Commonwealth***." [Dkt. 26, at

3

¶ 10 (emphasis added.)]  By relying of Va. Code §8.01-328.1(A)(4), Plaintiffs "therefore by definition allege that [Defendants'] tortious conduct occurred outside of the Commonwealth." *PBM Capital Invs., LLC v. Gen. Elec. Co.*, 2016 U.S. Dist. LEXIS 96055, at *7 (W.D. Va. July 22, 2016) (holding that there was no specific jurisdiction, where all alleged acts occurred outside Virginia); *see also* Dkt. 28 at 6-7 (citing *PBM Capital Invs.*).

Plaintiffs' Opposition ignores that Plaintiffs rely on Va. Code §8.01-328.1(A)(4), and does not address *PBM Capital Invs.* at all.  *PBM Capital Invs.*, however, is entirely on point for application to this case.  There, like here, the Plaintiffs relied upon Va. Code §8.01-328.1(A)(4). 2016 U.S. Dist. LEXIS 96055, at *7.  But the Court held that specific personal jurisdiction did not exist because all of "GE's tortious conduct occurred outside of the Commonwealth." *Id*. "In particular, the fraudulent misrepresentations occurred in Sweden, Wisconsin, and Illinois, and GE's alleged doctoring of the investigation report also occurred out of the Commonwealth. There is no allegation that GE made any misrepresentations in Virginia, or that it entered or sent anything into the state at all related to the contract negotiation.  In this way, none of the conduct giving rise to this suit arose out of GE's contacts with Virginia." *Id*.  Similarly here, all of alleged acts occurred in the Denver International Airport, in Denver, Colorado.  There is not a single allegation in the Amended Complaint that occurred in Virginia.

Plaintiffs, though, argue that "[s]elling airline tickets and providing air travel services in a forum state" meet the criteria for their claims "arising from" Defendants' forum activities.  [Dkt. 31 at 3.]  Critically, however, in neither the Complaint, nor now the Amended Complaint, do Plaintiffs allege that they purchased their airline tickets in Virginia.[1]  Thus, *Selke v.*

---

[1] To the extent Plaintiffs now claim differently, such claim should not be considered because it is not part of Plaintiffs' Amended Complaint.  *See Stewart v. Holder,* 2017 U.S. Dist. LEXIS 209561, at *9, n.5 (E.D. Va. July 19, 2017) (Ellis, III, J.) ("To the extent that plaintiff's briefs include factual allegations that do not appear in her [complaint], such allegations are not

*Germanwings GmbH*, 261 F. Supp. 3d 645 (E.D. Va. 2017) (Lee, J.)("*Selke I*"), which Plaintiffs cite in their Opposition, is inapplicable, as there the Court found that specific personal jurisdiction existed because United sold tickets to Plaintiffs in Virginia. *Id*. at 653-54; *compare with Selke v. Germanwings GmbH,* 261 F. Supp. 3d 666, 674-75 (E.D. Va. 2017) (Lee, J.)("*Selke II"*) (decided the same day as *Selke I*, and holding that specific personal jurisdiction existed "because the Court finds that Plaintiffs' cause of action arises from United transacting business in the Commonwealth of Virginia.") Indeed, in *Selke II*, Judge Lee did not analyze personal jurisdiction under Va. Code §8.01-328.1(A)(4), the relevant portion of the statute here, but only reviewed Va. Code §8.01-328.1(A)(1), which allows for jurisdiction when injury directly arises from a defendant "[t]ransacting any business in this Commonwealth." *Selke II*, 261 F. Supp. 3d at 674-75. As Plaintiffs' Amended Complaint concedes, Va. Code §8.01-328.1(A)(1) is not relevant here. [*See* Dkt. 26, at ¶ 9.][2]

---

considered in assessing plaintiff's claims"); *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). Moreover, because Plaintiffs have failed twice to allege that they purchased the tickets in Virginia – a very basic fact – Plaintiffs should "not be allowed to amend [their] complaint yet a third time." *Islam v. Geren*, 2007 U.S. Dist. LEXIS 37271, at *10, n.5 (E.D. Va. May 21, 2007) (Cacheris, J.) (refusing to allow a plaintiff to amend his complaint for a third time).

[2] For similar reasons, *Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554 (M.D. N.C. 2015), cited by Plaintiffs on pages 2 and 4 of their Opposition, is inapplicable. First, *Broadu* is a Middle District of North Carolina case that did not interpret Virginia law. Second, the Plaintiff alleged that he bought the tickets in North Carolina, and took a round trip that started and ended in North Carolina. *Id*. at 561. Here, Plaintiffs do not allege that they bought the tickets in Virginia, or even that they initially flew from Virginia to Colorado.

