IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ANNE SMITHERS, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 1:18cv676 (TSE/IDD) |
| | ) |
| FRONTIER AIRLINES, INC., *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT AIRCRAFT SERVICES INTERNATIONAL, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendant Aircraft Services International, Inc. ("ASI") has moved this Court, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), for an Order dismissing the Second Amended Complaint [Dkt. 36] filed in this action by Plaintiffs Anne Smithers, James Mims, Ross Wiley, Thomas Wiley, Henry Wiley (by His Mother and Next Friend Anne Smithers), and Hanna Del Signore (collectively, "Plaintiffs"), for the reasons set forth below.

**INTRODUCTION**

In their now Second Amended Complaint, Plaintiffs attempt to bring tort claims in Virginia against ASI, a Delaware ground control company, with its principal place of business in Texas. [Dkt. 36 at ¶ 7]. Yet all of the alleged torts occurred in Colorado – at the Denver International Airport. There is no contract between ASI and Plaintiffs – and Plaintiffs have not alleged a breach of contract claim against ASI.[1] Therefore, this Court does not have personal jurisdiction over ASI for the claims asserted by Plaintiffs.

---

[1] Plaintiffs' breach of contract claim (Count V) has been brought solely against Frontier Airlines, Inc. [*See* Dkt. 36 at ¶¶ 100-07].

In addition to lack of personal jurisdiction (which should remove all claims against ASI from this Court), Plaintiffs, with the exception of Ms. Smithers, have failed to allege a negligence claim against ASI. The Second Amended Complaint is devoid of any allegations relating to Plaintiffs other than Smithers. In fact, one Plaintiff voluntarily left the aircraft, while the other Plaintiffs stayed on the plane and flew without incident. Accordingly, there can be no negligence that relate to Plaintiffs other than Smithers.

Smithers's intentional infliction of emotional distress claim should also be dismissed. Smithers has not alleged truly outrageous conduct, or that she suffered extreme emotional distress, both essential elements to the claim under Colorado law.

Finally, Henry Wiley's claim for negligent infliction of emotional distress should also be dismissed. This tort is intended for actions where the specific Plaintiff is placed in a position of unreasonable risk of physical harm such that he is in fear for his safety, and that the actions resulted in physical consequences or resulted in a long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought. Mr. Wiley has not adequately pleaded a claim that he was placed in such a position of fear of physical harm and fear for his safety, especially where he chose to remain on the plane. Further, he has not alleged sufficiently severe physical damages, or long-continued emotional distress. Thus Mr. Wiley has not met the required elements for a claim of negligent infliction of emotional distress.

## STATEMENT OF FACTS

Plaintiffs Anne Smithers, her boyfriend James Mims, Smithers' three sons (Ross Wiley, Thomas Wiley, and Henry Wiley), and Hanna Del Signore (a girlfriend of one of the sons) purchased airline tickets from Frontier, not from ASI. [Dkt. 36 at ¶¶ 4-6, 15]. After flying without incident from Washington Regan Airport to Colorado, and then spending days in Colorado, Plaintiffs were scheduled to fly on Frontier from Denver International Airport to

Washington Reagan Airport on December 25, 2017. [Dkt. 36 at ¶ 15]. Boarding for the flight was delayed for 3.5 hours due to a need for sufficient life preservers on the plane. [Dkt. 36 at ¶¶ 20, 21, 28].

During the delay, while "[p]assengers were becoming increasingly angry at the delay, voices were escalating and some began shouting at the ticket counter," [Dkt. 36 at ¶ 26], Smithers "messaged Frontier … to complain about the delay and also tweeted, '@FlyFrontier really absurd that we have a two hour delay and for the copilot to sober up!! WTH thanks for ruining Christmas." [Dkt. 36 at ¶ 24].

