IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

|  |  |  |
|---|---|---|
| ANNE SMITHERS, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 1:18cv676 (TSE/IDD) |
| FRONTIER AIRLINES, INC., *et al.* | ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANT FRONTIER AIRLINES, INC.'S MEMORANDUM
### IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendant Frontier Airlines, Inc. ("Frontier") has moved this Court, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), for an Order dismissing the Second Amended Complaint [Dkt. 36] filed in this action by Plaintiffs Anne Smithers, James Mims, Ross Wiley, Thomas Wiley, Henry Wiley (by His Mother and Next Friend Anne Smithers), and Hanna Del Signore (collectively, "Plaintiffs"), for the reasons set forth below.

### INTRODUCTION

In their now Second Amended Complaint, Plaintiffs claim that they may bring tort claims and a breach of contract claim against Frontier in Virginia, based solely on the allegation that Plaintiffs purchased their airline tickets in Virginia. [Dkt. 36 at ¶¶ 4-5]. Yet all of the alleged torts, and the alleged breach of the contract, took place in Colorado – at the Denver International Airport. Therefore, this Court does not have personal jurisdiction over Frontier for this matter.

If the Court finds that Virginia does not possess personal jurisdiction over the tort claims, but does possess personal jurisdiction on the remaining contract claim, then this Court does not possess subject matter jurisdiction over the contract claim, because the breach of contract claim

(Count V) is only seeking $76.40 in damages, (Dkt. 36 at ¶¶ 107, 119), well below the $75,000 statutory jurisdictional amount.

In addition to lack of jurisdiction (which should remove all claims against Frontier from this Court), Plaintiffs fail to allege a negligence claim. The Second Amended Complaint is devoid of any allegations relating to Plaintiffs other than Smithers. In fact, one Plaintiff voluntarily left the aircraft, while the other Plaintiffs stayed on the plane and flew without incident. Accordingly, there can be no negligence that relate to Plaintiffs other than Smithers. Moreover, Smithers's negligence claim should be dismissed because any duty that any Frontier owed to her is covered by the Contract of Carriage, which thus eliminates any negligence claim.

Smithers's intentional infliction of emotional distress claim should also be dismissed. Smithers has not alleged truly outrageous conduct, or that she suffered extreme emotional distress, both essential elements to the claim under Colorado law.

Finally, Henry Wiley's claim for negligent infliction of emotional distress should also be dismissed. This tort is intended for actions where the specific Plaintiff is placed in a position of unreasonable risk of physical harm such that he is in fear for his safety, and that the actions resulted in physical consequences or resulted in a long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought. Mr. Wiley has not adequately pleaded a claim that he was placed in such a position of fear of physical harm and fear for his safety, especially where he chose to remain on the plane. Further, he has not alleged sufficiently severe physical damages, or long-continued emotional distress. Thus Mr. Wiley has not met the required elements for a claim of negligent infliction of emotional distress.

**STATEMENT OF FACTS**

Plaintiffs Anne Smithers, her boyfriend James Mims, Smithers' three sons (Ross Wiley, Thomas Wiley, and Henry Wiley), and Hanna Del Signore (a girlfriend of one of the sons) purchased airline tickets from Frontier. [Dkt. 36 at ¶¶ 4-6, 15]. After flying without incident from Washington Regan Airport to Colorado, and then spending days in Colorado, Plaintiffs were scheduled to fly from Denver International Airport to Washington Reagan Airport on December 25, 2017. [Dkt. 36 at ¶ 15]. Boarding for the flight was delayed for 3.5 hours due to a need for sufficient life preservers on the plane. [Dkt. 36 at ¶¶ 20, 21, 28].

During the delay, while "[p]assengers were becoming increasingly angry at the delay, voices were escalating and some began shouting at the ticket counter," [Dkt. 36 at ¶ 26], Smithers "messaged Frontier … to complain about the delay and also tweeted, '@FlyFrontier really absurd that we have a two hour delay and for the copilot to sober up!! WTH thanks for ruining Christmas." [Dkt. 36 at ¶ 24].

