IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ANNE SMITHERS, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 1:18cv676 (TSE/IDD) |
| | ) |
| FRONTIER AIRLINES, INC., *et al.* | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT FRONTIER AIRLINES, INC.'S REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendant Frontier Airlines, Inc. ("Frontier"), respectfully submits this Reply Brief in Support of its Motion to Dismiss the Second Amended Complaint [Dkt. 26] filed in this action by Plaintiffs Anne Smithers, James Mims, Ross Wiley, Thomas Wiley, Henry Wiley (by His Mother and Next Friend Anne Smithers), and Hanna Del Signore, and states as follows:

**INTRODUCTION**

In their now third attempt to bring a Complaint in this Court, Plaintiffs still cannot allege that this Court possesses personal jurisdiction over Frontier. Plaintiffs' Opposition to Frontier's Motion to Dismiss does not contest, and therefore concedes, that this Court lacks personal jurisdiction over the contract claim. As to the tort claims, all of the alleged torts occurred in Colorado. Based on similar allegations, a U.S. District Court in Virginia court has dismissed claims for lack of specific personal jurisdiction. *PBM Capital Invs., LLC v. Gen. Elec. Co.*, 2016 U.S. Dist. LEXIS 96055, at *7 (W.D. Va. July 22, 2016) (holding that there was no specific jurisdiction, where all alleged acts occurred outside Virginia). This is especially true for the intentional tort claims, where the "focal point of the harm" is the key to the analysis. The "focal point" in this case is in Colorado, and not Virginia. Thus, this Court does not possess personal

jurisdiction over any of the claims against Frontier, and therefore dismissing this action against Frontier is appropriate.

In addition to lack of personal jurisdiction (which should remove this case from this Court entirely), Plaintiffs' Opposition cannot dispute that other than Smithers, Plaintiffs were merely witnesses to the alleged actions taken against Smithers. In Colorado, witnesses to negligence cannot bring a claim for negligence themselves. *See Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631, 638 (Colo. App. 1998). Plaintiffs point to no cases that hold that a duty of common carriers trumps the Economic Loss Rule, which prevents any negligence claims.

Smithers's claim for intentional infliction of emotional distress should also be dismissed. A claim of intentional infliction of emotional distress is generally based on a "pattern of conduct by the defendant." *Luna v. Denver*, 537 F. Supp. 798, 799 (D. Colo. 1982). Smithers's claim is based on only a few minutes of alleged conduct, which is certainly not a pattern of conduct, and no Colorado court has held that actions over a such a short period of time are considered outrageous. Moreover, Smithers has only alleged that she has suffered from PTSD, with no other allegations. This conclusory allegation is insufficient to properly plead severe mental distress, one of necessary elements of the claim.

Finally, Henry Wiley's claim for negligent infliction of emotional distress should also be dismissed. Claims based on this tort include witnessing a horrific event, and being near enough to be in fear for one's own safety. Mr. Wiley did not witness an injury to anyone, and no one was in the zone of danger. Therefore, Mr. Wiley was not placed in a position of fear of physical harm, especially considering he chose to remain on the plane.

## ARGUMENT

### I.  THIS COURT LACKS PERSONAL JURISDICTION OVER FRONTIER.

Personal jurisdiction is claim specific, meaning "the Court must have jurisdiction over each claim it decides." *See McNeil v. Biaggi Prods., LLC*, 2017 U.S. Dist. LEXIS 93185, at *16 (E.D. Va. June 16, 2017) (Lauck, J.)  As discussed in Frontier's Opening Brief and below, this Court does not have personal jurisdiction over any of the claims in this matter.

#### A.  This Court Lacks Specific Jurisdiction Over the Tort Claims Against Frontier.

*PBM Capital Invs., LLC v. Gen. Elec. Co.*, 2016 U.S. Dist. LEXIS 96055, at *7 (W.D. Va. July 22, 2016) is entirely on point for application to this case.  The Court there held that specific personal jurisdiction did not exist because all of "GE's tortious conduct occurred outside of the Commonwealth." *Id*.  "In particular, the fraudulent misrepresentations occurred in Sweden, Wisconsin, and Illinois, and GE's alleged doctoring of the investigation report also occurred out of the Commonwealth.  There is no allegation that GE made any misrepresentations in Virginia, or that it entered or sent anything into the state at all related to the contract negotiation.  In this way, none of the conduct giving rise to this suit arose out of GE's contacts with Virginia." *Id*.  Similarly in this case, all of alleged acts occurred in the Denver International Airport, in Denver, Colorado.  There is not a single allegation in the Second Amended Complaint that occurred in Virginia.  Thus, this Court lack specific personal jurisdiction over Frontier.

