IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Anne Smithers, James Mims, Ross Wiley, Thomas Wiley, Henry Wiley by his Mother and next friend Anne Smithers, Hanna Del Signore, <br><br> PLAINTIFFS, <br> VS. <br> Frontier Air Lines, Inc., and Aircraft Service International, Inc., <br><br> DEFENDANTS. | Civil Action No.: 1:18cv676 (TSE/IDD) <br><br> PLAINTIFFS' SUR-REPLY BRIEF FOLLOWING 12/14/2018 HEARING ON DEFENDANTS' MOTIONS TO DISMISS |

In the motion hearing that took place on December 14, 2018, the Court heard partial arguments on the issues raised by Defendants in their motions, but Defendants raised multiple new arguments in their Reply that Plaintiffs had not the opportunity to address. Nor were Plaintiffs allowed to address in oral argument Defendants' 12(b)(6) motions. Consequently, the Court has provided the opportunity for this sur-reply.

I.   *Specific Jurisdiction Exists in this Action*

Upon hearing a motion under F.R.Cv.P. 12(b)(2), the Court looks only to the facts plead by the Plaintiff to determine if jurisdiction is warranted. Without an evidentiary hearing the issue is whether Plaintiff plead satisfactory facts to assert a *prima facie* claim of jurisdiction. *See, Consulting Engineers Corp. V. Geometric Ltd.*, 561 F.3d 273, 276-278 (4th Circuit 2009).. In this case, Plaintiff alleges specific jurisdiction over both defendants under settled and evolving law. *See, Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915 (U.S. 2011); *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bristol-Myers Squibb Co. v. Superior Court of*

*California, San Francisco Cty.,* 137 S. Ct. 1773, 1781(2017); *Selke v. Germanwings GMBH* , 261 F. Supp.3d 645 (2017); *Broadus v. Delta Air Lines, Inc*, 101 F.Supp.3d 554 (2015).

In the 4th Circuit and this District that test requires pleading the applicability of the Commonwealth's long arm, which is coextensive with the limits of due process in Virginia, and the availing by the Defendant of the protections of the Commonwealth's laws. *Geometric* at 277. In other words, would it be fair and reasonable for an airline or its agent, providing some of the airline services, both registered with the SCC and doing business throughout the State, to find themselves as a defendant in the Commonwealth's courts or this Court?  This also depends in part on whether Plaintiff averred that an act linked to the action occurred in Virginia, that makes the exercise of jurisdiction fair and reasonable. See *Burger King Corp,* 471 U.S. at 472 (set forth below in the footnote).[1]

In this action both defendants it is averred have availed themselves of the benefit of Virginia's laws and protections and sold multiple tickets in the Commonwealth to the Plaintiffs in this action.

Taken together, the averments establish a *prima facie* case of jurisdiction against both Defendants in this District. Do they really think that flying dozens of flights and conducting all kinds of aviation actions in the Commonwealth, that it would be burdensome and unfair to face litigation here? If so, it is an unreasonable belief. Of course it is foreseeable after selling a ticket here for travel to and from Virginia in which they both participated as alleged they might be sued here.

---

[1] "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum…" See also, *Travelers Health Assn. v Virginia,* 339 U.S. 643, 647 (1950).

### A. Defendants Misconstrue The So-Called "Effects Test"

The "effects test" articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984) is an expansion of the jurisdictional analysis, not a limitation, but Defendants wrongly argue it is a limitation. Cases such as *Calder* that invoke the "effects test" are cases whose fact patterns show virtually no purposeful forum availment by the defendant.[2] They are essentially "stream of commerce" cases with an intentional tort twist. *Calder* is not a carve-out that defines the entire universe of specific jurisdiction for intentional torts; *Calder* gives extra access to jurisdiction for intentional torts where minimum contacts do not exist. The Defendants have it backwards:

> Although the New Jersey Supreme Court issued an extensive opinion with careful attention to this Court's cases and to its own precedent, the "stream of commerce" metaphor carried the decision far afield. Due process protects the defendant's right not to be coerced except by lawful judicial power. As a general rule, the exercise of judicial power is not lawful unless the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). There may be exceptions, say, for instance, *878 in cases involving an intentional tort. But the general rule is applicable in this products-liability case, and the so-called "stream-of-commerce" doctrine cannot displace it.

