UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

_____

ANNE SMITHERS and HENRY WILEY   by his
mother and next friend ANNE SMITHERS

                           Plaintiffs,

            - against -

FRONTIER AIRLINES INC.

                   Defendant.

_____

**Civil Action No.  1:18-cv-00676**

**Memorandum in Support of Plaintiffs'
Motion to Compel**

## Introduction

William Woodrow (VSB 88122), and Thatcher A. Stone (admitted pro hac vice), Stone & Woodrow LLP, 250 West Main Street, Suite 201, Lewis and Clark Plaza, Telephone 855 275-7378, will@stoneandwoodrowlaw.com, thatcher@stoneandwoodrowlaw.com, Counsel for Plaintiffs, hereby move this Court as follows.

Plaintiffs, by counsel, respectfully, state as follows in support of their motion to compel Defendant Frontier to:

1. Produce an unredacted series of emails between customer service representatives, identified in ¶8 of Defendant's Privilege log, which involved no lawyers and transpired prior to Frontier's notification of pending litigation.

2. Produce documents pertaining to the litigation in possession of Menzies, who was acting as Frontier's agent and who is contractually obligated as a condition of its indemnity agreement with Frontier to cooperate with Frontier in any litigation arising from its service to Frontier, justifying Frontier's access to these documents.

3. Provide an unredacted version of the passenger manifest and provide the identity of a passenger who disembarked concurrently with Plaintiff Smithers, pursuant to the protective order agreed upon after the involvement of this Court. That order was concluded so that the passenger manifest information could be produced, which now Frontier has failed to do.

4. Produce an investigative report identified on Page D-101 of Defendant's production that was conducted into the allegation of the co-pilot's insobriety. Defendant claims no such report exists despite the fact that it is identified.

**Argument**

**1. The Emails Identified by Frontier in Their Privilege Log ¶8 Are Not Privileged.**

Frontier received a litigation hold letter from the Plaintiffs on January 9, 2018. See Exhibit A. Between December 25, 2017 and January 9, 2018, there were email communications between customer service employees of Frontier discussing the Plaintiffs' incident. Exhibit A. Frontier has asserted that these emails consisted of privileged attorney client communication and work product, even though no litigation had been indicated and no Frontier attorneys were involved.

There is ample case precedent that these emails are not privileged.

**Work product immunity belongs to the attorney and protects documents that are either prepared by the attorney or at the direction of the attorney in anticipation of litigation.** *Goff v. United Rentals (N. Am.), Inc.,* No. 2:16-CV-608, 2017 WL 1179158, at *2 (E.D. Va. Mar. 28, 2017)("Commonly referred to as the work product immunity doctrine, this protection belongs to the attorney and protects from disclosure documents that are prepared by or at the direction of

2

an attorney in anticipation of litigation.")  There is no indication that an attorney was involved in any way with these pre-litigation emails.  A Linked-In search reveals every individual involved to be employed in Frontier's customer service department.  Nor has Frontier claimed any attorney to be involved.

**Regardless of the involvement of an attorney, work product immunity does not apply to documents that are not concerned with formulating a *legal* strategy.** *In re Lumber Liquidator S Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.,* No. 115MD02627AJTTRJ, 2015 WL 9474286, at *1–2 (E.D. Va. Dec. 28, 2015)("the communication must be part of the process of seeking, developing, or conveying legal advice or strategy…the court finds that counsel engaging with Mercury personnel were assisting defendant only in the business activity of managing a public/customer relations crisis, with no observable interface, much less overlap, between that effort and one to plan the defense of claims made in litigation.")

**It is not enough that litigation might be anticipated for the doctrine to trigger.**  *RLI Ins. Co. v. Conseco, Inc.,* 477 F. Supp. 2d 741, 747 (E.D. Va. 2007)("First, it protects 'work product' that is created because of litigation when that litigation is a real likelihood, but not 'work product' that is created 'because of' litigation when that litigation is merely a possibility. *National Union* explained that, 'because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet the mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity.'"); see also *Sanford v. Virginia*, No. CIV.A. 3:08CV835, 2009 WL 2421787, at *3 (E.D. Va. July 31, 2009)("It is settled in the Fourth Circuit that a document must have been prepared "because of" the potential for litigation in order to be protected by the work-

product doctrine. Materials that are prepared in the "ordinary course of business" or for other nonlitigation purposes are not considered to have been prepared in the anticipation of litigation, *even if litigation is anticipated*.")(emphasis added)

**The question of whether customer service agents handling a customer incident are deemed to be generating protected work product has been directly addressed by a sister court.** *Cooper v. Old River Supply, Inc.*, No. 3:10-CV-01495-JEO, 2012 WL 13027261, at *3–4 (N.D. Ala. May 18, 2012)("Here, the documents in question are e-mails involving those people in Defendant's customer service department. It is the ordinary course of business for those in the customer service department to resolve customer's, like Plaintiffs, problems. The fact that the Plaintiffs were having issues and that Defendant figured that Plaintiffs 'could well end up filing suit' is not sufficient to show that the documents at issue were drafted in anticipation of litigation. Like with an insurance claim file, from the minute a customer calls Volvo with a complaint, there is a possibility of litigation. However, it is not until the litigation is imminent that the discussions concerning the resolution of those issues might be protected by the work product doctrine.")

