IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ANNE SMITHERS, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 1:18cv676 (TSE/IDD) |
| ) | |
| FRONTIER AIRLINES, INC. ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT FRONTIER AIRLINES, INC.'S
### OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Defendant Frontier Airlines, Inc. ("Frontier" or "Defendant") hereby opposes the Motion to Compel of Plaintiffs Anne Smithers ("Ms. Smithers" or "Plaintiff Smithers") and Henry Wiley ("Mr. Wiley" or "Plaintiff Wiley") as follows.

### SUMMARY OF ARGUMENT

On December 25, 2017, before boarding the plane in this case, Plaintiff Smithers publically accused the copilot of being drunk on Twitter: "@FlyFrontier really absurd that we have a two hour delay and for the copilot to sober up!! WTH thanks for ruining Christmas." [Dkt. 36 at ¶ 24]. Based on Plaintiff's public (and false) accusations, Plaintiff Smithers was removed from her seat in the ninth row of the plane by employees of Menzies, a third-party ground service company. [Dkt. 36 at ¶¶ 29-33]. After removing Smithers from the plane, the other members of Smithers's party exited to the jet way, where Plaintiffs claim that Smithers was defamed. [Dkt. 36 at ¶¶ 38-39, 46].

Plaintiffs cannot argue in their Motion to Compel that they are missing statements from the pilot, co-pilot, flight crew and relevant Menzies' personnel. Plaintiffs have that information.

Instead, Plaintiffs Motion to Compel is a fishing expedition that should be denied in its entirety. First, Plaintiffs seek for Frontier to disclose in it its entirety a compilation of communications that were made in reasonable anticipation of litigation, after Plaintiff threatened to go to the FAA (and then did, as well as filing a complaint with the Department of Transportation), and informed Frontier that she had a lawyer. Rather than protect the whole document based on work product, Frontier disclosed witnesses' factual statements that recounted the events. But Frontier redacted statements from others who were commenting well after the events in question for purposes of preparing for litigation, and to inform and assist Frontier's counsel how to proceed. That lawyers were not on the document in question does not lose the work product privilege. Fed. R. Civ. P. 26(b)(3)(A); *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015); *Szulik v. State St. Bank & Tr. Co.*, No. 12-10018-NMG, 2014 U.S. Dist. LEXIS 110447, at *8-9 (D. Mass. Aug. 11, 2014); *Goff v. Harrah's Operating Co.*, 240 F.R.D. 659, 660 (D. Nev. 2007).

Next, Plaintiffs continue to claim that Frontier must produce documents of the former Defendant who has since been dismissed – Menzies. These are not Frontier's documents. The contract between Frontier and Menzies specifically disclaims any agency relationship, and further states that Menzies' documents belong to Menzies. **Att. 4**, § 1.2; **Att. 5**, § 19.3. Plaintiffs have a mechanism for obtaining those documents through subpoena, and have not explained why they cannot obtain, have not already obtained, or did not even attempt to obtain this information through the correct process set forth in Fed. R. Civ. P. 45.

Every flight has a passenger manifest, identifying all of the passengers who were on the flight. Rather than seek an appropriate, narrowly-tailored number of passengers, afforded under 14 C.F.R. § 243, Plaintiffs seek the identity of close to 50 passengers. Frontier has offered a compromise to the Plaintiffs that would provide them the identities of eight third-party

passengers (in the front row to hear if anything was said in the jet way, and the row where Smithers sat), but Plaintiffs have refused this offer of compromise. Plaintiffs' requests for personal information on nearly 50 passengers remain overbroad and unduly invasive of the privacy of those passengers.

Plaintiffs also insist that an "investigative report" by the FAA exists within Frontier's custody, despite Frontier repeatedly telling Plaintiffs it has no such report. Frontier cannot produce discovery it does not have, so there is no report to compel.

Finally, Frontier and counsel have expended significant time and effort to locate the identity of another passenger who Plaintiffs have asserted left the plane before take off. Frontier has reviewed and continues to review all information to attempt to determine if this person actually exists, and if so, to locate a person fitting this description, but at this time cannot identify anyone fitting this description (and also leaving the plane). Frontier does not object to producing this individual's identity if it is able to locate such a person, and will continue to use all resources to locate this passenger. There is no need to order Frontier to do so. It cannot produce what it does not have.

