UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
_____

ANNE SMITHERS and HENRY WILEY by his mother and next friend ANNE SMITHERS

      Plaintiffs,

- against -

FRONTIER AIRLINES INC.

      Defendant.
_____

Civil Action No. 1:18-cv-00676

**Plaintiffs' Reply to Defendant's Response in Opposition to Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel**

## Introduction

William Woodrow (VSB 88122), Thatcher A. Stone (admitted pro hac vice), Stone & Woodrow LLP, 250 West Main Street, Suite 201, Lewis and Clark Plaza, Telephone 855 275-7378, will@stoneandwoodrowlaw.com, thatcher@stoneandwoodrowlaw.com, Counsel for Plaintiffs.

Plaintiffs, by counsel, respectfully, states as follows in Reply to Defendant's Response in Opposition to Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Compel:

## Argument

**1. The Emails Identified by Frontier in Their Privilege Log ¶8 Are Not Privileged.**

*Litigation was not reasonably anticipated when the emails were written.*

The threat of litigation is always present when an angry customer calls to complain about being wronged. *Cooper v. Old River Supply, Inc.*, 2012 WL 13027261, at *3–4 (N.D. Ala. May 18, 2012). But litigation must be more than a mere possibility for work product protection to apply. *Id*.

Defendant claims that it was put on notice of pending litigation when Ms. Smithers wrote on January 2, 2019: "you will leave me no choice but to take this public and go through different avenues. As I stated multiple times this is and will be a public relations nightmare." But Ms. Smithers' demand at that point was to be contacted by someone from Frontier's corporate offices – for her treatment to be recognized and acknowledged. She wasn't threatening litigation: she was, first and foremost, threatening media exposure. She was threatening to publicly shame Frontier for its behavior. And even if her words were to be construed as a threat of litigation, at this point they were just hot words. Words – whether spoken aloud or implied – that customer service personnel hear every day. Words that are their job to defuse.[1]

The emails in question were written in the midst of handling a *customer service problem*. Unless it is Frontier's customer service policy that litigation is always a desired first resort, the customer service department was still at bat – still trying to resolve the problem. Frontier could have offered an apology and free flight vouchers as a result of their investigation. Frontier could have taken other steps to acknowledge to Ms. Smithers that it screwed up. Litigation was not reasonably anticipated by Ms. Smithers at this point – that is why *she was engaging customer service*. And Frontier may have been cognizant of the possibility of litigation at this point, but things had not yet escalated to a "real likelihood." *RLI Ins. Co. v. Conseco, Inc.,* 477 F. Supp. 2d 741, 747 (E.D. Va. 2007)

---

[1] Even less persuasive is Frontier's false claim that Ms. Smithers threatened on the day of the incident to complain to the FAA. Even if this were to be believed, a consumer complaint to a Federal agency is not a threat of litigation.

Frontier did not receive a litigation hold letter until January 9 – that was the first moment when litigation became a real likelihood. That was when the legal department became involved, and that was after the emails were written.

***The emails were not written "because of" anticipated litigation.***

Even after litigation is reasonably anticipated, "materials that are prepared in the 'ordinary course of business' or for other nonlitigation purposes are not considered to have been prepared in the anticipation of litigation." *Sanford v. Virginia*, 2009 WL 2421787, at *3 (E.D. Va. July 31, 2009). "It is settled in the Fourth Circuit that a document must have been prepared 'because of' the potential for litigation in order to be protected by the work-product doctrine." *Id*.

The "because of" test is used by many Circuits, including the Fourth to assess whether documents warrant work product protection. See *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir.1979); *National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir.1992); *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir.1983); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir.), cert. denied, 484 U.S. 917 (1987); *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 586 n. 42 (D.C.Cir.1987); *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998).

Documents that would have been generated "in essentially similar form irrespective of the litigation" do not receive protection. *Adlman*, 134 F.3d at 1202.

So the pertinent question is: would the emails in question have been written absent a threat of litigation? The answer is yes. And even if these emails were partially motivated due to

a perceived threat of litigation, would the conversation between the customer service employees still have taken place? The answer is also yes. They were engaged in their job – investigating and addressing a customer service complaint.[2]

The primary purpose of these emails was *customer service*. As such, these emails were generated during the ordinary course of business for non-litigation purposes. These individuals weren't lawyers, and they weren't doing a lawyer's work. They may have discussed the possibility of litigation, but it could only have been within the context of them *failing at their own job*.

These individuals were not instructed nor were they qualified to develop legal strategy. And it is *legal strategy* that is protected. *In re Lumber Liquidator S Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.,* 2015 WL 9474286, at *1–2 (E.D. Va. Dec. 28, 2015). They may have been strategizing on how to solve a customer service crisis, but the law is clear *that that is not the same thing as preparing documents to assist in litigation*. *Cooper v. Old River Supply, Inc.*, 2012 WL 13027261, at *3–4 (N.D. Ala. May 18, 2012)("It is the ordinary course of business for those in the customer service department to resolve customer's, like Plaintiffs', problems. The fact that the Plaintiffs were having issues and that Defendant figured that Plaintiffs 'could well end up filing suit' is not sufficient to show that the documents at issue were drafted in anticipation of litigation.")

