# ATTACHMENT 1

# SMITHERS

# VS.

# FRONTIER AIRLINES INC

Deposition

## SHAWN P. CHRISTENSEN

*04/17/2019*

---

**AB Court Reporting & Video**
*216 16th Street, Suite 600*
*Denver Colorado, 80202*
*303-296-0017*

*AB Court Reporting & Video*

```
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Civ. Action No. 1:18cv676 (TSE/IDD)

-------------------------------------------------------

30(b)(6) DEPOSITION OF FRONTIER AIRLINES, INC., as
given by SHAWN P. CHRISTENSEN
April 17, 2019

-------------------------------------------------------

ANNE SMITHERS, et al.,

Plaintiffs,

vs.

FRONTIER AIRLINES INC.,

Defendant.

-------------------------------------------------------
```

```
 1    APPEARANCES:

 2         STONE & WOODROW LLP
                By Thatcher Stone, Esq.
 3                 William T. Woodrow, III, Esq. (via
                   videoconference)
 4                 Suite 201, Louis & Clark Plaza
                   250 West Main Street
 5                 Charlottesville, Virginia 22902
                     Appearing on behalf of Plaintiffs.
 6
           CHARLSON BREDEHOFT COHEN & BROWN, P.C.
 7              By Elaine Charlson Bredehoft, Esq.
                   11260 Roger Bacon Drive, Suite 201
 8                 Reston, Virginia 20190
                     Appearing telephonically on behalf of
 9                 Defendant.

10         CONDON & FORSYTH LLP
                By Bartholomew J. Banino, Esq.
11                 7 Times Square
                   New York, New York 10036
12                   Appearing on behalf of Defendant.

13         Also present:   Anne Smithers, via
                           videoconference
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          Pursuant to Notice and the Federal Rules
 2  of Civil Procedure, the 30(b)(6) deposition of
 3  FRONTIER AIRLINES, INC., as given by SHAWN P.
 4  CHRISTENSEN, called by Plaintiffs, was taken on
 5  Wednesday, April 17, 2019, commencing at 9:34 a.m.,
 6  at 1700 Lincoln Street, Suite 4300, Denver,
 7  Colorado, before Vanessa D. Campbell, Registered
 8  Professional Reporter and Notary Public within and
 9  for the State of Colorado.
10
11                      I N D E X
12  30(b)(6) DEPOSITION OF FRONTIER AIRLINES, INC., as
    given by SHAWN P. CHRISTENSEN
13
14  EXAMINATION BY:                              PAGE
15      Mr. Stone                             5, 282
16      Mr. Woodrow                               --
17      Ms. Bredehoft                             --
18      Mr. Banino                         280, 285
19  EXHIBITS                         INITIAL REFERENCE
20  Exhibit 1    Plaintiff's Revised Notice       5
                 of 30(B)(6) Deposition to
21               Defendant
22  Exhibit 2    Frontier Station Administra-   141
                 tion Manual, 50.50 Employees
23               Under the Influence
24  Exhibit 3    Frontier Contract of           198
                 Carriage, with attachments
25
```

1  trained on that, I'd be more than happy to answer.

2      Q  (By Mr. Stone)  Thank you.  What did you
3  mean when you said HIMS?

4      A  HIMS is -- you know, there are different
5  pilots -- there's an FAA function so if a pilot has
6  depression, anxiety, alcohol, substance abuse, we
7  actually meet up with them.  There's an entire FAA
8  program associated with that.  And so there's
9  training associated with that that the rest of the
10 pilot group does not get and -- and a variety of
11 other things, so that's why I was asking
12 specifically if there's --

