UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
_____

| | |
|---|---|
| ANNE SMITHERS and HENRY WILEY by his mother and next friend ANNE SMITHERS<br><br>Plaintiffs,<br><br>- against -<br><br>FRONTIER AIRLINES INC.<br><br>Defendant. | Civil Action No.  1:18-cv-00676<br><br><br>**Plaintiffs' Reply** |

_____

Plaintiffs hereby Reply to Defendant's Response in Opposition to Plaintiffs' Motion to Strike Defendant's Objections to Plaintiffs' 30(b)(6) Notice, to Affirm That the Noticed Testimony Given is Binding, and for the Costs of This Motion.

## Introduction

In many ways, Defendant's Response is fundamentally dishonest.  Defendant claims that Plaintiffs cannot "point to one question that was not answered."  Dkt 79, Pg 1.  That "Plaintiffs received all of the discovery that they asked for in the 30(b)(6) deposition."  *Id*.  That Frontier's witness was completely prepared and answered all of Plaintiffs' questions.  *Id*. at 2.  That the arguments about personal testimony versus corporate testimony "have nothing to do with Frontier's objections to Plaintiffs' 30(b)(6) topics." *Id.*

Each of the foregoing claims are resoundingly untrue.

It is startling that such claims would even be made when the transcript speaks so abundantly otherwise.  Nowhere is the waste of "the parties' and this Court's time and resources"

1

felt more keenly than in the exercise forced herein to document the actual deposition as it transpired.

Nor does Frontier honestly grapple with (or even acknowledge) in its legal arguments the untimeliness of its objections, the outrageous timing of its untimeliness, or the substantial and inconvenient case law that speaks against it. Defendant rather attempts a weak argument that objections being recognized as a means of starting a discovery dispute must be evidence that they are sufficient to complete one. No case law supports this position. Every case Defendant attempts to cite is in the context of *a court order* – the proper completion of the dispute. Which, apparently, Frontier believes it did not need.

**Topics of Inquiries For Which Frontier's 30(B)(6) Witness Was Unprepared and the Fight Over Testimony in His Personal Capacity.**

Frontier points to the 5 ½ hours of deposition that took place as evidence that Plaintiffs must have had all of their questions thoroughly answered. But the reality is that much of the deposition consisted of Frontier lawyers improperly and repeatedly speaking and objecting. This incessant strife was almost exclusively due to the chaos caused by the untimely-served objections. While the deposition did still occur, it was severely compromised and multiple topics of inquiry were either not thoroughly explored, or Frontier claimed that the answers were just personal opinion, or a mixture of both. The 30(b)(6) witness made no effort to prepare himself other than to review the documents that Defendant's lawyers placed in front of him. See Ex. A., Christenson Tr. Pg. 271:1-24.

*Inquiry Topic No. 2*

Plaintiffs asked about the "contractual arrangement between Frontier and the ground handling company operating as 'Menzies,' specifically the relevant agreement in force at Denver Int'l Airport on 12-25-17. See Dkts. 77-6, and 77-7 ("P. Not."). In its eleventh hour submission, Frontier offered a long string of objections and claimed this was an inappropriate topic in its entirety. See Dkts. 77-8 and 77-9 ("D. Obj.").

The conflict over Inquiry Topic No. 2 spanned 21 deposition pages, yielded almost zero useful information, and Frontier insisted that any of the few questions answered were in the witness's personal capacity. See Ex. B., Christenson Tr. Pgs. 51-55, 252-270.

When the topic was first broached, Frontier immediately jumped in and said they had objected to the topic area because they had already supplied the agreement and so any questions pertaining to the agreement would be impermissible legal interpretation. *Id.* at 52:16-53:5. Therefore, we could ask the witness whatever we liked, but his answers would be in his personal capacity. *Id.* at 53:12-17.

Frontier's witness, being thus sufficiently coached, was less than unprepared: he was uncooperative. "Uncomfortable" even to identify whether the agreement in our possession was the one in force at the time for the handling agents involved with the Plaintiffs. *Id.* at 53:22-54:15. The confusion underlying this question was relevant and was precisely one of the reasons for the inquiry topic: the name of the handling company on the agreement produced (Simplicity Ground Services) was not the same name as the handling company (Menzies) that the Plaintiffs and apparently the Defendant's attorneys also (see speaking objection *Id.* at 55:8-15) believed to have been responsible for kicking Ms. Smithers off the plane. It took 7 deposition pages of

constant interruptions and objections just to seek an explanation of this discrepancy. *Id.* at 258:17-265:18. Plaintiffs weren't seeking a legal interpretation with this question and it should have been the very first answer that the witness learned when researching this topic. But, in the end the witness could not say whether the company involved with the Plaintiffs was Menzies or Simplicity. *Id*. at 259:17-260:15. Plaintiffs also had a number of questions prepared about the actual duties engaged in on a day to day basis by the ground handling personnel with respect to the ground handling contract and an explanation of some of the responsibilities cited therein – not legal interpretations, practical explanations. But Plaintiffs eventually abandoned this inquiry topic after it became clear that the witness was so thoroughly unprepared that he could only provide a parroting regurgitation of the contract verbiage, and this procured under a constant barrage of speaking objections. *Id.* at 265:20-270:23.

