# EXHIBIT B

*SMITHERS*

*VS.*

*FRONTIER AIRLINES INC*

**Deposition**

*SHAWN P. CHRISTENSEN*

*04/17/2019*

_____

***AB Court Reporting & Video***
*216 16th Street, Suite 600*
*Denver Colorado, 80202*
*303-296-0017*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Civ. Action No. 1:18cv676 (TSE/IDD)

------------------------------------------------------

30(b)(6) DEPOSITION OF FRONTIER AIRLINES, INC., as
given by SHAWN P. CHRISTENSEN
April 17, 2019

------------------------------------------------------

ANNE SMITHERS, et al.,

Plaintiffs,

vs.

FRONTIER AIRLINES INC.,

Defendant.

------------------------------------------------------

```
 1    APPEARANCES:

 2        STONE & WOODROW LLP
              By Thatcher Stone, Esq.
 3                William T. Woodrow, III, Esq. (via
                  videoconference)
 4                Suite 201, Louis & Clark Plaza
                  250 West Main Street
 5                Charlottesville, Virginia 22902
                    Appearing on behalf of Plaintiffs.
 6
          CHARLSON BREDEHOFT COHEN & BROWN, P.C.
 7            By Elaine Charlson Bredehoft, Esq.
                  11260 Roger Bacon Drive, Suite 201
 8                Reston, Virginia 20190
                    Appearing telephonically on behalf of
 9                Defendant.

10        CONDON & FORSYTH LLP
              By Bartholomew J. Banino, Esq.
11                7 Times Square
                  New York, New York 10036
12                  Appearing on behalf of Defendant.

13        Also present:  Anne Smithers, via
                          videoconference
14

15

16

17

18

19

20

21

22

23

24

25
```

1        MR. BANINO:  Right.  But you

2   mischaracterized his testimony.  But if you

3   understand the question, you can answer.

4        A    On the ground the interpretation is that

5   passengers -- with the -- with the discretion of the

6   pilots, either the captain or first officer if the

7   captain is getting paperwork and the first officer

8   is up there, that we can invite passengers up.

9            That is not the same once that main cabin

10  door is closed and/or the cockpit door is closed,

11  because now there is a security concern associated

12  with that.  And so I just wanted to clarify that.

13       Q    (By Mr. Stone)  Okay.  So if the main

14  cabin door is closed or if the cockpit flight deck

15  door is closed, nobody except flight and cabin crew

16  in the cockpit.

17       A    At that point we're considered to be

18  pushed back and proceeding with --

19       Q    Okay.

20       A    -- in-flight, which for us then becomes a

21  security concern, which is a different set of

22  procedures.

23       Q    Yeah.  So let's look at No. 2 in the

24  notice.

25       A    Okay.

1      Q     Do you know the name of the company that
2  was in place on --
3           MR. BANINO:  Thatcher --
4           MR. STONE:  Please let me finish, Bart.
5           MR. BANINO:  I thought you were done.
6  Sorry.
7      Q     (By Mr. Stone)  Do you know who was in
8  place as your ground handling partner, to use your
9  language, on December 25, 2017?
10           MR. BANINO:  I'm --
11           MS. BREDEHOFT:  I'm going object that this
12  is --
13           (Interruption by the court reporter.)
14           MS. BREDEHOFT:  I'm objecting to No. --
15  please let me talk.
16           We have objected to the Topic Area No. 2.
17  The Topic Area No. 2 is only asking for the
18  contractual arrangement between Frontier and the
19  ground handling company operating as Menzies,
20  specifically the relevant agreement in force at
21  Denver International Airport until 12/25/17.
22           We have provided in discovery, with ample
23  time, the standard ground handling agreement and the
24  simplified procedure for that -- that actually
25  governs the arrangement between Frontier and

1  Menzies.  That's the topic area here.

2          There is nothing outside of that that

3  would be appropriate for a corporate designee,

4  because any question, then, outside of that would be

5  asking for legal interpretation, which would

6  effectively mean that a corporate designee has to be

7  a lawyer and you ask him for interpretation or which

8  provisions cover what, which is all legal questions.

9  And, therefore, we have objected to No. 2 and -- and

10 said that we have produced the actual document, and

11 we're standing on that objection.

12         If you want to ask him questions in his

13 personal capacity about what he may or may not know,

14 which is like the question you just asked, you know,

15 you're certainly free to do that, but it's not on

16 behalf of Frontier and it's not what Topic 2 is

17 covering.

