# EXHIBIT C

# *SMITHERS*

# *VS.*

# *FRONTIER AIRLINES INC*

### Deposition

## SHAWN P. CHRISTENSEN

*04/17/2019*

_____

## *AB Court Reporting & Video*

*216 16th Street, Suite 600*
*Denver Colorado, 80202*
*303-296-0017*

```
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Civ. Action No. 1:18cv676 (TSE/IDD)

-----------------------------------------------------------

30(b)(6) DEPOSITION OF FRONTIER AIRLINES, INC., as
given by SHAWN P. CHRISTENSEN
April 17, 2019

-----------------------------------------------------------

ANNE SMITHERS, et al.,

Plaintiffs,

vs.

FRONTIER AIRLINES INC.,

Defendant.

-----------------------------------------------------------
```

```
 1     APPEARANCES:

 2           STONE & WOODROW LLP
                  By Thatcher Stone, Esq.
 3                   William T. Woodrow, III, Esq. (via
                     videoconference)
 4                   Suite 201, Louis & Clark Plaza
                     250 West Main Street
 5                   Charlottesville, Virginia 22902
                       Appearing on behalf of Plaintiffs.
 6
             CHARLSON BREDEHOFT COHEN & BROWN, P.C.
 7                By Elaine Charlson Bredehoft, Esq.
                     11260 Roger Bacon Drive, Suite 201
 8                   Reston, Virginia 20190
                       Appearing telephonically on behalf of
 9                   Defendant.

10           CONDON & FORSYTH LLP
                  By Bartholomew J. Banino, Esq.
11                   7 Times Square
                     New York, New York 10036
12                     Appearing on behalf of Defendant.

13           Also present:  Anne Smithers, via
                                videoconference
14

15

16

17

18

19

20

21

22

23

24

25
```

1   A    Okay.
2   Q    -- with your permission.  Thanks.
3        So the captain called you, if I understand
4   your testimony, when he thought he was accused,
5   correct?
6   A    Correct.
7   Q    And then you told him to call the GSC.
8   A    Correct.  He --
9   Q    And you also told him --
10       MR. BANINO:  Thatcher, Thatcher, please,
11  you just started asking the next question before he
12  finished.
13       MR. STONE:  I thought he finished.
14  A    The GSC was on-site.  They're --
15  Q    (By Mr. Stone)  Yeah.
16  A    They're at the airport.  They're not off-
17  site and get called in.  They're typically one of
18  the managers.
19  Q    Understood.  Was it the station manager
20  that day, or you don't remember?
21  A    Well, it was not the Frontier station
22  manager, it was the business partner.  And I'm not
23  sure supervisor, manager, what position --
24  Q    Understood.
25  A    -- but it's the manager on duty at that

```
 1   time that was assigned as the ground service --
 2   ground security coordinator, correct.
 3        Q    Okay.  And what did the ground security
 4   coordinator tell you they were going to do?
 5        A    I didn't have the communication directly
 6   with the ground security coordinator, I had the
 7   communication with -- with the captain.
 8             And so the captain spoke with the ground
 9   security coordinator, they conducted their test, the
10   reasonable suspicion test, and the captain at that
11   point was cleared and I had the communication with
12   him afterwards.
13        Q    Okay.  But you don't remember the name of
14   the GSC that day?
15        A    I don't remember the name of the GSC that
16   day.
17        Q    Okay.
18        A    I know -- we have a couple there, and I
19   don't want to put the wrong name out there, so ...
20        Q    So when it's time for this check of the
21   captain and his sobriety to take place, you go to
22   the GSC first, correct?
23             MR. BANINO:  I'm just going to object.
24   That wasn't his testimony.
25        Q    (By Mr. Stone)  Well, is that correct?
```

1           MR. BANINO:  -- suggesting I'm --
2           MR. STONE:  -- is noted.  Well, you are.
3           MR. BANINO:  -- I'm the judge.
4           MR. STONE:  Your objection is noted and
5    we'll let the judge decide.  That's what his job is.
6       Q    (By Mr. Stone)  And no disrespect to you,
7    Mr. Christensen.
8       A    No disrespect.
9       Q    So do you know when the fuel, if extra
10   fuel was required, because the -- a possible reroute
11   or weather, when it was delivered vis-a-vis the main
12   door cabin closing and the jetway pulling away?
13          MR. BANINO:  Same objection.
14      Q    (By Mr. Stone)  Do you know?
15      A    From my understanding, it was after main
16   cabin door closure.
17      Q    Okay.  But you don't --
18      A    From my understanding.
19      Q    Understood.  You don't know if it was
20   before or after the jetway pulled away.
21          MR. BANINO:  Same objection.
22      A    That, I don't know.
23      Q    (By Mr. Stone)  Okay.  Who made the
24   decision to take Ms. Smithers off the plane, and
25   why?  This is No. 3.

