# EXHIBIT D

# *SMITHERS*

# *VS.*

# *FRONTIER AIRLINES INC*

<u>Deposition</u>

## SHAWN P. CHRISTENSEN

*04/17/2019*

_____

## *AB Court Reporting & Video*

*216 16th Street, Suite 600*
*Denver Colorado, 80202*
*303-296-0017*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Civ. Action No. 1:18cv676 (TSE/IDD)

-----------------------------------------------------------

30(b)(6) DEPOSITION OF FRONTIER AIRLINES, INC., as given by SHAWN P. CHRISTENSEN
April 17, 2019

-----------------------------------------------------------

ANNE SMITHERS, et al.,

Plaintiffs,

vs.

FRONTIER AIRLINES INC.,

Defendant.

-----------------------------------------------------------

```
1    APPEARANCES:

2         STONE & WOODROW LLP
              By Thatcher Stone, Esq.
3                William T. Woodrow, III, Esq. (via
                 videoconference)
4                Suite 201, Louis & Clark Plaza
                 250 West Main Street
5                Charlottesville, Virginia 22902
                   Appearing on behalf of Plaintiffs.
6
          CHARLSON BREDEHOFT COHEN & BROWN, P.C.
7             By Elaine Charlson Bredehoft, Esq.
                 11260 Roger Bacon Drive, Suite 201
8                Reston, Virginia 20190
                   Appearing telephonically on behalf of
9                  Defendant.

10        CONDON & FORSYTH LLP
              By Bartholomew J. Banino, Esq.
11               7 Times Square
                 New York, New York 10036
12                 Appearing on behalf of Defendant.

13        Also present:  Anne Smithers, via
                         videoconference
14

15

16

17

18

19

20

21

22

23

24

25
```

1   in customer support about her five-hour phone

2   call -- alleged five-hour phone call with

3   Ms. Smithers?

4        A    No.

5        Q    And you didn't talk to anybody -- just to

6   confirm, anybody anywhere, other than your lawyers

7   about the fact that the Tweet talked about the

8   copilot?

9        A    Correct.

10            MR. STONE:  Okay.  Give me five minutes to

11  talk to my partner, and I think we're probably done.

12            MR. BANINO:  Take your time.

13            (A recess was taken from 2:49 p.m. to

14             2:55 p.m.)

15            MR. STONE:  Okay.  Back on the record.

16       Q    (By Mr. Stone)  Mr. Christensen, what

17  efforts did you make in respect of -- oh, God, I

18  lost it again -- the item on the list of eight items

19  to find the passengers in respect of Item 4.  Can

20  you tell me what you did to locate those people, or

21  try to locate those people?

22            MR. BANINO:  Again, this is outside of any

23  communications you had with the -- with the

24  attorneys.

25            MR. STONE:  Well, not if it's not

1  otherwise privileged.  So if the attorneys sent him

2  unprivileged material, that's not privileged.

3      Q    (By Mr. Stone)  So tell me what you did to

4  find those characters, please, Mr. Christensen.

5      A    Outside of -- nothing outside of what I

6  did with work with legal.

7      Q    You did nothing?

8      A    Correct.

9           MR. BANINO:  Not other than what he did

10 with legal, he said.

11     Q    (By Mr. Stone)  Did you check the security

12 list for the aircraft to see if the gate agents had

13 indicated who boarded and who left?

14     A    No.

15     Q    Aren't they required to do that for a

16 flight to Washington, D.C.?

17     A    Can you ask that one more time?  I'm

18 not --

19          MR. BANINO:  Thatcher, you're arguing with

20 the witness.

21          MR. STONE:  I'm not.  I asked him a

22 question.

23     A    Can you repeat the question?

24          MR. STONE:  Sure.  Please read back the

25 question, Vanessa.

1                (Last question read.)

