**EXHIBIT E**

# *SMITHERS*

# *VS.*

# *FRONTIER AIRLINES INC*

Deposition

# *SHAWN P. CHRISTENSEN*

*04/17/2019*

_____

# *AB Court Reporting & Video*
*216 16th Street, Suite 600*
*Denver Colorado, 80202*
*303-296-0017*

```
        IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA

        Civ. Action No. 1:18cv676 (TSE/IDD)

        ----------------------------------------------

        30(b)(6) DEPOSITION OF FRONTIER AIRLINES, INC., as
        given by SHAWN P. CHRISTENSEN
        April 17, 2019

        ----------------------------------------------

        ANNE SMITHERS, et al.,

        Plaintiffs,

        vs.

        FRONTIER AIRLINES INC.,

        Defendant.

        ----------------------------------------------
```

```
1    APPEARANCES:

2         STONE & WOODROW LLP
               By Thatcher Stone, Esq.
3                 William T. Woodrow, III, Esq. (via
                  videoconference)
4                 Suite 201, Louis & Clark Plaza
                  250 West Main Street
5                 Charlottesville, Virginia 22902
                    Appearing on behalf of Plaintiffs.
6
          CHARLSON BREDEHOFT COHEN & BROWN, P.C.
7              By Elaine Charlson Bredehoft, Esq.
                  11260 Roger Bacon Drive, Suite 201
8                 Reston, Virginia 20190
                    Appearing telephonically on behalf of
9                 Defendant.

10        CONDON & FORSYTH LLP
               By Bartholomew J. Banino, Esq.
11                7 Times Square
                  New York, New York 10036
12                  Appearing on behalf of Defendant.

13        Also present:  Anne Smithers, via
                         videoconference
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1  reasonable suspicion tests.
 2       Q    Okay.  And did anybody ever wonder if it
 3  was the other pilot they were talking about?
 4       A    No, because the information that I
 5  received was that it was -- the captain was
 6  intoxicated.
 7            There wasn't -- at that point he didn't
 8  know who the passenger was, simply that there was a
 9  passenger that had made a statement that he was
10  intoxicated.  Nothing about the first officer.
11       Q    Okay.  Just briefly departing from this
12  for a moment, from No. 3 --
13       A    Yes.
14       Q    -- and going to No. 6, how many complaints
15  were received about that flight that day?
16            MR. BANINO:  Again, Thatcher, this is
17  outlined in our objections.
18            MR. STONE:  That's okay.  You can make it
19  with the magistrate post hoc.
20            MR. BANINO:  Right.  But we stand on those
21  objections.
22            MR. STONE:  Fine, you stand on those
23  objections.  Make your motion post hoc.
24            MR. BANINO:  Right.  But you understand
25  this is outside of those objections, right?
```

1         MR. STONE:  It's not out -- it's not from
2    our perspective until the magistrate rules.  So the
3    rule is the witness was propounded a question, he
4    shall answer and then you can make your motion and
5    get whatever covered by a motion in limine or
6    otherwise, but you can't tell him not to answer a
7    question at this deposition.
8         MR. BANINO:  No, no.  But Thatcher --
9         MR. STONE:  Okay.
10        MR. BANINO:  -- it's -- we don't have to
11   make a motion.  We have filed our objections.  If
12   he's going to answer he's going to answer it in his
13   individual capacity --
14        MR. STONE:  That's not true.
15        MR. BANINO:  -- and if he knows.
16        MR. STONE:  That's not true.  He's going
17   to answer in his capacity as a representative of
18   Frontier who was identified in Item 6, and if you
19   want to get the magistrate to agree with you rather
20   than with me, you can make a motion after the
21   deposition is taken.  So --
22        MR. BANINO:  I've stated my objection,
23   Thatcher.
24        MR. STONE:  Yeah, you've stated your
25   objection.

```
 1             MR. BANINO:  I don't need to go any
 2   further.
 3        Q    (By Mr. Stone)  How many complaints were
 4   received that day, do you know?
 5        A    I'm not sure --
 6        Q    Don't look at your counsel.  You have to
 7   answer the question.
 8             (Interruption by the court reporter.)
 9             MR. BANINO:  Thatcher, Thatcher, please
10   stop.  Please stop speaking over the witness, okay?
11   The witness has expressed some confusion as to
12   what's going on.  The last thing he needs is you
13   berating him or whatever it is you're doing, trying
14   to speak over him, whatever it is you're doing.
15             MR. STONE:  He looked right at me and
16   asked a question.
17             MR. BANINO:  And at me as well, because he
18   doesn't understand because you are speaking over
19   him.  So please --
20             MR. STONE:  That's fine.
21             MR. BANINO:  -- I ask again that we
22   conduct this as professionals.
23             MR. STONE:  Fine.  Your objection is
24   noted.  Now let him answer the question.
25             MR. BANINO:  Fine.  Okay.
```

1      MR. STONE: And the judge will decide
2 whether it's inside or outside the scope of the
3 30(b)(6) --
4      MR. BANINO: Right.
5      MR. STONE: -- and everything else you
6 have objected to.
7      MR. BANINO: Right.
8      MR. STONE: Post hoc.
9      MR. BANINO: Absolutely.
10      MR. STONE: Okay.
11      MR. BANINO: And my objection is that this
12 is outside the scope.
13      MR. STONE: You've said it twice.
14      MR. BANINO: Okay. You're asking him in
15 his personal, but you keep telling me that that's
16 not right.
17      MR. STONE: I disagree with you.
18      MR. BANINO: That's fine.
19      MR. STONE: That's why you're objecting.
20 We disagree. So the judge will decide.
21      MR. BANINO: Fine. So he is answering in
22 his individual capacity if he knows the answer.
23      MR. STONE: He's answering and the judge
24 will decide if it's within the nine questions that
25 we proposed or if not.