### B. The Assertion of Personal Jurisdiction is Not Constitutionally Reasonable

Since Plaintiffs cannot establish that this action arose out of contacts with Virginia, then Plaintiffs cannot demonstrate that this Court holds specific personal jurisdiction over Defendants, and there should be no further inquiry into prong three – whether personal jurisdiction is constitutionally reasonable. *See Consulting Eng'rs Corp.*, 561 F.3d at 278-79. But even if the Court were to examine prong three, Plaintiffs have not established that personal jurisdiction in Virginia is constitutionally reasonable over Defendants.

Plaintiffs argue that defending this case in Virginia would not be an undue burden to Defendants because they "maintain a permanent presence in Virginia." [Dkt. 31, at 4, 6.] But all of the documents and witnesses in this case (other than the Plaintiffs) are located in Colorado. Forcing all of Defendants' witnesses to travel close to 1,500 miles for an event that occurred entirely in Colorado would be "gravely difficult and inconvenient." *Burger King. Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).

Plaintiffs also contend that "Virginia has a strong interest in the welfare of its citizens," [Dkt. 31, at 4], which Defendants do not dispute. But Colorado has a strong interest that alleged torts occurring within its borders be adjudicated in Colorado. In fact, Virginia shares this view. The Virginia Supreme Court has held that the settled choice of law for tort claims is *lex loci delicti* - the law of the place of the wrong. *See Jones v. R. S. Jones & Assoc*. 246 Va. 3 (1993) (holding that Florida law should apply to torts occurring in Florida).

Plaintiffs further suggest that public policy interests favor allowing jurisdiction in Plaintiffs' home forum. [Dkt. 31, at 6.] This argument is not supported by the document Plaintiffs cite - a letter from the Department of Transportation from 1996. Instead, the 22 year old letter states that airlines should not place forum selection clauses in their contracts of carriage (which Frontier has not done), and that "a passenger must be able to seek legal redress in any

6

court of competent jurisdiction." [Dkt. 31-2 at 1.] The Supreme Court has interpreted the phrase "competent jurisdiction" to mean a Court "with the power to adjudicate the case before it," *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 560 (2017), meaning the Court has to possess personal jurisdiction over the Defendants:

> A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case. Recognizing as much, this Court has stated that the phrase "court of competent jurisdiction," while "usually used to refer to subject-matter jurisdiction, has also been used on occasion to refer to a court's jurisdiction over the defendant's person."

*Id*. at 562. Thus, here where personal jurisdiction over Defendants does not exist in Virginia, this Court is not a court of "competent jurisdiction."

Finally, Defendants argue that the Warsaw and Montreal Treaties should advise this Court to allow for personal jurisdiction over Defendants. Defendants do not cite one case that has ruled that those treaties confer personal jurisdiction. Instead, "courts have consistently concluded that the Montreal Convention affords subject matter jurisdiction, not personal jurisdiction." *Royal & Sun Alliance Ins. PLC v. Ups Supply Chain Solutions, Inc.*, 2018 U.S. Dist. LEXIS 68189, at *8 (S.D.N.Y. Apr. 5, 2018); *see also e.g.*, *Tucker v. British Airways PLC*, 2017 U.S. Dist. LEXIS 206283, at *8 (W.D. Wash. Dec. 14, 2017) ("[T]he Montreal Convention establishes subject matter jurisdiction; it does not confer personal jurisdiction."); *Weinberg v. Grand Circle Travel, LCC*, 891 F. Supp. 2d 228, 237-38 (D. Mass. 2012) ("Even if plaintiffs establish subject matter jurisdiction under the Montreal Convention, the court still has to address the issue of personal jurisdiction.")

For these reasons, Plaintiffs have failed to demonstrate that this Court possesses specific jurisdiction over Defendants. Because Virginia does not possess general personal jurisdiction

7

over Defendants, this Court cannot hold personal jurisdiction over Defendants, and this case should be dismissed.

## II. PLAINTIFFS' NEGLIENCE CLAIM SHOULD BE DISMISSED

### A. There are No Allegations of Negligence Against Plaintiffs Other than Smithers

All of the allegations in Plaintiffs' Amended Complaint are related to Smithers, and not to any of the other Plaintiffs. Plaintiffs' Opposition makes this clear, as they do not argue that negligence was committed against anyone other than Smithers, but rather that the other Plaintiffs "suffered embarrassment, humiliation and discomfort for the remainder of the flight, *as the plane had witnessed the incident with the Plaintiff mother*." [Dkt. 31, at 10 (emphasis added.)] The other Plaintiffs were merely witnesses to purported negligence. In Colorado, witnesses to negligence cannot bring a claim for negligence themselves. *See Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631, 638 (Colo. App. 1998) ("If the plaintiff has observed injury to a family member but was in no danger herself, there can be no recovery.")[3]