Despite claiming that the copilot was not sober, all of the Plaintiffs boarded the plane. [Dkt. 36 at ¶ 28]. After boarding the plane, while still in Colorado, and still at the Denver Airport, "the pilot announced that they needed to refuel," the ramp returned to the gate, the airplane door was opened and two unnamed female employees of ASI boarded the plane, "one in a red shirt and the other in green." [Dkt. 36 at ¶¶ 29-30]. These women were looking solely for Smithers. [Dkt. 36 at ¶ 31]. They first mistakenly identified another woman as Smithers, said "Anne Smithers you need to come with us," and then removed her from the plane. [Dkt. 36 at ¶¶ 31, 33]. After recognizing their mistake, however, they found Smithers. [Dkt. 36 at ¶ 32]. Allegedly, the woman in the red shirt "struck Plaintiff Smithers on the shoulder and told her to shut up." [Dkt. 36 at ¶ 32]. Smithers was removed from the plane, and told it was because the copilot was offended by her tweet. [Dkt. 36 at ¶ 36]. The other Plaintiffs were not removed from the plane.

After removing Smithers from the plane, it is alleged that the woman in the red shirt did not allow the other Plaintiffs to leave the plane. [Dkt. 36 at ¶ 38]. It is alleged that she said to the other Plaintiffs, "'[y]our mother has committed a felony and will be going to jail or will have to pay a very large fine.'" [Dkt. 36 at ¶ 39]. Despite supposedly not allowing the other Plaintiffs

3

to leave, Mims (Smithers' boyfriend), exited the plane voluntarily. [Dkt. 36 at ¶ 46]. Mims had instructed the others to stay on the plane, including Henry Wiley, who had asthma and did not have his inhaler. [Dkt. 36 at ¶¶ 43, 46].

The police then arrived and "escorted Plaintiff Smithers away from the gate." [Dkt. 36 at ¶ 53]. Smithers let her children remain on the flight, who landed safely at Reagan National Airport, without incident, including Henry Wiley. [Dkt. 36 at ¶ 58]. None of the Plaintiffs informed anyone on the flight crew during the flight that anything was wrong with any of the Plaintiffs. [Dkt. 36 at ¶¶ 56-57].

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, defendant-unlawfully-harmed-me accusation." *Id*. at 678. The importance of "evaluat[ing] complaints early in the process" in response to Rule 12(b)(6) motions has been emphasized by the Supreme Court and the Fourth Circuit as a way to deal with "the recognized problems created by 'strike suits' and the high costs of frivolous litigation." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (*citing Iqbal*, 556 U.S. at 678-79).

Accordingly, the Federal Rules fail to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679. Facts that suggest a "mere possibility" or those that are "merely consistent" with misconduct are not enough to survive a motion to dismiss. *Id*. at 678. In evaluating such motions, courts will not credit a plaintiff's "legal conclusions, [recitations of] elements of a cause of action, and bare assertions devoid of

4

further factual enhancement," and must "decline to consider 'unwarranted inferences, unreasonable conclusions, or arguments'" contained in the complaint. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

## **ARGUMENT**

### I. **THIS COURT LACKS PERSONAL JURISDICTION OVER ASI.**

Jurisdiction is a threshold issue that the court must first consider before other grounds for dismissal under Rule 12(b). *KMLLC Media, LLC v. Telemetry, Inc.*, 2015 U.S. Dist. LEXIS 145764, at *1 (E.D. Va. Oct. 27, 2015) (Cacheris, J.). On a defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the burden is on the plaintiff to prove the grounds of jurisdiction by a preponderance of the evidence. *Noble Sec., Inc. v. MIZ Engineering, Ltd.*, 611 F. Supp. 2d 513, 523 (E.D. Va. 2009) (Davis, J.). When a district court considers a Rule 12(b)(2) motion on the basis of papers alone, however, the plaintiff must only prove a *prima facie* case of personal jurisdiction. *Id.; see also Zaletel v. Prisma Labs, Inc.,* 226 F. Supp. 3d 599, 612 (E.D. Va. 2016) (Ellis, III, J.) ("plaintiff has not made a *prima facie* showing that defendant purposefully availed itself of the privilege of conducting business in Virginia, and thus there is no personal jurisdiction over defendant in this forum.").

When evaluating whether personal jurisdiction is proper over a non-resident defendant, courts undertake a two-part analysis to determine: First, whether jurisdiction exists under Virginia law, and second, whether the exercise of jurisdiction would comport with federal due process. *See New Wellington Fin. Corp. v. Flagship Resort Dev. Co*., 416 F.3d 290, 294 (4th Cir. 2005).