Despite claiming that the copilot was not sober, all of the Plaintiffs boarded the plane. [Dkt. 36 at ¶ 28]. After boarding the plane, while still in Colorado, and still at the Denver Airport, "the pilot announced that they needed to refuel," the ramp returned to the gate, the airplane door was opened and two unnamed female employees of Aircraft Services International, Inc. ("ASI") boarded the plane, "one in a red shirt and the other in green." [Dkt. 36 at ¶¶ 29-30]. These women were looking solely for Smithers. [Dkt. 36 at ¶ 31]. They first mistakenly identified another woman as Smithers, said "Anne Smithers you need to come with us," and then removed her from the plane. [Dkt. 36 at ¶¶ 31, 33]. After recognizing their mistake, however, they found Smithers. [Dkt. 36 at ¶ 32]. Allegedly, the woman in the red shirt "struck Plaintiff Smithers on the shoulder and told her to shut up." [Dkt. 36 at ¶ 32]. Smithers was removed

from the plane, and told it was because the copilot was offended by her tweet. [Dkt. 36 at ¶ 36]. The other Plaintiffs were not removed from the plane.

After removing Smithers from the plane, it is alleged that the woman in the red shirt did not allow the other Plaintiffs to leave the plane. [Dkt. 36 at ¶ 38]. It is alleged that she said to the other Plaintiffs, "'[y]our mother has committed a felony and will be going to jail or will have to pay a very large fine.'" [Dkt. 36 at ¶ 39]. Despite supposedly not allowing the other Plaintiffs to leave, Mims (Smithers' boyfriend), exited the plane voluntarily. [Dkt. 36 at ¶ 46]. Mims instructed the others to stay on the plane, including Henry Wiley, who had asthma and did not have his inhaler. [Dkt. 36 at ¶¶ 43, 46].

The police then arrived and "escorted Plaintiff Smithers away from the gate." [Dkt. 36 at ¶ 53]. Smithers let her children remain on the flight, who landed safely at Reagan National Airport, without incident, including Henry Wiley. [Dkt. 36 at ¶ 58]. None of the Plaintiffs informed anyone on the flight crew during the flight that anything was wrong with any of the Plaintiffs. [Dkt. 36 at ¶¶ 56-57].

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, defendant-unlawfully-harmed-me accusation." *Id*. at 678. The importance of "evaluat[ing] complaints early in the process" in response to Rule 12(b)(6) motions has been emphasized by the Supreme Court and the Fourth Circuit as a way to deal with "the recognized

problems created by 'strike suits' and the high costs of frivolous litigation." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (*citing Iqbal*, 556 U.S. at 678-79).

Accordingly, the Federal Rules fail to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679. Facts that suggest a "mere possibility" or those that are "merely consistent" with misconduct are not enough to survive a motion to dismiss. *Id.* at 678. In evaluating such motions, courts will not credit a plaintiff's "legal conclusions, [recitations of] elements of a cause of action, and bare assertions devoid of further factual enhancement," and must "decline to consider 'unwarranted inferences, unreasonable conclusions, or arguments'" contained in the complaint. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER FRONTIER.

Jurisdiction is a threshold issue that the court must first consider before other grounds for dismissal under Rule 12(b). *KMLLC Media, LLC v. Telemetry, Inc.*, 2015 U.S. Dist. LEXIS 145764, at *1 (E.D. Va. Oct. 27, 2015) (Cacheris, J.). On a defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the burden is on the plaintiff to prove the grounds of jurisdiction by a preponderance of the evidence. *Noble Sec., Inc. v. MIZ Engineering, Ltd.*, 611 F. Supp. 2d 513, 523 (E.D. Va. 2009) (Davis, J.). When a district court considers a Rule 12(b)(2) motion on the basis of papers alone, however, the plaintiff must only prove a *prima facie* case of personal jurisdiction. *Id.; see also Zaletel v. Prisma Labs, Inc.,* 226 F. Supp. 3d 599, 612 (E.D. Va. 2016) (Ellis, III, J.) ("plaintiff has not made a *prima facie* showing that defendant purposefully availed itself of the privilege of conducting business in Virginia, and thus there is no personal jurisdiction over defendant in this forum.").