As Frontier explained in its Opening Brief, the cases that Plaintiffs rely on to argue that this Court has personal jurisdiction over Frontier in this matter are inapplicable, because in those cases the purchase of the tickets was "the genesis of [the] dispute." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009).[1]  In *Selke v. Germanwings*

---

[1] Plaintiffs do not challenge *CFA Inst.*, 551 F.3d 285, 295 (4th Cir. 2009), nor can they.

Case 1:18-cv-00676-TSE-IDD   Document 45   Filed 12/04/18   Page 4 of 12 PageID# 326

*GmbH,* 261 F. Supp. 3d 666 (E.D. Va. 2017) (Lee, J.)("*Selke I*"), Judge Lee held that Virginia possessed specific personal jurisdiction over United because it sold the airline tickets for the airline crash that were the basis of Plaintiffs' claims. *Id*. at 674. The same is true for in *Selke v. Germanwings GmbH*, 261 F. Supp. 3d 645 (E.D. Va. 2017) (Lee, J.)("*Selke II*") (decided the same day as *Selke I*). And in *Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554 (M.D. N.C. 2015), the Plaintiff was injured on the initial leg of his trip. *Id.* at 557. Conversely, in this case, the Plaintiffs had spent time in Colorado, traveled to the airport, but the flight never took off from the Denver Airport before the alleged incident occurred. All of the alleged torts occurred at the Denver Airport. Thus, the genesis of the dispute is where the torts occurred - Denver, Colorado.

Moreover, *Selke I*, *Selke II*, and *Broadus* did not involve intentional torts, like Plaintiffs are alleging here in Count II (Defamation), Count III (Battery), and Count IV (Intentional Infliction of Emotional Distress). The Court does not possess personal jurisdiction over these intentional torts as they relate to Frontier.

When a defendant is charged with committing an intentional tort, the Court's jurisdictional inquiry is guided by the "*Calder* effects test." *See Calder v. Jones*, 465 U.S. 783, 788-90 (1984). The *Calder* effects test allows a court to exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 397 (4th Cir. 2003). Satisfaction of this test requires "that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Id.* at n. 7 (citing *IMO*

4

*Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1988)). Plaintiffs cannot satisfy the second or third prongs of the test. The "focal point of the harm" was clearly in Colorado. That was allegedly where Smithers was battered, where the defamatory statements were spoken and heard, and where she was escorted off the plane. Moreover, there is nothing to suggest that this conduct was aimed at Virginia, as it all occurred in Colorado, and there are no allegations that anyone from Frontier knew that Plaintiffs were from Virginia, and targeted them because they were from Virginia. Thus this Court lacks personal jurisdiction over Plaintiffs' intentional tort claims.

### A. This Court Lacks Specific Jurisdiction Over the Contract Claim Against Frontier.

Frontier explained in its Motion to Dismiss that this Court does not have personal jurisdiction over the contract claim (Count V of Plaintiffs' Second Amended Complaint), because courts in this Circuit have held that entering into and performing a contract outside of Virginia does not amount to transacting business or contracting to supply services in Virginia, even if the Plaintiff is a Virginia resident. [*See* Dkt. 41 at 10-11; *see also e.g.*, *Viers v. Mounts*, 466 F. Supp. 187, 190-91 (W.D. Va. 1979).] Plaintiffs did not respond to this argument. As such, the argument should be considered conceded by Plaintiffs, and the Court should find in Frontier's favor. *See e.g.*, *Kulik Photography v. Cochran*, 975 F. Supp. 812, 814 (E.D. Va. 1997) (Cacheris, J.) (finding that on a motion to dismiss, plaintiff's failure to address an argument in its opposition required the court to find in favor of defendant on that claim).

## II.     PLAINTIFFS' NEGLIENCE CLAIM (COUNT I) SHOULD BE DISMISSED

All of the allegations in Plaintiffs' Second Amended Complaint are related to Smithers, and do not allege any actions taken against any of the other Plaintiffs. Plaintiffs' Opposition cannot point to any action taken against anyone other than Smithers. [*See* Dkt. 43 at 8-9.] The other Plaintiffs were merely witnesses to purported negligence. In Colorado, witnesses to negligence cannot bring a claim for negligence themselves. *See Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631, 638 (Colo. App. 1998) ("If the plaintiff has observed injury to a family member but was in no danger herself, there can be no recovery.")