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877–78 (2011)

The *Selke* Court held that the specific act of selling tickets in the forum is a causal link that satisfies the jurisdictional test in a specific jurisdiction enquiry for actions by the airline that may occur during the journey. *Selke*, 261 F. Supp.3d at 659. There is no sound reasoning to

---

[2] "As a general rule, the sovereign's exercise of power requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' *Hanson*, 357 U.S., at 253, though in some cases, as with an intentional tort, the defendant might well fall within the State's authority by reason of his attempt to obstruct its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011).

3

distinguish in the *Selke* rationale between negligent or intentional actions.³ The "effects test" would come into play, not just for the intentional torts, but also for the torts of negligence and negligent infliction of emotional distress *if there had been no specific act taken in the forum.*⁴

Furthermore, the "effects test" comes into play when defendants' contacts with the forum are so minimal that it would otherwise seem to offend traditional notions of fair play and substantial justice to hale them into court. See *Nicastro, supra*. That is not the case here. Defendants' contacts with Virginia are substantial and ongoing. They cannot argue that being haled into court here would be unexpected, unfair, or burdensome, and there are substantial policy considerations in favor of a Virginia court adjudicating these claims in protection of its citizens. The jurisdictional inquiry in this case does not need the extra benefit of a *Calder* effects test analysis as the facts pled show the relevant long arm sub-clauses, specific action, purposeful availment, and reasonableness. As a result the *Calder* test is unnecessary here.

All the cases raised by Defendants to object to specific jurisdiction either try to argue with what is plainly and clearly plead in the 2ⁿᵈ Amended Complaint, or were decided on the basis that those plaintiffs in those other cases failed to allege sufficient action by those defendants to avail themselves of the Commonwealth or State's laws. Defendants cite favorably *Consulting Engineers v. Geometric*, 561 F.3d 273 (4ᵗʰ Cir. 2009), without reference to *Liberty Mutual v. Menozzi*, 92 F. Supp 3d 435 (E.D.Va. 2015) or harmonizing the *Geometric* decision with developing subsequent case law from the Supreme Court. In *Geometric* the only holdings of

---

³ But for the first causal step of entering into an agreement with the airline in her forum state and placing her trust in the airline's stewardship of her safety and well-being, jurisdiction for a passenger who would have died in a crash, or would have fallen from a wheelchair, or would have been slapped by an employee or defamed in front of her family would exist if on the ticketed flight. The question is one of minimum contact, personal availment, and specific acts.

⁴ Of course, Defendants cannot make a *Calder*-based argument against specific jurisdiction for the claims of negligence or negligent infliction of emotional distress.

the 4th Circuit were that the two corporations had not purposefully availed themselves of Virginia law. In *Menozzi*, a review of few actions constituting availing stopped the inquiry, but not so in this case as Plaintiff has averred substantial availing actions and contacts of Defendants with the Commonwealth, and the sale of tickets in the Commonwealth for flights to and from the Commonwealth where the incidents occurred.

"It is axiomatic that '[s]o long as the act has substantial connection to the forum, even a single act can support jurisdiction.' *Burger King*, 471 U.S. at 475, n.18 (citation and quotation marks omitted.)" *Menozzi* at 441. See also, *Selke, supra.*

### B. Personal Jurisdiction over the Contract Claim.

As a preliminary matter, Defendants argued that the Court's hands were essentially tied due to Plaintiffs' failure to address their arguments in Plaintiffs' Response – that the Court was "required" to find in favor for the Defendant on that claim. Defendants grossly mischaracterize *Kulik Photography v. Cochran*, 975 F. Supp. 812, 814 (E.D. Va. 1997) to support this proposition:

> The Court also finds the Defendants' "fair use" argument to be persuasive. The statute itself states that "news reporting" is a legally recognized "fair use." 17 U.S.C. § 107. Plaintiff failed to address this argument in its Opposition, and ignored the fact that Court TV had a legal right to provide television news coverage of the trial in California to the rest of the country. Accordingly, the only action to have transpired in Virginia (the televising of the trial) was a legal and proper "fair use."

*Id.*

Clearly, the primary factor for the *Kulik* Court was that it found Defendants' arguments to be persuasive. In this instance, Defendants' arguments were so unpersuasive, that Plaintiffs ignored rebutting them in their written submission and left them to be disposed of quickly in oral arguments, and do so now here.

The glaring difference between the cases Defendants cite in support of their argument and the facts of this case is that *the contract was entered into in Virginia when the tickets were purchased!* Burnap v. Tribeca Travel, 140 Misc. 2d 472, 474 (Civ. Ct. 1988) ("the Courts have recognized that the purchase of an airline ticket creates a contract between the parties."); see also *Williams v. NW. Airlines, Inc.*, 163 F. Supp. 2d 628, 631 (W.D.N.C. 2001). Plaintiffs did not and do not waive this claim and Defendants' cases are wholly unsupportive of their argument.