For the foregoing reasons, Plaintiffs requests an order from this Court compelling the unredacted production of these emails.

2. **Frontier Has Control Over the Pertinent Menzies Documents and Must Produce Them.**

Frontier refuses to produce documents about the incident with the Plaintiffs, arguing that Menzies' documents are beyond Frontier's control.

**Frontier has Control Over its Agent's Documents.** *Atlantis Consultants Ltd. Corp. v. Terradyne Armored Vehicles, Inc.,* No. 1:15-CV-439-CMH-MSN, 2015 WL 9239808, at *3 (E.D. Va. Dec. 16, 2015)("companies are deemed to have control over their agents and, by extension, their agent's documents."); *A-W Land Co. LLC v. Anadarko E & P Onshore LLC*, 2015 WL 2213991, at *5 (D. Colo. May 11, 2015)("A corporation has control over 'records stored by an agent within the scope of the agency relationship.'")

**Menzies is an Agent of Frontier.** Frontier has claimed that Menzies is not its agent based upon language in the Ground Handling Agreement that claims otherwise. But an agency relationship is a question of fact. *W. Fire Truck, Inc. v. Emergency One, Inc.,* 134 P.3d 570, 575–76 (Colo. App. 2006). "The factual inquiry is guided by common law agency principles." *U.S. v. David*, 943 F.Supp. 1403, 1410 (E.D.Va.,1996). "The critical determination is whether the parties materially agreed to enter into a particular relation to which the law of agency is attached." *W. Fire Truck* 134 P.3d at 576. "Agency is a relationship created not by the parties, but by the law." *Embeita v. Heinold Commodities, Inc.*, 1985 WL 8717, at *4 (E.D.Va.,1985). "Parties to an agency relationship do not change the nature of that relationship merely by calling it something other than its legal name." *Id.* at 2. An agreement's disclaimer is not controlling. *Bayview Loan Servicing, LLC v. Boland,* 2009 WL 3234270, at *5 (D. Colo. Sept. 30, 2009); see also *Johnson v. Chilcott,* 658 F. Supp. 1213, 1219 (D. Colo. 1987); *Murphy v. Holiday Inns, Inc.,* 216 Va. 490, 492–93, 219 S.E.2d 874, 876 (1975).

"An 'agent' is generally one who acts for, or in place of, another, or is entrusted with the business of another." *Moses v. Diocese of Colorado*, 863 P.2d 310, 324 (Colo. 1993). Courts around the country hold with regularity that ground handling companies are in fact by the nature of their activities the agents of the airlines they serve. See *Croucher v. Worldwide Flight Servs.,*

*Inc.,* 111 F. Supp. 2d 501, 504–05 (D.N.J. 2000);  *Waxman v. C.I.S. Mexicana De Aviacion, S.A. De C.V.,* 13 F. Supp. 2d 508, 514–15 (S.D.N.Y. 1998); *Am. Home Assur. Co. v. Kuehne & Nagel (AG & Co.) KG*, 544 F. Supp. 2d 261, 266 (S.D.N.Y. 2008); *Vumbaca v. Terminal One Grp. Ass'n L.P.,* 859 F. Supp. 2d 343, 363–64 (E.D.N.Y. 2012); *HIH Marine Ins. Servs., Inc. v. Gateway Freight Servs.,* 96 Cal. App. 4th 486, 494, 116 Cal. Rptr. 2d 893, 899 (2002); *Harger v. Spirit Airlines, Inc.,* 2003 WL 21218968, at *2 (N.D. Ill. May 22, 2003); *Danner, v. Int'l Freight Sys. of Washington, LLC,* 2013 WL 78101, at *1 (D. Md. Jan. 4, 2013).

***Regardless of Agency Frontier has Control Over the Menzies Documents.*** Section 8.1 of the indemnification clause of the ground handling agreement between Frontier and Menzies requires that Menzies in the case of litigation  "shall furnish such assistance as the Carrier may require." Exhibit B.

> The Federal Rules of Civil Procedure require production of documents "which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a) (2007). Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has the legal right to obtain the documents on demand. *Starlight International v. Herlihy,* 186 F.R.D. 626, 635 (D.Kan.1999). "Control" comprehends not only possession, but also the right, authority, or ability to obtain the documents. *Super Film of Am., Inc. v. UCB Films, Inc.,* 219 F.R.D. 649, 651 (D.Kan.2004). Therefore, Rule 34(a) enables a party seeking discovery to require production of documents beyond the actual possession of the opposing party if such party has retained any right or ability to influence the person in whose possession the documents lie.

*Tomlinson v. El Paso Corp.,* 245 F.R.D. 474, 476–77 (D. Colo. 2007); see also *In re Outside Wall Tire Litig.*, 2011 WL 5357913, at *4 (E.D. Va. Nov. 7, 2011), aff'd sub nom. *Tire Eng'g & Distribution, LLC v. Al Dobowi Ltd*, 2012 WL 12905171 (E.D. Va. Apr. 12, 2012)("Control may be found to exist where that entity has an 'ability to obtain the requested documents on

demand.'"). Frontier by its contractual right to cause Menzies to assist has control over the responsive documents.