## ARGUMENT

### I. The Emails Identified in ¶ 8 of the Privilege Log are Protected by the Work Product Doctrine

Frontier redacted certain portions of a series of internal Frontier communications and comments on work-product grounds because the information compiled and communications about its contents were prepared in reasonable anticipation of litigation following communications from the Plaintiffs and their family members that they were considering bringing suit against Frontier. In *RLI Ins. Co. v. Conseco, Inc.*, cited by plaintiffs, this Court held that fact work product is created when 1) the party faces an actual claim or a potential claim

following an event or series of events that reasonably could result in litigation; and 2) the work product would not have been prepared in substantially similar form but for the prospect of that litigation." 477 F. Supp. 2d 741, 748 (E.D. Va. 2007) (Payne, J.) (*citing National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F. 2d 980, 984 (4th Cir. 1992)). This Court is clear that while communications that are part of the "ordinary course of business" are not protected under the work product doctrine, such materials are not part of the "ordinary course of business" and are protected if a party "perceive[s] a realistic prospect of litigation." *Goff v. United Rentals (North America) Inc.*, 2017 U.S. Dist. LEXIS 46588, at *8 (E.D. Va. Mar. 28, 2017) (Leonard, J.); *Sanford v. Virginia*, 2009 U.S. Dist. LEXIS 66484, at *11 (E.D. Va. Jul. 31, 2009) (Payne, J.) (holding that certain documents qualified as work product because they "were created in anticipation of litigation); *Cooper v. Old River Supply, Inc.*, 2012 U.S. Dist. LEXIS 199095, at *10-11 (N.D. Ala. May 18, 2012).

Here, Frontier was immediately put on notice of litigation and that it faced potential claims following the events of December 25, 2017 because Ms. Smithers immediately began communicating with Frontier about her complaints and sending public messages on social media complaining about the flight. **Att. 1** (PL52-57). Then on January 1, Ms. Smithers sent Frontier another message that included a demand, and also referenced earlier threats of litigation:

> This is a very serious situation for your company and one that is not going away. I will wait until 5 PM tomorrow, January 2, 2018, to hear from your corporate headquarters directly. If I do not hear from your corporate offices by that time, you will leave me no choice but to take this public and go through different avenues. As I stated multiple times in our conversations, this is and will be a Public Relations nightmare. You have my contact information. You may contact me at any time.

**Att. 2**. These communications, taken either separately or together, are sufficient to support Frontier's belief regarding pending litigation at this time.

Additionally, Plaintiffs' misstate the law by claiming that an attorney must be involved for a document to receive work product protection. The plain language of Rule 26 and numerous cases hold the opposite. Fed. R. Civ. P. 26(b)(3)(A) ("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, imdemnitor, insurer, or agent)"); Fed. R. Civ. P. 26, Advisory Committee Notes ("materials prepared in anticipation of litigation or preparation for trial *by or for a party* or any representative acting on his behalf") (emphasis added).[1]

The document at issue contains work product because it is a compilation of communications and statements assembled for purposes of litigation. [Dkt. 63-1]. While Frontier had grounds to exclude the majority of the document due to this compiling, Frontier in good faith only redacted those portions representing internal Frontier comments and notes documenting Ms. Smithers's communications from individuals who were not witnesses during the incident, (*id.* at DEF211-12, 215-217), whereas Frontier fully produced all factual accounts from witnesses who did have first hand knowledge of the facts and claims or statements between Smithers and Frontier personnel despite being compiled in this manner (*id.* at DEF211, 213-17).

Finally, Plaintiffs argue that they need the statement of Ms. Knox, a customer service representative. But they already have the exchange between Ms. Knox and Ms. Smithers on the

---

[1] *See also Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015) ("Finally, all cases of which the Court is aware that have specifically addressed this question afford protection to materials gathered by non-attorneys even where there was no involvement by an attorney."); *Szulik v. State St. Bank & Tr. Co.*, No. 12-10018-NMG, 2014 U.S. Dist. LEXIS 110447, at *8-9 (D. Mass. Aug. 11, 2014) ("This argument is not persuasive. By now, it is well-established that the doctrine protects writings made by a party, even without any involvement by counsel"); *Goff v. Harrah's Operating Co.*, 240 F.R.D. 659, 660 (D. Nev. 2007) ("it may be surprising to long-time practitioners that a lawyer need not be involved at all for the work product protection to take effect.").