The emails are not protected, and the Court should compel their production.

---

2 Even if the emails "might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation. *Adlman*, 134 F.3d at 1202.

4

## 2. Frontier Has Control Over the Pertinent Menzies Documents and Should Produce Them.

The case law Plaintiffs have cited previously is clear that Menzies' relationship with Frontier satisfies common law principles of agency, but the Court does not need to reach that determination to compel Frontier to comply with Plaintiffs' requests: Frontier has the ability to pick up the phone and instruct Menzies to send over the documents. *That* is "control" for purposes of document production. *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476–77 (D. Colo. 2007); see also *In re Outside Wall Tire Litig.*, 2011 WL 5357913, at *4 (E.D. Va. Nov. 7, 2011), aff'd sub nom. *Tire Eng'g & Distribution, LLC v. Al Dobowi Ltd*, 2012 WL 12905171 (E.D. Va. Apr. 12, 2012)("Control may be found to exist where that entity has an 'ability to obtain the requested documents on demand.'"); .

Plaintiffs should not have to go through the hoops of subpoenaing these documents when the case law says that Frontier should produce them. Defendant gains no advantage by being difficult, and the Defendant's ability to obtain the documents is the most efficient means to procure them.

## 3. Plaintiffs Have made Reasonable Requests for Passenger Manifest Information

Courts protecting passenger information have done so when the passengers could not reasonably be expected to have knowledge pertaining to the litigation. But Frontier claims that it kicked Ms. Smithers off the plane because her observations about the co-pilot were so far beyond the pale and outrageously unfounded that she warranted such treatment. It claims that she was not struck in front of the other passengers. It claims that she was not defamed in front of the other passengers. Plaintiffs have a right to make their case.

Plaintiffs operated in good faith in agreeing to drastically limit the number of passengers they requested, and Frontier offered in response the barest nominal concession. Plaintiffs asked for the two rows in front and behind the location where Ms. Smithers was struck, and the three rows who were most likely to have heard the defamation. This passenger information is protected by an order of confidentiality, it is not an unreasonable request, seeking likely witnesses is not a "fishing expedition," and the Court should compel the production of this information.

### *The Passenger Who Disembarked*

The existence of the disembarking passenger is not in dispute as Defendant implies. He is directly referred to by a flight attendant in Defendant's own production where she states that he got off because the delay had caused him to miss a wedding. (See Exhibit D to Plaintiff's Memorandum in Support of Motion to Compel.)

It strains credulity that Frontier has been devoting "extensive time and research" and "making all reasonable efforts" to locate this individual for over two months now. If this individual was suspected of being a terrorist, he would have been located immediately. His testimony could be pivotal to the case as he witnessed enough of the incident to confront the Menzies agent about her treatment of Ms. Smithers and her family. There is a strong possibility that he overheard Ms. Smithers ask to have her son's medication returned, since he was also standing at the counter. Such testimony could be pivotal to the Plaintiffs' claim for negligent infliction of emotional distress. While Plaintiffs would like to think otherwise, they do not believe that Frontier has made all reasonable efforts to locate his identity, and they have little faith that any effort remains ongoing.

Plaintiffs believe that an instruction from this Court will inspire greater effort, and so request an order compelling that he be produced.

1. **The Investigative Report.**

How can Frontier maintain the non-existence of a report that is directly identified in Frontier's own email correspondence? Frontier clearly has a very close working relationship with Doug Hill, as evidenced by the familiarity of the email correspondence. Would Frontier have the Court believe that it cannot contact Mr. Hill to obtain the report?

Frontier either has this report or has the ability to obtain it from Doug Hill and it is relevant discovery that Frontier must produce. See *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476–77 (D. Colo. 2007), supra. Plaintiffs ask for an order compelling its production.

Dated:  Charlottesville, Virginia                                                                April 15, 2019

                                                            /s/ William T. Woodrow

                                            William T. Woodrow III
                                            Stone & Woodrow LLP
                                            250 West Main St., Suite 201
                                            Charlottesville, Virginia 22902
                                            T. 855-275-7378
                                            *Attorneys for Plaintiff*

To:   CHARLSON BREDEHOFT COHEN & BROWN, P.C.
      Elaine Charlson Bredehoft
      11260 Roger Bacon Drive, Suite 201
      Reston, VA 20190
      T. (703) 318-6800
      *Attorneys for Defendant*

**Certificate of Service**

      I hereby certify that on the 15th day of April, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    CHARLSON BREDEHOFT COHEN & BROWN, P.C.
    Elaine Charlson Bredehoft
    11260 Roger Bacon Drive, Suite 201
    Reston, VA 20190
    T. (703) 318-6800
    *Attorneys for Defendant*

Charlottesville, VA    April 15, 2019


By:  /s/ William T. Woodrow_____

    William T. Woodrow III, Esq.
    Stone & Woodrow LLP
    Suite 201, Lewis & Clark Plaza
    250 West Main Street
    Charlottesville, VA 22902
    will@stoneandwoodrowlaw.com
    Telephone +1 855 275 7378/Fax +1 646 873 7529