13     Q  We'll get there.

14     A  -- anything --

15     Q  We'll get there.

16     A  Okay.

17     Q  If there's something specific, we'll get
18 there.

19     A  Okay.

20     Q  Any other training in the past two years
21 that you undertook?

22     MR. BANINO:  Just -- just to confirm,
23 we're still objecting to this not being part of the
24 30(b)(6).

25     MR. STONE:  We understand, but that's

1   not -- he can respond in his individual capacity.
2           In all the 30(b)(6) cases and Weinstein,
3   Miller, all tell you that's permissible, so your
4   objection, Bart, is ill-placed in my view.  So --
5           MR. BANINO:  Thatcher, you --
6       Q   (By Mr. Stone)  Please go ahead and
7   answer.
8           MR. STONE:  We don't agree, Bart.  We
9   don't agree.
10          MR. BANINO:  Thatcher, if you'd let me
11  finish what I'm saying rather than interrupting with
12  a speech.
13          I was simply going to say that we object
14  that this is outside the 30(b)(6), but this is -- he
15  is answering in his individual capacity.
16          MR. STONE:  Yeah, I made that clear.
17          MR. BANINO:  Okay.  But -- and I'm making
18  clear, as well, but you keep asking him questions
19  along this -- along this -- these lines.
20          MR. STONE:  Well, it's clear what he's
21  doing.
22          MR. BANINO:  But it's not clear, which is
23  why I'm stating it.
24          MR. STONE:  That's fine, Bart.  Keep
25  editing.

```
 1              MR. BANINO:  Thatcher, you have --
 2              MR. STONE:  Please --
 3              MR. BANINO:  You have --
 4              MR. STONE:  -- calm down, Bart, and let me
 5   continue.  We don't have much time to get this done
 6   and we have to get into the nine areas noticed.
 7              Your comment is recognized, and I agree,
 8   we are asking him individual questions.
 9              MR. BANINO:  Fine.
10       Q    (By Mr. Stone)  So was there any further
11   training, Mr. Christensen?
12       A    I'm sure there is.  Again, if you --
13       Q    But you don't remember?
14              MR. BANINO:  Thatcher, please -- please
15   let him finish his answers.
16              MR. STONE:  Stop editing my commentary.
17              MR. BANINO:  I'm not editing your --
18              MR. STONE:  You are, Bart.
19              MR. BANINO:  -- commentary.  I'm asking
20   you to let the witness finish his answers before you
21   jump in.  That's all.
22       A    So I'll be specific to what I see here.
23   You're asking about pilot rules for rest, which is
24   14 CFR.  There's also a 14 CFR on alcohol
25   consumption.
```

1    MR. STONE:  Yeah.  Well, let me finish and
2  you'll see where we're going.
3    MR. BANINO:  A corporation doesn't have a
4  state of mind, so when --
5    MR. STONE:  Well, it does.
6    MR. BANINO:  -- you're asking these --
7  okay.  But when you're asking these questions you're
8  asking them to him in his personal capacity.  I just
9  want to be clear.
10    MR. STONE:  I'm not.  I disagree and you
11  can make that objection with the judge post hoc.
12    Q    (By Mr. Stone)  Sorry, Mr. Christensen.
13         So when you saw the e-mails, all of them,
14  after the fact, did it run through your mind that
15  maybe the pilots were confused, copilot, pilot, in
16  this incident?
17    A    I'm going to precursor this with months
18  later.
19    Q    Yeah, right.
20    A    Yeah.  Once the -- everything -- once I
21  started getting the information, then, yes, there
22  could be the potential that it could have been the
23  pilot or the copilot.
24         Going back to, I think what we were
25  talking about previously, as the duty manager on

```
 1   call that day, it was the captain, not the first
 2   officer.
 3        Q    Understood.  Because that's --
 4        A    I want to make sure that I clarify between
 5   the two, that as representing for this it -- there's
 6   a potential that it could have been one or the
 7   other.  The day of there was no ifs, ands or buts,
 8   it was the captain that had the allegation and
 9   that's how we focused our --
10        Q    Understood.
11        A    Attention on the day of.
12        Q    Understood.
13             In preparation for your appearance today,
14   did you talk with Olivia Knox about this possible
15   confusion?
16        A    I did not.
17        Q    Okay.  Did you talk with the GSC about
18   this possible confusion?
19        A    I did not.
20        Q    Okay.  Did you talk with any of the
21   individuals -- pardon me.
22             Did you talk with any of the individuals
23   who were involved in -- in asserting or identifying
24   the reasonable suspicion -- right, the first step
25   you take?
```