*Inquiry Topic No. 3*

"The circumstances relating to why Plaintiff Smithers was removed from the aircraft, including decision making, the chain of command, operating procedures and guidelines." P. Not. Defendants offered a shotgun blast of boilerplate objections. D. Obj.

While one would expect this to be *the* topic for which a witness would most thoroughly prepare to testify, the witness clearly did not go out of his way to learn much more than he knew at the time of the incident. See Ex. C., Christenson Tr. Pgs. 75-76, 104-107, 278-279.

The "Ground Security Coordinator" was integral in the decision to throw Ms. Smithers off the plane, but the witness couldn't say who the individual was that day. *Id.* at 75:2-76:16. He couldn't even say who made the decision to kick Ms. Smithers off the plane. *Id.* at 104:23-105:11, 107:15-18. In preparation for his deposition he never spoke to either of the two ground

handling agents who carried out the ejection. *Id.* at 278:20-279:7. When asked if he investigated to respond to this topic of inquiry, he gave a very vague and rambling answer that said in essence that he didn't know why the call was made to remove Ms. Smithers, who made it, or what the captain was thinking at the time. *Id*. at 105:15-107:14.

This is a fully prepared witness and Plaintiffs received an answer to every question??? Maybe if "answers" include "I don't know," Defendant's claims might technically be true.

*Inquiry Topic No. 4*

"The names and circumstances of the individuals who for any reason after boarding did not remain aboard the aircraft from Denver to Washington on 12-25-17." P. Not. Defendant's boilerplate objections to this inquiry are lame enough that one objection claims the burdensomeness of the possibility that there could have been more than one Frontier flight between Denver and Washington that day. D. Obj.

The witness made no investigation of this topic whatsoever, and could speak nothing to it. See Ex. D., Christenson Tr. Pgs. 272-277. Unsurprisingly, Defendant now claims that it has exhausted all attempts to locate this individual, the Court's order notwithstanding.

*Inquiry Topic No. 6*

"The details of all complaints that were received, from any source, concerning Flt 544 from Denver to DCA on December 25, 2017." P. Not. Defendant objected that this inquiry topic was vague and broad and irrelevant to name a few, then completely failed to prepare the witness in any way whatsoever. D. Obj.; Ex. E., Christenson Tr. Pgs. 66-74. This topic could only be considered "vague" in the slipperiest of legally evasive rationales.

5

When Plaintiffs raised this topic, defendant leapt to its objections and immediately insisted that any answer the witness would give on this topic would be in his personal capacity. *Id*. at 66:14-67:23; 69:1-25. However, the only complaints that the witness could identify were the ones made by Ms. Smithers and her daughter-in-law. *Id*. at 70:15-24. The witness admitted that the extent of his preparation on this topic consisted solely of reading the social media and tweets of Ms. Smithers and her daughter-in-law. Id. at 73:9-74:7. Obviously, the Plaintiff was not interested in learning about her own tweet – the purpose of the inquiry was to learn about other passenger complaints about the flight, He did not review any other customer service records associated with the flight. *Id.* at 74:8-23. By his own admission, the witness completely failed to prepare on this topic.

### *Inquiry Topic No. 7*

"Any formal or informal reporting requirements, either internal to Frontier or external to a government agency that are either customary or required when a passenger is removed from a flight due to safety concerns. Any reports or communications of any kind that did in fact occur as a result of Plaintiff Smithers being ejected from the aircraft." P. Not. Defendants served 174 words of boilerplate objections and in deposition immediately asserted that any testimony on this topic was in the witness's personal capacity. D. Obj., Ex. F., Christenson Tr. Pg. 163:5-19.

### *Inquiry Topic No. 8*

"Any training given by Frontier to the ground handling agents in the process whereby a passenger in similar circumstances to the Plaintiff is removed from an aircraft." P. Not. Defendant objected that this inquiry was non-specific, ambiguous, hypothetical, broad, unduly

burdensome, irrelevant – the entire buffet of boilerplate. D. Obj. Defendant proceeded to riddle this line of questioning with objections. Ex. G., Christenson Tr. Pgs. 133-136, 182-186.[1]

Defendant claimed that the witness was not a 30(b)(6) witness while testifying on this topic. *Id*. at 184:18-185:8. By way of speaking objections, Frontier lawyers claimed it would be impossible for Frontier to know what it required of its ground handling agents with respect to the removal of passengers on its behalf. *Id*. at 182:8-183:8. The witness agreed that he could have found out this information because any training program must be approved by the air carrier. *Id*. at 183:4-184:8. He admitted that he could have contacted a different department in Frontier and prepared himself to answer this line of inquiry. *Id*. at 185:15-186:10. But he did not. He was unprepared to answer this line of notice inquiry.