18         MR. STONE:  Well, I disagree, and you can

19 make that argument with the magistrate when you

20 complain and introduce your motion and objections

21 after this deposition is done.

22     Q    (By Mr. Stone)  But I'm looking right at

23 Item No. 2.  And Mr. Christensen, do you know the

24 name of the company that is on the ground handling

25 agreement with Frontier for Denver applicable at

1  that time?

2      A    I don't.  I assume just that it's Menzies,

3  based on No. 2.

4      Q    Okay.  And if I show you that agreement

5  later today, will you look at it and tell me if you

6  think it's correct or incorrect?

7      A    I will look at it, but I won't give an

8  interpretation.  That's outside of my -- my

9  expertise, area of expertise.

10     Q    I wasn't asking you for an interpretation.

11  Would you tell me -- when you see it will you be

12  able to tell me if it's the ground handling

13  agreement in force between Frontier and its handling

14  agents at DIA?

15     A    I would not be comfortable --

16         MS. BREDEHOFT:  Thatcher --

17         MR. STONE:  Elaine, make your --

18         (Interruption by the court reporter.)

19         THE COURT REPORTER:  I have to take a

20  break.

21         I'm not on the record.

22         (A recess was taken from 10:19 a.m. to

23          10:23 a.m.)

24         MR. STONE:  Can you read back the last

25  question to the witness, please.

1          (Last question read.)

2          MR. BANINO:  And then he answered.  I

3   thought he answered.

4          THE COURT REPORTER:  He said, "I wouldn't

5   be comfortable," and that's when there was an

6   interruption.

7          MR. BANINO:  Go ahead.

8          MS. BREDEHOFT:  So my objection to that

9   was, first of all, that's not the Topic 2; and

10  second of all, we represented specifically in the

11  pleading that it is the handling agreement with

12  Menzies that was in effect, so there's no reason to

13  be asking this witness, and that would be a legal

14  interpretation, and we have already admitted that

15  through our pleadings.

16         THE COURT REPORTER:  Now I'm having a

17  technical problem.  I've got to reboot.  Sorry.

18         MR. STONE:  Go ahead and fix it.

19         (A recess was taken from 10:24 a.m. to

20          10:27 a.m.)

21         MR. BANINO:  Elaine is going to put

22  something on the record.

23         MS. BREDEHOFT:  What was not on the record

24  there?

25         Okay.  So -- so Will just made the

1    Q    (By Mr. Stone)  Look at Page 113, please.

2  Mr. Christensen, are there any signatures there?

3    A    There are no signatures on this document.

4    Q    Do you know if this IATA airport handling

5  manual dated January 2013 was ever signed or became

6  a contract?

7              MR. BANINO:  Thatcher, which -- which --

8              MR. STONE:  Please don't interrupt the

9  question.

10             MR. BANINO:  No, no, no.  I'm -- I thought

11  you were done.

12             MR. STONE:  He has to answer.

13             MR. BANINO:  No, no, no, because I'm

14  objecting because I don't know which topic this

15  covers in the 30(b)(6) notice.

16             MR. STONE:  Oh, this covers -- where is my

17  notice?

18             I don't know that we have to debate this

19  now, really.  I don't have my notice.  Somebody must

20  have pinched it.  Oh, no.  Here it is.  No. 2.

21    Q    (By Mr. Stone)  Mr. Christensen, do you

22  know --

23             MR. BANINO:  But we've already -- we've

24  already provided you this document.

25             MR. STONE:  I'm entitled to ask questions

1  about it, Bart.  Don't interrupt me, please.

2          MR. BANINO:  I'll interrupt just to object

3  that it's -- we've already objected to this and we

4  already covered all this this morning.

5          MR. STONE:  I'm sorry, we haven't covered

6  this this morning, we didn't have this document this

7  morning, so you'll just have to be patient and let

8  me ask the questions.

9          MR. BANINO:  It's the same document we

10  already discussed this morning.

11          MR. STONE:  No, it's not the same

12  document.

13      Q    (By Mr. Stone)  So Mr. Christensen --

14          MR. BANINO:  Wait, wait.  But, Thatcher,

15  it either is or it isn't.

16          MR. STONE:  We'll get there, Bart.  Just

17  relax.

18          MR. BANINO:  Well, no.  But if you're

19  saying that it's --

20          MR. STONE:  Bart, just relax, please.

21  This is my deposition.  Let me ask the questions.

22          MR. BANINO:  Okay.

23          MR. STONE:  If you have a bona fide

24  objection, you may.