1    A    That, I don't know.  I don't know the
2  specific individual that -- that authorized -- or
3  not authorized, but that made the decision to remove
4  Mrs. Smithers from the aircraft.
5         I know that two of the ramp -- excuse me,
6  the gate agents came onboard and asked her to depart
7  the aircraft.
8    Q    And who were the gate agents?
9    A    I believe one of them was still the GSC.
10 I don't have the names off the top of my head.  I've
11 got too many names floating in there to --
12   Q    No.  Fair enough.
13   A    -- try to pull it out.
14   Q    And did you -- sorry.
15        Did you, in preparation for this
16 deposition, investigate who made the decision, what
17 was the chain of command, or what the operating
18 procedures and guidelines were in connection with
19 Item 3 on your notice?
20   A    So that's -- that's a very broad -- it's a
21 very broad question.
22        MR. BANINO:  Yeah, I think if you break
23 that down, Thatcher, that might be -- make more
24 sense.
25        MR. STONE:  Let the witness answer,

1 please.

2    A   And I'll keep it very broad.

3        Any time that there's going to be a
4 passenger removal, there's multiple coordination
5 that goes on.  It can be the request of a flight
6 attendant, it can be the request of a pilot.

7        Depending on the information received,
8 the -- the communication, coordination, it's -- the
9 joint coordination -- so any time the main cabin
10 doors are open, the ground service coordinators, the
11 security manager, once the door is closed the
12 in-flight security coordinator becomes the captain.

13        It's always better to resolve an issue on
14 the ground than it is in the air, and so if there's
15 a point of question that occurs between the ground,
16 the pilots and/or the flight attendants, that needs
17 to be resolved sooner rather than later.  At
18 39,000 feet you can't make that decision.  Things
19 can get a lot worse, and so having that coordination
20 now is a much better determination.

21        So whoever had the information that was
22 being passed along, somehow it was determined that
23 Ms. Smithers was onboard the aircraft after the
24 allegations had been made, and so now there's a
25 question of is the person that made the allegations

1   against the captain still onboard the aircraft, and
2   were those allegations true or false after the
3   captain had been cleared, and it seemed like the --
4   like there was still a social media conversation
5   going back and forth after the captain had been
6   cleared to -- to return to service.
7              That being said, I don't know the
8   captain's state of mind at that point in terms of,
9   you know, why there would be a removal, who made the
10  call for the removal.
11             I will say that it is always better to
12  take care of that on the ground than once you're in
13  a pressurized vessel blasting off and, you know, in
14  the high 30s.  So that --
15       Q    (By Mr. Stone)  Do you know who made the
16  decision to have Ms. Smithers removed from the
17  aircraft?
18       A    I do not.
19       Q    Do you know what the chain of command was
20  in respect of any rules or procedures at Frontier
21  about who should make the decision about what should
22  happen to Ms. Smithers?
23       A    Again, it's -- the rules are -- are very
24  broad scoped.  If there's a concern, it is better to
25  resolve that concern on the ground.

1  cetera, because of the failure to fully comply with
2  the 30(b)(6) list.
3           I've got a couple -- a few more questions.
4     Q    (By Mr. Stone)  I just want to make sure I
5  understood your earlier testimony, okay?
6     A    Yeah.
7     Q    You never spoke to --
8           MS. BREDEHOFT:  I'm sorry, can I just
9  interject, please?
10          MR. STONE:  Jesus.
11          MS. BREDEHOFT:  Mr. Stone has completely
12 falsely represented what the obligations of a
13 30(b)(6) witness are and the specific manners in
14 which they can be prepared and what can be disclosed
15 with work product and attorney-client privilege, and
16 so I'm objecting to his statement and his claim that
17 that is the obligations of this witness.
18          MR. STONE:  Well, take it up with the
19 judge.  So will we.
20    Q    (By Mr. Stone)  Mr. Christensen, I just
21 want to make sure my -- my partner who's listening
22 and I weren't clear about your answer on one of the
23 questions.
24          Is it true that you never spoke to the
25 ground handling agents who were involved in removing

1   Ms. Smithers from this aircraft?
2       A    Correct.
3       Q    Okay.
4            MS. BREDEHOFT:  Objection.  That's outside
5   the scope.
6            MR. STONE:  No, it's not.  It's No. 3.  Go
7   read No. 3.
8       Q    (By Mr. Stone)  Now, the last question I
9   think I want to ask you is if you wanted to see Doug
10  Hill's report, could you ask him for it?
11      A    I probably could.
12           MS. BREDEHOFT:  Objection.  Hypothetical.
13  Calls for speculation.
14           MR. STONE:  Well, the witness answered.
15           So could you read back the answer, please,
16  Vanessa.
17           (Last answer read.)
18           MR. STONE:  Okay.  Thank you,
19  Mr. Christensen.
20           THE DEPONENT:  You're welcome.
21           MR. STONE:  Let's wait one minute.
22           Will, if you have anything else, let me
23  know.
24           MR. BANINO:  Speak now or forever hold
25  your peace, Will.