2       A    Aren't they required to ...

3            MR. BANINO:  To what?

4       Q    (By Mr. Stone)  Because of the special
5  requirements for flights to the District of
6  Columbia -- all right, we know there are special
7  rules for onboard law enforcement and other things,
8  and I believe, although I don't have the rules in
9  front of me, that if anybody gets on the airplane
10 but then leaves that also has to be reported.  Do
11 you know if that's true or not?

12           MR. BANINO:  If that's a requirement?

13      A    They do rectify the flights at -- if
14 that's --

15      Q    (By Mr. Stone)  Okay.  So when you say
16 they do rectify the flights, are you telling me that
17 they do notate who got off before departure?

18      A    I'll say we know who's onboard the
19 aircraft and who's not.

20      Q    And who got off, right, if somebody got
21 off?

22      A    Yeah.  Yes.

23      Q    I'm not trying to put words in your mouth.
24 I'm trying to make sure we understand each other.

25      A    So we know who's onboard and who's not --

1    Q    So if you know --

2    A    We know at least know who's onboard.

3    Q    Yeah.  Yeah.  So if you know who's onboard

4  and who's not, why has it been so difficult to get

5  us this information in No. 4?

6         MR. BANINO:  Oh, my gosh, that is so

7  objectionable, Thatcher.  You know that's

8  objectionable.

9         MR. STONE:  I don't know it's

10 objectionable.  I'll let the witness tell me.

11        MR. BANINO:  You're asking what the

12 lawyers have done or not done on the company's

13 behalf?

14        MR. STONE:  No.  No.  I'm asking him why

15 he, as the designated representative, if the airline

16 knows who was not onboard, has been un -- unable to

17 tell us who got off the airplane.

18        MR. BANINO:  Okay.  But, one, that's

19 outside the scope of his employment, so he's

20 answering personally.

21        MR. STONE:  No, he's not.  It's --

22        MR. BANINO:  And, two, you're asking

23 him --

24        MR. STONE:  -- No. 4.

25        MR. BANINO:  -- you're asking him what --

1           MR. STONE:  It's not outside the scope of
2   his employment, it's No. 4 on the 30(b)(6) list.
3           MR. BANINO:  You're still asking him for
4   what the lawyers have done.
5           MR. STONE:  No, I'm not.
6           MR. BANINO:  Okay.  But you are.
7           MR. STONE:  I'm not.  I'm asking him from
8   the -- he just told me that Frontier knows who was
9   on and -- who was on the airplane.
10          MR. BANINO:  I don't --
11          MR. STONE:  That's what he told me.
12          MR. BANINO:  I think you're
13  mischaracterizing his testimony, but we can move on.
14          MR. STONE:  He said they keep track.
15      Q    (By Mr. Stone)  Do you want to change your
16  answer in any way, Mr. Christensen?
17      A    Of who's onboard the aircraft?
18      Q    You said, We know who's onboard and who's
19  not, right?
20      A    There would be some sort of record of
21  who's onboard.  That's how we do our weight and
22  balance.
23      Q    Yeah, of course.
24      A    As a pilot.  We have numbers, we put them
25  into the system.

1  Q  So what efforts did you make -- Leave the
2  lawyers out of it.  What efforts did you make at
3  Frontier to find out the answer to No. 4 on this
4  list?
5  A  I did not.  I left it to our legal team
6  and communication with counsel.
7  Q  Okay.  Well, that's not responsive.
8       MR. BANINO:  No, he just answered the
9  question.
10      MR. STONE:  I understand, but I object to
11 the fact --
12      MR. BANINO:  You're objecting to his
13 answer?
14      MR. STONE:  He has a reasonable
15 requirement to respond to every question and do the
16 diligence --
17      MR. BANINO:  Uh-huh.
18      MR. STONE:  -- and if possible, do it
19 without reference to documents from you.
20      And we will, among the other questions he
21 was unprepared to answer --
22      MR. BANINO:  Uh-huh.
23      MR. STONE:  -- ask the judge to reinstate
24 this deposition at a later date and time at
25 Frontier's full cost, including time, travel, et