1   Q   (By Mr. Stone)  Okay?  Do you trust the
2   judge --
3   A   I do.
4          MR. BANINO:  Thatcher, please.  Stop.
5          MR. STONE:  Bart, stop the commentary.
6   Let me conduct my investigation in this deposition.
7          MR. BANINO:  Thatcher --
8          MR. STONE:  Stop it.
9          MR. BANINO:  Thatcher, I don't have a
10  problem with the deposition.  I have a problem with
11  your behavior.
12         MR. STONE:  Well, then save it for later.
13  Q   (By Mr. Stone)  So, sir -- sorry for the
14  interruption.
15         So were there many complaints received
16  from anybody concerning that flight from Denver to
17  Washington on that date, December 25th, 2017?
18  A   To my knowledge, there were the social
19  media Tweets from Mrs. Smithers, and also -- excuse
20  me, who I believe was some sort of relation that
21  said that she dropped her off, Mrs. Swann, or a
22  Brittany Swann.
23  Q   And no other complaints?
24  A   Not that I'm familiar with.
25  Q   Did you speak to Courtney, the customer

1  service person identified by Frontier as someone
2  with knowledge of the matters in this case --
3      A    I didn't.
4      Q    -- to get informed about No. 6?
5      A    I did not.
6      Q    You did not.  Okay.
7           MR. STONE:  So we object to that, Bart.
8  The witness is not prepared in accordance with the
9  rule, preparations.
10     Q    (By Mr. Stone)  Are there any other --
11 let's take a moment right --
12          MR. BANINO:  Thatcher, Thatcher --
13          MR. STONE:  Please don't talk over me.
14          MR. BANINO:  No, no, no.  You just made a
15 statement that -- you can -- you can make your
16 objection to this witness.  This witness is fully
17 informed and prepared to testify about all of the --
18          MR. STONE:  Well, he just testified he
19 wasn't informed and never spoke --
20          MR. BANINO:  He doesn't --
21          MR. STONE:  -- to Courtney and never fully
22 informed himself, and I respect him.
23          MR. BANINO:  He did not say that.
24          MR. STONE:  Well --
25          MR. BANINO:  He said he did not speak to

1  Courtney, period.
2             MR. STONE:  That's right.  Well, how else
3  is he --
4             MR. BANINO:  He does not have to speak to
5  Courtney to be --
6             MR. STONE:  He does.
7             MR. BANINO:  -- a capable witness.
8             MR. STONE:  If he's going to answer No. 6
9  he does.  So we'll let the magistrate figure that
10 out.
11            MR. BANINO:  That's fine.
12            MR. STONE:  I take the man at his word.
13    Q    (By Mr. Stone)  And are there any others
14 of these nine elements, Mr. Christensen, where you
15 didn't go follow up and figure out what the facts
16 were?
17            MR. BANINO:  Thatcher, I'm going to -- I'm
18 going to object that you're asking --
19            MR. STONE:  Your objection is noted.
20            MR. BANINO:  But you're asking him for a
21 legal conclusion.
22            MR. STONE:  No, I'm not.  I'm asking him
23 if he prepared.
24    Q    (By Mr. Stone)  So with respect to --
25            MR. BANINO:  You're -- are you asking him

1  whether he has prepared for this deposition?
2          MR. STONE:  Yeah, in -- in regard --
3          MR. BANINO:  You can ask him whether he
4  has prepared for this deposition.
5          MR. STONE:  Yeah.
6       Q   (By Mr. Stone)  So with respect to No. 6,
7  Mr. Christensen.
8       A   Yes.
9       Q   Did you prepare by determining the details
10 of all the complaints that were received from any
11 source --
12      A   I read --
13      Q   -- in preparation for this deposition?
14      A   I read the social media texts and the
15 online -- some sort of online forum, it looked like,
16 that was posted, yes.
17      Q   But you didn't read customer service
18 details about how many people complained.
19      A   If it was attached to the text, yes, or
20 to -- not to the text, but to the social media
21 postings, yes.
22      Q   So you don't know if anybody else
23 complained, if --
24      A   To my knowledge --
25      Q   -- it wasn't attached to Mrs. Smithers'

```
 1   text.  Is my --
 2        A    To my knowledge --
 3        Q    -- understanding correct?
 4             MR. BANINO:  Objection, because that was
 5   asked and answered, but you can ask again.
 6        A    Correct.  I -- if it wasn't attached to
 7   that, I -- I do not know.
 8        Q    (By Mr. Stone)  So if there were
 9   independent or other texts you didn't see them,
10   correct?
11             MR. BANINO:  Again, I'm going to object
12   because that was asked and answered, but you can
13   answer it again.
14        A    Correct.
15        Q    (By Mr. Stone)  And if there were phone
16   complaints -- did you see any records of any phone
17   complaints about this flight on that date to that
18   destination?
19        A    I did not see any phone complaints
20   associated with that flight.
21        Q    Okay.  Did you review the phone complaints
22   records?
23        A    No.
24        Q    Okay.  Let's go to -- let's go back to
25   No. 3 --
```