### B. Any Duty of Defendants to Smithers was Part of the Contact of Carriage

In their Motion to Dismiss, Defendants contend that the duties owed to Smithers to provide her carriage were the same as those provided under the Contract of Carriage, and that therefore since the duty alleged to be breached by Defendants arose from the contract, under the

---

[3] Plaintiffs ague that Plaintiff Thomas Wiley suffered negligent infliction of emotional distress because Defendants would not allow Mr. Wiley's mother to return to the plane and provide him his asthma inhaler. [Dkt. 31, at 9.] But Plaintiffs have not alleged that Mr. Wiley suffered physical injury or was in the "zone of danger," by his mother being removed from the plane, which is necessary to make such a claim. *See Culpepper v. Pearl Street Building, Inc.*, 877 P.2d 877, 880 n.3 (Colo. 1994). The allegations are that Mr. Wiley was concerned about Smithers' well-being. [Dkt. 26, at ¶¶ 66-67] Such concerns do not arise to a claim for negligent infliction of emotional distress under Colorado law. Moreover, Plaintiffs have not alleged any claims for negligent infliction of emotional distress in the Amended Complaint. As discussed in Footnote 1, Plaintiffs are not permitted to amend their Complaint in their Opposition to a Motion to Dismiss. *See* Footnote 1, *supra*.

Economic Loss Rule in Colorado, Smithers' negligence claim cannot stand. [*See* Dkt. 28, at 12-13.] In their Opposition, Plaintiffs do not argue that another duty was breached. Instead, they merely allege that Smithers' claim should survive because her alleged injuries came from "HOW that carriage was denied." [Dkt. 31, at 8 (emphasis in original).] Plaintiffs cite to no cases that allow for a negligence claim based on the same duty as in a contract to survive in the face of the Economic Loss Rule, no matter how the contract duty was denied – even for common carriers.[4] As such, Plaintiffs' negligence claim should be dismissed.

### III. PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED

Plaintiffs' Amended Complaint alleges that all of the Plaintiffs plead claims for Intentional Infliction of Emotional Distress. [*See* Dkt. 26, at 14.] But in their Opposition, "[u]pon further reflection, Plaintiffs now concede that the IIED claims of the Plaintiffs other than Plaintiff Smithers are likely insufficient to survive and will not oppose their dismissal." [Dkt. 31, at 10 n. 2.] Therefore, those claims should be dismissed. Smithers' claim, likewise, should be dismissed because (1) she has not alleged "outrageous and intolerable conduct;" and (2) Smithers fails to allege sufficiently that she suffered severe mental distress.

#### A. Smithers Fails to Allege "Outrageous and Intolerable" Conduct

In Colorado, "liability for the tort of intentional infliction of emotional distress may be found only where 'the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Donaldson v. American Banco Corp. Inc.*, 945 F. Supp.

---

[4] Plaintiffs argue that there is a "heightened duty of care" for common carriers. [Dkt. 31, at 9.] But it is not at all clear from the statute that Plaintiffs cite, Colo. Rev. Stat. Ann. § 40-1-102(3)(a)(I) that airlines are considered common carriers under Colorado law, and Plaintiffs have cited no cases that have found airlines to be common carriers under Colorado tort law. Moreover, Plaintiffs have cited no cases that have found that the duties of common carriers allow a tort claim to go forward in the face of the Economic Loss Rule.

1456, 1465 (D. Colo. 1996). As Plaintiffs concede, to "determine whether a plaintiff has alleged behavior that is outrageous as a matter of law, the trial court must analyze the totality of the defendant's conduct." [Dkt. 31, at 10 (*citing Murphy v. Lowes Companies, Inc.*, 2018 WL 2563408, at *3 (D. Colo. June 4, 2018) (dismissing a claim for intentional infliction of emotional distress).]

Here, Plaintiffs admit that each one of the alleged actions taken against Smithers does not amount to a claim for Intentional Infliction of Emotional Distress. [Dkt. 31, at 11.] Plaintiffs do not dispute that the Defendants' alleged actions took only a few minutes, only a few words were said, and Smithers ultimately left the plane on her own accord. Thus, these alleged actions (which Plaintiffs admit, by themselves, are not outrageous), over just a few minutes of time, cannot meet the "very narrow type of conduct" that is found to be outrageous for a claim of intentional infliction of emotional distress to survive. *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006).

Moreover, it is insufficient that "at least some reasonable persons" could find this conduct was sufficiently outrageous, as Plaintiffs argue, citing *Donaldson*, 945 F. Supp. at 1465. [*See* Dkt. 31, at 11.] In *Donaldson*, the Court found that "[r]easonable persons could find that defendants' actions here rise to the level of outrageous conduct…. I conclude as a matter of law, however, that defendants' conduct towards [Plaintiff] does not meet the high standard" for outrageousness. 945 F. Supp. at 1466. Similarly, here, Defendants' actions do not meet the "extremely high" "level of outrageousness required" to plead a claim for intentional infliction of emotional distress under Colorado law. *Green*, 155 P.3d at 385.