### A.  Only Virginia Code § 8.01 -328.1(A)(4) Applies to ASI.

Plaintiffs allege that this Court has personal jurisdiction over ASI based on Virginia Code § 8.01-328.1(A), specifically, subsections 1, 3, and 4, which "provide… that a court may exert personal jurisdiction over a person 'who acts directly or through an agent, as to a cause of action arising from the person's: 1. Transacting any business in this Commonwealth; ... 3. Causing tortious injury by an act or omission in this Commonwealth; [and] 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." [Dkt. 36 at ¶ 9].

ASI has not contracted with Plaintiffs.  Nor were any of the torts alleged to have taken place in Virginia.  Therefore, as to ASI, Plaintiffs can only be alleging that §8.01-328.1(4) applies to ASI, that is, "[c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth" – in this case, Colorado.

### B.  This Court Lacks Specific Jurisdiction Over ASI.

The personal jurisdiction inquiry does not end with Virginia's long-arm statute, because Plaintiffs "must not only meet the requirements of the long-arm statute, [they] must also prove that this Court's exercise of jurisdiction would not violate the due process requirements of the United States Constitution."  *Bay Tobacco, LLC v. Bell Quality Tobacco Prods*., LLC, 261 F. Supp. 2d 483, 495 (E.D. Va. 2003) (Hudson, J.)  In the case of out-of-state defendants, such as ASI, the Court may exercise personal jurisdiction "either by a proper 'finding of specific jurisdiction based on conduct connected to the suit or by a proper finding of general jurisdiction.'"  *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2012) (*quoting ALS Scan, Inc. v. Dig. Serv. Consultants, Inc*., 293 F.3d 707, 711 (4th Cir. 2002)).  Plaintiffs have

6

previously admitted that this Court does not possess general personal jurisdiction over ASI. [Dkt. 31 at 1]. Therefore, the only issue is whether this Court possesses specific jurisdiction over ASI.

Specific jurisdiction exists in a forum when the suit arises out of a defendant's specific contacts with that forum as it relates to the matter at issue. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1780 (2017). Personal jurisdiction is claim specific, meaning "the Court must have jurisdiction over each claim it decides." *See McNeil v. Biaggi Prods., LLC*, 2017 U.S. Dist. LEXIS 93185, at *16 (E.D. Va. June 16, 2017) (Lauck, J.).

As discussed above, Plaintiffs can only be relying on Virginia Code § 8.01-328.1(A)(4), and "therefore by definition allege that [Defendants'] tortious conduct occurred outside of the Commonwealth." *PBM Capital Invs., LLC v. Gen. Elec. Co.*, 2016 U.S. Dist. LEXIS 96055, at *7 (W.D. Va. July 22, 2016) (holding that there was no specific jurisdiction, where all alleged acts occurred outside Virginia). In fact, all of alleged acts occurred in the Denver International Airport, in Denver, Colorado. There is not a single allegation against ASI in the Second Amended Complaint of conduct that took place in Virginia.

Knowing that none of the alleged acts were in Virginia, Plaintiffs allege that "their injuries continued in the Commonwealth." [Dkt. 36 at ¶ 6]. But injury to Virginia Plaintiffs is not enough to rise to specific jurisdiction. "Although the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). Here, it was merely incidental that the Plaintiffs happened to reside in Virginia, certainly as it relates to ASI's conduct in the Denver airport. Plaintiffs have failed to allege that ASI "expressly aimed [its] tortious conduct at

the forum, such that the forum can be said to be the focal point of the tortious activity." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009).

Where, as here, "Plaintiff's tort claims arise only out of the defendants' alleged activities outside of Virginia, specific jurisdiction cannot exist." *PBM*, 2016 U.S. Dist. LEXIS 96055, at *8; *see also Bay Tobacco*, 261 F. Supp. 2d at 497 (same).

### C. The Airline Cases Do Not Teach that this Court Possesses Personal Jurisdiction Over ASI.

There are a few cases that Plaintiffs have cited previously to contend that this Court has personal jurisdiction over ASI. First, none of those cases involved a company that provides "ground services" such as ASI; [Dkt. 36 at ¶ 7] instead, the cited cases involved airlines.