When evaluating whether personal jurisdiction is proper over a non-resident defendant, courts undertake a two-part analysis to determine: First, whether jurisdiction exists under Virginia law, and second, whether the exercise of jurisdiction would comport with federal due process. *See New Wellington Fin. Corp. v. Flagship Resort Dev. Co.*, 416 F.3d 290, 294 (4th Cir. 2005).

Plaintiffs allege that this Court has personal jurisdiction over ASI based on Va. Code §8.01-328.1(A), specifically, subsections 1, 3, and 4, which "provides that a court may exert personal jurisdiction over a person 'who acts directly or through an agent, as to a cause of action arising from the person's: 1. Transacting any business in this Commonwealth; ... 3. Causing tortious injury by an act or omission in this Commonwealth; [and] 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." [Dkt. 36 at ¶ 9].

The personal jurisdiction inquiry does not end with Virginia's long-arm statute, however, because Plaintiffs "must not only meet the requirements of the long-arm statute, [they] must also prove that this Court's exercise of jurisdiction would not violate the due process requirements of the United States Constitution." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods.*, LLC, 261 F. Supp. 2d 483, 495 (E.D. Va. 2003) (Hudson, J.) In the case of out-of-state defendants, like Frontier, the Court may exercise personal jurisdiction "either by a proper 'finding of specific jurisdiction based on conduct connected to the suit or by a proper finding of general jurisdiction.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2012) (*quoting ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)). Plaintiffs have previously admitted that this Court does not possess general personal jurisdiction over Frontier.

[Dkt. 31 at 1.] Therefore, the only issue is whether this Court possesses specific jurisdiction over Frontier.

### A. This Court Lacks Specific Jurisdiction Over the Tort Claims Against Frontier

Specific jurisdiction exists in a forum when the suit arises out of a defendant's specific contacts with that forum as it relates to the matter at issue. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1780 (2017). Personal jurisdiction is claim specific, meaning "the Court must have jurisdiction over each claim it decides." *See McNeil v. Biaggi Prods., LLC*, 2017 U.S. Dist. LEXIS 93185, at *16 (E.D. Va. June 16, 2017) (Lauck, J.).

None of the alleged torts took place in Virginia. Therefore, for the tort claims, Plaintiffs can only rely on Va. Code § 8.01-328.1(A)(4), and "therefore by definition allege that [Defendants'] tortious conduct occurred outside of the Commonwealth." *PBM Capital Invs., LLC v. Gen. Elec. Co.*, 2016 U.S. Dist. LEXIS 96055, at *7 (W.D. Va. July 22, 2016) (holding that there was no specific jurisdiction, where all alleged acts occurred outside Virginia). Indeed, all of alleged acts occurred in the Denver International Airport, in Denver, Colorado. There is not a single allegation against Frontier in the Second Amended Complaint that occurred in Virginia.

Knowing that none of the alleged acts occurred in Virginia, Plaintiffs allege that "their injuries continued in the Commonwealth." [Dkt. 36 at ¶ 6]. But injury to Virginia Plaintiffs is not enough to rise to specific jurisdiction. "Although the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). Here, it was merely incidental that the Plaintiffs happened to reside in Virginia, and thus Plaintiffs have failed to allege that

7

Frontier "expressly aimed [its] tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009).

Nor do the handful of airlines cases that Plaintiffs have previously cited support Plaintiffs' argument that this Court has personal jurisdiction over Frontier. *Selke v. Germanwings GmbH,* 261 F. Supp. 3d 666 (E.D. Va. 2017) (Lee, J.)("*Selke I*") involved an airline crash that occurred "between Barcelona and Dusseldorf" when the co-pilot locked himself in the cockpit and caused the plane to crash into the French Alps, killing all 6 crew members and 144 passengers, including Virginia residents. 261 F. Supp. 3d at 670. The family of the Virginia residents sued United Airlines, who "sold decedents tickets not only for the flight that carried them to Europe, but also for air carriage on Lufthansa and Germanwings for the additional legs between European destinations." *Id*. at 674. Judge Lee held that Virginia possessed specific personal jurisdiction over United because it sold the airline tickets to Virginia residents for the crash that occurred. *Id*. In this case, the flight never took off from the Denver Airport. All of the alleged torts occurred at the Denver Airport. In the Fourth Circuit, a plaintiff's claims arise out of a defendant's activity in a forum where defendant's activity is "the genesis of [the] dispute." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009). Here, the genesis of the dispute is where the torts occurred, Denver, Colorado.