In addition, in its Motion to Dismiss, Frontier described that the duties owed to Smithers to provide her carriage were the same as those provided under the Contract of Carriage, and that therefore since the duty alleged to be breached by Frontier arose from the contract, under the Economic Loss Rule in Colorado, Plaintiffs' negligence claim cannot survive. [*See* Dkt. 41, at 13-14.] In their Opposition, Plaintiffs argue that the Economic Loss Rule does not apply because Frontier is a "common carrier." Dkt. 43 at 7-8. However, Plaintiffs cite to no cases that have found airlines to be common carriers under Colorado tort law and owing a heightened duty of care. In addition, Plaintiffs have cited no cases that upheld the tort claim and disregarded the Economic Loss Rule because of being a common carrier.

Plaintiffs cite to *Wyatt v. United Airlines, Inc.*, 638 P.2d 812, 814 (Colo. App. 1981) and *Aspen Airways, Inc. v. Pub. Utilities Comm'n*, 453 P.2d 789, 790 (Colo. 1969) for the proposition that "Colorado courts regularly refer to airlines as common carriers." [Dkt. 43 at 8.] But neither of those cases held that airlines owe a heightened duty of care, or that it would trump the Economic Loss Rule. In fact, in *Wyatt*, it was the dissent that referred to United Airlines as a common carrier, as a passing reference. 638 P.2d at 814. In *Wyatt*, the court concluded that the trial court properly dismissed plaintiff's lawsuit because the state's borrowing statute applied to

plaintiff's lawsuit and thus it was also barred in Colorado. *Aspen Airways* was not a negligence case at all. It involved an application before the Public Utilities Commission of the State of Colorado by one airline, and a protest to the application by another airline. Thus, these cases have no application to this matter.

### III.  SMITHERS'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (COUNT IV) SHOULD BE DISMISSED

Plaintiffs' Opposition does not dispute that the alleged actions lasted only a few minutes, only a few words were spoken, Smithers ultimately left the plane on her own accord, and Smithers was not allowed to return back to the plane to provide a nebulizer to her son (who never complained about having an asthma attack). These alleged actions, over just a few minutes of time, cannot meet the "very narrow type of conduct" that is found to be outrageous for a claim of intentional infliction of emotional distress to survive. *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006). Moreover, Smithers has not sufficiently alleged that she suffered severe mental distress.

#### A.  Smithers Fails to Allege "Outrageous and Intolerable" Conduct.

In Colorado, "liability for the tort of intentional infliction of emotional distress may be found only where 'the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Donaldson v. American Banco Corp. Inc.*, 945 F. Supp. Moreover, "a claim of intentional infliction of emotional distress must be based either on a *pattern of conduct by the defendant* that either intentionally or recklessly caused severe emotional distress to the plaintiff or on public or quasi-public officials severely abusing their duties and responsibilities." *Luna v. Denver*, 537 F. Supp. 798, 799 (D. Colo. 1982) (emphasis added). Neither is the case here.

7

Smithers' allegations are nothing more than an isolated incident that occurred over a few minutes. Incidents lasting far longer have been found to be insufficiently outrageous. For example, in *Martensen v. Koch*, 2014 U.S. Dist. LEXIS 91817, at *27 (D. Colo. July 7, 2014), the Plaintiff was confined between early afternoon March 22, 2012 and early morning March 23, 2012, at a remote ranch in central Colorado, accused of fraud, and then driven against his will to an airport outside of Denver, where he was escorted onto a private plane and flown to Oakland, California instead of his original destination of San Francisco." *Id*. The Court held that "while such conduct may well be tortious, it does not rise to the level of outrageous conduct." *Id*. Similarly, in *Murphy v. Lowes Companies, Inc.*, 2018 WL 2563408, at *3 (D. Colo. June 4, 2018), Plaintiff alleged that she was held against her will, retaliated against, verbally mocked and treated unfairly. *Id.* However, the Court held that "this conduct does not rise to the level of outrageousness held necessary to state a viable IIED claim." *Id*. "Plaintiff was held for approximately three hours, which is significantly less time compared to the plaintiff in *Martensen*." *Id.* Given these holdings, the few minutes of alleged conduct in this matter cannot rise to the level of outrageousness.[2]