In oral argument, Defendant liberally referred to *Viers v. Mounts*, 466 F. Supp. 187, 190-191 (W.D. Va. 1979) as evidence to suggest that the Court does not have jurisdiction and implied that the *Viers* Court went so far as to suggest that even a contract executed in Virginia was not enough to confer jurisdiction, but of course this is not true, and indeed the *Viers* Court said no such thing:

> In the instant case, the court finds the activity of the defendants in the State of Virginia, including their initial visit as well as the Dixie Drive-In meeting, to be in the nature of preliminary negotiations that eventually led to the execution of the written contract in the State of Kentucky. Since the parties did in fact put their agreement in writing, and also since the contract sued upon in this action is the written contract made in Kentucky, the court is persuaded that the parties contemplated a written instrument as the only agreement between them, not intending to be bound until a written document existed.

*Id.* at 191.

II. Negligent Infliction of Emotional Distress(NIED)

Plaintiffs sufficiently argued this claim in their Response; however, Defendants raised a new argument in their Reply that Plaintiffs need to address here. Defendants cite two cases to convince the Court that Plaintiffs only having articulated their NIED claim in their Third Complaint, Plaintiffs should be barred from bringing it. *Lee X v. Casey*, 771 F. Supp. 725, 733 (E.D. Va. 1991); *Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1075–76 (E.D. Cal. 2011). However, Defendants' cases don't survive scrutiny.

6

Case 1:18-cv-00676-TSE-IDD   Document 48   Filed 12/19/18   Page 7 of 8 PageID# 343

*Lee X* was a *Bivens* case where the statute of limitations had run on the hoped-for amended claim. *Stanislaus* was a case where a Plaintiff filed an amended complaint only after having received an adverse ruling on a statute of limitations issue in their first complaint. The plaintiff changed the terms of the alleged agreement to cure the problem. Even so, the Court said that was permissible as long as the plaintiff had provided explanation, which he did not.

The cases do not say what Defendants claim. Rather, permission to amend should be freely given. F.R.C.P. 15(a)(2). The Plaintiffs factual assertions concerning Henry Wiley have not changed, nor been exaggerated since the initial complaint. Plaintiffs merely realized that NIED was a more appropriate vehicle for recovery than the negligence that was initially pled. Plaintiffs can thank Defendants' attorneys for pointing that out, as they did so thoroughly in their first submission.

Defendants go on to raise another new attack in their Reply, where they argue that Henry must be a bystander who witnesses an accident to another in order for the tort to survive, but this is unquestionably untrue – the NIED jurisprudence has developed multiple tests. The Supreme Court is very clear in *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 556 (1994):

> We believe that allowing recovery for negligently inflicted emotional injury as provided for under the zone of danger test best harmonizes these considerations. Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional **2411 injury caused by fear of physical injury to himself, whereas a worker outside the zone will not. Railroad employees thus will be able to recover for injuries—physical and emotional—caused by the negligent conduct of their employers that threatens them imminently with physical impact.

*Id.*

The Colorado Court of Appeals was also clear:

> To establish the claim, a plaintiff must show that the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, that this fear had physical consequences or resulted in long-continued emotional disturbance, and that the plaintiff's fear was the cause of the damages sought.

*Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496–97 (Colo. App. 2011).

Finally, Defendants claim that Henry wasn't in danger – it was "just a state of mind." Would it have simply been a state of mind if he had died? Would he have been any more dead if he had been hit by a car than if he had a fatal asthma attack? He had been rushed to the hospital multiple times in the preceding few years due to far less stressful circumstances than these.

The fact is, Defendants don't get to argue that at this stage. The Plaintiffs facts are taken as true, and the Plaintiffs have sufficiently pled the tort and the jurisdictional requisites. Defendants have sought to focus the Court on an inapposite test. But Plaintiffs' NIED claim is sound, and Plaintiffs have pled appropriately.

**Conclusion**

For the foregoing reasons, Defendants' motions should be dismissed in their entirety.

Respectfully Submitted,
/s/ Thatcher A. Stone
Thatcher A. Stone (admitted PHV)
/s/ William T. Woodrow III
William T. Woodrow III (VSB 88122)
Stone & Woodrow LLP
250 West Main Street, Suite 201
Charlottesville, VA 22902
Email: thatcher@stoneandwoodrowlaw.com
will@stoneandwoodrowlaw.com
Phone: (855) 275-7378
*Attorneys for Plaintiffs*