### 3. Frontier Redacted the Passenger Manifest in Bad Faith

The issue of disagreement between the parties on the proper form of a protective order was before this Court on March 6, 2019. Frontier demanded a protective order to protect sensitive information, including passenger details as Frontier explained in its objection to Request No. 1 in Plaintiffs' First Request for Documents where Plaintiffs requested the passenger manifest.[1]

Frontier was aware that Plaintiffs' engagement in negotiations over a protective order was largely in order to obtain the passenger manifest. Despite this, Defendant produced an unusable redacted version.

The entire planeload of passengers are potentially relevant witnesses as any of them may have observed the co-pilot's behavior prior to boarding. Defendant's claim that Ms. Smithers tweet was so outrageous that she deserved the treatment she received, but if the co-pilot did in fact engage in behavior such as sleeping on the floor and that behavior is confirmed by a witness unrelated to the litigation, then Defendant's argument loses weight. The Plaintiff is entitled to seek other witnesses, whose identities are solely in the control of the Defendant.

Plaintiff offered a compromise in a spirit of cooperation and limited their request to merely Ms. Smithers row, the two rows behind and in front, and the first three rows of the plane. This request was tailored to seek witnesses who also may have observed Ms. Smithers being

---

[1] "Defendant will only produce relevant portions of the confidential documents called for in this request upon the entry of a mutually agreeable protective order." Exhibit C.

struck by the Menzies agent while she was still seated and to seek witnesses who may have heard the defamatory statement that was made to Ms. Smithers family while they were standing at the front of the plane just inside of the jetway.

Defendant refused Plaintiffs' offer of compromise, stating they would only produce the row in which Ms. Smithers was seated with her companion and the very first row of the plane. Considering that Plaintiffs may be unable to reach a majority of the passengers that they are given and others may not have been paying attention, this is unacceptable.

Plaintiffs made a fair offer of compromise and request this Court to compel the production requested.

**The Passenger Who Disembarked**

Plaintiffs allege in ¶¶s 48 and 49 of their Second Amended Complaint that there was an unidentified passenger who disembarked the plane with Mr. Mims.[2] This passenger approached the Frontier counter where Ms. Smithers was standing and confronted the Menzies agent over her treatment of Ms. Smithers. It is reasonable to assume that this passenger witnessed the events that transpired. Frontier has acknowledged as much and claims that it is "looking for" the passenger, but has so far been unable to identify him. Frontier claims to be having difficulty because the passenger disembarked and so is not on the manifest. However, there is most certainly a Passenger Name Record (PNR) at the very least, and Plaintiffs do not believe that Frontier is making a good faith effort to locate this potentially important witness. Frontier has had over two months to locate this witness, yet still he has not been produced.

---

[2] Defendant's production confirms the existence of this disembarking passenger. Exhibit D.

Plaintiffs believe that an instruction from this Court will improve Frontier's efforts and so request an order compelling that he be produced.

## 4. The Investigative Report.

On page D-095-D-100 of Defendant's production there are a series of emails between Doug Hill,  the Assistant Principal Operations Inspector at the Denver airport, and Frontier employees concerning an investigation he was conducting into the allegation of the co-pilot's insobriety. Exhibit E.  This investigation included interviewing all of the witnesses involved and culminated in a report, as evidenced in D-101 of Defendant's production, where Mr. Hill refers to the report that he is producing as a result of his investigation.  Exhibit F.  Despite this email, Frontier maintains either that no such report exists or that it has no report.

Frontier either has this report or has the ability to obtain it from Doug Hill and it is relevant discovery that Frontier must produce.  See supra *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476–77 (D. Colo. 2007).  Plaintiffs ask for an order compelling its production.

Dated:        Charlottesville, Virginia                                        April 5, 2019

   /s/ William T. Woodrow

William T. Woodrow III
Stone & Woodrow LLP
250 West Main St., Suite 201
Charlottesville, Virginia 22902
T. 855-275-7378
*Attorneys for Plaintiff*

To:    CHARLSON BREDEHOFT COHEN & BROWN, P.C.
       Elaine Charlson Bredehoft
       11260 Roger Bacon Drive, Suite 201
       Reston, VA 20190
       T. (703) 318-6800
       *Attorneys for Defendant*

**Certificate of Service**

I hereby certify that on the 5th day of April, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

       CHARLSON BREDEHOFT COHEN & BROWN, P.C.
       Elaine Charlson Bredehoft
       11260 Roger Bacon Drive, Suite 201
       Reston, VA 20190
       T. (703) 318-6800
       *Attorneys for Defendant*

Charlottesville, VA        April 5, 2019

By:    /s/ William T. Woodrow

       William T. Woodrow III, Esq.
       Stone & Woodrow LLP
       Suite 201, Lewis & Clark Plaza
       250 West Main Street
       Charlottesville, VA 22902
       will@stoneandwoodrowlaw.com
       Telephone +1 855 275 7378/Fax +1 646 873 7529