day of the incident.  **Att. 1**, PL 52-57.  The statements from Ms. Knox that have been redacted are well after the incident, and were made with pending litigation in mind, which Frontier will submit directly to chambers for *in camera* review.  Further if the Court compares Plaintiffs' production of some of the same communications between Smithers and Frontier to what Frontier has produced and redacted, *compare* **Att. 2**, PL 49-50 *with* [Dkt. 63-1, at DEF215-217], the redacted portions of the document at issue contain further information supporting Frontier's belief of pending litigation with Ms. Smithers, including references to Ms. Smithers' lawyers, which Frontier will also submit directly to chambers for *in camera* review.[2]

## II. Menzies' Documents Are Not Frontier's Documents to Produce, and the Contract Between Menzies and Frontier Disclaims any Agency Relationship

Plaintiffs argue that Menzies is an agent of Frontier, and thus Frontier has custody and control over Menzies' documents.  But the Plaintiffs provide minimal facts analyzing these general statements of law, which is required to determine if a party possesses custody or control over another party's documents.

First, Plaintiffs ignore Menzies' status as a dismissed defendant in this litigation, and obtaining discovery from Frontier that is within the custody and control of a dismissed defendant is not the proper way to obtain the information sought.  Plaintiffs have all of the third-party discovery mechanisms of Fed. R. Civ. P. 45 at their disposal, which is the proper way to obtain these documents.

Second, when evaluating "custody and control" of documents for discovery purposes, this Court speaks of "related non-parties," which it defines as "parent, sister, or subsidiary," and evaluates factors such as the corporate structure of the non-party, the non-party's connection to

---

[2] Plaintiffs made no argument concerning substantial need, so a ruling that the document was properly redacted as work product would conclude the Court's analysis

the litigation, the degree the non-party will benefit from the case's outcome, whether documents are exchanged in the ordinary course of business, participation in the litigation, and agreements reflecting the parties' legal rights. *See Baby Jogger, LLC v. Britax Child Safety, Inc.*, 2013 U.S. Dist. LEXIS 195457, at *5 (E.D. Va. Apr. 23, 2013) (Miller, J.). Here, Plaintiffs ignore these factors, except for "legal agreements," and provide a single, generalized sentence from the contract regarding ▮▮▮▮▮▮ to Frontier as its evidence of "custody and control" of documents. [Dkt.63-2, § 8.1].

But the "legal agreements" factor actually supports Frontier, despite the Plaintiffs omitting material portions of the contract that directly address agency and control of documents. The Contract states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Att. 3**, § 1.2 (Standard Ground Handling Agreement). The Contract further provides that:



**Att. 4**, § 19.3 (Ground Handling Agreement- Simplified Procedure).

As Plaintiffs argue themselves, the "critical determination" is whether the parties materially agreed to enter into a particular relation to which the law of agency is attached. *W. Fire Truck, Inc. v. Emergency One, Inc.*, 134 P.3d 570, 575-76 (Co. Ct. App. 2006); *see also Baby Jogger*, 2013 U.S. Dist. LEXIS 195457, at *5 ("agreements reflecting the parties' legal rights"). Here, the Parties explicitly agreed that the relationship *was not* one of agency and that Menzies' documents belong to Menzies. Plaintiffs provide no analysis, or case law, of why an isolated and generalized sentence in the financial indemnification portion of the contract

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ overrules these specific portions of the contract.

Plaintiffs case law from across the country also has no relationship to "custody and control" of documents for discovery purposes, and instead is based on indemnity of agents under the Warsaw and Montreal Conventions. But this Court has issued on-point guidance specific to discovery. In *Atlantis Consultants, Ltd. v. Terradyne Armored Vehicles, Inc.*, the Court held that the case did not reflect a principal-agent relationship, but instead was "more akin to those cases in which courts have held that one corporation does not 'control' the documents of another, notwithstanding a close working relationship." 2015 U.S. Dist. LEXIS 169152, at *9 (E.D. Va. Dec. 16, 2015); *see also Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, 2006 U.S. Dist. LEXIS 98747, at *3 (N.D. Cal. Dec. 19, 2006) (finding no "control" under Rule 34 where "companies have separate operations, manage separate products, maintain separate finances, and have independent decision-making power over day-to-day operations," notwithstanding evidence that the companies were "closely affiliated"); *Ebersole v. Kline-Perry*, 292 F.R.D. 316, 322 (E.D. Va. 2013) (finding "control" because plaintiff was the creator and legal owner of videos sought in discovery). The present case is more similar to *Atlantic Consultants*, as Frontier does not "control" Menzies' documents despite a working relationship.