### *Inquiry Topic No. 9*

"Section 50.55 of the Station Administration Manual concerning what to do if a passenger accuses an employee of being intoxicated, whether the Menzies women were trained in this process, and why the process was not followed with Ms. Smithers." P. Not. Defendants objected that this was vague, ambiguous, Plaintiff Smithers was not an employee (whatever that means), the response would require the adoption of the assumption of facts, attorney work product, etc. D. Obj. Typical boilerplate and the witness was typically minimally prepared. Ex. H., Christenson Tr. Pgs. 165, 172-173. The witness would need to review the document to answer a question on this policy. *Id*. at 165:7-18. And again, Defendant baselessly insisted that

---

[1] During the deposition, the parties forgot to tightly tailor the "confidential" designation. It was agreed afterwards that the deponent/Frontier would modify when signing. Plaintiffs have excerpted no portions that they believe warrant sealing.

the witness's answers on a crucial component of this policy were in his personal capacity. *Id*. at 172:1-173:25.

**Defendant's Objections Were Late**

Frontier's objections were not just late: they were prejudicially and unforgivably late. If Plaintiffs knew that Frontier would stake out such a legally inaccurate position and undermine their deposition, then Plaintiffs would have had no choice but to file a motion to compel – even though the law was on the Plaintiffs side. It would have been the efficient choice to minimize conflict and preserve an effective deposition. But Plaintiffs did not even have this option – the plane was in the air and the deposition was set when Plaintiffs realized Frontier's game. Frontier benefitted from this flagrant disregard of the rule, and inasmuch as possible, that benefit should be removed.

**The Case Law Does Not Support Frontier**

Frontier never attempts to address the unambiguous and overwhelming supporting authority throughout the United States and District Courts in the Fourth Circuit that affirms the necessity of a protective order to limit the scope of a corporate deposition. No United States Federal Court (within the scope of Plaintiffs' extensive research) has held that it is the deposing party's burden to compel the testimony that it properly notices – and this includes the Eastern District of Virginia. Many Federal Courts, however, have held that the burden is on the deponent to seek the court's protection. (See *Robinson v. Quicken Loans, Inc.,* 2013 WL 1776100, at *3 (S.D.W.Va. Apr. 25, 2013) and other authority cited in Plaintiffs' opening brief). The fact that objections are a good way to begin a discovery dispute in no way means that they are sufficient to shield against noticed inquiry – even if they are timely. It makes sense that

courts have been uniform in their approach to this conflict: a stand-off favors the objecting party. If a powerful and wealthy corporation can easily thwart discovery by forcing motion to compel papers for every 30(b)(6) deposition, then it becomes that much harder for a small plaintiff to seek justice.

Plaintiffs operated in good faith – literally reducing their deposition notice inquiry topics by half in response to Defendant's first objections – attempting to avoid the fight over a protective order. If Defendant was still unhappy with Plaintiffs' notice then it should have brought that fight.

**Conclusion**

It would be just to see Frontier punished for its minimal to non-compliance with Plaintiffs 30(b)(6) deposition. Producing a minimally prepared witness, propounding objections the day before a deposition, and then using those objections to improperly speak incessantly and hijack the flow of Plaintiffs' deposition is behavior worthy of sanction. Plaintiffs considered asking for another deposition at Defendant's expense or seeking reimbursement for some portion of the expenses incurred at the deposition. But there have been many depositions in this case and information gleaned from multiple sources. Plaintiffs are moving on. Plaintiffs seek only what they ask. To be clear: Plaintiffs do not argue for or ask for an order that every word out of the 30(b)(6) witness's mouth was binding on the corporation. It may be that some questions did go beyond the scope of the notice. It may be that some questions were confusing or unclear. There may be issues remaining that can properly be addressed by motions in limine. What Plaintiffs do ask for is an order striking the written objections that were propounded in boilerplate and in full prior to a single question being asked. Those objections should not resurface for any reason

during motions in limine. What Plaintiffs also ask for is that *properly noticed* testimony be deemed binding, regardless of the claims made during the deposition or any claims that might come later. And, finally, what Plaintiffs ask for are the costs of making this time-consuming and unnecessary motion – a reasonable request considering that Plaintiffs are not asking for sanctions related to the deposition itself.

Dated:     Charlottesville, Virginia                                              May 8, 2019

        /s/ William T. Woodrow

William T. Woodrow III
Stone & Woodrow LLP
250 West Main St., Suite 201
Charlottesville, Virginia 22902
T. 855-275-7378
*Attorneys for Plaintiff*

To:     CHARLSON BREDEHOFT COHEN & BROWN, P.C.
Elaine Charlson Bredehoft
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
T. (703) 318-6800
*Attorneys for Defendant*

## Certificate of Service

      I hereby certify that on the 8th day of May, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    CHARLSON BREDEHOFT COHEN & BROWN, P.C.
    Elaine Charlson Bredehoft
    11260 Roger Bacon Drive, Suite 201
    Reston, VA 20190
    T. (703) 318-6800
    *Attorneys for Defendant*

Charlottesville, VA    May 8, 2019

By:   /s/ William T. Woodrow
    William T. Woodrow III, Esq.
    Stone & Woodrow LLP
    Suite 201, Lewis & Clark Plaza
    250 West Main Street
    Charlottesville, VA 22902
    will@stoneandwoodrowlaw.com
    Telephone +1 855 275 7378/Fax +1 646 873 7529