25          MR. BANINO:  I do have a bona fide

ABC Court Reporting & Video

1   objection.

2          MR. STONE:  Well, then -- well, this is

3   No. 2.  What's the handling agreement in place

4   between Frontier and its contract parties?

5      Q    (By Mr. Stone)  So is there any signature

6   to this agreement?

7          MR. BANINO:  Just for clarification, this

8   is not an agreement.  This is --

9          MR. STONE:  Please don't interrupt my

10  question.

11         MR. BANINO:  This is to --

12         MR. STONE:  Let the witness answer.

13     Q    (By Mr. Stone)  Is there a signature to

14  this agreement?

15         MR. BANINO:  This is not a complete

16  agreement.

17         MR. STONE:  It's part of a production that

18  is a complete agreement.

19         MR. BANINO:  No, but this is just two

20  pages.

21         MR. STONE:  That's right.

22     Q    (By Mr. Stone)  Is there a signature on

23  these pages, Mr. Christensen, for either party?

24     A    On the document produced, no.

25         MS. BREDEHOFT:  This is the -- this is an

1   inappropriate area to be asking the corporate

2   designee.

3            MR. STONE:  It's No. 2 on the list.  It's

4   No. 2 on the list.  Make your objection with the

5   judge.  I'm not going to argue this with you.

6            MS. BREDEHOFT:  We objected to that --

7            MR. STONE:  I'm not going to argue this

8   with you now, Elaine.  The objection has been noted.

9   Make it to the judge.

10           Here's the next exhibit.

11           MS. BREDEHOFT:  So we have objected to

12  this and said it's not a proper subject for this

13  witness to testify and --

14           MR. STONE:  It's No. 2.

15           MS. BREDEHOFT:  -- produce the entire --

16  excuse me.

17           We have produced the entire agreement, and

18  so it is also objectionable that you would put in

19  front of this witness some piecemeal and ask

20  questions such as is there a signature to it.

21           MR. STONE:  Well, that's the question I

22  asked.

23           MS. BREDEHOFT:  -- to be prepared --

24  prepared --

25           MR. STONE:  That's the question I asked.

1          MS. BREDEHOFT:  -- corporate designee --

2          MR. STONE:  That's the question I asked --

3          (Interruption by the court reporter.)

4          MR. STONE:  And you can make your

5  objection to the judge.

6          You produced the whole document, and it

7  will be clear whether there are signatures on that

8  document or not.  There are no signatures.  If

9  there's signatures somewhere else, you'll produce it

10  in your objection.

11          MR. BANINO:  Okay.  Thatcher, you're

12  speaking over people again.

13          MR. STONE:  I'm tired of this.  Make your

14  objection and stop arguing and let's finish this.

15          MR. BANINO:  But you're not --

16          MR. STONE:  That's how every -- I don't

17  have to let you state your objection clearly and

18  definitively and argumentatively every time.

19          You -- you don't even have to make your

20  objection.  I told you at the beginning of this

21  deposition under the federal rules every objection

22  is reserved, and I will elect with my client and my

23  partner whether to complain about both of you to

24  Judge Ellis for the manner in which you addressed

25  this deposition instead of reserving your objections

1    until it was all complete and making them in a

2    motion.

3           And you know, Bart, that's how it's

4    supposed to be done.

5           (Exhibit 6 marked for identification.)

6           (Discussion off the record.)

7           MR. BANINO:  Thatcher, I just ask that you

8    be professional.

9           MR. STONE:  I want you to be professional,

10   too, Bart.  You know every objection is preserved,

11   and I told you that at 9:30 this morning.  So

12   there's no need for you to argue and delay this

13   deposition and continue in this manner the way you

14   and Elaine have.

15          MR. BANINO:  Thatcher, I'm trying to speed

16   up this deposition.

17          MR. STONE:  Well, I don't think so.

18   You're making it longer.  Just say I have an

19   objection and I'll say noted and preserved, like

20   always.

21      Q    (By Mr. Stone)  Item 2.  This document

22   wasn't signed, was it, Mr. Christensen?

23      A    You're referring to --

24          MR. BANINO:  Same objection.

25      Q    (By Mr. Stone)  112, 113.

1          MR. BANINO:  Same objection.

2     A    Correct.

3     Q    (By Mr. Stone)  Okay.

4     A    112, 113, you're referring to the two-page

5  document, Exhibit 5.