### B. Smithers Fails to Allege Sufficiently Severe Mental Distress

In her Amended Complaint, Smithers alleges that she has been "diagnosed with PTSD." [Dkt. 26, at ¶ 100.] Citing to *Martensen v. Koch*, 14 U.S. Dist. LEXIS 91817, at *29 (D. Colo. June 12, 2014), Defendants explained and cited authority in their Motion to Dismiss that such a

10

conclusory allegation is insufficient to properly plead a claim for intentional infliction of emotional distress. [Dkt. 28, at 15-16.]

In their Opposition, Plaintiffs do not attempt to differentiate *Martensen*, or point to more specific allegations of emotional distress. Instead, they merely argue, without citation, that "Ms. Smithers has alleged that the severity of her distress was terrible and still is terrible," and that "Defendants have no insight into the severity of her condition. That is for her doctor to explain." [Dkt. 31, at 12.] As the Court held in *Martensen* when it dismissed a plaintiff's claim for Intentional Infliction of Emotional Distress, "[s]uch allegations are general and conclusory. Plaintiff does not allege when [s]he began to suffer anxiety or depression, when [s]he ceased to sleep, when the consequences of these events impacted h[er], or how [s]he was impacted." *Martensen,* 14 U.S. Dist. LEXIS 91817, at *29. The same reasoning applies here. Smithers' claim for Intentional Infliction of Emotional Distress should be dismissed.

### IV.     SMITHERS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

Smithers does not dispute that Defendants may refuse to fly Smithers based on the Contract of Carriage, which permits Frontier to refuse service based on terms such as:

- "Interference - Any passenger who interferes with any member of the flight crew in pursuit of their duties."

- "General Refusal - Any person whom Frontier has informed is not permitted to purchase transportation from Frontier."

[*See* Dkt. 28-1 at Sections 3.B.15 and 3.B.19.] As Defendants explained, based on these terms, Frontier did not breach the contract, because once Smithers interfered with the flight crew by making public accusations that the co-pilot was intoxicated, Frontier had a right under the Contract of Carriage to remove her from the aircraft. [Dkt. 28, at 16-17.] Smithers' only argument is that these portions of the contract do not apply to the actions she undertook. [Dkt. 31 at 13-14.] But "the determination of the effect of the instrument is a matter of law" for the

11

Court to decide. *International Technical Instruments, Inc. v. Engineering Measurements Co.*, 678 P.2d 558, 561 (Colo. App. 1983). Thus, the Court can determine now, based on the terms of the Contract of Carriage, that there was no breach.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' Motion to Dismiss [Dkt. 28], Defendants Frontier Airlines, Inc. and Aircraft Services International, Inc. respectfully request this Court dismiss the Amended Complaint.

October 4, 2018                                   Respectfully submitted,

*/S/ ELAINE CHARLSON BREDEHOFT*
Elaine Charlson Bredehoft, VSB No. 23766
Adam S. Nadelhaft, VSB 91717
David E. Murphy, VSB 90938
Charlson Bredehoft Cohen & Brown, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
ebredehoft@cbcblaw.com
anadelhaft@cbcblaw.com
dmurphy@cbcblaw.com

Stephen J. Fearon (Admitted *Pro Hac Vice*)
Bartholomew J. Banino (Admitted *Pro Hac Vice*)
Allison M. Surcouf (Admitted *Pro Hac Vice*)
Condon & Forsyth LLP
7 Times Square
New York, NY 10036
(212) 490-9100  Telephone
(212) 370-4453  Facsimile
SFearon@condonlaw.com
bbanino@condonlaw.com
asurcouf@condonlaw.com

*Counsel for Defendants Frontier Airlines, Inc.
 and Aircraft Services International, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 4th day of October, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> William T. Woodrow, III, Esq.
> Thatcher A. Stone, Esq.
> Stone & Woodrow LLP
> 250 West Main Street, Suite 201
> Lewis & Clark Plaza
> Charlottesville, VA 22902
> (855) 275-7378 Telephone
> (646) 873-7521 Facsimile
> will@stoneandwoodrowlaw.com
> thatcher@stoneandwoodrowlaw.com
> *Counsel for Plaintiffs*

> */S/ ELAINE CHARLSON BREDEHOFT*
> Elaine Charlson Bredehoft, VSB No. 23766
> Charlson Bredehoft Cohen & Brown, P.C.
> 11260 Roger Bacon Drive, Suite 201
> Reston, VA 20190
> (703) 318-6800  Telephone
> (703) 318-6808  Facsimile
> ebredehoft@cbcblaw.com
> *Counsel for Defendants*
>   *Frontier Airlines, Inc. and*
>   *Aircraft Services International, Inc.*