Second, the cases are inapplicable. *Selke v. Germanwings GmbH,* 261 F. Supp. 3d 666 (E.D. Va. 2017) (Lee, J.)("*Selke I"*) involved an airline crash that occurred "between Barcelona and Dusseldorf" when the co-pilot locked himself in the cockpit and caused the plane to crash into the French Alps, killing all 6 crew members and 144 passengers, including Virginia residents. 261 F. Supp. 3d at 670. The family of the Virginia residents sued United Airlines, who "sold decedents tickets not only for the flight that carried them to Europe, but also for air carriage on Lufthansa and Germanwings for the additional legs between European destinations." *Id*. at 674. Judge Lee held that Virginia possessed specific personal jurisdiction over United because it sold the airline tickets to Virginia residents for the crash that occurred. *Id*. Here, ASI did not contract with any of the Plaintiffs, for the purchase of airline tickets or otherwise, and its only contact with the Plaintiffs was in Colorado.

Similarly, in *Selke v. Germanwings GmbH*, 261 F. Supp. 3d 645 (E.D. Va. 2017) (Lee, J.)("*Selke II"*) (decided the same day as *Selke I*), Judge Lee held that Virginia possessed personal jurisdiction over international airlines because they "expressly authorized [United to] sell its

8

tickets in Virginia" for the crash that took place in Europe. 261 F. Supp. 3d at 649. In arriving at this ruling, Judge Lee relied on cases, "where courts held foreign airlines subject to personal jurisdiction in the forum where they sold tickets through an express agreement with an agent" *id*. at 654, rather than a domestic ground company such as ASI. ASI did not contract with Frontier to sell Plaintiffs the tickets at issue. Again, ASI's only contact with Plaintiffs was in Colorado.

*Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554 (M.D. N.C. 2015) is also not applicable. In *Broadus,* a 68 year-old North Carolina resident purchased an airline ticket for a Delta flight from Greensboro, North Carolina, to Pensacola, Florida, with a layover in Atlanta, Georgia. 101 F. Supp. 3d at 557. On the initial trip from North Carolina, Delta transported Plaintiff from Greensboro to Atlanta and provided her wheelchair assistance for the flights, but when Plaintiff went to board her Delta flight from Atlanta to Pensacola, a Delta employee assisted her, but did so negligently, resulting in injuries to Plaintiff's knees and back requiring surgery. *Id.* Based on these facts, the Court held that North Carolina possessed specific personal jurisdiction over Delta. *Id*. at 560-61. Unlike *Broadus*, the alleged torts did not occur on the initial travel from Virginia. Rather, Plaintiffs flew to Colorado, stayed in Colorado for days, and then the alleged torts occurred in the Denver Airport. Just as Virginia would not possess specific personal jurisdiction over a restaurant in the Denver Airport if an injury occurred in the food court, neither should Virginia possess specific personal jurisdiction over ASI for alleged torts that occurred at the Denver Airport.

In fact, this case is more akin to *Mali v. British Airways*, 2018 U.S. Dist. LEXIS 112994 (S.D.N.Y. July 6, 2018). In *Mali*, the Plaintiff was not allowed to board his flight in Mumbai, India because he did not possess adequate documentation, and was stranded outside the airport. *Id*. at *6. The Court held that New York did not possess specific personal jurisdiction over

9

Plaintiff's negligence and negligent infliction of emotional distress claims because "[t]hough Defendant inarguably engages in purposeful activities targeting airports and travelers located in New York, there exists no 'substantial relationship' between that business activity and Plaintiff's claims in this lawsuit." *Id*. at *17. That is, the Court held that there is no specific personal jurisdiction in New York, because the "majority of [Plaintiff's] tort claims arise out of Defendant's conduct in the Mumbai airport, and while [Plaintiff's] ticket purchase transaction may have passed through or occurred in New York, such facts are insufficient to warrant the exercise of specific jurisdiction over these claims." *Id*. at 18.* The same should be true here, where all of Plaintiffs' tort claims arise out of ASI's alleged conduct in the Denver, Colorado airport.