Similarly, in *Selke v. Germanwings GmbH*, 261 F. Supp. 3d 645 (E.D. Va. 2017) (Lee, J.)("*Selke II*") (decided the same day as *Selke I*), Judge Lee held that Virginia possessed personal jurisdiction over international airlines because they "expressly authorized [United to] sell its tickets in Virginia" for the crash that occurred. 261 F. Supp. 3d at 649. In arriving at this ruling, Judge Lee relied on cases, "where courts held foreign airlines subject to personal jurisdiction in the forum where they sold tickets through an express agreement with an agent," *id*. at 654, rather

8

than a domestic airline such as Frontier.  Once again, since the flight did not take off, and all of the alleged torts occurred at the Denver Airport, the genesis of the dispute is in Colorado, not Virginia.

*Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554 (M.D. N.C. 2015) is also not applicable.  There, a 68 year-old North Carolina resident purchased an airline ticket for a Delta flight from Greensboro, North Carolina, to Pensacola, Florida, with a layover in Atlanta, Georgia.  101 F. Supp. 3d at 557.  On the initial trip from North Carolina, Delta transported Plaintiff from Greensboro to Atlanta and provided her wheelchair assistance for the flights, but when Plaintiff went to board her Delta flight from Atlanta to Pensacola, a Delta employee assisted her, but did so negligently, resulting in injuries to Plaintiff's knees and back.  *Id.*  Based on these facts, the Court held that North Carolina possessed specific personal jurisdiction over Delta.  *Id*. at 560-61.  Unlike in *Broadus*, the alleged torts did not take place on the initial travel from Virginia.  Rather, Plaintiffs flew to Colorado, stayed there for days, and then the alleged torts occurred in the Denver Airport.  Just as Virginia would not possess specific personal jurisdiction over a restaurant in the Denver Airport if an injury took place in the food court, neither should Virginia have specific personal jurisdiction over Frontier for alleged torts that occurred in the Denver Airport.

In fact, this case is more akin to *Mali v. British Airways*, 2018 U.S. Dist. LEXIS 112994 (S.D.N.Y. July 6, 2018).  In *Mali,* the Plaintiff was not allowed to board his flight because of lack of appropriate documentation, and was consequently stranded  in Mumbai, India outside of the airport.  *Id*. at \*6.  The Court held that New York did not possess specific personal jurisdiction over Plaintiff's negligence and negligent infliction of emotional distress claims because "[t]hough Defendant inarguably engages in purposeful activities targeting airports and travelers located in New York, there exists no 'substantial relationship' between that business

activity and Plaintiff's claims in this lawsuit." *Id*. at *17. That is, the Court held that there is no specific personal jurisdiction in New York, because the "majority of [Plaintiff's] tort claims arise out of Defendant's conduct in the Mumbai airport, and while [Plaintiff's] ticket purchase transaction may have passed through or occurred in New York, such facts are insufficient to warrant the exercise of specific jurisdiction over these claims." *Id*. at 18*. The same should be true here, where all of Plaintiffs' tort claims arise out of Defendants' alleged conduct in the Denver, Colorado airport.

### B. This Court Lacks Specific Jurisdiction Over the Contract Claim Against Frontier

As to claim in contract (Count V of Plaintiffs' Second Amended Complaint), courts in this Circuit have held that entering into and performing a contract outside of Virginia does not amount to transacting business or contracting to supply services in Virginia, even if the Plaintiff is a Virginia resident. *See e.g.*, *Viers v. Mounts*, 466 F. Supp. 187, 190-91 (W.D. Va. 1979) (noting that mere contract negotiations carried out in Virginia between a state citizen and a nonresident with execution and performance of the contract in a foreign forum is not sufficient transaction of business to assert personal jurisdiction over the defendant); *Superfos Invest., Ltd. v. Firstmiss Fertilizer, Inc*., 774 F. Supp. 393, 398 (E.D. Va. 1991) (Clarke, J.) (finding no personal jurisdiction where a contract was prepared in Virginia and returned to Virginia once signed. "A contract which is accepted and becomes effective in another forum generally will not satisfy minimum contacts.").[1]

*Mali v. British Airways*, 2018 U.S. Dist. LEXIS 112994 is also helpful to the analysis. In *Mali*, the court in the Southern District of New York held that "[t]he breach that Plaintiff alleges

---

[1] This case and analysis can also be applied to the Defendants' argument on the significance of the purchase of tickets.