---

[2] All of the cases cited by Plaintiffs, which found outrageous conduct lasted over weeks or months – much different than alleged here. *See Donaldson*, 945 F. Supp. 1456, 1465–66 (D. Colo. 1996) (derogatory comments stated over many months by a supervisor to her two female employees about their pregnancies was considered sufficiently outrageous and intolerable. *Id*. But similar comments to another employee, over a shorter period of time, the Court held "does not meet the high standard" for outrageousness.); *Han Ye Lee v. Colorado Times, Inc*., 222 P.3d 957, 964 (Colo. App. 2009) (newspaper article that "stated that Lee, a crime victim, was disloyal to her late husband, whose murder she had witnessed," was outrageous, because "defendants published it recklessly, without verifying the information they were given, which could have been easily checked," and were under no "pressure to quickly publish the information."); *Makeen v. Hailey*, 381 P.3d 337, 345 (Colo. App. 2015) (where parties involved in real estate deals together over many months, the trial Court held that the perpetrator was a "bully" and not "an honest litigant," and that his intention was to bankrupt his business partner); *Meiter v. Cavanaugh*, 40 Colo. App. 454, 457 (Col. App. 1978) (the defendant refused to move out of his house that he sold to the Plaintiff, and then over several weeks called the Plaintiff names, told the Plaintiff that as an attorney he would sue her, sent a letter threatening suit, and then ultimately damaged Plaintiff's home).

The Plaintiffs argue that "it is readily apparent that reasonable people could conclude that the sum of Defendants' behavior towards Ms. Smithers is utterly, sufficiently, and intolerably outrageous and supports a finding of intentional infliction of emotional distress." [Dkt. 43 at 16.] But, "in many, if not most, civil lawsuits the plaintiff believes that the defendant's conduct has been outrageous . Yet very few give rise to a cognizable claim for intentional infliction of emotional distress." *Smith v. Montgomery Ward & Co.*, 567 F. Supp. 1331, 1335 (D. Colo. 1983) (*citing Rawson v. Sears, Roebuck & Co.*, 530 F. Supp. 776 (D. Colo. 1982)).  Defendants' actions do not meet the "extremely high"  "level of outrageousness required" for a claim of intentional infliction of emotional distress under Colorado law.  *Green*, 155 P.3d 383, 385 (Colo. App. 2006).

### B. Smithers Fails to Allege Sufficiently Severe Mental Distress.

In her Second Amended Complaint, Smithers alleges that she has been "diagnosed with PTSD." [Dkt. 36 at ¶¶ 87, 99.]  Citing to *Martensen v. Koch*, 14 U.S. Dist. LEXIS 91817, at *29 (D. Colo. June 12, 2014), Frontier explained and cited authority in its Motion to Dismiss that such a conclusory allegation is insufficient to properly plead the severe mental distress element necessary for a claim for intentional infliction of emotional distress.  [Dkt. 41, at 16-17.]

In their Opposition, Plaintiffs cite to a number of cases to argue that Smithers properly alleged severe mental distress, but none of those cases describe the pleading requirement for severe mental distress.  In fact, most of the cases are not decisions on motions to dismiss.  The two that are (*Rugg v. McCarty*, 476 P.2d 753, 756 (1970) and *Mass v. Martin Marietta Corp*., 805 F. Supp. 1530, 1543 (D. Colo. 1992)) include absolutely no discussion of severe mental distress.

Thus, as the Court held in *Martensen* when it dismissed a plaintiff's claim for Intentional Infliction of Emotional Distress, claims of PTSD like Plaintiff's claim "are general and conclusory.  Plaintiff does not allege when [s]he began to suffer anxiety or depression, when

9

[s]he ceased to sleep, when the consequences of these events impacted h[er], or how [s]he was impacted." *Martensen,* 14 U.S. Dist. LEXIS 91817, at *29. The same reasoning applies here. Smithers' claim for Intentional Infliction of Emotional Distress should be dismissed.