For these reasons, Menzies documents are not within Frontier's custody and control and Frontier has no obligation to produce them.

III. **Frontier Properly Redacted the Passenger Manifest and Has Offered Options to Produce its Relevant Portions While Maintaining Reasonable Passenger Privacy**

Plaintiffs discuss that they seek the passenger manifest, but continue to shift their reasons for needing to discover all or portions of the manifest. Plaintiffs also provide no rationale

8

seeking discovery of any portion of the manifest in their Motion, instead stating in a conclusory fashion that "the entire planeload of passengers are potentially relevant witnesses" and that they are entitled to seek "other" undefined witnesses. The relief sought by Plaintiffs is also unclear, because Plaintiffs argue that "any of them [passengers] *may have* observed the co-pilot's behavior prior to boarding" (emphasis added).

Plaintiffs sought and still seek the entire passenger manifest for the relevant flight. [Dkt. 63-3, No. 1]. Frontier objected that the request for passenger's personal and contact information as overbroad, unduly burdensome, and unlikely to result in the discovery of admissible evidence. *Id.* Frontier also objected pursuant to 14 C.F.R. § 243, which exists in part to prohibit the harassment of passengers through disclosure of their personal information. 14 C.F.R. 243.1 (The statute exists "to ensure the U.S. government has prompt and adequate information in case of an aviation disaster"). The statutes further only allows the manifest information to be shared with the relevant government agencies, but Courts have allowed narrowly tailored and specific discovery seeking partial information from a manifest. 14 C.F.R. § 243.9; *Raub v. US Airways, Inc.*, 2017 U.S. Dist. LEXIS 94018, at *3-5 (E.D. Pa. June 19, 2017) (allowing discovery of passengers in designated and relevant rows); *Xuan Thi Phan v. Jetblue Airways Corp.,* 2017 U.S. Dist. LEXIS 212832, *4 (E.D. Cal. December 28, 2017) (limiting disclosure of passenger names and contact information for rows near plaintiff).

In this case, Frontier responded to this broad discovery request that it would produce relevant portions of the manifest after entry of a protective order, but maintained its objections to the Request. Plaintiffs eventually narrowed their request to seeking full passenger information for rows 1-9 of the plane, which results in information for approximately 50 passengers who are not parties to this litigation. **Att. 5**, at 2. (4/5/19 11:50 AM email chain).

Frontier responded that it would produce passenger information from Rows 1 and 9, but Plaintiffs rejected this offer and maintained they are "entitled to the entire plane," and then requested information from 4 rows of passengers. *Id.* Frontier is not trying to limit Plaintiffs' access to relevant discovery, but has a duty to protect its passengers from harassment as Plaintiffs have stated their intentions contact all of the passengers provided by Frontier. [Dkt. 63, at 7 ("Plaintiff is entitled to seek "other witnesses," and "considering that Plaintiffs may be unable to reach a majority of the passengers that they are given and others may not have been paying attention")]; **Att. 5**, at 1 ("The entire plane…are therefore relevant potential witnesses").

This case is similar to *Raub v. U.S. Airways, Inc.*, 2017 U.S. Dist. LEXIS 94018, at *3-5 (E.D. Pa. June 19, 2017). In *Raub*, the plaintiff also sought a full manifest identifying all 172 passengers on the flight. *Id.* at *3. But the Court limited the discovery to the specific rows of the plane upon which plaintiff had justified discovery, and rejected generalized requests for the remainder of the manifest based on 14 C.F.R. § 243.7:

> In addition, US Airways also provided plaintiff with the names of the six passengers who were assigned to the seats across from and behind plaintiff, but did not provide contact information with respect to these six passengers. US Airways shall provide to plaintiff the contact information, if available, for these six passengers pursuant to the protective order the parties currently have in place…
>
> The remaining passengers on the plane would have little to no information to add to the testimony of these witnesses on the issues of causation and damages. Federal law prohibits airline carriers from releasing passenger contact information. *See* 14 C.F.R. §§ 243.7(a), 243.9. Plaintiff has not made a sufficient showing of need for this information to justify this court overriding this important privacy policy. To the extent sent forth herein, the Motion to Compel is granted in part and denied in part.