6     Q    Yeah.

7     A    Yeah, as previously stated --

8     Q    Okay.

9     A    -- that two-page exhibit is not signed.

10     Q    Okay.  Thanks.

11          Now look at 6.

12          MR. BANINO:  The whole document, the

13  whole --

14     Q    (By Mr. Stone)  Look at 6.

15          MR. BANINO:  Right.  The whole 30 pages,

16  or do you have someplace specifically?

17     Q    (By Mr. Stone)  Look at 182.  Is that

18  document signed?

19     A    Exhibit 6, Page 182, it looks like it has

20  two sections, correct?

21     Q    And one is signed by Howard Diamond.  Do

22  you know who he is?

23     A    He's our general counsel, Frontier

24  Airlines.

25     Q    And the other is Terry -- Terence Trainor.

ABC Court Reporting & Video

1    Do you know who that is?

2        A    I don't know personally.  Based on the

3    title, president and CEO of Simplicity Ground

4    Services.

5        Q    And who is Simplicity Ground Services?

6        A    Simplicity Ground Services was a business

7    partner of Frontier Airlines.

8        Q    Was, is or will be?  Which is it?

9        A    Right now -- I'm trying to think of who it

10   is right now.

11           MR. BANINO:  If you don't know --

12       A    I don't know.

13           MR. BANINO:  -- don't guess.

14       Q    (By Mr. Stone)  Yeah, if you don't know --

15           MR. BANINO:  It's not --

16       A    I don't know.

17       Q    (By Mr. Stone)  So this was dated the 6th

18   day of September 2016.  Were they the ground

19   handling agents Christmas 2017?

20       A    I don't know.  I know that we had two

21   separate ground handling agents at -- I don't know

22   all the stations, which ground handling service --

23   or which business partners serviced which stations

24   at what time.

25       Q    Who were the two?

AB Court Reporting & Video

1    A    For ...

2    Q    Who were the two ground handling agents

3  you just described that you didn't know who was

4  where?

5    A    Simplicity and Menzies.

6    Q    Okay.

7    A    There was a change at -- at some point.  I

8  don't know when that change was.

9    Q    And what was the change?

10   A    Just ground -- the -- our business partner

11 in Denver.  We utilized --

12   Q    Changed -- I'm sorry.

13   A    So we utilized one at one point, we

14 utilized another at another point, and I don't

15 remember when that transfer occurred.

16   Q    Do you know who is currently the ground

17 agent?

18        MR. BANINO:  Objection.  Outside the

19 scope.

20   A    Off the top of my head, I don't know.  I

21 have an inkling, but it may not be factual.

22   Q    (By Mr. Stone)  So who left, Menzies or

23 Simplicity?

24        MR. BANINO:  Again, the same objection.

25   A    I don't know.  I have an inkling, but

1   factually in my head I don't know.

2       Q    (By Mr. Stone)  So you can't answer Point

3   No. 2.

4           MR. BANINO:  We objected to Point No. 2.

5           MR. STONE:  That's fine.  The judge hasn't

6   ruled on it yet.

7           MR. BANINO:  That's fine.  We've objected

8   to it.

9           MR. STONE:  I understand.

10      Q    (By Mr. Stone)  So you can't answer Point

11  No. 2, right?

12          MR. BANINO:  Well, he certainly answered

13  questions related to it even though he wasn't

14  obligated to do so.

15          MR. STONE:  Bart, I didn't ask you a

16  question.  I'm asking the witness a question.  If

17  you have an objection --

18          MR. BANINO:  I've stated it.

19          MR. STONE:  Okay.  Let him answer.

20      Q    (By Mr. Stone)  You can't answer No. 2,

21  can you?

22          MR. BANINO:  No, but that's -- but that's

23  not --

24          MR. STONE:  Your objection is noted.

25          MR. BANINO:  Okay.  But that's not --

1          MR. STONE:  Be quiet, Bart.  Your

2    objection is noted.

3          MR. BANINO:  Right, but your question is

4    not factually correct.

5          MR. STONE:  You don't get to instruct the

6    witness not to answer this question.

7          MR. BANINO:  I'm not instructing him, I'm

8    telling you --

9          MR. STONE:  Yeah, you are.

10         MR. BANINO:  -- that your question is not

11   in the proper form because you are stating things

12   that are not true.