## II. PLAINTIFFS' NEGLIENCE CLAIM (COUNT I) SHOULD BE DISMISSED AGAINST ALL BUT SMITHERS

There are no allegations of negligence against Plaintiffs other than Smithers. The Negligence claim (Count I) of the Second Amended Complaint focuses on actions allegedly taken against Anne Smithers – and Anne Smithers alone. *See e.g.,* Second Amended Complaint, [Dkt. 36] at ¶ 65 ("Defendants breached their duty to Plaintiffs by baselessly ejecting Plaintiff Smithers from the aircraft, defaming her in front of all the passengers heading to Virginia, forcibly separating her from her children, and abusing process by calling the police who confirmed Plaintiff Smithers had done nothing wrong."); Dkt. 36 at ¶ 66 ("Defendants breached their duty of a common carrier to the Plaintiffs by the cruel and callous treatment to which they subjected Plaintiff Smithers and her traveling family, including striking Plaintiff Smithers, falsely accusing her of a crime, informing the family that she had committed a felony and would likely be incarcerated within earshot of other Virginia bound passengers, and then refusing to allow Plaintiff Smithers to return needed medical equipment to her dangerously asthmatic son.").

10

There are no allegations about the other Plaintiffs. In fact, Plaintiff Mims exited the plane voluntarily, (Dkt. 36 at ¶ 46), and the other Plaintiffs stayed on the plane and landed safely at Reagan National Airport, without incident. [Dkt. 36 at ¶¶ 43, 46]. "Without any factual matter or substance, the claim[s] [are] not plausible," and thus all of the causes of action brought by Plaintiffs James Mims, Ross Wiley, Thomas Wiley, Henry Wiley, and Hanna Del Signore should be dismissed. *Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 880 (E.D. Va. 2012) (Gibney, Jr., J.).

### III. SMITHERS'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (COUNT IV) SHOULD BE DISMISSED

Under Colorado law, in order to properly allege an intentional infliction of emotional distress claim, a plaintiff must allege that "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000). Whether conduct is "outrageous and intolerable" or whether emotional distress is "severe" are issues of law for the court to decide. *Donaldson v. American Banco Corp. Inc.*, 945 F. Supp. 1456, 1465-66 (D. Colo. 1996) ("the court must decide in the first instance whether reasonable persons could differ on the conduct being outrageous."); *Martensen v. Koch,* 14 U.S. Dist. LEXIS 91817, at *29 (D. Colo. June 12, 2014) (dismissing a complaint because "Plaintiff has not articulated a manifestation of severe mental suffering."). Ultimately, "[t]he tort of intentional infliction of emotional distress is extremely limited." *Katz v. City of Aurora*, 85 F. Supp. 2d 1012, 1021 (D. Colo. 2000).

Smithers fails to properly allege that the purported conduct against her was sufficiently "outrageous and intolerable" or that her emotional distress was adequately "severe," and therefore, dismissal of Count Four is proper.

11

### 1. Smithers Failed to Allege "Outrageous and Intolerable" Conduct.

The tort of intentional infliction of emotional distress "was designed to create liability for a very narrow type of conduct." *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006). Consequently,

> the level of outrageousness required to [satisfy the first element of the cause of action] is extremely high. . . . Only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice.

*Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003); *see also Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir. 1988) (same); *McCarty v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126 (Colo. App. 2000) (same). As such, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Rawson v. Sears Roebuck & Co.*, 530 F. Supp. 776, 780 (D. Colo. 1982). Further, the mere accusation of a crime or allegations of defamation fail to demonstrate outrageous conduct. *See e.g., Katz*, 85 F. Supp. 2d at 1021 ("Discharge and alleged defamatory remarks do not support a claim of intentional infliction of emotional distress."); *Maiteki v. Marten Transp. Ltd.*, 4 F. Supp. 3d 1249, 1256 (D. Colo. 2013) (repeated reporting of false information to a credit agency does not satisfy the IIED standard); *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (claim that employer coerced employee into conducting an illegal undercover narcotics investigation and laundering money to fund such investigation, and then firing employee for such investigation was not outrageous conduct). For example, in *Fischer v. Klescewski*, 2017 U.S. Dist. LEXIS 41346, at *52-53 (D. Colo. Mar. 22, 2017), the District Court dismissed a claim of intentional infliction of emotional distress for failure to meet the "outrageous" standard where it was alleged that the defendant reported to police that the plaintiff called him a slur multiple times to his face, in a physically threatening manner; and the

defendant falsely told the 911 operator that the disturbance was ongoing multiple times. The Court held that it "cannot condone such conduct, but the Court finds that these allegations do not meet 'the exacting standard required to state a claim for intentional infliction of emotional distress.'" *Id*.