10

occurred in Mumbai when he was not allowed to board the plane to London. There is thus no 'substantial relationship' between Defendant's business transactions in New York and the conduct that gives rise to Plaintiff's breach of contract claim. The Court does not have personal jurisdiction over Defendant with respect to the breach of contract claim." *Id*. at *18-*19. Similarly here, the breach, if any, occurred in Colorado, when Smithers was not allowed to fly from Colorado.

## II.   THIS COURT HAS NO SUBJECT MATTER JURISDICTION OVER THE CONTRACT CLAIM (COUNT V).

If the Court finds that Virginia does not possess personal jurisdiction over the tort claims, but does possess personal jurisdiction on the remaining contract claim, then this Court does not possess subject matter jurisdiction over the contract claim. That is because the breach of contract claim (Count V) is only seeking $76.40 in damages. [Dkt. 36 at ¶¶ 107, 119].

Plaintiffs alleges that this Court "has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.A. 1332 (a)(1) as to all causes of action herein." [Dkt. 36 at ¶ 1.] That is, Plaintiffs are alleging subject matter jurisdiction, based on diversity jurisdiction, which allows district courts to "have original jurisdiction of all civil actions where the matter in controversy *exceeds the sum or value of $75,000*, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C.A. 1332 (a)(1) (emphasis added.) If the sole remaining claim before this Court is Plaintiffs' contract claim (Count V), the alleged damages of $76.40 would only be .1% of the value required to bring a claim in Federal Court. As the Supreme Court stated, "[t]o ensure that diversity jurisdiction does not flood the federal courts with minor disputes, § 1332(a) requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005).

11

Plaintiffs' Contract claim fails to meet this required threshold, and thus, the Court does not possess subject matter jurisdiction over the claim and it should be dismissed.

### III. PLAINTIFFS' NEGLIENCE CLAIM (COUNT 1) SHOULD BE DISMISSED

#### A. There are No Allegations of Negligence Against Plaintiffs Other than Smithers

The Negligence Count of the Second Amended Complaint focuses on actions allegedly taken against Anne Smithers – and Anne Smithers alone. *See e.g.,* [Dkt. 36 at ¶ 65 ("Defendants breached their duty to Plaintiffs by baselessly ejecting Plaintiff Smithers from the aircraft, defaming her in front of all the passengers heading to Virginia, forcibly separating her from her children, and abusing process by calling the police who confirmed Plaintiff Smithers had done nothing wrong."); Dkt. 36 at ¶ 66 ("Defendants breached their duty of a common carrier to the Plaintiffs by the cruel and callous treatment to which they subjected Plaintiff Smithers and her traveling family, including striking Plaintiff Smithers, falsely accusing her of a crime, informing the family that she had committed a felony and would likely be incarcerated within earshot of other Virginia bound passengers, and then refusing to allow Plaintiff Smithers to return needed medical equipment to her dangerously asthmatic son.")].

There are no allegations about the other Plaintiffs. Plaintiff Mims exited the plane voluntarily, (Dkt. 36 at ¶ 46), and the other Plaintiffs stayed on the plane and landed safely at Reagan National Airport, without incident. [Dkt. 36 at ¶¶ 43, 46]. "Without any factual matter or substance, the claim[s] [are] not plausible," and the causes of action brought by Plaintiffs James Mims, Ross Wiley, Thomas Wiley, Henry Wiley, and Hanna Del Signore should be dismissed. *Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 880 (E.D. Va. 2012) (Gibney, Jr., J.).

### B. Any Duty of Frontier to Smithers was Part of the Contract of Carriage

Under Colorado law,[2] a claim for negligence consists of four elements: (1) the existence of a legal duty; (2) breach of that legal duty; (3) causation; and (4) damages. *Westin Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015). To properly plead negligence "depends upon an identified duty of care." *Phillips v. Lucky Gunner, LLC* 84 F. Supp. 3d 1216, 1227 (D. Colo. 2015). "Absent a duty of care, Plaintiff does not have a viable claim for negligence under Colorado law." *Fine v. Tumpkin*, 2018 U.S. Dist. LEXIS 119904, at *10 (D. Colo. July 18, 2018) (dismissing negligence claim).