### IV. HENRY WILEY'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM (COUNT VI) SHOULD BE DISMISSED.

In their Opposition, Plaintiffs spend six pages arguing that Plaintiff Henry Wiley had an asthma attack while on the plane (although he told no one), and that thus, he has a viable claim for negligent infliction of emotional distress. [Dkt. 43 at 9-16.] Yet, given that all the terror that Plaintiffs now claim Mr. Wiley endured, it is telling that Plaintiff only alleged this claim in their *third* Complaint in this case, not in the first or second Complaint. The Court should take into account this inconsistency in deciding this claim. *See Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1075–76 (E.D. Cal. 2011) (explaining that a court may take into account a plaintiff's prior allegations in "determining the plausibility of the current pleadings."); *see also Lee X v. Casey*, 771 F. Supp. 725, 726–33 (E.D. Va. July 8, 1991) (Merhige, J.)(viewing with skepticism plaintiff's motion to amend and denying leave where plaintiff "knew or should have known the facts which form the basis for his new claim [y]et… failed to present any valid reason why he did not raise them prior…").

Mr. Wiley's claim is based on the allegation that Frontier would not allow Mr. Wiley's mother to return to the plane and provide him his asthma inhaler. [Dkt. 36 at ¶¶ 108-13.] Plaintiffs, however, cite to no cases that have allowed such a claim, or anything remotely similar to the allegations in the Complaint. That is not surprising though, because the claim of negligent infliction of emotional distress is a tort "***suffered by the bystander*** himself or herself as a result of the shock of having witnessed an extraordinary and traumatic event." *Draper v. DeFrenchi-Gordineer,* 282 P.3d 489, 497 (Colo. App. 2011) (emphasis added). Thus, to be actionable, a

10

plaintiff must have "observed injury to a family member." *Colwell*, 973 P.2d at 638. There was no injury that Mr. Wiley witnessed.

Because there was no injury for Mr. Wiley to witness, there is also no zone of danger, another requirement for a claim of negligent infliction of emotional distress. *Culpepper v. Pearl Street Building, Inc.,* 877 P.2d 877, 880 n.3 (Colo. 1994); *Towns v. Anderson,* 195 Colo. 517, 520, 579 P.2d 1163, 1165 (1978). "The 'zone of danger' test requires both physical proximity and immediacy. The zone of danger is a location where a person is in immediate risk of physical harm and not simply 'a state of mind.'" *Lucero v. Defendant: Bnsf Rail Way Co.*, 2010 Colo. Dist. LEXIS 740, at *5 (Colo. Dist. Apr. 28, 2010). There is nothing in the Second Amended Complaint that suggests that Frontier engaged in any action that placed Mr. Wiley in an "immediate risk of physical harm." At most, it was simply a "state of mind." Thus, Mr. Wiley cannot state a claim for negligent infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' Motion to Dismiss [Dkt. 41], Defendant Frontier Airlines, Inc. respectfully requests this Court dismiss the Second Amended Complaint.

December 4, 2018

Respectfully submitted,

*/S/ ELAINE CHARLSON BREDEHOFT*
Elaine Charlson Bredehoft, VSB No. 23766
Adam S. Nadelhaft, VSB 91717
David E. Murphy, VSB 90938
Charlson Bredehoft Cohen & Brown, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
ebredehoft@cbcblaw.com
anadelhaft@cbcblaw.com
dmurphy@cbcblaw.com

        Stephen J. Fearon (Admitted *Pro Hac Vice*)
        Bartholomew J. Banino (Admitted *Pro Hac Vice*)
        Allison M. Surcouf (Admitted *Pro Hac Vice*)
        Condon & Forsyth LLP
        7 Times Square
        New York, NY 10036
        (212) 490-9100  Telephone
        (212) 370-4453  Facsimile
        SFearon@condonlaw.com
        bbanino@condonlaw.com
        asurcouf@condonlaw.com

        *Counsel for Defendant Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of December, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

        William T. Woodrow, III, Esq.
        Thatcher A. Stone, Esq.
        Stone & Woodrow LLP
        250 West Main Street, Suite 201
        Lewis & Clark Plaza
        Charlottesville, VA 22902
        (855) 275-7378 Telephone
        (646) 873-7521 Facsimile
        will@stoneandwoodrowlaw.com
        thatcher@stoneandwoodrowlaw.com
        *Counsel for Plaintiffs*

        */S/ ELAINE CHARLSON BREDEHOFT*
        Elaine Charlson Bredehoft, VSB No. 23766
        Charlson Bredehoft Cohen & Brown, P.C.
        11260 Roger Bacon Drive, Suite 201
        Reston, VA 20190
        (703) 318-6800  Telephone
        (703) 318-6808  Facsimile
        ebredehoft@cbcblaw.com
        *Counsel for Defendant*
         *Frontier Airlines, Inc.*