*Id.* at *3-5.

Frontier remains willing to un-redact rows 1 and 9 from the passenger manifest, and this type of narrowing is exactly what is contemplated by 14 C.F.R. § 243, *Raub*, and *Xuan*. To the

extent Plaintiffs seek more of the passenger manifest, Frontier respectfully requests the Court deny the Motion.

### IV. There is No "Investigative Report" as Identified by Plaintiffs, and Frontier Has Communicated this to Plaintiffs Multiple Times

Frontier has addressed this issue with Plaintiffs on multiple occasions, and there is no "report" to produce to Plaintiffs. Plaintiffs refer to Doug Hill's (an employee of the Federal Aviation Administration) statement regarding a "report" in a June 22, 2018 email, but Frontier has searched for any "report" this statement could be referencing multiple times, and has not located any reports prepared by Doug Hill. Frontier has told Plaintiff on multiple occasions that there was no report, yet Plaintiffs continue to respond that Frontier must produce it.

Frontier cannot produce a document that it has no record of existing, nor is it withholding production of any reports. As Plaintiffs state in their own supplemental discovery responses, "[Plaintiffs] may believe there is more to produce than [Defendants] have, but there is not." **Att. 6**, at 15.

### V. Frontier is Attempting to Identify the Passenger in Good Faith, but is Still Investigating Whether the Passenger Exists and the Identity of the Passenger At Issue

Frontier does not object to producing information identifying the passenger Plaintiffs contend left the airplane before take off, nor has it ever stated a refusal to produce such information. On the contrary, Frontier and undersigned counsel have spent extensive time reviewing documents and other research to determine if such a passenger existed on this flight, and if so, the identity of this passenger, and we are still unable to confirm the existence or identity. While Plaintiffs describe this as an easy and straightforward process, it has not proven so. If a passenger left the plane, it is complicated because the passenger would not remain on the manifest because of leaving the plane before take off. Frontier is still working on trying to

locate anything that would verify and provide any information, but until such time as Frontier can identify that a passenger left the plan and the passenger's identity, it is unable to respond.

Frontier will keep searching for this information and make all reasonable efforts to verify and identify this passenger.

## CONCLUSION

For the reasons stated above, Frontier respectfully requests the Court deny Plaintiffs' Motion in its entirety.

April 10, 2019

/s/ DAVID E. MURPHY
Elaine Charlson Bredehoft, VSB No. 23766
Adam S. Nadelhaft, VSB 91717
David E. Murphy, VSB 90938
Charlson Bredehoft Cohen & Brown, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
ebredehoft@cbcblaw.com
anadelhaft@cbcblaw.com
dmurphy@cbcblaw.com

Stephen J. Fearon (Admitted *Pro Hac Vice*)
Bartholomew J. Banino (Admitted *Pro Hac Vice*)
Allison M. Surcouf (Admitted *Pro Hac Vice*)
Condon & Forsyth LLP
7 Times Square
New York, NY 10036
(212) 490-9100  Telephone
(212) 370-4453  Facsimile
SFearon@condonlaw.com
bbanino@condonlaw.com
asurcouf@condonlaw.com

*Counsel for Defendant, Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

        Thatcher A. Stone, Esq.
        William T. Woodrow, III, Esq.
        Stone & Woodrow LLP
        250 West Main Street, Suite 201
        Lewis & Clark Plaza
        Charlottesville, Virginia 22902
        Phone: (301) 928-7665
        thatcher@stoneandwoodrowlaw.com
        will@stoneandwoodrowlaw.com
        *Counsel for Plaintiffs*

        /s/ DAVID E. MURPHY
        Elaine Charlson Bredehoft, VSB No. 23766
        Adam S. Nadelhaft, VSB 91717
        David E. Murphy, VSB 90938
        Charlson Bredehoft Cohen & Brown, P.C.
        11260 Roger Bacon Drive, Suite 201
        Reston, VA 20190
        (703) 318-6800 Telephone
        (703) 318-6808 Facsimile
        ebredehoft@cbcblaw.com
        anadelhaft@cbcblaw.com
        dmurphy@cbcblaw.com