13    Q    (By Mr. Stone)  What was the ground

14   handling company with Menzies on December 25th --

15         MR. BANINO:  Asked and answered.

16    Q    (By Mr. Stone)  -- 2017?

17         MR. BANINO:  Asked and answered.

18         MR. STONE:  No, it hasn't been answered.

19         MR. BANINO:  It was asked and answered.

20         MR. STONE:  Stop interrupting, Bart.

21         MR. BANINO:  But he already answered the

22   question.

23         MR. STONE:  He can't tell us who it is.

24         MR. BANINO:  Yeah, he made a guess.  He

25   said it was -- I think you said it was one of the

AB Court Reporting & Video

1   two.

2           MR. STONE:  No.  Stop testifying, Bart.

3           MR. BANINO:  Well --

4           MR. STONE:  Be quiet.  Let the

5   gentleman --

6           MR. BANINO:  You keep asking the same

7   questions over and over again.

8           MR. STONE:  That's because you keep

9   interrupting and screwing it up.

10          MR. BANINO:  I didn't interrupt --

11          MR. STONE:  So be quiet.

12          MR. BANINO:  -- before --

13          MR. STONE:  Your objection to the question

14  is noted.  Let the gentleman answer the question.

15      Q    (By Mr. Stone)  Can you answer Question

16  No. 2 from the notice?

17          MR. BANINO:  Same objection.

18          MR. STONE:  Yeah, we know, Bart.  Be

19  quiet.  Let him answer.

20          MR. BANINO:  But you keep asking him the

21  question, even though it's not --

22          MR. STONE:  Well, because you haven't let

23  him answer.

24          MR. BANINO:  But it's not a proper

25  question.

*ABC Court Reporting & Video*

1          MR. STONE:  Bart, you haven't let him

2     answer.  It is a proper question, and you don't get

3     to decide if it's proper or not, the judge does.

4          MR. BANINO:  Okay.  If you understand the

5     question, go ahead and answer.

6     A    The -- it's going to be either Simplicity

7     or Menzies, based on documentation.

8          To the best of my recollection, I believe

9     it may be Menzies; however, we did have two and I

10    don't remember when that transfer --

11    Q    (By Mr. Stone)  Okay.

12    A    -- transfer occurred.

13    Q    Did the transfer take place after

14    September of 2016?

15         MR. BANINO:  Asked and answered.

16    A    I don't know.

17    Q    (By Mr. Stone)  You don't remember?

18    A    I don't remember.

19         MR. STONE:  That question was not asked --

20         MR. BANINO:  It was.

21         MR. STONE:  -- Bart.  Stop interrupting.

22         MR. BANINO:  He's asked and answered that

23    question already.

24         MR. STONE:  He didn't.

25         MR. BANINO:  He said the same thing.

1          MR. STONE:  He did not.

2      Q    (By Mr. Stone)  All right.  Take a look at

3   this Exhibit 6, which is the standard ground

4   handling agreement between Frontier and Simplicity.

5   And it says it's valid from August 22, 2016 without

6   an ending date; is that correct, Mr. Christensen?

7          MR. BANINO:  I'm just going to object that

8   the document speaks for itself.

9      A    The front page only specifies an effective

10  from August 22, 2016, and it is valid from

11  August 22 --

12     Q    (By Mr. Stone)  Right.

13     A    -- 2016, with entered places as not

14  applicable, correct.

15     Q    Okay.  And it doesn't say when it ends,

16  does it?

17     A    There's no indication of that --

18     Q    Okay.

19     A    -- on this document that I can see.

20     Q    I'd like you to look at Page 159.  Look at

21  2.1.6.

22          Is that clearly an obligation of the

23  ground handling personnel to Frontier?

24          MR. BANINO:  I'm going to object to the

25  question as being outside the scope.

1      MR. STONE:  It's not.  It's part of No. 2,

2  what is the contractual arrangement.

3      MR. BANINO:  But whether -- but whether

4  they have an obligation is a different question.

5      MR. STONE:  Well, that goes to the

6  contractual arrangement.  You can argue that to the

7  judge.

8      MS. BREDEHOFT:  It goes to --

9      MR. STONE:  You can argue that to the

10  judge.

11      MS. BREDEHOFT:  It's the reason for --

12  excuse me.

13      It goes to exactly the reason we objected

14  to this as not a proper topic for a corporate

15  designee, because anything you're going to ask about

16  that agreement is asking for a legal interpretation

17  or application of something --

18      MR. STONE:  I disagree.

19      MS. BREDEHOFT:  -- and that's an

20  inappropriate area for the corporate designee and

21  that's why we have indicated that.