The same rationale should apply here. Even if the Court does not condone the actions of the women in the red and green shirts, it does not rise to the level of outrageous to meet the standards of the Intentional Infliction of Emotional Distress tort. The actions took only a few minutes, only a few words were said, and Smithers ultimately left the plane on her own accord. [Dkt. 36 at ¶¶ 29-54.] Nothing in the Second Amended Complaint satisfies the "very narrow type of conduct" that is found to be outrageous for a claim of intentional infliction of emotional distress to survive. *Green*, 155 P.3d at 385.

### 2. Smithers Failed to Allege Sufficiently Severe Mental Distress.

In order to properly plead a claim for the mental distress necessary for an intentional infliction of emotional distress, a plaintiff must plead "manifestation of severe mental suffering." *Martensen,* 14 U.S. Dist. LEXIS 91817, at *29. Such claims cannot be general and conclusory. *Id.* Colorado courts have held that that complaints of anxiety and depression impacting sleep, as well as allegations that a plaintiff "broke down mentally," or that she endured emotional pain and suffering, mental anguish, inconvenience and loss of enjoyment of life, are not enough to plead a claim of severe mental stress. *See e.g., Martensen,* 14 U.S. Dist. LEXIS 91817, at *29-30; *Murphy v. Lowes Cos.*, 2018 U.S. Dist. LEXIS 94494, at *12 (D. Colo. June 4, 2018) (holding that a plaintiff did not allege the necessary mental distress where she claimed that she "broke down mentally"). "It is fair to say that headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like would probably not suffice anywhere." *Martensen,* 14 U.S. Dist. LEXIS 91817, at *30.

13

Smithers alleged that she has been "diagnosed with PTSD." [Dkt. 36 at ¶¶ 87, 99]. But she does not allege any symptoms, severity of symptoms, or anything other than the purported diagnosis. This would be no different than allegations of depression and anxiety, which the Colorado courts have held are insufficient. Without more, the emotional distress Smithers claims to have experienced fails the "severity" element of an intentional infliction of emotional distress claim as a matter of law, and therefore, Count Four should be dismissed on this basis as well.

## IV. HENRY WILEY'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM (COUNT VI) SHOULD BE DISMISSED.

In their third effort, Plaintiffs now allege for the first time that Plaintiff Henry Wiley has a claim of negligent infliction of emotional distress, because ASI would not allow Mr. Wiley's mother to return to the plane and provide him his asthma inhaler. [Dkt. 36 at ¶¶ 108-13]. This is in spite of the fact that Mims left the plane voluntarily, and instructed the others to stay on the plane, including Henry Wiley, who had asthma and did not have his inhaler. [Dkt. 36 at ¶¶ 43, 46]. Wiley alleges that he was in "acute fear for his safety," and that this fear during the flight "caused the physical symptoms of an asthma attack to begin to manifest, resulting in wheezing and tightness of breath." [Dkt. 36 at ¶¶ 110-11]. Yet, at no time during the flight did any of the Plaintiffs inform anyone on the flight crew that Wiley was supposedly suffering any symptoms. [Dkt. 36 at ¶¶ 56-57]. Moreover, those symptoms subsided after the flight was complete. [Dkt. 36 at ¶ 58]. Thus, Wiley has not alleged serious physical manifestation or mental illness to support a claim for negligent infliction of emotional distress.