Colorado's Economic Loss Rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004). The rule attempts to maintain a boundary between contract and tort law. As the Colorado Supreme Court has explained, "[t[he essential difference between a tort obligation and a contract obligation is the source of the parties' duties. Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property." *BRW, Inc.*, 99 P.3d at 72 (internal citation omitted); s*ee also Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000) ("A breach of a duty which arises under the

---

[2] Because all of the alleged actions occurred in Colorado, Colorado law should apply. *See Jones v. R. S. Jones & Assoc.* 246 Va. 3 (1993) (holding that the settled choice of law rule for tort claims is *lex loci delicti* - the law of the place of the wrong.) The place of the wrong for purposes of the *lex loci delicti* rule is defined as the place where the last event necessary took place for an actor to be liable for an alleged tort, even if the actor has no control over the location of that last event. *See Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (finding that the law applicable to a cause of action for strict products liability comes from the jurisdiction where liability arose, which was where the plaintiff first became ill).

provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.").

Here, Smithers alleges in Count V (Breach of Contract) that she entered into a contract with Frontier, which obligated Frontier to "transport Plaintiff Smithers from Denver Colorado to Washington, D.C." [Dkt. 36 at ¶ 101]. This is the same duty that Plaintiff alleged was breached in her negligence claim. [Dkt. 36 at ¶ 65 ("Defendants breached their duty to Plaintiffs by baselessly ejecting Plaintiff Smithers from the aircraft")]. Since the duty alleged to be breached by Frontier arose from the contract, Smithers' negligence claim cannot stand.

### III. SMITHERS'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (COUNT IV) SHOULD BE DISMISSED.

Under Colorado law, in order to properly allege an intentional infliction of emotional distress claim, a plaintiff must alleges that "(1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000). Whether conduct is "outrageous and intolerable" or whether emotional distress is "severe" are issues of law for the court to decide. *Donaldson v. American Banco Corp. Inc.*, 945 F. Supp. 1456, 1465-66 (D. Colo. 1996) ("the court must decide in the first instance whether reasonable persons could differ on the conduct being outrageous."); *Martensen v. Koch,* 14 U.S. Dist. LEXIS 91817, at *29 (D. Colo. June 12, 2014) (dismissing a complaint because "Plaintiff has not articulated a manifestation of severe mental suffering."). Ultimately, "[t]he tort of intentional infliction of emotional distress is extremely limited." *Katz v. City of Aurora*, 85 F. Supp. 2d 1012, 1021 (D. Colo. 2000).

14

Smithers failed to properly allege that the purported conduct at issue against her was sufficiently "outrageous and intolerable" or that her emotional distress was adequately "severe," and therefore, dismissal of Count Four is proper.

### 1. Smithers Failed to Allege "Outrageous and Intolerable" Conduct

The tort of intentional infliction of emotional distress "was designed to create liability for a very narrow type of conduct." *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006). Consequently,

> the level of outrageousness required to [satisfy the first element of the cause of action] is extremely high. . . . Only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice.

*Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003); *see also Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir. 1988) (same); *McCarty v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126 (Colo. App. 2000) (same). As such, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Rawson v. Sears Roebuck & Co.*, 530 F. Supp. 776, 780 (D. Colo. 1982). Further, the mere accusation of a crime or allegations of defamation fail to demonstrate outrageous conduct. *See e.g., Katz*, 85 F. Supp. 2d at 1021 ("Discharge and alleged defamatory remarks do not support a claim of intentional infliction of emotional distress."); *Maiteki v. Marten Transp. Ltd.*, 4 F. Supp. 3d 1249, 1256 (D. Colo. 2013) (repeated reporting of false information to a credit agency does not satisfy the IIED standard); *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (claim that employer coerced employee into conducting an illegal undercover narcotics investigation and laundering money to fund such investigation, and then firing employee for such investigation was not outrageous conduct). For instance, in *Fischer v. Klescewski*, 2017 U.S. Dist. LEXIS 41346, at *52-53 (D. Colo. Mar. 22, 2017), the

District Court dismissed a claim of intentional infliction of emotional distress for failure to meet the "outrageous" standard where it was alleged that the defendant reported to police that the plaintiff called him a slur multiple times to his face, in a physically threatening manner; and the defendant falsely told the 911 operator that the disturbance was ongoing multiple times. The Court held that it "cannot condone such conduct, but the Court finds that these allegations do not meet 'the exacting standard required to state a claim for intentional infliction of emotional distress.'" *Id*.