22      MR. STONE:  Okay.  Well, I disagree.  And

23  whether or not it has an obligation to notify the

24  carrier of complaints and claims made by the

25  carrier's passengers doesn't strike me as -- and may

ABC Court Reporting & Video

 1   not strike the judge as a legal conclusion.

 2        Q    (By Mr. Stone)  So --

 3             MR. BANINO:  Thatcher, but you're

 4   asking --

 5        Q    (By Mr. Stone)  -- Mr. Christensen,

 6   does --

 7             MR. BANINO:  You're asking him for a legal

 8   conclusion.

 9             (Interruption by the court reporter.)

10        Q    (By Mr. Stone)  Does 2.1.6 of this

11   agreement require the ground handler to notify the

12   carrier of complaints and claims made by the

13   carrier's passengers?

14        A    Yes.  It states at 2.1.6(a) that --

15   there's no (b) associated -- to notify the carrier

16   of complaints and claims made by the carrier's

17   passengers.

18        Q    Okay.  Thank you.

19             Could you look at Section 2.2.15.  Does

20   that provide that it is the ground handler's

21   responsibility to reconcile passenger numbers with

22   aircraft documents prior to departure?

23             MR. BANINO:  Are you asking him what the

24   document says?

25             MR. STONE:  I'm asking him to -- read the

1  question back, Vanessa.

2          (Last question read.)

3     A    Yes, and that's --

4          MR. BANINO:  That's what it says.

5     A    -- direct verbiage.

6     Q    (By Mr. Stone)  Thank you.

7          Do you -- please look at -- could you

8  please look at Section 3.7.2.

9          Does this section require the ground

10 handling company to perform a visual external

11 safety/ground and damage inspection of doors and

12 panels, other inspection items as advised by

13 Frontier, on arrival and prior to departure, and to

14 communicate the results to the flight crew or the

15 carrier's representative?  Is that what it says,

16 sir?

17    A    That's correct.

18    Q    Okay.

19    A    It's the verbiage.

20    Q    Thank you.

21    A    Per verbiage.

22    Q    Thank you.

23         Were there any communications sent by the

24 ground staff regarding the airplane Mrs. Smithers

25 was removed from between -- scheduled between Denver

ABC Court Reporting & Video

1    and DCA that were communicated as a safety item --

2    as a safety item, which is what this section talks

3    about, to the carrier's representative or the crew?

4              MR. BANINO:  I'm just going to object to

5    that being outside the scope.

6              MR. STONE:  You can object.  It's not.

7    It's part of No. 2.

8              MR. BANINO:  But --

9              THE DEPONENT:  I'm sorry.

10             MR. BANINO:  Go ahead.

11             MR. STONE:  Could you read the question

12   back, Vanessa, please?

13             (Last question read.)

14             MR. BANINO:  Same objection.

15   A      From the ground personnel, no.

16   Q      (By Mr. Stone)  Thank you.  Okay.

17   A      That's the -- and to be specific on that,

18   you're referring to this section, which is a visual

19   external safety/ground damage --

20   Q      Correct.  Yeah.

21   A      Yeah.  So not referencing what we had

22   talked about earlier.

23   Q      I don't know what you mean, but I just

24   asked you the question, I have your answer.

25             Could you look, please, at 7.1.3(b).  It's

1   on Defendant's Production 167.

2            This provides as a security item that the

3   ground handling team provide screening of

4   passengers, of cabin and unchecked baggage, and

5   physical exam of passengers and cabin/unchecked

6   baggage; is that correct?

7        A    Correct.

8        Q    Okay.  And was there any offloading as a

9   result of this screening relating to Mrs. Smithers?

10            MR. BANINO:  Same objection.

11            You can answer if you know, but same

12   objection.

13        A    Can you ask the question one more time?

14        Q    (By Mr. Stone)  Sure.  I'm trying to find

15   the right page here to help you out, sir.

16            MR. BANINO:  Maybe if you could just read

17   back the question, that would be faster.

18        Q    (By Mr. Stone)  Was there any screening of

19   the passengers on this aircraft that Ms. Smithers

20   was scheduled to fly that as a result of that

21   screening removed Ms. Smithers?

22        A    Was there a screening -- there was no

23   additional screening.

24        Q    Okay.  Thank you.

25            There was one last thing I wanted.  Okay.