This tort is intended for actions where the plaintiff is placed in a position of unreasonable risk of physical harm such that he is in fear for his safety, and that the actions resulted in physical consequences or resulted in a long-continued emotional disturbance, and that the plaintiff's fear

was the cause of the damages sought. *Colwell v. Mentzer Investments, Inc.,* 973 P.2d 631, 638 (Colo. App. 1998). The plaintiff must also show that he suffered physical injury or was in the "zone of danger." *Culpepper v. Pearl Street Building, Inc.,* 877 P.2d 877, 880 n.3 (Colo. 1994); *Towns v. Anderson,* 195 Colo. 517, 520, 579 P.2d 1163, 1165 (1978). Further "if the plaintiff has observed injury to a family member but was in no danger herself, there can be no recovery." *Colweel,* 973 P.2d at 638 (*citing Kimelman v. City of Colorado Springs,* 775 P.2d 51 (Colo. App. 1988).

There is nothing in the Second Amended Complaint that suggests that Defendant ASI engaged in any action that placed Mr. Wiley in an unreasonable risk of physical harm or caused Mr. Wiley to be in fear for his safety or in the zone of danger. Effectively what has been pleaded is that because Mr. Wiley did not have possession of his inhaler (yet did not exit the plane like Mr. Mims), flying on the airplane placed him in unreasonable risk of his safety and placed him in a zone of danger.

More significantly, Mr. Wiley has not alleged sufficiently severe physical damages, or long-continued emotional distress. *Atsepoyi v. Tandy Corp.*, 51 F. Supp. 2d 1120, 1127 (D. Colo 1999) illustrates this point under Colorado law. There, the District Court held that the Plaintiff had not alleged sufficient injury for a claim of negligent infliction of emotional distress, where he claimed being "'physically distraught,' sustaining 'shock to his nervous system' and suffering 'severe emotional distress.'" *Id.* "While there is no precise definition of what constitutes a 'serious physical manifestation or mental illness,' courts have found generalized symptoms such as headaches, insomnia, crying spells, vomiting and diarrhea are insufficient." *Id.* (citing *Hernandez v. McDonald's Corp*., 975 F. Supp. 1418, 1428 (D. Kan. 1997); *Schweitzer-Reschke v. Avnet, Inc.*, 874 F. Supp. 1187, 1196 (D. Kan. 1995)). Similarly here, where Wiley has alleged wheezing and tightness of breath that did not need any sort of medical attention, and

eventually subsided, the Second Amended Complaint fails to state the necessary allegations to support a claim for negligent infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, Defendant Aircraft Services International, Inc. respectfully requests this Court dismiss the Second Amended Complaint.

November 14, 2018              Respectfully submitted,

*/S/ ELAINE CHARLSON BREDEHOFT*
Elaine Charlson Bredehoft, VSB No. 23766
Adam S. Nadelhaft, VSB 91717
David E. Murphy, VSB 90938
Charlson Bredehoft Cohen & Brown, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
ebredehoft@cbcblaw.com
anadelhaft@cbcblaw.com
dmurphy@cbcblaw.com

Stephen J. Fearon (Admitted *Pro Hac Vice*)
Bartholomew J. Banino (Admitted *Pro Hac Vice*)
Allison M. Surcouf (Admitted *Pro Hac Vice*)
Condon & Forsyth LLP
7 Times Square
New York, NY 10036
(212) 490-9100  Telephone
(212) 370-4453  Facsimile
SFearon@condonlaw.com
bbanino@condonlaw.com
asurcouf@condonlaw.com

*Counsel for Defendant*
*Aircraft Services International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

>William T. Woodrow, III, Esq.
>Thatcher A. Stone, Esq.
>Stone & Woodrow LLP
>250 West Main Street, Suite 201
>Lewis & Clark Plaza
>Charlottesville, VA 22902
>(855) 275-7378 Telephone
>(646) 873-7521 Facsimile
>will@stoneandwoodrowlaw.com
>thatcher@stoneandwoodrowlaw.com
>*Counsel for Plaintiffs*

>*/S/ ELAINE CHARLSON BREDEHOFT*
>Elaine Charlson Bredehoft, VSB No. 23766
>Charlson Bredehoft Cohen & Brown, P.C.
>11260 Roger Bacon Drive, Suite 201
>Reston, VA 20190
>(703) 318-6800  Telephone
>(703) 318-6808  Facsimile
>ebredehoft@cbcblaw.com
>*Counsel for Defendant*
>*Aircraft Services International, Inc.*