The same rationale should apply here. Even if the Court does not condone the actions of the women in the red and green shirts, it does not rise to the level of outrageous. The actions took only a few minutes, only a few words were said, and Smithers ultimately left the plane on her own accord. [Dkt. 36 at ¶¶ 29-54]. Nothing in the Second Amended Complaint satisfies the "very narrow type of conduct" that is found to be outrageous for a claim of intentional infliction of emotional distress to survive. *Green*, 155 P.3d at 385.

### 2. Smithers Failed to Sufficiently Allege Severe Mental Distress

In order to properly plead a claim for the mental distress necessary for an intentional infliction of emotional distress, a plaintiff must plead "manifestation of severe mental suffering." *Martensen,* 14 U.S. Dist. LEXIS 91817, at *29. Such claims cannot be general and conclusory. *Id*. Colorado courts have held that that complaints of anxiety and depression impacting sleep, as well as allegations that a plaintiff "broke down mentally," or that she endured emotional pain and suffering, mental anguish, inconvenience and loss of enjoyment of life, are not enough to plead a claim of severe mental stress. *See e.g., Martensen,* 14 U.S. Dist. LEXIS 91817, at *29-30; *Murphy v. Lowes Cos*., 2018 U.S. Dist. LEXIS 94494, at *12 (D. Colo. June 4, 2018) (holding that a plaintiff did not allege the necessary mental distress where she claimed that she "broke down mentally"). "It is fair to say that headaches, sleeplessness, irritability, anxiety, depression,

16

listlessness, lethargy, intermittent nightmares, and the like would probably not suffice anywhere." *Martensen,* 14 U.S. Dist. LEXIS 91817, at *30.

Smithers alleges that she has been "diagnosed with PTSD." [Dkt. 36 at ¶¶ 87, 99]. But she does not allege any symptoms, severity of symptoms, or anything other than the purported diagnosis. This would be no different than allegations of depression and anxiety, which the Colorado courts have held are insufficient. Without more, the emotional distress Smithers claims to have experienced fails the "severity" element of an intentional infliction of emotional distress claim as a matter of law, and therefore, Count Four should be dismissed.

### IV. HENRY WILEY'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED (COUNT VI).

In their third effort, Plaintiffs now allege for the first time that Plaintiff Henry Wiley has a claim of negligent infliction of emotional distress, because Frontier would not allow Mr. Wiley's mother to return to the plane and provide him his asthma inhaler. [Dkt. 36 at ¶¶ 108-13]. This is in spite of the fact that Mims had left the plane, and instructed the others to stay on the plane, including Henry Wiley, who had asthma and did not have his inhaler. [Dkt. 36 at ¶¶ 43, 46]. Wiley alleges that he was in "acute fear for his safety," and that this fear during the flight "caused the physical symptoms of an asthma attack to begin to manifest, resulting in wheezing and tightness of breath." [Dkt. 36 at ¶¶ 110-11]. Yet, at no time during the flight did any of the Plaintiffs inform anyone on the flight crew that Wiley was supposedly suffering any symptoms. [Dkt. 36 at ¶¶ 56-57]. Moreover, those symptoms subsided after the flight was complete. [Dkt. 36 at ¶ 58]. Thus, Wiley has not alleged serious physical manifestation or mental illness to support a claim for negligent infliction of emotional distress.

This tort is intended for actions where the plaintiff is placed in a position of unreasonable risk of physical harm such that he is in fear for his safety, and that the actions resulted in physical

17

consequences or resulted in a long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought. *Colwell v. Mentzer Investments, Inc.,* 973 P.2d 631, 638 (Colo. App. 1998). The plaintiff must also show that he suffered physical injury or was in the "zone of danger." *Culpepper v. Pearl Street Building, Inc.,* 877 P.2d 877, 880 n.3 (Colo. 1994); *Towns v. Anderson,* 195 Colo. 517, 520, 579 P.2d 1163, 1165 (1978). Further "if the plaintiff has observed injury to a family member but was in no danger herself, there can be no recovery." *Colweel,* 973 P.2d at 638 (*citing Kimelman v. City of Colorado Springs,* 775 P.2d 51 (Colo. App. 1988).

There is nothing in the Second Amended Complaint that suggests that Defendant Frontier engaged in any action that placed Mr. Wiley in an unreasonable risk of physical harm or caused Mr. Wiley to be in fear for his safety or in the zone of danger. Effectively what has been pleaded is that because Mr. Wiley did not have possession of his inhaler (yet did not exit the plane like Mr. Mims), and chose to remain on the plane at the suggestion/direction of Plaintiff Mims, flying on the airplane placed him in unreasonable risk of his safety, and placed him in a zone of danger.

More significantly, Mr. Wiley has not alleged sufficiently severe physical damages, or long-continued emotional distress. *Atsepoyi v. Tandy Corp*., 51 F. Supp. 2d 1120, 1127 (D. Colo 1999) illustrates this point under Colorado law. There, the District Court held that the Plaintiff had not alleged sufficient injury for a claim of negligent infliction of emotional distress, where he claimed being "'physically distraught,' sustaining 'shock to his nervous system' and suffering 'severe emotional distress.'" *Id*. "While there is no precise definition of what constitutes a 'serious physical manifestation or mental illness,' courts have found generalized symptoms such as headaches, insomnia, crying spells, vomiting and diarrhea are insufficient." *Id.* (citing *Hernandez v. McDonald's Corp*., 975 F. Supp. 1418, 1428 (D. Kan. 1997); *Schweitzer-Reschke*

18

*v. Avnet, Inc.*, 874 F. Supp. 1187, 1196 (D. Kan. 1995)). Similarly here, where Wiley has alleged wheezing and tightness of breath that did not need any sort of medical attention, and eventually subsided, the Second Amended Complaint fails to state the necessary allegations to support a claim for negligent infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, Defendant Frontier Airlines, Inc. respectfully requests this Court dismiss the Second Amended Complaint.

November 14, 2018                                           Respectfully submitted,

*/S/ ELAINE CHARLSON BREDEHOFT*
Elaine Charlson Bredehoft, VSB No. 23766
Adam S. Nadelhaft, VSB 91717
David E. Murphy, VSB 90938
Charlson Bredehoft Cohen & Brown, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
ebredehoft@cbcblaw.com
anadelhaft@cbcblaw.com
dmurphy@cbcblaw.com

Stephen J. Fearon (Admitted *Pro Hac Vice*)
Bartholomew J. Banino (Admitted *Pro Hac Vice*)
Allison M. Surcouf (Admitted *Pro Hac Vice*)
Condon & Forsyth LLP
7 Times Square
New York, NY 10036
(212) 490-9100  Telephone
(212) 370-4453  Facsimile
SFearon@condonlaw.com
bbanino@condonlaw.com
asurcouf@condonlaw.com

*Counsel for Defendant*
*Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

>William T. Woodrow, III, Esq.
>Thatcher A. Stone, Esq.
>Stone & Woodrow LLP
>250 West Main Street, Suite 201
>Lewis & Clark Plaza
>Charlottesville, VA 22902
>(855) 275-7378 Telephone
>(646) 873-7521 Facsimile
>will@stoneandwoodrowlaw.com
>thatcher@stoneandwoodrowlaw.com
>*Counsel for Plaintiffs*

>*/S/ ELAINE CHARLSON BREDEHOFT*
>Elaine Charlson Bredehoft, VSB No. 23766
>Charlson Bredehoft Cohen & Brown, P.C.
>11260 Roger Bacon Drive, Suite 201
>Reston, VA 20190
>(703) 318-6800  Telephone
>(703) 318-6808  Facsimile
>ebredehoft@cbcblaw.com
>*Counsel for Defendant*
>*Frontier Airlines, Inc.*